# WIGDOR LLP
ATTORNEYS AND COUNSELORS AT LAW

85 FIFTH AVENUE
NEW YORK, NY 10003
TEL 212.257.6800
FAX 212.257.6845
WWW.WIGDORLAW.COM

**Douglas H. Wigdor**
dwigdor@wigdorlaw.com

March 13, 2019

**VIA ECF AND EMAIL**

The Honorable Richard J. Sullivan
United States District Court, Southern District of New York
40 Foley Square, Room 2104
New York, New York 10007

      Re:    <u>Oakley v. Dolan, *et al.*</u>; Civil Case No. 17-cv-06903 (RJS)

Dear Judge Sullivan:

We represent Plaintiff Charles Oakley in the above-captioned matter and write to update the Court on additional information that recently came to light germane to the pending motion to dismiss filed by Defendants James Dolan, MSG Networks, Inc., the Madison Square Garden Company and MSG Sports & Entertainment, LLC (collectively, "Defendants") pursuant to Fed. R. Civ. P. 12(b)(6).  Specifically, while Plaintiff believes that it is inappropriate for Defendants to rely on extrinsic evidence at the motion to dismiss stage – especially the incomplete extrinsic evidence that Defendants submitted with their motion papers (<u>see</u> Dkt. No. 50 at pp. 8-10, 12) – recent public events further undercuts Defendants' arguments in favor of dismissal.

As has been publicly reported,[1] on Saturday March 9, 2019, following a New York Knicks (the "Knicks") loss, a fan told Defendant Dolan that he should "sell the team" as Defendant Dolan was leaving Madison Square Garden (the "Garden"), an event that happened to be captured on video tape (the "Fan Video").  <u>See</u> Ex. A.  Based solely on this interaction, in which the fan did not curse, scream, or engage in any other inappropriate action, <u>id.</u> at 0:08, Defendant Dolan threatened to ban the fan from the Garden, pointedly asking him "do you want to not come to any more games?" <u>id.</u> at 0:14-0:15, and telling the fan to "enjoy watching [the Knicks] on TV."  <u>Id.</u> at 0:23-0:24.  What followed is striking for the similarity it bears to the events that precipitated the instant action:

- As he had with Mr. Oakley, Defendant Dolan gestured with his index finger to a security guard to detain the fan.  <u>Compare</u> Dkt. No. 50 at pp. 14-15 (describing the gesture made by Defendant Dolan signaling his security personnel to eject Mr.

---

[1]    <u>See</u>, <u>e.g.</u>, https://nypost.com/2019/03/09/james-dolan-threatens-to-ban-fan-who-tells-him-to-sell-knicks/ (last visited on March 12, 2019); https://www.nydailynews.com/sports/basketball/knicks/ny-sports-james-dolan-fan-knicks-20190309-story.html (last visited on March 12, 2019).



        Oakley from the Garden) with Ex. A at 0:29-0:32 (showing Defendant Dolan making a similar gesture signaling security personnel to detain the fan).

- As was the case with Plaintiff, immediately following Defendant Dolan's gesture, the fan was then approached and detained by the police and Defendants' security personnel. Compare Dkt. No. 50 at p. 15 with Ex. A at 0:28-0:31 (where a voice (presumably a member of security) can be heard saying "hold [the fan] for Kevin"); and Ex. B (explaining that the fan was detained by police officers following Defendant Dolan's gesture).

- As they had done with Plaintiff, Defendants released a statement shortly thereafter attempting to blame Defendant Dolan's unjustified and capricious actions on the fan. Compare Dkt. No. 50 at pp. 5-6 (describing the defamatory statements made by Defendants concerning their decision to ban Mr. Oakley from the Garden) with Ex. B (following the incident, a spokesperson for the Garden issued a statement saying "our policy is and will continue to be that if you are disrespectful to anyone in our venues, **we will ask you not to return**") (emphasis added).

To be clear, Plaintiff does not bring the Fan Video and the events which transpired on March 9, 2019 to the Court's attention because he believes that it is evidence that should be considered in determining the merits of Defendants' motion to dismiss. To the contrary, as Plaintiff has repeatedly maintained, *no* extrinsic evidence should be considered in the context of a motion to dismiss, especially where, as here, the extrinsic evidence relied upon by Defendants is woefully incomplete. See Dkt. No. 50 at pp. 11-13.

Instead, Plaintiff seeks to alert the Court to the Fan Video because it squarely contradicts the self-serving characterization of the incomplete evidence proffered by Defendants in support of dismissal whereby they claim that the security footage they submitted (which contained no audio) demonstrates that Mr. Oakley was purportedly abusing fans and personnel at the Garden. This, in turn, purportedly justified their decision to forcibly and violently eject, and subsequently ban, Plaintiff from the Garden. As the Fan Video makes clear, however, Defendant Dolan needs no such justification whatsoever to engage in the same kind of conduct to which he subjected Plaintiff – signaling for his security guards and police officers to confront, and eject, a paying attendee at the Garden and subsequently issuing public statements shifting the blame onto others for his misconduct. Thus, before this case can be properly adjudicated on the merits, the parties require full and complete discovery to learn what, if anything, Plaintiff said while he was at the Garden, what Defendant Dolan told his security personnel and the basis Defendants had for falsely claiming that Plaintiff was an alcoholic. As a result, and for the reasons explained more fully in Plaintiff's opposition to Defendants' motion to dismiss, Plaintiff respectfully submits that Defendants' motion should be denied in its entirety.



The Honorable Richard J. Sullivan  
March 13, 2019  
Page 3

We thank the Court for its time and attention to this matter.

Respectfully submitted,

Douglas H. Wigdor