**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Randy M. Mastro
Direct: +1 212.351.3825
Fax: +1 212.351.5219
RMastro@gibsondunn.com

November 25, 2020

VIA ECF AND E-MAIL (CA02_RJSChambers@ca2.uscourts.gov)

Hon. Richard J. Sullivan
United States Circuit Judge
500 Pearl St., Room 2530
New York, New York 10007

Re: *Oakley v. MSG Networks, Inc.,* et al., 17-cv-6903 (RJS)[1]

Dear Judge Sullivan:

I write as Defendants' counsel, pursuant to Your Honor's Rule 2(A), to request a pre-motion conference seeking permission to file a motion for summary judgment, pursuant to Federal Rule of Civil Procedure 56(a), and for a stay of discovery pending that motion's disposition.

On February 19, 2020, this Court granted Defendants' motion to dismiss, in full, Plaintiff Charles Oakley's claims. Dkt. No. 68. On November 16, 2020, the Second Circuit affirmed the dismissal of Oakley's four defamation and libel claims, false imprisonment claim, and two denial of public accommodation claims. *See Oakley v. Dolan*, 2020 WL 6703527, at *1 (2d Cir. 2020). It reversed the dismissal of Oakley's assault and battery claims—which are really the same claim—finding the allegations sufficient to allow the case to proceed past the motion to dismiss stage. *Id.*

The Second Circuit's opinion made clear that this lone surviving claim is exceedingly narrow. Critically, the Second Circuit expressly rejected Oakley's contention that "the *act* of [his] removal [from Madison Square Garden] was unreasonable." *Id.* at *3 (emphasis added). As the Court emphasized, the *only* question that remains is whether "the security guards used excessive force in *accomplishing* the removal" of Oakley. *Id.* (emphasis added). Questions concerning whether Defendants had the right to remove Oakley, or what precipitated his removal, are not relevant to that determination.[2] All that is left to this case is whether the physical act of force used to remove Oakley was "objectively unreasonable," which it is Oakley's burden to prove.[3]

The uncontroverted video evidence already in this record shows that the Defendants, working in conjunction with NYPD officers, did not act unreasonably in removing Oakley, and that Oakley's allegations to the contrary—including that he was supposedly thrown to the ground twice—are complete fabrications. This Court should permit Defendants to move for summary judgment, based on this case-determinative evidence.

---

[1] Because all claims against James Dolan have been dismissed, Defendants respectfully request that the Court order his name removed from the case caption.

[2] Because the Second Circuit "affirm[ed] the denial of leave to amend," Oakley is now barred from seeking to expand the scope of his allegations. *See Oakley v. Dolan*, 2020 WL 6707696, at *1 n.3 (2d Cir. Nov. 16, 2020).

[3] *See, e.g., Lowth v. Town of Cheektowaga*, 82 F.3d 563, 573 (2d Cir. 1996); *cf.* Dkt. No. 68 at 15 (emphasizing that "[t]he law is clear that 'a property owner has the right to use reasonable force to eject a trespasser from its premises'" (quoting *Mitchell v. N.Y. Univ.*, No. 2014 WL 123225, at *1 (N.Y. Sup. Ct. Jan. 8, 2014))).

# GIBSON DUNN

November 25, 2020
Page 2

**LEGAL STANDARDS**: "Rule 56(b) permits motions for summary judgment 'at any time until 30 days after the close of all discovery,'" including "prior to discovery." *Ali v. City of N.Y.*, 2012 WL 3958154, at *3 n.10 (S.D.N.Y. Sept. 5, 2012) (Kaplan, J.) (quoting Fed. R. Civ. P. 56(b)). The party opposing relief "may not rely on mere speculation or conjecture as to the true nature of the facts to overcome [the] motion." *Hicks v Baines*, 593 F.3d 159, 166 (2d Cir. 2010). A "bare assertion that evidence to support a fanciful allegation lies within the exclusive control of the defendants, and can be obtained only through discovery, is not sufficient to defeat a motion for summary judgment." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986).

**CONSIDERATION OF VIDEO EVIDENCE**: Defendants intend to rely on the following videos to support their summary judgment motion: (i) footage from ESPN's national broadcast, Dkt. No. 43-1 ("ESPN Video"); (ii) internal audioless Arena Cam footage, Dkt. Nos. 43-2a ("Arena Cam"), 43-2b; (iii) a fan video published on the *New York Times*'s website, Dkt. No. 43-3 ("NYT Video"); (iv) a fan video made available on YouTube, Dkt. No. 43-4 ("YouTube Video"); and (v) post-incident audioless security footage, Dkt. No. 43-5. To date, neither this Court nor the Second Circuit has examined these videos. *See* Dkt. No. 68 at 6; *see also Oakley*, 2020 WL 6703257, at *2 n.3. Notably, however, Oakley actively *encouraged* the circuit judges to consider the video in his appeal. *See* Oral Argument at 7:28–32, *Oakley*, 2020 WL 6703257 (No. 20-642) ("I'm happy for you to look at the video."); *id.* at 8:52–56 ("You should look at the video."). Because both parties have represented that the videos support their position, there is no reason that this Court should not now consider this objective and uncontroverted evidence on summary judgment.[4]

