# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Randy M. Mastro
Direct: +1 212.351.3825
Fax: +1 212.351.5219
RMastro@gibsondunn.com

December 17, 2020

VIA ECF AND E-MAIL (CA02_RJSChambers@ca2.uscourts.gov)

Hon. Richard J. Sullivan
United States Circuit Judge
500 Pearl St., Room 2530
New York, New York 10007

Re:   *Oakley v. MSG Networks, Inc.,* et al., 17-cv-6903 (RJS)

Dear Judge Sullivan:

I write as Defendants' counsel in opposition to Plaintiff Charles Oakley's request for leave to file a Second Amended Complaint.  *See* Dkt. No. 83.  Oakley's audacious attempt, post-appeal, to once again amend his pleading—after this Court denied him leave to amend a second time (Dkt. No. 68 at 20–21), and the Second Circuit just affirmed that ruling (*Oakley v. Dolan*, 2020 WL 6707696, at *1 n.3 (2d Cir. Nov. 16, 2020))—is unworthy of consideration.  He is barred from doing so as a matter of law of the case and *res judicata*.  Moreover, the claims he seeks to add are untimely and meritless, especially since he knew of and could have pursued all of them in his prior pleadings but chose not to do so.  In a desperate attempt to avoid summary judgment and justify intrusive, irrelevant discovery, Oakley now seeks to allege further meritless claims against James Dolan, who is no longer a defendant in this case.  This further pursuit of a "public relations campaign" against Dolan and MSG should be summarily rejected.  Dkt. No. 68 at 21.

**Oakley's Request Is Barred by the Law of the Case and *Res Judicata*:**  Oakley asks this Court for leave to file a "Second Amended Complaint" that would "add James Dolan as a defendant." Dkt. No. 83 at 1.  However, this Court expressly "denie[d] Oakley's request for leave to amend" when it dismissed Oakley's Amended Complaint.  *See* Dkt. No. 68 at 20–21 (emphasizing that Oakley had "the benefit of Defendants' pre-motion letter and an extensive colloquy with the Court" before amending his complaint).  And the Second Circuit, on appeal, explicitly "affirm[ed] the denial of leave to amend."  *See Oakley*, 2020 WL 6707696, at *1 n.3.  Thus, Oakley's latest request for leave to amend is contrary to the law of the case doctrine, which "*requires* the district court on remand to comply with the dictates of the appellate court's remand order and forecloses relitigation of issues expressly or implicitly decided by the appellate court."  *Pearlstein v. BlackBerry Ltd.*, 2019 WL 6831554, at *9 (S.D.N.Y. Aug. 2, 2019) (Parker, M.J.) (emphasis added).[1]

Oakley's request is likewise barred by the doctrine of *res judicata*, which "prevents a plaintiff from relitigating claims that were or could have been raised in a prior action against the same defendant where that action has reached a final judgment on the merits."  *L-Tec Elecs. Corp. v. Cougar Elec. Org., Inc.*, 198 F.3d 85, 87 (2d Cir. 1999).  That doctrine applies with equal force to "bar subsequent claims in the same continuing action after a judgement on the merits has been granted on some claims."  *Pearlstein*, 2019 WL 6831554, at *9.  Indeed, in a similar case, the Second Circuit held that plaintiffs were prohibited as a matter of law from "assert[ing] new

---

[1] *Accord 7 W. 57th St. Realty Co., LLC v. Citigroup, Inc.*, 314 F. Supp. 3d 497, 515 (S.D.N.Y. 2018) (Gardephe, J.) (request for leave to amend "barred by the law of the case doctrine"); *Semple v. Eyeblaster, Inc.*, 2009 WL 1748062, at *2 (S.D.N.Y. June 19, 2009) (Baer, J.) (same).

