UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------x

|  |  |
|---|---|
| CHARLES OAKLEY, | : |
| Plaintiff, | : |
| v. | : |
| JAMES DOLAN, in his individual and professional capacities, MSG NETWORKS, INC., THE MADISON SQUARE GARDEN COMPANY and MSG SPORTS & ENTERTAINMENT, LLC, | : |
| Defendants. | : |

Case No. 17-cv-6903 (RJS)

<u>Oral Argument Requested</u>

-----------------------------------------------------------x

## **DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................. 1

STATEMENT OF FACTS ...................................................................................................... 4

I.     Oakley Attends A February 8, 2017 Knicks Game At MSG.................................................. 4

II.    Oakley Is Asked To Leave MSG, Refuses To Comply, And Attacks Two Security
       Guards. ............................................................................................................... 4

III.   Oakley Falls To The Ground, Continues To Resist Removal, And Assaults Two
       MSG Security Guards. ........................................................................................... 5

IV.    An NYPD Officer And MSG Security Guards Escort Oakley From The Seating
       Area. .................................................................................................................. 6

V.     Oakley Falls For A Second Time And Refuses To Return To His Feet. ................................ 6

VI.    Oakley Returns To His Feet And Is Handcuffed By An NYPD Officer, Yet
       Continues To Resist Removal. ................................................................................ 7

VII.   Oakley Is Led To An NYPD Van And Removed From MSG. ........................................... 7

PROCEDURAL HISTORY ..................................................................................................... 8

LEGAL STANDARD ........................................................................................................... 10

ARGUMENT ..................................................................................................................... 11

I.     The Sole Remaining Issue In Oakley's Assault And Battery Claim Is Whether
       Objectively Unreasonable Force Was Used To Remove Oakley From MSG. ...................... 11

II.    The Uncontroverted Video Evidence Establishes That Defendants Did Not Use
       Objectively Unreasonable Force In Removing Oakley, And That Oakley's Allegations
       To The Contrary Are Obvious Lies. ....................................................................... 13

       A.   This Court Must Credit Incontrovertible Video Evidence Disproving Oakley's
            Allegations. ................................................................................................. 13

       B.   The Video Evidence Disproves Oakley's Allegations Regarding The Force
            Used To Effectuate His Removal, and Confirms That Oakley Cannot Prove
            Objectively Unreasonable Force. .................................................................... 15

CONCLUSION .................................................................................................................. 25

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Aldridge v. City of Warran*,
  682 F. App'x 461 (6th Cir. 2017) .............................................................14

*Ali v. City of New York*,
  2012 WL 3958154 (S.D.N.Y. Sept. 5, 2012).........................................11

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)..............................................................................11, 25

*Angula v. Brown*,
  978 F.3d 942 (5th Cir. 2020) ......................................................................14

*Bartlett v. City of New York*,
  2005 WL 887112 (E.D.N.Y. Feb. 11, 2005)........................................22

*Berman v. Williams*,
  2019 WL 4450810 (S.D.N.Y. Sept. 17, 2019).......................................14

*Contemporary Mission, Inc. v. U.S. Postal Serv.*,
  648 F.2d 97 (2d Cir. 1981)........................................................................11

*Creighton v. City of New York*,
  2017 WL 636415 (S.D.N.Y. Feb. 14, 2017).........................................15

*Dobbins v. Ponte*,
  2017 WL 3309726 (S.D.N.Y. Aug. 2, 2017)........................................25

*Duna v. City of New York*,
  2019 WL 4735354 (S.D.N.Y. Sept. 27, 2019)...................................3, 22

*Feaster v. City of Middletown*,
  2016 WL 10570984 (S.D.N.Y. Nov. 28, 2016)...............................12, 20

*Franks v. City of New York*,
  2017 WL 1194500 (E.D.N.Y. Mar. 31, 2017)......................................24

*Hernandez v. Coca Cola Refreshments USA, Inc.*,
  2013 WL 6388654 (E.D.N.Y. Dec. 6, 2013) .......................................15

*Hill v. Greeley Square Hotel Co.*,
  175 A.D. 421 (1st Dep't 1916) ...............................................................11

**TABLE OF AUTHORITIES** *(continued)*

Page(s)

*Impasto v. Hellman Enters., Inc.*,
   147 A.D.2d 788 (3d Dep't 1989) ......................................................................................11, 25

*Kalfus v. N.Y. & Presbyterian Hosp.*,
   476 F. App'x 8771 (2d Cir. 2012) ...........................................................................................3

*Kalfus v. N.Y. & Presbyterian Hosp.*,
   706 F. Supp. 2d 458 (S.D.N.Y. 2010) ................................................................14, 15, 19, 24

*Lin v. City of New York*,
   2016 WL 7439362 (S.D.N.Y. Dec. 21, 2016) ................................................................14, 15

*Lowth v. Town of Cheektowaga*,
   82 F.3d 563 (2d Cir. 1996) ..............................................................................................12, 20

*Madden v. Queens Cty. Jockey Club, Inc.*,
   296 N.Y. 249 (1947) ............................................................................................................11

*Marcavage v. City of New York*,
   689 F.3d 98 (2d Cir. 2012) ................................................................................................3, 14

*McCoy v. Ferguson*,
   2019 WL 3806008 (W.D. Va. Aug. 13, 2019) .......................................................................14

*McGovern v. Weis*,
   265 A.D. 367 (4th Dep't 1943) .............................................................................................11

*Merring v. Town of Tuxedo*,
   2009 WL 849752 (S.D.N.Y. Mar. 31, 2009) ........................................................................20

*Mitchell v. N.Y. Univ.*,
   2014 WL 123255 (N.Y. Sup. Ct. N.Y. Cty. Jan. 8, 2014) ...................................11, 13, 23, 25

*Noonan v. Luther*,
   206 N.Y. 105 (1912) ......................................................................................................11, 25

*Oakley v. Dolan*,
   2020 WL 6707696 (2d Cir. Nov. 16, 2020) .......................................................................2, 10

*Oakley v. Dolan*,
   980 F.3d 279 (2d Cir. 2020) .............................................................2, 10, 12, 16, 17, 23, 25

*Pizarro v. Bd. of Correction*,
   2018 WL 3462512 (S.D.N.Y. July 17, 2018) ..................................................................13, 19

*Ryan v. City of New York*,
   2018 WL 3364580 (N.Y. Sup. Ct. N.Y. Cty. July 5, 2018) ........................................13, 22, 23

**TABLE OF AUTHORITIES** *(continued)*

Page(s)

*Schaeffer v. Cavallero*,
  54 F. Supp. 2d 350 (S.D.N.Y. 1999).................................................................................22

*Scott v. Harris*,
  550 U.S. 372 (2007)...................................................................................3, 13, 19

*Smith v. United States*,
  843 F.3d 509 (D.C. Cir. 2016).................................................................................14

*United States v. Basciano*,
  465 F. App'x 9 (2d Cir. 2012).................................................................................12

*W.P. Carey, Inc. v. Bigler*,
  2019 WL 1382898 (S.D.N.Y. Mar. 27, 2019).........................................................11

*Willis v. City of New York*,
  2004 WL 555685 (S.D.N.Y. Mar. 19, 2004).........................................................24

*Wright v. Goord*,
  554 F.3d 255 (2d Cir. 2009).................................................................................11

## Other Authorities

*Charles Oakley Almost Gets Into Fight Outside Cavs' Locker Room*, N.Y. Post
  (June 20, 2016), https://tinyurl.com/y3jqcyhm.................................................................8

*Former Knicks' Player Charles Oakley Busted for DUI*, N.Y. Daily News (Dec.
  18, 2007), https://tinyurl.com/y4daneem.................................................................8

## Rules

Fed. R. Civ. P. 56.................................................................................10, 11

## PRELIMINARY STATEMENT

Plaintiff Charles Oakley's sole remaining assault and battery claims are predicated on utter fabrications. This Court need only "go to the videotape" to see for itself. Indeed, the allegations in Oakley's Amended Complaint are belied by the dispositive video evidence documenting the entire incident at issue here, and Oakley's counsel admit they have had all of the videos in their possession since at least early 2018. It is therefore inexplicable how such false claims were filed in the first place.