**CONTENT OF VIDEO EVIDENCE**: As a preliminary matter, the video evidence disproves the two key allegations on which the Second Circuit based its decision: that Oakley was "thrown to the ground by actions that greatly exceeded the amount of force that was necessary," and that his removal was effectuated exclusively by "security officers" who "were not trying to handcuff a person whom they had authority to arrest." *Oakley*, 2020 WL 6703257, at *3. Multiple videos document that Oakley was never thrown to the ground—he tripped, and later fell as he turned around while being led out (then grabbed a rail resisting removal). *See* Arena Cam at 8:20:08–12 (Oakley trips); YouTube Video :09–15 (same); ESPN Video :20–25 (Oakley falls); NYT Video :49–56 (same); YouTube Video 2:30–55 (grabs rail). And the videos are equally clear that NYPD officers were present with security guards throughout the confrontation. Arena Cam 8:19:42.2 (Oakley looks at NYPD officer while still seated); NYT Video :05–20 (NYPD officer present).

The video evidence likewise confirms that other key allegations of Oakley's are fabrications, and that the force used to remove Oakley was not objectively unreasonable:

---

[4] While Oakley complained on appeal that the video evidence "does not show what Defendants' security personnel told Oakley" or "demonstrate what . . . Oakley said prior to being confronted," Reply Brief at 4, *Oakley*, 2020 WL 6703257, these issues are now irrelevant given the Second Circuit's dismissal of Oakley's discrimination claim and its finding that Defendants had the right to remove Oakley. Nor is audio necessary to assess whether the physical act of removing Oakley was unreasonable. *See, e.g.*, *McKinney v. Dzurenda*, 555 F. App'x 110, 111 (2d Cir. 2014) (excessive force claims dismissed based on audioless video); *McCoy v. Ferguson*, 2019 WL 3806008, at *2–3 (S.D. W. Va. Aug. 13, 2019) (discovery "unnecessary" in light of audioless video).

**GIBSON DUNN**

November 25, 2020
Page 3

- While Oakley suggests that he was overpowered by "three large men," Dkt. No. 36 ¶ 34, Oakley in fact towered over all of the security officers involved, *see generally* NYT Video;
- During the initial exchange with security, Oakley invaded a security guard's personal space, Arena Cam 8:19:40–47, and then violently extended his arm and lunged at that guard (who had backed away), *id.* at 8:19:47.7, thoroughly discrediting his claim that he was in "a defensive posture" and "had no intention of engaging in any violent behavior," Dkt. No. 36 ¶ 38;
- Oakley's allegation that he was "shov[ed] to the ground within seconds" of security arriving is false, as nearly a minute passed between the guards arriving and an agitated Oakley tripping and falling to the floor, *compare* Dkt. No. 36 ¶ 43, *with* Arena Cam 8:19:23–20:10;
- Upon returning to his feet after his fall, Oakley did not "request an explanation" for his ejection, *contra* Dkt. No. 36 ¶ 45, but instead yelled "that's some bullsh*t," NYT Video :04–14, and refused a security guard's request to "please walk," NYT Video :08–12;
- After refusing to walk out with security, Oakley shoved his finger in a security guard's face and shouted "get the f**k out of my face," *id.* :15–22;
- When the security guard responded "no problem," Oakley *escalated* the situation by shouting "I said it to your mother**king face, mother**ker," *id.* :18–26;
- At this point, Oakley struck the security guard in the face, propelling his head backwards and evoking audible gasps of "no!" from the crowd, *id.* :29–31—an attack that can in no way be characterized as "self-defense," *contra* Dkt. No. 36 ¶ 46;
- When another security guard softly rested his open hand on Oakley's back, NYT Video :33–35, Oakley screamed "get off of me," chopped downward on the security guard's arm, and twice shoved the security guard into a row of seats, *id.* :35–40; ESPN Video :09–11.

It was *only after all this aggressive behavior on Oakley's part* that security guards—with the help of one or more uniformed NYPD officers—had to use force to remove Oakley, who continued to resist removal from the arena. *See*, *e.g.*, NYT Video at :40–50. Notably, the security guards and NYPD officers removed Oakley without inflicting any physical injuries.

The Supreme Court has instructed that where, as here, video evidence "blatantly contradicts" a party's allegations, courts should reject those allegations and grant summary judgment based on the video evidence. *See Scott v. Harris*, 550 U.S. 372, 380–81 (2007).[5] Defendants' "reliable objective evidence . . . speak[s] for itself," and demands the immediate dismissal of Oakley's case. *See Marcavage v. City of N.Y.*, 689 F.3d 98, 110 (2d Cir. 2012). Accordingly, Defendants intend to seek summary judgment dismissing Oakley's sole remaining claim alleging assault and battery, as well as a stay of discovery pending the motion's disposition.

Respectfully,

*/s/ Randy M. Mastro*

---

[5] *See also*, *e.g.*, *Kalfus v. N.Y. & Presbyterian Hosp.*, 476 F. App'x 877, 880 (2d Cir. 2012) (affirming summary judgment where video evidence "belie[d] th[e] claim"); *Pizarro v. Bd. of Corr.*, 2018 WL 3462512, at *2–5 (S.D.N.Y. July 17, 2018) (Sullivan, J.) (relying on video evidence that contradicted plaintiff's claims); *Lin v. City of N.Y.*, 2016 WL 7439362, at *11–12 (S.D.N.Y. Dec. 21, 2016) (Engelmayer, J.) (same).