**GIBSON DUNN**

December 17, 2020
Page 2

claims" against individual defendants who had been dismissed from the litigation because those new claims—even if "based upon different legal theories"—"ar[o]se from the same transaction or occurrence" that was the subject of the initial complaint. *L-Tec Elecs. Corp.*, 198 F.3d at 86–88.

Oakley's argument that his amendment is premised on new evidence is false, and does not alter this analysis. The Second Circuit has ruled that a district court may not "change the law of the case as established by [an appellate court] on the basis of new evidence . . . unless, of course, authorized to do so by the terms of the remand." *United States v. Fernandez*, 506 F.2d 1200, 1202 (2d Cir. 1974). Likewise, "*[r]es judicata* applies even where new claims are based on newly discovered evidence, unless the evidence was either fraudulently concealed or it could not have been discovered with due diligence"—neither of which applies here. *L-Tec Elecs.*, 198 F.3d at 88.

**Oakley's Latest Theory of Liability Against Dolan Is Not Based on Any "New Evidence"**:
Oakley falsely claims that this belated request—coming nearly three years after he amended his complaint, and more than three years after he filed this litigation—is supposedly justified because, "[p]rior to filing the original and amended complaints, [he] was unaware of Mr. Dolan's role in the assault and battery." Dkt. No. 83 at 1. In reality, Oakley already effectively made these allegations in his original complaint, and repeated these same allegations in his amended complaint—namely, that "Dolan *directed* that security forcibly remove Mr. Oakley from the Garden and publicly embarrass him on live television," that "the security guards had been sent to *carry out Defendant Dolan's orders*," and that "Defendant Dolan was clearly attempting to publicly humiliate [Oakley]" in forcing his removal. Dkt. Nos. 1 ¶¶ 4, 40, 41 (emphases added); 36 ¶¶ 3, 36, 37.

Moreover, Oakley's counsel confirmed that, prior to filing the Amended Complaint, he had *both* the "public videos" and "whatever you gave to the District Attorney"—which included all of the internal "Arena Cam" footage. Dkt. Nos. 43-15 at 2; 44 ¶¶ 7–11. Indeed, Oakley's counsel explicitly claimed in February 2018 that the videos in his possession allegedly showed Dolan "gleefully" endorsing the ejection, "which *would be relevant to our assault [and] battery . . . claims*." Dkt. No. 43-15 at 2 (emphasis added). Thus, Oakley clearly *chose* not to include the allegations he now seeks to add when he previously amended his complaint—though he notably *did* make *all* of the same allegations in his Opposition to Defendants' Motion To Dismiss.[2] But a litigant cannot strategically choose to refrain from pleading available factual allegations, sit on them *for years*, wait until after the defendant's dismissal, and then seek to add those fact allegations when it fits his litigation and public relations strategy. *See*, *e.g.*, *State Trading Corp. of India, Ltd. v. Assuranceforeningen Skuld*, 921 F.2d 409, 417–18 (2d Cir. 1990); *Martell Strategic Funding LLC v. Am. Hosp. Acad.*, 2017 WL 2937649, at *3–4 (S.D.N.Y. July 10, 2017) (Broderick, J.).

---

[2] *Compare* Dkt. No. 50 at 14–15 (Oakley's counsel argued in May 2018 that video evidence showed Dolan "speaking at length to a security guard stationed near Plaintiff," "look[ing] back at Mr. Oakley," "signal[ing] the security guard's attention," "mak[ing] a very clear gesture with his right hand," and "taking [his hand] from his head and pointing down toward the ground," which led to the "violent[] confront[ation]" that Dolan later allegedly endorsed with "a thumbs-up gesture"), *with* Dkt. No. 83 at 1–2 (Oakley's counsel now cites in December 2020 same alleged facts as basis for proposed amendment).