The video evidence, which the Court can now consider on this summary judgment motion, forecloses what little remains of Oakley's case on remand. It proves, beyond dispute, that Oakley's allegations are a patchwork of lies. For example, he was never "thrown" to the ground by Madison Square Garden ("MSG") security guards once, let alone twice, as he falsely alleges. And he not only refused to comply with guards' directive that he leave the arena; he responded by repeatedly striking the guards and yelling profanities at them.

The only remaining question before this Court is whether Oakley can meet his heavy burden of proving that Defendants MSG Networks Inc., The Madison Square Garden Company, and MSG Sports & Entertainment, LLC (collectively, "Defendants")[1] used objectively unreasonable force to effectuate his removal. He cannot. The dispositive video evidence shows MSG security guards, accompanied at all times by one or more New York City Police Department ("NYPD") officers, acting reasonably, only to be met by repeated physical assaults from Oakley as he resisted lawful requests that he leave the arena. Hence, Oakley's Amended Complaint must now be dismissed with prejudice.

---

[1]  Because all claims against James Dolan have been dismissed, he is no longer a defendant in this action and, therefore, not mentioned here in connection with Oakley's sole remaining claims against the Defendants.

The case remanded to this Court from the Second Circuit bears little resemblance to the sweeping case Oakley initially filed.  Following this Court's order granting Defendants' motion to dismiss Oakley's Amended Complaint in full, the Second Circuit affirmed the dismissal of Oakley's four defamation and libel claims, his false imprisonment claim, and his two public accommodation claims.  *See Oakley v. Dolan*, 2020 WL 6707696, at *1 (2d Cir. Nov. 16, 2020).  The Second Circuit only reversed this Court's dismissal of Oakley's assault and battery claims—which are effectively one and the same claim—making clear that the scope of the surviving claim is exceedingly narrow.  In the Second Circuit's words, the *only* question that remains in this case is whether "the security guards used excessive force in *accomplishing* the removal" of Oakley.  *Oakley v. Dolan*, 980 F.3d 279, 283 (2d Cir. 2020) (emphasis added).  In addition, the Second Circuit made clear that the only reason this limited basis for potential liability survived is because the Court concluded it had to credit Oakley's pleading allegations that "he was 'thrown to the ground' by actions that 'greatly exceeded the amount of force that was necessary.'"  *Id.* at 283–84.

The threadbare allegations that the Second Circuit felt obligated to credit at the motion to dismiss stage are wholly undermined by the video evidence.  From multiple angles, the video evidence shows that none of the alleged actions Oakley attributes to the Defendants to support his claim ever happened:  Oakley was not "grabbed," "pushed," and "forcibl[y] shove[d] . . . to the ground" (*contra* Am. Compl. ¶¶ 42–43); he was not "physically grabb[ed]" and thereby forced to use "self-defense" (*contra id.* ¶¶ 45–46); he was not later "thrown onto the ground" again (*contra id.* ¶ 47); he was not "imped[ed]" from returning to his feet after he fell (*contra id.* ¶ 48); and he was not "roughly thr[own]" "out of the Garden" (*contra id.* ¶ 49).  Indeed, the video evidence shows that it was *Oakley* who consistently "escalated" the situation (*see id.* ¶ 45), initiating and engaging in violent conduct while resisting lawful removal; it was *Oakley* who repeatedly refused lawful requests

to leave; it was *Oakley* who physically assaulted multiple MSG security personnel; it was *Oakley* who screamed profanities at NYPD officers and MSG employees; and it was *Oakley* whose conduct necessitated the Defendants' use of reasonable force to effectuate his removal, including when *Oakley* latched himself onto a railing, refusing to let go until NYPD officers and an MSG security guard had to physically pry him off.  This video evidence leaves no doubt:  the *only* individual whose actions "exceeded the bounds of reasonable behavior" was Charles Oakley.  *See id.* ¶ 43.

As the U.S. Supreme Court has expressly held, summary judgment is warranted in the face of "videotape capturing the events in question" that "blatantly contradict[s]" allegations of unreasonable force.  *Scott v. Harris*, 550 U.S. 372, 378, 380–81 (2007).  Following *Scott*, it is black-letter law that objective and irrefutable evidence, such as video evidence, "speak[s] for itself" and, on a summary judgment motion, "dooms" a party's self-serving allegations to the contrary.  *Marcavage v. City of New York*, 689 F.3d 98, 110 (2d Cir. 2012).  And the video evidence here shows that Oakley cannot come close to shouldering his heavy burden of demonstrating that the Defendants used objectively unreasonable force to effectuate his removal.  Courts in this Circuit have routinely held that where, as here, the force was necessary to remove a non-compliant individual—and resulted in no physical injuries—that force cannot support a claim for assault or battery.  *See*, *e.g.*, *Duna v. City of New York*, 2019 WL 4735354, at *4–5 (S.D.N.Y. Sept. 27, 2019) (Schofield, J.).  This is especially true where, as here, the plaintiff became violent and physically aggressive prior to removal.  *See*, *e.g.*, *Kalfus v. N.Y. & Presbyterian Hosp.*, 476 F. App'x 877, 880–81 (2d Cir. 2012) (affirming summary judgment where video evidence "belie[d]" plaintiff's excessive force claim).

The video evidence "speaks for itself," "blatantly contradicts" Oakley's allegations, and "dooms" his case.  It proves, beyond dispute, that MSG security personnel did not use objectively

unreasonable force to remove Oakley, who acted out as a violent, non-compliant trespasser.  Indeed, he claims no physical injury at all from his removal.  And it is Oakley's burden to prove that the force used was "objectively unreasonable," and not Defendants' burden to prove otherwise.  The dispositive video evidence makes clear that the sole allegations in the Amended Complaint even attempting to meet Oakley's heavy burden (as referenced by the appellate court) are simply false.

Under these circumstances, the case law uniformly supports the straightforward proposition that such force is not actionable.  This Court should now put an end to Oakley's baseless, publicity-stunt lawsuit by granting the Defendants' motion for summary judgment.

## STATEMENT OF FACTS

**I.      Oakley Attends A February 8, 2017 Knicks Game At MSG.**

On the night of February 8, 2017, Charles Oakley, a former basketball player with the Knicks, attended a Knicks game at MSG.  ¶¶ 1, 4.[2]  The back of Oakley's ticket—like all other Knicks tickets—explicitly stated that the ticket was a "license revocable in MSG's sole discretion." ¶ 4 & n.4.