**GIBSON DUNN**

December 17, 2020
Page 3

**Oakley's Proposed Claims Are Time-Barred**:  Oakley's proposed amendment would also be futile as time-barred.  All of the claims he seeks to raise are subject to a one-year statute of limitations that expired in February 2018.  *See*, *e.g.*, *Canosa v. Ziff*, 2019 WL 498865 at *13 (S.D.N.Y. Jan. 28, 2019) (Engelmayer, J.).  Nor do those claims "relate back" to the original pleading.  *Contra* Dkt. No. 83 at 2–3.  A claim only relates back when there has been a "mistake concerning the proper party's identity."  Fed. R. Civ. P. 15(c)(1)(C)(ii).  Here, Oakley cannot possibly claim that he made a "mistake" in failing to identify Dolan sooner—he made Dolan a centerpiece of his prior pleadings.  *See*, *e.g.*, Dkt. Nos. 1 ¶ 4; 36 ¶ 3 (alleging Dolan "directed" security to "forcibly remove" Oakley).  Indeed, the very case on which Oakley purports to rely states that "making a deliberate choice to sue one party instead of another while fully understanding the factual and legal differences between the two parties is the *antithesis* of making a mistake concerning the proper party's identity."  *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 549 (2010) (emphasis added).[3]

**Oakley's Proposed Claims Lack Merit**:  Finally, Oakley's legal claims would also fail as a matter of law.  *See Naughright v. Weiss*, 826 F. Supp. 2d 676, 691 (S.D.N.Y. 2011) (Sweet, J.) (aiding and abetting assault or battery requires, *inter alia*, "wrongful act producing an injury" and "the defendant's knowing and substantial assistance in the principal violation").  In addition to failing to allege an actionable injury,[4] Oakley's proposed aiding and abetting claims fail to allege substantial assistance.  *See generally Offenhartz v. Cohen*, 562 N.Y.S.2d 500, 501 (1st Dep't 1990) (rejecting aiding and abetting assault claim because allegation that attorney "advised plaintiff's mother" to take actions was not an "overt act").  The most Oakley alleges is that Dolan had a conversation that precipitated Oakley's removal, but that alone cannot form the basis of liability, given the Second Circuit's instruction that what little is left of this case is not about why Oakley was removed but, rather, whether "*security guards* used excessive force in *accomplishing* the [lawful] removal."  *Oakley*, 2020 WL 6703527, at *3 (emphases added).  This same logic forecloses Oakley's concerted action theory, as does his failure to plead a "common plan" between Dolan and the security guards.[5]  *See generally Rastelli v. Goodyear Tire & Rubber Co.*, 79 N.Y.2d 289, 295 (1992).

For all of these independent reasons, this Court should deny Oakley's request for leave to amend.

Respectfully,

/s/ Randy M. Mastro

---

[3] *Accord Hahn v. Office & Prof'l Emps. Int'l Union, AFL-CIO*, 107 F. Supp. 3d 379, 385 (S.D.N.Y. 2015) (Koeltl, J.) (relation back does not apply where "[t]he plaintiff has sued [who he believes to be] the right defendant, and simply neglected to sue another defendant who might also be liable" (internal quotation marks omitted)).

[4] Oakley's continuing failure to allege damages all but confirms that his case is a public relations stunt.

[5] Oakley's cases all involved defendants who played much more central roles in the alleged underlying assaults. *See*, *e.g.*, *Weldon v. Rivera*, 754 N.Y.S.2d 698 (3d Dep't 2003) (defendant "kiss[ed] plaintiff" during alleged rape, after "urging" her to "consume additional alcohol" and "procur[ing] a condom"); *Scollo ex re. Scollo v. Nunez*, 2007 WL 2228771, at *2 (Sup. Ct. Queens Cty. Aug. 3, 2007) (defendants had weapons and chased plaintiff); *McKiernan v. Vaccaro*, 2017 WL 4620705, at *1 (Sup. Ct. N.Y. Cty. Aug. 24, 2017) (defendant "honk[ed]," "yell[ed]" and "drove . . . within inches of plaintiff" before his passenger exited vehicle and assaulted plaintiff).