**II.     Oakley Is Asked To Leave MSG, Refuses To Comply, And Attacks Two Security Guards.**

During the course of the game, Oakley was approached by MSG security guards and a uniformed NYPD officer.  ¶¶ 5, 7.  The MSG security guards who approached Oakley asked Oakley to leave MSG.  ¶ 5.  Oakley refused to comply with the request to leave.  ¶ 6.  Instead, after exchanging words with one of the MSG security guards, Oakley—a former NBA power forward who towered over the guards—rose from his seat and violently lunged at that security guard.  ¶¶ 8, 10; *see also* ¶ 1.  While the MSG security guard leaned away and raised two open hands—signaling

---

[2]  References to "¶ __" are to Defendants' Rule 56.1 Statement, submitted herewith.

that he did not want to escalate the situation—Oakley violently extended his right arm at the security guard.  ¶¶ 11, 13.

Responding to this situation, the uniformed NYPD officer and a separate MSG security guard moved toward Oakley to try to keep him away from the first guard.  ¶ 12.  However, when the second MSG security guard stepped in between Oakley and the first guard in an effort to separate the two individuals, Oakley responded by violently extending his right arm at the second security guard's neck, causing that guard's head to violently snap backwards.  ¶¶ 14–15.  In response, the NYPD officer and a third MSG security guard attempted to restrain Oakley from behind.  ¶ 16.

### III.    Oakley Falls To The Ground, Continues To Resist Removal, And Assaults Two MSG Security Guards.

After this violent exchange, Oakley continued his refusal to leave MSG.  Instead of complying with the lawful request to leave, Oakley tried to move away from the NYPD officer and MSG security guards.  ¶ 17.  However, in so doing, Oakley tripped—of his own accord—and fell to the ground.  ¶ 19.  As he did, at least one MSG security guard tried to *assist* Oakley by preventing him from falling.  ¶ 20.

Once back on his feet, Oakley immediately began screaming "that's some bullsh*t" at both the uniformed NYPD officer and an MSG security guard.  ¶ 22.  That security guard responded by asking Oakley to "please walk," another non-violent request for Oakley to leave.  ¶¶ 23–24.  Oakley refused to comply with this lawful request.  ¶ 25.  Instead, Oakley informed the MSG security guard that he was "good right here" and that he was "not talking to [him]."  ¶ 25.  Oakley then once again yelled at the NYPD officer, "that's some bullsh*t."  ¶ 26.

At this point, Oakley turned back to the MSG security guard and told him to "get the f*** out of my face."  ¶ 28.  The security guard calmly said "no problem" and tried to walk around Oakley, but Oakley refused to step out of his way.  ¶ 29.  Instead, Oakley stuck a finger in the security guard's

face, intentionally bumped the guard's chest (even as the guard tried to retreat), and shouted, "I said it to your motherf**king face, motherf**ker!" ¶¶ 30–32.  In plain view of the NYPD officer, Oakley then struck the guard in the forehead, forcing the man's head backwards and evoking audible gasps of "no!" from the crowd.  ¶¶ 33–34, 39.

Following Oakley's physical assault of the MSG security guard, a different MSG security guard non-aggressively placed one hand on Oakley's arm, and then an open hand on Oakley's back. ¶ 36.  Oakley responded by chopping down on that security guard's arm and screaming "get off of me." ¶ 37.  Oakley then twice shoved the security guard into a row of seats.  ¶ 38.

## IV.   An NYPD Officer And MSG Security Guards Escort Oakley From The Seating Area.

After these attacks on MSG security guards, one security guard pleaded with the NYPD officer to "do something." ¶ 40.  At this point, the NYPD officer and MSG security guards who had witnessed Oakley's conduct had no choice but to physically escort Oakley out of the arena. Accordingly, the NYPD officer and three MSG security guards restrained Oakley and began walking him toward the exit. ¶¶ 42–45.

As he was led to the exit, Oakley remained on his feet, walking alongside the NYPD officer and MSG security guards who led him at a steady pace. ¶ 46.  At no point did anyone strike or shove Oakley, nor did anyone throw Oakley to the ground. ¶¶ 41–45.  And there is no indication whatsoever that any force was used beyond what was necessary to remove Oakley from the arena.

## V.   Oakley Falls For A Second Time And Refuses To Return To His Feet.

While being escorted out of the arena, Oakley attempted to turn himself around to face the opposite direction from the exit to which he was being led. ¶¶ 47–48.  In so doing, Oakley fell backwards to the floor. ¶¶ 49–50.

Once on the ground, Oakley refused to get up. ¶ 51.  Indeed, when Oakley was specifically asked to "get up" and "stand up," he responded by yelling at the NYPD officer and MSG security

guards to "get the f**k off of me"—despite the fact that nobody was on him or otherwise restraining him—and stated plainly that "I don't want to stand up."  ¶¶ 52–54.

While Oakley was on the ground, a second uniformed NYPD officer joined the first officer to assist in escorting Oakley out of the arena.  ¶ 56.  Yet Oakley continued to resist his removal. ¶¶ 54–57.  At one point Oakley even told the NYPD officers to "take me to jail."  ¶ 57.  Oakley ultimately remained on the ground for approximately 80 seconds, even as it was made abundantly clear to him that he was "not cooperating."  ¶¶ 55, 58.

## VI.   Oakley Returns To His Feet And Is Handcuffed By An NYPD Officer, Yet Continues To Resist Removal.

Once Oakley was back on his feet, an NYPD officer handcuffed Oakley's right wrist.  ¶ 59. Oakley responded to this by telling the police officer "you ain't tough" and attempting to strike that officer with his left fist.  ¶ 60.

After again calling the situation "bullsh*t," Oakley again tried to physically prevent his removal by grabbing a railing with both hands.  ¶¶ 61, 63.  Despite being repeatedly instructed to "walk," Oakley refused to let go of the railing.  ¶ 64.  Instead, the NYPD officers and an MSG security guard had to physically pry Oakley's hands from the railings.  ¶¶ 65–68.  Oakley reacted to this effort by trying to strike one of the MSG security guards in the face.  ¶ 66.

## VII.   Oakley Is Led To An NYPD Van And Removed From MSG.

Once the NYPD officers and MSG security guards had finally pried Oakley's hands from the railing, they were able to walk him off of the arena floor.  ¶ 69.  At this point, out of view of the public, the two NYPD officers completed handcuffing and arrested Oakley.  ¶ 70.  Those two NYPD officers then proceeded to walk Oakley in the back-of-house area outside the arena bowl toward the vehicle ramp exit.  ¶ 71.  In the process, two other NYPD officers joined the group, and eventually accompanied Oakley down the vehicle ramp, where they were met by additional NYPD officers.

¶¶ 72–74.

The group waited at the bottom of the ramp until an NYPD van arrived.  ¶ 75.  Once the van

arrived, the NYPD officers assisted Oakley into the van.  ¶ 76.  The NYPD van then drove Oakley

out of MSG and to the nearest precinct.  ¶ 77.[3]

## PROCEDURAL HISTORY

On September 12, 2017, Oakley filed a 10-count complaint against James Dolan, MSG

Networks Inc., The Madison Square Garden Company, and MSG Sports & Entertainment, LLC

seeking relief for alleged actions connected to his February 8, 2017 removal from MSG.  *See* Dkt.

No. 1.  Following a pre-motion letter in which the Defendants identified various fatal defects in

Oakley's legal theories, Dkt. No. 19, and a lengthy pre-motion conference during which

---

[3]  The Manhattan District Attorney's Office ("DA") thereafter initiated a criminal action against
Oakley.  *See* Dkt. No. 43-7 (Mar. 31, 2017 Crim. Compl.).  The DA and Oakley ultimately
entered a plea disposition and did not proceed to trial.  On August 4, 2017, the criminal court
granted a six-month adjournment in contemplation of dismissal, and the DA and Oakley signed
a trespass notice, pursuant to which Oakley voluntarily agreed not to enter MSG for one year.
*See* Dkt. No. 43-8 (Trespass Notice).

In his post-NBA years, Oakley has also been involved in a number of other, similar altercations
with security personnel and law enforcement.  *See* Dkt. No. 43-9 (Answer and Counterclaim,
*Oakley v. Aria Resort & Casino*, at 14–17 (Nev. D. Ct. July 13, 2011)) (describing other similar
incidents in 2010, when Oakley assaulted security officers and bystanders, and 2006, when
Oakley threw dice at a casino employee, causing a one-half inch laceration above the
individual's eye); *Former Knicks' Player Charles Oakley Busted for DUI*, N.Y. Daily News
(Dec. 18, 2007), https://tinyurl.com/y4daneem (discussing Oakley's DUI arrest in Georgia).
In 2016, long after his retirement from the NBA, Oakley initiated a nearly identical exchange
at the Cleveland Cavaliers' arena when he aggressively confronted and threatened arena
security guards outside the Cavaliers' locker room when they refused to let him enter to join
that team's private celebration of their NBA Championship.  *See Charles Oakley Almost Gets
Into Fight Outside Cavs' Locker Room*, N.Y. Post (June 20, 2016),
https://tinyurl.com/y3jqcyhm.  Instead of accepting responsibility for his behavior, Oakley has
misused the court system to accuse his *victims* of unlawful conduct.  *E.g.*, Dkt. Nos. 43-9
(Compl., *Oakley v. Aria Resort & Casino, LLC* (Nev. D. Ct. May 12, 2011)) (alleging
negligence, assault and battery, false imprisonment, and defamation against Las Vegas hotel
and its security officers); 43-10 (Compl., *Oakley v. City of Henderson* (Nev. D. Ct. July 13,
2011)) (alleging negligence and battery against two police officers).

Defendants and the Court addressed, in detail, each of these defects, *see* Tr. of Pre-Motion Conference, Jan. 12, 2018, Oakley filed an Amended Complaint on February 9, 2018.

On March 30, 2018, Defendants moved to dismiss Oakley's Amended Complaint in full. Dkt. Nos. 41–42.   Defendants relied on legal arguments to support their motion but, in the alternative, argued that this Court could consider dispositive video evidence—the same evidence on which Defendants now rely in support of their summary judgment motion—to dismiss Oakley's Amended Complaint at that stage.   Defendants filed the video evidence with their motion to dismiss, *see* Dkt. No. 43, after Oakley's counsel conceded that they had access to these same videos since at least the time they filed their Amended Complaint, *see* Dkt. No. 43-15 at 2; *see also* Tr. of Pre-Motion Conference at 16–17, Jan. 12, 2018.[4]

This Court dismissed all of Oakley's claims on February 19, 2020.  Dkt. Nos. 68–69.  The Court noted that it had not considered Defendants' video evidence, but held that each of Oakley's claims nevertheless failed as a matter of law.  *See* Dkt. No. 68 at 5–6, 21.  The Court also denied the perfunctory request for leave to amend that Oakley included in a footnote to his Opposition. *See id.* at 20–21.  Oakley appealed this Court's dismissal of his Amended Complaint.  *See* Dkt. No. 70.

On November 16, 2020, the Second Circuit affirmed the dismissal of seven of the nine causes of action that Oakley had appealed, as well as this Court's denial of leave to amend.  *See*

---

[4]  As Oakley's counsel has admitted, the DA produced the internal MSG camera footage of the February 8, 2017 incident to Oakley's counsel in 2017 as part of discovery in the criminal action it initiated against Oakley relating to the incident.  *See* Dkt No. 43-15 at 2; Dkt. No. 44 ¶¶ 5–11.  Furthermore, in early February 2018, before the Amended Complaint was filed, Defendants' counsel provided the publicly available video footage of the incident from *New York Times*, ESPN, and YouTube to Oakley's counsel at Wigdor LLP.  Declaration of Randy M. Mastro in Support of Defendants' Motion for Summary Judgment, dated January 22, 2021 ¶ 9.  Oakley's counsel subsequently confirmed that they "obviously have (and have had)" these videos.  Dkt. No. 43-15 at 2.

*Oakley v. Dolan*, 2020 WL 6707696, at *1 & n.3 (2d Cir. Nov. 16, 2020).  Addressing Oakley's claims for alleged assault and battery, the Second Circuit concluded that Oakley's allegations that he had been "'thrown to the ground' by actions that 'greatly exceeded the amount of force that was necessary'" were enough to "defeat a motion to dismiss the assault and battery claims in the amended complaint." *Oakley v. Dolan*, 980 F.3d 279, 283 (2d Cir. 2020) (quoting Am. Compl. ¶ 47).  The Court emphasized, however, that the only question remaining in the case was whether "the security guards used excessive force in *accomplishing* the removal." *Id.* (emphasis added).  Indeed, the Second Circuit expressly rejected Oakley's contention that "the act of removal was unreasonable" as "incorrect," making clear that MSG had an absolute legal right to remove Oakley from its property.  *See id.*

When the Second Circuit issued its mandate on December 7, 2020, Dkt. No. 74, Defendants filed a pre-motion letter seeking permission to file a motion for summary judgment, Dkt. No. 75.  This Court held a pre-motion conference on December 22, 2020, at which Defendants explained the basis for their anticipated motion for summary judgment and played key excerpts from the video evidence on which they planned to rely.  *See* Dkt. No. 93.  During that pre-motion conference, this Court—like the Second Circuit—emphasized that "the owner can remove anybody, any licensee, from the arena," and that "the focus" of the litigation "has got to be on the force" and not the "reasons" behind the force.  *See id.* at 35–37.  The Court authorized Defendants to proceed with their motion for summary judgment on the lone remaining question of whether the force used to effectuate Oakley's removal was objectively unreasonable.

## LEGAL STANDARD

Summary judgment must be granted if "no genuine dispute as to any material fact" exists and "the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Once the moving party demonstrates the absence of a genuine issue of material fact, the burden shifts to the

party opposing summary judgment to set forth specific facts showing that there is a genuine issue

for trial.  *See Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009).  "Only disputes over facts that

might affect the outcome of the suit under the governing law" can preclude entry of summary

judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Summary judgment may be granted "at any time," Fed. R. Civ. P. 56(b), and "[t]here is no

general right to discovery prior to the entry of summary judgment," *Ali v. City of New York*, 2012

WL 3958154, at *3 & n.10 (S.D.N.Y. Sept. 5, 2012) (Kaplan, J.) (collecting cases).  Summary

judgment is "appropriate prior to discovery" where the non-moving party "fails to produce any

specific, legally-relevant facts" that create a genuine dispute of material fact.  *W.P. Carey, Inc. v.*

*Bigler*, 2019 WL 1382898, at *12 (S.D.N.Y. Mar. 27, 2019) (Failla, J.); *accord Contemporary*

*Mission, Inc. v. U.S. Postal Serv.*, 648 F.2d 97, 107 (2d Cir. 1981).

## <u>ARGUMENT</u>

### I.     The Sole Remaining Issue In Oakley's Assault And Battery Claim Is Whether Objectively Unreasonable Force Was Used To Remove Oakley From MSG.

Under settled New York law, property owners, including the owners of sports arenas, have

the right to remove individuals from their property for any reason.  *See Impasto v. Hellman Enters.,*

*Inc.*, 147 A.D.2d 788, 789 (3d Dep't 1989) ("[A] ticket to a place of public amusement is merely

a license which is revocable, without cause, at the will of the proprietor."); *see also, e.g.*, *Madden*

*v. Queens Cty. Jockey Club, Inc.*, 296 N.Y. 249, 253 (1947).  New York law is also clear that if a

licensee refuses to leave, the property owner "ha[s] the right to use reasonable force to eject [the

licensee]." *Noonan v. Luther*, 206 N.Y. 105, 108 (1912); *accord, e.g.*, *Mitchell v. N.Y. Univ.*, 2014

WL 123255, at *1 (N.Y. Sup. Ct. N.Y. Cty. Jan. 8, 2014) (holding that private university "ha[d]

the right to use reasonable force to eject [plaintiff] from its premises"), *aff'd*, 129 A.D.3d 542 (1st

Dep't 2015); *McGovern v. Weis*, 265 A.D. 367, 370 (4th Dep't 1943); *Hill v. Greeley Square Hotel*

*Co.*, 175 A.D. 421, 422–23 (1st Dep't 1916).   In light of these precedents, the Second Circuit expressly rejected Oakley's contention that "the *act* of [his] removal [from MSG] was unreasonable."   *Oakley*, 980 F.3d at 283 (emphasis added).   Oakley is therefore "foreclose[d]" from "relitigat[ing]" issues relating to the act of his removal, *United States v. Basciano*, 465 F. App'x 9, 13 (2d Cir. 2012), and questions regarding whether the Defendants had the right to remove him, or what precipitated his removal, do not create a factual dispute sufficient to defeat summary judgment.

The *only* legal issue that remains following the Second Circuit's decision is whether "the security guards used excessive force in *accomplishing* the removal" of Oakley.   *Oakley*, 980 F.3d at 283 (emphasis added).   The video evidence in the record—and Oakley's own allegations— establish that Oakley refused to leave MSG when directed to do so, and that Defendants were thus entitled to use reasonable force to remove him.[5]   In order to prevail on his assault and battery claim, Oakley must prove that the physical force used to effectuate his removal was "objectively unreasonable."   *Feaster v. City of Middletown*, 2016 WL 10570984, at *3 (S.D.N.Y. Nov. 28, 2016) (Smith, M.J.) (explaining that Fourth Amendment excessive force claims and "assault and battery claims under New York law" are evaluated on the "same standard" and require plaintiff to demonstrate "that the amount of force used was objectively unreasonable"); *accord, e.g.*, *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 573 (2d Cir. 1996).

---

[5]   Oakley concedes that MSG security guards approached him and instructed him "to leave the arena"—and that he refused to comply—before they ever touched him or attempted to physically remove him.   Am. Compl. ¶¶ 34–40; ¶¶ 5–11.   Instead of leaving MSG as directed, Oakley "asked . . . [the] guards why he was being forced to leave" and then "turn[ed] around and . . . return[ed] to his seat."   Am. Compl. ¶¶ 35–40; ¶ 6.   Oakley thus refused to comply with the MSG security officers' lawful directive that he leave, entitling the officers to use force to effectuate his removal.   Nevertheless, no force was used at all until after Oakley first assaulted MSG security personnel and continued to refuse additional requests to "please walk."   *See* ¶¶ 23, 25.

II.     **The Uncontroverted Video Evidence Establishes That Defendants Did Not Use Objectively Unreasonable Force In Removing Oakley, And That Oakley's Allegations To The Contrary Are Obvious Lies.**

The uncontroverted video evidence in the record demonstrates that the Defendants, working in conjunction with NYPD officers, did not use objectively unreasonable force in removing Oakley from MSG, and utterly discredits Oakley's allegations to the contrary, including his claim that he was thrown to the ground twice.  There are therefore no truthful allegations in the Amended Complaint that could even begin to support Oakley's burden of proof.  *See, e.g.*, *Ryan v. City of New York*, 2018 WL 3364580, at *1 (N.Y. Sup. Ct. N.Y. Cty. July 5, 2018) (dismissing assault and battery claims where "plaintiff fail[ed] to demonstrate the force allegedly used" by hospital's employees in removing him from hospital property "was excessive"); *Mitchell*, 2014 WL 123255, at *1 (dismissing assault and battery claims where private university's security officers "use[d] reasonable force to eject [plaintiff] from its premises").

A.     **This Court Must Credit Incontrovertible Video Evidence Disproving Oakley's Allegations.**

Where, as here, a party moves for summary judgment based on video of the events in question, the Court must "view the facts in the light depicted by the videotape." *Pizarro v. Bd. of Correction*, 2018 WL 3462512, at *2 (S.D.N.Y. July 17, 2018) (Sullivan, J.) (alterations omitted). This mandate stems from *Scott v. Harris*, 550 U.S. 372 (2007), in which the Supreme Court reversed the denial of summary judgment on excessive force claims on the grounds that a "videotape capturing the events in question" "utterly discredited" the non-moving party's version of events.  *Id.* at 378–81.  The Supreme Court held that where the non-moving party's "version of the facts" is "blatantly contradicted" by video evidence in the record, such that "no reasonable jury could believe it," the facts should be viewed "in the light depicted by the videotape" and summary judgment is required.  *Id.* at 380–81.

Following *Scott*, courts in this Circuit have repeatedly granted summary judgment where "reliable objective evidence," such as video evidence, disproves the plaintiff's version of events—including in cases asserting unreasonable or excessive force.  *Marcavage*, 689 F.3d at 110; *see also, e.g.*, *Kalfus*, 476 F. App'x at 880–81; *Berman v. Williams*, 2019 WL 4450810, at *7 (S.D.N.Y. Sept. 17, 2019) (Koeltl, J.) (granting summary judgment where video evidence "undermines the plaintiff's claim that the defendants used excessive force"); *Lin v. City of New York*, 2016 WL 7439362, at *11–12 (S.D.N.Y. Dec. 21, 2016) (Engelmayer, J.) (granting summary judgment where video evidence "refutes" plaintiff's allegations of excessive force).[6]  Further, because objective video evidence "speak[s] for itself" and "dooms" allegations to the contrary, *Marcavage*, 689 F.3d at 110, courts routinely grant summary judgment prior to discovery where there is video evidence that "blatantly contradict[s]" the allegations in the plaintiff's complaint, *Angula v. Brown*, 978 F.3d 942, 950–52 (5th Cir. 2020) (affirming grant of summary judgment on excessive force claims prior to discovery where video evidence "blatantly contradicted" plaintiff's allegations); *see also, e.g.*, *Aldridge v. City of Warran*, 682 F. App'x 461, 463–65 (6th Cir. 2017) (affirming grant of summary judgment on excessive force claims prior to discovery where video offered by defendants "undercut[]" plaintiff's version of events); *Smith v. United States*, 843 F.3d 509, 512–16 (D.C. Cir. 2016) (affirming district court's grant of summary judgment for defendants prior to discovery in light of video and audio recordings that "contradicted [plaintiff's] complaint"); *McCoy v. Ferguson*, 2019 WL 3806008, at *3 (W.D. Va. Aug. 13, 2019) (granting summary judgment prior to discovery because, based on audio-less video evidence, plaintiff

---

[6] The video evidence in this record is indisputably "reliable," *Marcavage*, 689 F.3d at 110, as Oakley's counsel confirmed at the December 22, 2020 pre-motion conference that Oakley does not dispute the authenticity of this evidence.  *See* Dkt. No. 93 at 35:2–5, 13–14.

14

"cannot show the amount of force" Defendants used to subdue the plaintiff "was objectively unreasonable").

The same result should follow here.  The Court must credit the incontrovertible video evidence of Oakley's removal from MSG over the allegations in Oakley's pleading, which "are not 'evidence' that can defeat a motion for summary judgment." *Creighton v. City of New York*, 2017 WL 636415, at *45 n.47 (S.D.N.Y. Feb. 14, 2017) (Gardephe, J.) (quoting *Hernandez v. Coca Cola Refreshments USA, Inc.*, 2013 WL 6388654, at *3 (E.D.N.Y. Dec. 6, 2013)).  This video evidence conclusively disproves Oakley's allegations of objectively unreasonable force, no reasonable jury could believe his version of events, and summary judgment is warranted.[7]

### B.    The Video Evidence Disproves Oakley's Allegations Regarding The Force Used To Effectuate His Removal, and Confirms That Oakley Cannot Prove Objectively Unreasonable Force.

The video evidence here disproves Oakley's allegations that the force used to effectuate his removal was objectively unreasonable, including the two key allegations on which the Second Circuit based its finding that the Amended Complaint raised a potential inference of unreasonable force.

---

[7] Oakley wrongly asserts that "the determination of whether Defendants' force was reasonable" must be resolved by a jury, rather than this Court.  Dkt. No. 82 at 1.  However, Oakley ignores that it is his burden to prove that the force used was not merely unreasonable, but *objectively* unreasonable.  As the precedents cited above make clear, courts in this Circuit have repeatedly granted summary judgment on excessive force and assault and battery claims based on the courts' assessment of "reliable objective evidence," such as video evidence, that "speak[s] for itself" and establishes that the force used was not objectively unreasonable.  *Lin*, 2016 WL 7439362, at *2 & n.3, *11–12; *see also Kalfus*, 476 F. App'x at 880–81 (concluding that video evidence demonstrates that "the amount of force" that officers used "to respond to [plaintiff's] resistance to arrest could not be deemed *objectively* 'unreasonable' by any reasonable jury" (emphasis in original)).

15

### 1. The video evidence disproves that Oakley was thrown to the ground twice, the basis for the Second Circuit's decision.

The Second Circuit identified two specific allegations that it believed could, if proven true, potentially support an inference that Defendants had used unreasonable force to effectuate Oakley's removal: that MSG security guards "grabbed" Oakley and "pushed him to the ground," *Oakley*, 980 F.3d at 283 (quoting Am. Compl. ¶ 42), and that, when Oakley "got back to his feet," he was "grabbed by six officials and thrown onto the ground," *id.* (quoting Am. Compl. ¶¶ 44, 47). The video evidence conclusively demonstrates that both allegations are false.

*First*, the video evidence unequivocally demonstrates, from multiple angles, that Oakley was not "grabbed" or "pushed . . . to the ground." Am. Compl. ¶ 42; *see also id*. ¶ 43 (alleging that Oakley was "forcibly shov[ed] . . . to the ground"). The video evidence plainly reveals that Oakley tripped and fell while attempting to move away from MSG security officers who had asked him to leave. ¶¶ 19–20. Nobody "pushed" Oakley to the ground. Indeed, one security guard actively tried to *prevent* Oakley from falling by attempting to grab and hold Oakley's arm as he began to fall. ¶ 20 & n.7. The video evidence demonstrates that the only other physical contact between MSG security officers and Oakley in the seconds before Oakley's fall was that one security guard non-aggressively placed an open hand on Oakley's back and then a hand on his arm and another security guard briefly placed an open hand on Oakley's torso in a non-aggressive manner. ¶ 18. Neither of these actions restricted Oakley's range of motion or caused him to fall. *Id.*[8]

---

[8] Oakley also alleges that the alleged act of being "forcibl[y] shov[ed] . . . to the ground" occurred "within seconds" of MSG security guards first approaching him. Am Compl. ¶ 43. However, Oakley's fall occurred almost a full minute after MSG security guards first arrived at Oakley's seat. ¶ 21 & n.8.

*Second*, the video also reveals that Oakley was not later grabbed by six officials and "thrown onto the ground" for a second time. *Contra* Am. Compl. ¶¶ 44, 47. Oakley fell entirely on his own. Specifically, in the course of being led out of MSG, on his feet, by an NYPD officer and MSG security guards, Oakley attempted to turn himself around to face the opposite direction from the exit to which he was being led. ¶ 47. This misguided effort to spin against his direction of motion caused Oakley to fall. ¶¶ 49–50. That Oakley fell for a second time was entirely his fault—certainly none of the MSG security guards "thr[e]w" him to the ground. Indicative of the fact that Oakley fell instead of being "thrown to the ground" is the fact that the NYPD officer helping to lead Oakley out of the arena stumbled and nearly fell to the ground himself in the wake of Oakley's fall. ¶ 50 & n.13.

The Second Circuit's opinion leaves no room for doubt: the allegations that Oakley was twice "thrown onto the ground" by MSG security guards were the only allegations that the appellate court found could potentially support "the reasonable inference . . . that [Oakley] ha[d] been subjected to an unreasonable amount of force." *Oakley*, 980 F.3d at 283. It follows that, with such allegations definitively rebutted and disproven by the video evidence, Oakley cannot carry his burden of proving unreasonable force under the framework laid out by the Second Circuit.

### 2. The video evidence disproves Oakley's additional allegations regarding the force used to effectuate his removal.

Far beyond simply disproving the allegations that Oakley was thrown to the ground twice, the video evidence belies *all* of the key allegations relevant to Oakley's assault and battery claim, leaving Oakley without *any* basis for his cause of action. As a preliminary matter, the video evidence discredits Oakley's allegations regarding the pre-removal dynamic between Oakley and the MSG security guards. The three MSG security guards who initially approached Oakley were not "three large men"—at least not as compared to Oakley, who towered over them, ¶¶ 8–9 &

17

n.6—and were accompanied by a uniformed NYPD officer, ¶ 7.  Nor did the MSG security guards

"loudly" demand that Oakley leave while Oakley simply "request[ed] an explanation."  *Contra*

Am. Compl. ¶¶ 44, 45.  The video evidence shows that Oakley repeatedly screamed profanities at

the MSG security guards, the NYPD officer, and the crowd, including "that's some bullsh*t," "get

the f**k out of my face," and "I said it to your motherf**king face, motherf**ker!"  ¶¶ 22, 24, 26–

28, 30, 32 & nn.9–10.  On the other hand, only *one* MSG security guard can be heard following

Oakley's fall, and only to ask Oakley to "please walk," at a significantly lower volume than

Oakley's shouts of profanities.  ¶ 24 & n.9.

Oakley further alleges that MSG security guards "escalated the confrontation by physically

grabbing Mr. Oakley to forcibly compel him to leave," forcing Oakley to resort to "self-defense."

Am. Compl. ¶¶ 45, 46.  However, the video evidence makes clear that it was Oakley who

physically, verbally, and aggressively escalated the situation.  After repeatedly telling an MSG

security guard, unprovoked, to "get the f**k out of my face" and refusing to let that security guard

walk away, ¶¶ 28–30, Oakley stuck a finger in the guard's face, ¶ 30.  When the guard tried to

back away, Oakley reacted by intentionally bumping the guard in the chest and calling him a

"motherf**ker."  ¶ 32.  Oakley then struck the guard in the forehead with his finger with enough

force to propel the guard's head backward—an action that can in no way be characterized as "self-

defense."  ¶¶ 33–35, 39 & nn.11–12.  Oakley then assaulted a second MSG security guard—who

at most had non-aggressively placed one hand on Oakley's arm and back—by chopping down on

his arm and then twice pushing him into a row of seats.  ¶¶ 36–39 & n.12.  Oakley was not

"grabbed" prior to Oakley's assault on MSG security, nor can Oakley's second assault on security

be characterized as self-defense.  ¶¶ 35, 39 & nn.11–12.

Finally, Oakley alleges that, after his second fall, MSG security guards "refused Mr. Oakley's repeated requests that he be allowed to stand up," "put [him] into restraints," and "roughly threw him out of the Garden." Am. Compl. ¶¶ 48, 49. None of this is true. After Oakley fell, multiple individuals asked Oakley to "get up" and "stand up," ¶ 53, but Oakley refused: he remained on the ground for approximately 80 seconds, explicitly stating at one point "I don't want to stand up," ¶ 51, and while on the ground, telling the two surrounding NYPD officers to "take me to jail," ¶¶ 54–57 & n.14. The video evidence also makes clear that it was an NYPD officer— not an MSG employee—who affixed a handcuff to Oakley's right wrist as Oakley finally returned to his feet (to which Oakley responded by attempting to strike that NYPD officer). ¶¶ 59–60 & n.15. And when Oakley was finally led out of the arena—after having physically latched onto a railing to resist his removal—it was not in a "rough" manner, but merely involved two NYPD officers and three MSG security guards holding Oakley at the arms and torso and walking him out. ¶¶ 63–69 & n.16.

* * * * *

In short, the video evidence "utterly discredit[s]" Oakley's allegations of unreasonable force. *Scott*, 550 U.S. at 380. Oakley's counsel's concession that they have had this video evidence since *before* filing the Amended Complaint makes it all the more inexplicable how they could have filed this pleading with such demonstrably false allegations. In light of this conclusive video evidence, "no reasonable jury could believe" Oakley's version of events, "there remain no genuine issues of material fact," and summary judgment is warranted. *Pizarro*, 2018 WL 3462512, at *2–4 (granting summary judgment based on video evidence that contradicted plaintiff's excessive force claims); *see also, e.g.*, *Kalfus*, 476 F. App'x at 880–81 (affirming grant of summary judgment where "hospital security video" and "audio recording" "belie" plaintiff's claim that

19

excessive force was used); *Merring v. Town of Tuxedo*, 2009 WL 849752, at *10 (S.D.N.Y. Mar. 31, 2009) (Seibel, J.) (granting summary judgment where "no reasonable jury could believe Plaintiff's version of events" in light of video evidence).

### 3. The video evidence documents additional, key facts that confirm Oakley cannot carry his burden of proving objectively unreasonable force.

In addition to belying each of Oakley's allegations concerning the force used to effectuate his removal, the video evidence documents additional key facts, excluded from Oakley's Amended Complaint. These additional facts make clear that Oakley cannot, under any circumstance, meet his burden of showing that Defendants used "objectively unreasonable" force in removing him from MSG. *See Lowth*, 82 F.3d at 573; *Feaster*, 2016 WL 10570984, at *3.

Specifically, the video evidence shows that, before the MSG security guards used *any* force to remove Oakley,[9] Oakley refused to comply with multiple requests to leave the arena and repeatedly assaulted MSG security guards:

- Oakley refused a lawful request to leave MSG, ¶¶ 5–6;

- Oakley rose out of his seat and lunged at an MSG security guard, ¶ 10;

- Oakley violently extended his right arm in the direction of an MSG security guard, ¶ 13;

- Oakley extended his arm at the neck of a different MSG security guard who attempted to separate Oakley from the MSG security guard at whom Oakley had lunged, causing the head of the second MSG security guard to snap backwards, ¶¶ 14–15;

- Oakley refused a request to "please walk," ¶¶ 23–25;

---

[9] At certain points, MSG security guards non-aggressively placed hands on Oakley's back or arm. *See, e.g.*, ¶¶ 18, 35–36. Oakley was also briefly restrained when he attempted to strike an MSG security guard. ¶¶ 14, 16. Neither action can be considered a meaningful use of force, much less an unreasonable use of force sufficient to support a cause of action for assault or battery.

- Oakley screamed profanities at an NYPD officer, MSG security guards, and the crowd, ¶¶ 22, 24, 26;

- Oakley told an MSG security guard to "get the f**k out of my face," and called that security guard a "motherf**ker," ¶¶ 28, 30, 32;

- Oakley struck that MSG security guard in the forehead, ¶¶ 33–34;

- Oakley chopped down on the arm of a different MSG security guard while screaming "get off of me," ¶ 37; and

- Oakley twice shoved that MSG security guard into a row of seats, ¶ 38.

The MSG security guards showed remarkable restraint throughout this period, and urged the NYPD officer—who was front and center during all of this violent conduct—to "do something" before any physical action was taken with the assistance of the NYPD. ¶¶ 39–40.

Additionally, the video demonstrates that when the MSG security guards were ultimately compelled to use force to effectuate Oakley's removal, the force that they used was not objectively unreasonable. To restrain Oakley after he assaulted multiple MSG security guards and remove him from the seating area, three MSG security guards held Oakley by the arms and torso and walked him toward the exit. ¶¶ 41–44. Notably, a uniformed NYPD officer assisted in restraining and removing Oakley, walking with the group until Oakley turned himself around and fell to the floor. ¶¶ 42–43, 46–49. And after Oakley finally returned to his feet, the MSG security guards—now assisted by *two* uniformed NYPD officers—continued to use minimal force to effectuate Oakley's removal, holding Oakley by the arms and torso and walking him out of the arena. ¶¶ 56, 62. That Oakley had, by this point, assaulted multiple MSG security guards, refused requests that he return to his feet for over a minute, and physically resisted his removal by grabbing onto a railing with both hands, underscores that the MSG security guards and NYPD officers *had* to use some force to effectuate Oakley's removal. *See* ¶¶ 53–55, 63. And revealingly, the force that was used to effectuate Oakley's removal resulted in zero physical injuries to Oakley.

Under these circumstances, the minimal force used to remove Oakley cannot be proven to be objectively unreasonable.  Courts have repeatedly dismissed assault and battery claims and excessive force claims on the grounds that physically restraining and escorting the plaintiff off the premises is not objectively unreasonable.  For example, in *Duna*, 2019 WL 4735354 (S.D.N.Y. Sept. 27, 2019) (Schofield, J.), police officers "forcibly" removed the plaintiff from a subway turnstile by "twist[ing] Plaintiff's arm" and "pushing him through the turnstile."  *Id.* at *4–5.  The court dismissed the plaintiff's excessive force claim, noting that the plaintiff had refused the officers' requests to "leave the turnstile," and concluded that the force the officers used to remove him was "not unreasonable under the circumstances."  *Id.*; *see also, e.g.*, *Ryan*, 2018 WL 3364580, at *1 (dismissing assault and battery claims brought by a plaintiff who was trespassing on hospital's property because "plaintiff fail[ed] to demonstrate the force allegedly used" by hospital's employees in removing him "was excessive"); *Bartlett v. City of New York*, 2005 WL 887112, at *8–9 (E.D.N.Y. Feb. 11, 2005) (dismissing excessive force claim and concluding that officers did not use objectively unreasonable force when they "grabbed [plaintiff's] wrist and twisted her arm behind her back"); *Schaeffer v. Cavallero*, 54 F. Supp. 2d 350, 352 (S.D.N.Y. 1999) (Rakoff, J.) (dismissing battery claim where plaintiff refused to leave airplane as directed and was "escort[ed] . . . from the airplane").  These cases are squarely on point as the security guards and police officers in these precedents used similar—*or even greater*—force as Defendants used to restrain Oakley and escort him out of the arena, thus confirming that Oakley cannot meet his burden of proving objectively unreasonable force.

The video evidence also demonstrates that uniformed NYPD officers participated throughout the incident and assisted the MSG security guards in removing Oakley from the arena—another key fact omitted from Oakley's pleading that undercuts his claim of unreasonable

force.  Indeed, the videos show that the MSG security guards worked with and deferred to the NYPD officers in effectuating Oakley's removal, with a security guard pleading to an NYPD officer to "do something" as Oakley assaulted another guard.  ¶ 40.  When the MSG security guards were ultimately compelled to use force, they worked in concert with two NYPD officers to restrain Oakley and escort him out of the arena.  ¶¶ 42–69.  And as Oakley resisted removal, one of the NYPD officers handcuffed Oakley's right wrist while he was still on the arena floor.  ¶ 59.  Oakley's pleading omits any mention of the presence and involvement of the NYPD officers in removing him from the arena, creating the false impression that the NYPD only became involved *after* Oakley was removed from MSG.  The Second Circuit—which, on a motion to dismiss, accepted Oakley's allegations as true—distinguished cases finding no unreasonable force where police officers were in the process of "handcuffing a person being arrested," noting that in such cases "[t]he force reasonably needed" is evaluated in light of "circumstances that are tense, uncertain, and rapidly evolving."  *Oakley*, 980 F.3d at 283–84.  But the video evidence confirms that Oakley's removal was, in fact, a police intervention, as NYPD officers were working in tandem with MSG security at all times and an NYPD officer handcuffed Oakley's wrist in the process of effectuating his removal.  The force used must be evaluated against this backdrop—and in light of these "tense, uncertain and rapidly evolving" circumstances—making excessive force cases involving police officers directly comparable and dooming Oakley's claim that MSG security guards used objectively unreasonable force.[10]

---

[10]  In addition to excessive force cases involving police officers, the precedents cited above involving private security guards are also directly on point and further support the dismissal of Oakley's assault and battery claims.  *See Ryan*, 2018 WL 3364580, at *1 (dismissing assault and battery claims where "plaintiff was trespassing on [New York Presbyterian Hospital]'s property" and the hospital's security guards "use[d] such force as [was] necessary to eject him"); *Mitchell*, 2014 WL 123255, at *1 (dismissing assault and battery claims where

The objective reasonableness of the minimal amount of force used to remove Oakley is further underscored by the fact that Oakley physically resisted removal and repeatedly engaged in physically aggressive behavior—and assaulted several security guards.  In dismissing assault and battery and excessive force claims, courts have repeatedly held that it is "objectively reasonable" to use force to restrain a plaintiff who has resisted or exhibited violent behavior.  *Franks v. City of New York*, 2017 WL 1194500, at *3 (E.D.N.Y. Mar. 31, 2017).  For instance, in *Kalfus v. N.Y. & Presbyterian Hosp.*, 706 F. Supp. 2d 458 (S.D.N.Y. 2010) (Batts, J.), *aff'd*, 476 F. App'x 877 (2d Cir. 2012), in the course of arresting the plaintiff and removing him from the premises, a hospital's special patrolmen grabbed the plaintiff's right arm, "turn[ed] him counterclockwise," pulled his arms behind his back, and "appl[ied] pressure to the back of his knee" to effect his arrest.  *Id.* at 472–73.  The Court concluded that the special patrolmen used "only objectively reasonable force" in light of the fact that the plaintiff was "clearly resisting arrest throughout the entire time that physical force was used."  *Id.* at 473.  Similarly, in *Willis v. City of New York*, 2004 WL 555685 (S.D.N.Y. Mar. 19, 2004) (Lynch, J.), officers removed the plaintiff from a restricted area of the subway by "grabb[ing] [his] shoulder and le[ading] [him] up the stairs."  *Id.* at *3 (alterations in original).  The court reasoned that since the plaintiff "refused to comply" with a request to leave and "remained argumentative and hostile throughout the incident," the officers did not use "objectively unreasonable" force.  *Id.* at *2–3; *see also, e.g.*, *Franks*, 2017 WL 1194500, at *3–4 (concluding that "it was objectively reasonable for defendants to exercise force to restrain

---

university's security officers "forcefully removed [plaintiff] from class and then the building" (alteration in original)).

plaintiff" where "plaintiff not only resisted arrest, but exhibited violent behavior towards the police officers who were attempting to restrain him").[11]

In sum, "the video makes clear that the force used to restrain" and remove Oakley cannot be shown to be "objectively unreasonable."  *See Dobbins v. Ponte*, 2017 WL 3309726, at *5 (S.D.N.Y. Aug. 2, 2017) (Furman, J.) (granting summary judgment on excessive force claim based on video evidence).  Any physical contact that MSG security guards had with Oakley was privileged, reasonable, and not actionable as a matter of law.  Oakley's assault and battery claim thus fails, and summary judgment is warranted.

## CONCLUSION

For these reasons, Defendants respectfully request that this Court grant their motion for summary judgment.

Dated:  New York, New York
        January 22, 2021

GIBSON, DUNN & CRUTCHER LLP

By: *Randy M. Mastro*
    Randy M. Mastro

---

[11]  Contrary to Oakley's contentions, "what precipitated [his] removal" from MSG is not relevant in determining whether the amount of force used to remove him was objectively reasonable. Dkt. No. 82 at 2.  New York law is clear that property owners are entitled to remove licensees from their property for any reason, *see Impasto*, 147 A.D.2d at 789, and the back of Oakley's ticket—like all tickets for Knicks games at MSG—explicitly states that the ticket is a "license revocable in MSG's sole discretion," ¶ 4 & n.4.  When Oakley refused to comply with the Defendants' lawful directive to leave the arena, ¶ 6, he became a trespasser and the Defendants were permitted to use "reasonable force" to remove him, *Noonan*, 206 N.Y. at 108; *Mitchell*, 2014 WL 123255, at *1.  Further, as the video evidence plainly demonstrates, Oakley physically resisted removal, including by striking and using force against the MSG security guards.  These facts alone—which are documented in multiple videos of the incident—are sufficient to demonstrate that the minimal force used to effectuate Oakley's removal was not "objectively unreasonable."  Therefore, any factual issues concerning Oakley's behavior before his removal, which was highly inappropriate, are irrelevant to the limited question before the Court concerning whether the Defendants "used excessive force in accomplishing [his] removal," *Oakley*, 980 F.3d at 283, and cannot "affect the outcome of" Oakley's assault and battery claims, *Anderson*, 477 U.S. at 248.

Akiva Shapiro
Declan T. Conroy
Grace E. Hart
200 Park Avenue
New York, NY  10166-0193
Telephone:  212.351.4000
rmastro@gibsondunn.com
ashapiro@gibsondunn.com
dconroy@gibsondunn.com
ghart@gibsondunn.com

*Attorneys for Defendants*