UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

No. 17-cv-6903 (RJS)

---

CHARLES OAKLEY,

*Plaintiff*,

v.

MSG NETWORKS, *ET AL.*,

*Defendants*.

---

OPINION AND ORDER
November 8, 2021

---

RICHARD J. SULLIVAN, Circuit Judge:

After being forcibly removed from a Knicks basketball game at Madison Square Garden in February 2017, Plaintiff Charles Oakley brought a litany of claims against Defendants MSG Networks, Inc.; the Madison Square Garden Company; MSG Sports and Entertainment, LLC (collectively, "MSG"); and James Dolan, the executive chairman of MSG. On February 19, 2020, the Court granted Defendants' motion to dismiss each of Oakley's claims. The Second Circuit subsequently affirmed the Court's decision in all respects but one.

Following the Second Circuit's remand, Oakley's sole remaining claim is that MSG is liable for assault and battery because MSG security guards used excessive force to remove Oakley from the stadium. Extensive video footage documents the altercation, and MSG moves for summary judgment on that basis, arguing that the footage conclusively shows its employees did not use excessive force. For his part, Oakley seeks leave to file a second amended complaint adding James Dolan as an individual defendant on the remaining claims.

For the following reasons, Defendants' motion for summary judgment is GRANTED, and Oakley's motion to amend is DENIED.

I. BACKGROUND

A. Facts

Charles Oakley, a former star power forward for the New York Knicks, attended a Knicks game at Madison Square Garden

(the "Garden") on February 8, 2017.[1] (Doc. No. 120 ¶ 80.) During the game, Oakley was approached by MSG security guards and New York City Police Department ("NYPD") officers, who physically removed him from the arena, purportedly because of his inappropriate behavior. (Doc. No. 111 ¶ 146.) After the incident, the Knicks organization and owner James Dolan made public statements claiming that Oakley was expelled for being drunk and verbally abusive to fans and stadium staff. (*Id.* ¶¶ 145–46.) Oakley denied that he behaved inappropriately. (*Id.* ¶ 147.)

Oakley's removal was captured on video by ESPN, the Garden's stadium cameras, and nearby attendees in the audience. (Doc. No. 104, Exs. 1–5.) Low-resolution, silent security footage shows the beginning of the incident: eight security personnel assemble in the row where Oakley is seated. (Doc. No. 104, Ex. 2b (hereinafter *Stadium Vid.*) 7:44–8:01.) The parties agree that one of the guards requested that Oakley leave the building (Doc. No. 120 ¶ 117), and the footage shows the guard and Oakley conversing for several seconds before Oakley stands up. (*Stadium Vid.*, 8:01–8:16.)

Surrounding fans, presumably sensing something amiss from the presence of security, also filmed the altercation. One of those fans made a high-resolution phone recording, which included audio, from a distance of roughly 10 yards away. (Doc. No. 104, Ex. 4 (hereinafter *Fan Vid.*), available as submitted by Defendants at https://nysd.uscourts.gov/sites/default/files/2021-11/4. YouTube - Charles Oakley Fight Meltdown NY Knicks Whole 3 minute video.mp4.) The fan recording begins about 30 seconds after Oakley is initially approached. (*Compare Fan Vid.*, 0:00, *with Stadium Vid.*, 8:18.)

As the fan recording begins, Oakley is standing, surrounded by security personnel. One MSG guard ("Guard 1") is grasping Oakley's left bicep, trying to pull him toward the exit aisle; another ("Guard 2") lightly places his open hand, alternately, on Oakley's upper back and Oakley's torso. (*Fan Vid.*, 0:08–0:12.) Oakley remains able to turn freely and walk. Oakley then shrugs off Guard 2 and turns toward his seat, but trips and falls to the ground, pulling Guard 1 (still grasping Oakley's bicep) forward. (*Fan Vid.*, 0:13–0:14.) Within seconds, Oakley rises without assistance. (*Fan Vid.*, 0:15–0:22.)

After getting up, Oakley again attempts to move back toward his seat, but is obstructed by the guards. Guard 1 has positioned himself between Oakley and the seat. With an open hand on Oakley's upper arm, Guard 1 motions toward the exit aisle. (*Fan Vid.*, 0:25–0:29.) Oakley puts both hands in the air, and Guard 1 immediately removes his hand from Oakley's arm. (*Fan Vid.*, 0:29.) Guard 2, still stationed behind Oakley, places an open hand on Oakley's torso. (*Fan Vid.*, 0:40.)

---

[1] The following facts are taken from the Rule 56.1 Statements filed by Defendants (Doc. No. 105) and Oakley (Doc. No. 111), as well as Defendants' Counterstatement to Oakley's submission (Doc. No. 120). The Court also relies on the video exhibits appended to defense counsel's Declaration in Support of Defendants' Motion for Summary Judgment (Doc. No. 104), which contain footage captured by the Garden's security cameras, ESPN, and audience members who attended the Knicks game. The Court has also considered the parties' briefs in support of and in opposition to Defendants' Motion for Summary Judgment (Doc. Nos. 103, 110, 118) and Oakley's Motion for Leave to File a Second Amended Complaint (Doc. Nos. 107, 109, 117).

2

Oakley then escalates the physical confrontation: he steps toward Guard 1 with a finger in the guard's face (*Fan Vid.*, 0:41), chest-bumps him (*Fan Vid.*, 0:42), and then appears to push Guard 1's face with his hand, causing Guard 1's head to snap backward. (*Fan Vid.*, 0:49.) In response, Guard 2 grasps Oakley's upper bicep and attempts to pull him backward. (*Fan Vid.*, 0:49–0:51.) Oakley turns, chops downward on the arm holding his bicep, and then twice forcefully shoves Guard 2, causing the guard to stumble back several paces and prompting nearby fans to gasp. (*Fan Vid.*, 0:53–0:58.) At this point, several other security personnel finally step in and grab both of Oakley's arms. (*Fan Vid.*, 0:59–1:01.) The group hoists, pushes, and pulls Oakley toward the exit aisle, with Oakley initially remaining on his feet amidst the huddle of security personnel. (*Fan Vid.*, 1:01–1:06.)

After being guided several yards and onto the exit ramp, Oakley again falls – despite at least one guard's effort to keep him upright – this time in the aisle below the railing where the fan videographer is standing. (*Fan Vid.*, 1:10.) From an angle directly above the scene, the video shows security personnel crowd around Oakley and repeatedly tell him to "get up" and "stand up." (*Fan Vid.*, 1:15–1:35.) Several security personnel try to grab Oakley's wrists to pull him up, but he retracts his arms against his body to resist their efforts. (*Fan Vid.*, 1:15–1:40.) At one point, Oakley audibly states, "I don't want to stand up." (*Fan Vid.*, 1:34.) While lying in the aisle, Oakley protests to the guards that he did not do anything wrong; he also rebuffs their efforts to help him up, repeating several times, "I don't need no help." (*Fan Vid.*, 2:22–2:27.) After more than 75 seconds on the ground, Oakley eventually pulls himself up using the stadium railing. (*Fan Vid.*, 2:31.) But he then refuses to accompany the guards toward the exit and continues to clasp the railing with both hands to maintain his position. After approximately 20 seconds, during which an NYPD officer twice pries Oakley's hands from the railing (*Fan Vid.*, 2:47–2:59), he is finally ushered out of the stadium.

B. Procedural History

1. District Court

On September 12, 2017, Oakley filed a complaint asserting defamation, slander, abuse of process, and denial of public accommodation claims against both Dolan and MSG. (Doc. No. 1 ¶¶ 77–83, 89–93, 104–20.) This original complaint also asserted assault and battery claims against MSG alone, alleging that stadium guards used physical force without Oakley's consent to eject him from the premises. (*Id.* ¶¶ 94–99.)

On February 9, 2018, Oakley filed an amended complaint (Doc. No. 36), which left unchanged most allegations relating to assault and battery but inserted additional details that alleged the guards used excessive force in removing him. (*Id.*) The Court stayed discovery pending resolution of Defendants' motion to dismiss, which was filed on March 30, 2018. (Doc. No. 41.)

On February 19, 2020, the Court issued an opinion and order granting Defendants' motion to dismiss all of Oakley's claims. *See Oakley v. Dolan*, No. 17-cv-6903 (RJS), 2020 WL 818920, at *1 (S.D.N.Y. Feb. 19, 2020). Regarding Oakley's assault and battery claims, the Court held that "[t]he law is clear that the MSG Defendants had the right to expel Oakley from the Garden and that his refusal to leave justified their use of reasonable force to remove him. . . ." *Id.* at *13. The Court explained that the only issue

3

with respect to assault and battery was "whether Defendants used unnecessary force or intended to injure [Oakley]." *Id.* Presuming the truth of Oakley's allegations, as required at that stage of the proceedings, *Ferran v. Town of Nassau*, 11 F.3d 21, 22 (2d Cir. 1993), and without consulting extrinsic evidence such as the videos, the Court nevertheless held that Oakley's allegations of excessive force were conclusory and did not support a plausible inference of unnecessary force or injurious intent. *Oakley*, 2020 WL 818920, at *13–14. In the same opinion and order, the Court also denied Oakley leave to amend his complaint for a second time, as he "offer[ed] no basis for his request[,] . . . nor [did] he attach a proposed amended complaint." *Id.* at *16.

2. On Appeal

Oakley timely appealed. (Doc. No. 70.) In an opinion and a separate summary order, the Second Circuit affirmed this Court's decision in all respects except for its dismissal of Oakley's assault and battery claims. *See Oakley v. Dolan*, 980 F.3d 279, 280 (2d Cir. 2020); *Oakley v. Dolan*, 833 F. App'x 896, 898 (2d Cir. 2020).

With respect to those claims, the Second Circuit concluded that the *act* of Oakley's removal was not itself unreasonable, but held that Oakley's claim that "security guards used excessive force in *accomplishing* the removal" was sufficient, on its face, to survive dismissal. *Id.* at 283 (emphasis added). The Second Circuit emphasized those portions of Oakley's amended complaint "that allege[d] that he was 'thrown to the ground' by actions that 'greatly exceeded the amount of force that was necessary' and 'clearly exceeded the bounds of reasonable behavior,' and that he 'has suffered and continues to suffer harm[.]'" *Id*.

Moreover, the Second Circuit noted that, "[b]ecause of its intensely factual nature, the question of whether the use of force was reasonable under the circumstances is generally best left for a jury to decide," *id*. at 284 (quoting *Holland v. City of Poughkeepsie*, 935 N.Y.S.2d 583, 588 (2d Dep't 2011)), and that "[e]ven in the arrest context, the reasonableness of the force used is often a jury question," *id.* (citing *Hernandez v. Denny's Corp.*, 114 N.Y.S.3d 147, 152 (4th Dep't 2019)).

The Second Circuit remanded the case to this Court for further proceedings on the assault and battery claim.

3. On Remand

On December 7, 2020, Defendants submitted a letter indicating that they would move for summary judgment based solely on the video footage documenting Oakley's removal from the Garden. (Doc. No. 75.) On December 11, 2020, Oakley submitted a letter that again requested leave to file a second amended complaint. (Doc. No. 83.) The Court held a pre-motion conference on December 22, 2020, addressing both anticipated motions.

On January 22, 2021, Defendants filed their motion for summary judgment (Doc. No. 102), and Oakley filed his motion for leave to file a second amended complaint. (Doc. No. 106.) The motions were fully briefed on March 9, 2021.

II. MOTION FOR SUMMARY JUDGMENT

A. Legal Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Only "disputes over facts that

might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"[C]hoices between conflicting versions of the [facts] are matters for the jury, not for the court on summary judgment." *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996). The factual dispute, however, must be "*genuine*." Fed. R. Civ. P. 56(a) (emphasis added). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). In particular, "when there is reliable objective evidence – such as a recording – the evidence may speak for itself." *Marcavage v. City of New York*, 689 F.3d 98, 110 (2d Cir. 2012); *see also id.* (holding that an audio recording "indisputably" refuted the plaintiffs' contention that "their behavior toward the [arresting] officers [was] cordial[] and . . . compliant," which supported granting summary judgment in favor of the defendant officers on the plaintiffs' Fourth Amendment claim).

### B. Scope of the Issue

The sole issue to adjudicate in Oakley's remaining assault and battery claims is whether "the security guards used excessive force in accomplishing [Oakley's] removal." *Oakley*, 980 F.3d at 283. The rationale for removing Oakley is not at issue; under New York state law, property owners have the right to remove licensees, such as ticketholders like Oakley, from their property for any reason or no reason at all. *See, e.g.*, *Impastato v. Hellman Enters., Inc.*, 537 N.Y.S.2d 659, 661 (3d Dep't 1989) ("[A] ticket to a place of public amusement is merely a license which is revocable, without cause, at the will of the proprietor."); *see also Madden v. Queens Cnty. Jockey Club, Inc.*, 296 N.Y. 249, 253 (1947). The Second Circuit's opinion affirms that the decision to remove Oakley was permissible, foreclosing further litigation on the issue. *Oakley*, 980 F.3d at 283 (noting that Oakley contended "incorrectly" that "the act of removal was unreasonable").

Under New York state law, if a licensee refuses to leave private property, a property owner "ha[s] the right to use reasonable force to eject [the licensee]." *Noonan v. Luther*, 206 N.Y. 105, 108 (1912). The standard for determining the reasonableness of the force applied is effectively identical in both New York state tort claims and Fourth Amendment excessive force claims brought pursuant to 42 U.S.C. § 1983. *See Posr v. Doherty*, 944 F.2d 91, 94–95 (2d Cir. 1991) (noting that "the essential elements" of Fourth Amendment excessive force claims and their "state law tort counterpart," assault and battery, are "substantially identical"). A plaintiff alleging excessive force must demonstrate that "the amount of force used was objectively unreasonable." *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 573 (2d Cir. 1996) (citation and quotation marks omitted). To succeed on his claims, Oakley must therefore establish that the MSG security guards used "objectively unreasonable" force to remove him from the Garden. *Id.* (citation omitted).

### C. Additional Discovery

As a preliminary matter, Oakley argues that additional discovery is needed to resolve whether MSG security guards gave him a "reasonable" opportunity to leave

5

before using force. (Doc. No. 110 at 2 (quoting *Noonan*, 206 N.Y. at 108)); *see also* Jon W. Bruce & James W. Ely, Jr., The Law of Easements & Licenses in Land § 11:6 (May 2021 update) ("Upon revocation of a license, the licensee must be afforded a reasonable opportunity to leave the land[.]"). In situations where "facts essential to justify . . . opposition" to summary judgment are unavailable to the non-movant, a court "may" allow time to take discovery. Fed. R. Civ. P. 56(d). But no such additional discovery is necessary in this case.

Surveillance videos from the stadium, though silent and low-resolution, capture every moment from Oakley's arrival at his seat to his final exit. (*See* Doc. No. 104, Exs. 2a, 2b.) And video taken by fans in the vicinity of the altercation captures the key moments of Oakley's removal, in high resolution, with audio. (*See* Doc. No. 104, Ex. 3; *Fan Vid.*) The entire sequence of events during which Oakley alleges Defendants' security personnel used unreasonable force is thus captured in the videos submitted in connection with Defendants' motion for summary judgment. Oakley does not claim, for instance, that he was assaulted off-camera in the hallways outside the arena but while still on MSG property. Rather, the critical moments regarding his assault and battery claims – *i.e.*, that "he was 'thrown to the ground' by actions that 'greatly exceeded the amount of force that was necessary' and 'clearly exceeded the bounds of reasonable behavior,'" *Oakley*, 980 F.3d at 283 – necessarily appear in the videos now before the Court. Importantly, Oakley does not dispute the authenticity of the videos.

As described above, the video footage conclusively shows the MSG guards giving Oakley ample opportunity to leave the arena peaceably, under his own power; the same video also shows that Oakley ignored the guards' entreaties and repeated attempts to direct him toward the exit. (*Fan Vid.*, 0:01–0:59.) In fact, the video reveals that it was Oakley who unilaterally escalated the confrontation, leading to his eventual forcible removal. (*Fan Vid.*, 0:01–0:59.) Accordingly, no further discovery is needed to explore whether MSG security "afforded [Oakley] a reasonable opportunity to leave." *Noonan*, 206 N.Y. at 108.

Moreover, while Oakley argues that additional discovery is needed to uncover evidence concerning "the reasons for the decision . . . to eject Mr. Oakley," as well as to gather evidence about "Mr. Oakley's behavior from the period between when he first entered [the Garden] to when Defendants' video shows him walking towards his seat" (Doc. No. 110 at 8, 13), this is merely a backdoor attempt to relitigate the issue of whether Defendants were *entitled* to eject Oakley from the Garden. As the Court explained in its previous decision, and as the Second Circuit affirmed on appeal, the law is crystal clear on this point: Defendants were not required to supply a reason for expelling Oakley – a ticketholder licensee at the Knicks game – from Madison Square Garden. *See, e.g.*, *Impastato*, 537 N.Y.S.2d at 661; *see also Oakley*, 980 F.3d at 283.

Thus, it makes no difference that "Oakley appears to have acted unoffensively" and was "pleasantly communicating with spectators nearby" before he was approached by Defendants' security guards, as Oakley asserts in his brief. (Doc. No. 110 at 14.) Defendants needed no reason at all to eject him from the premises. What *does* matter is the sequence of events once security personnel asked Oakley to leave, which is entirely captured

on video. In short, everything needed to determine the reasonableness of the force employed by the MSG security guards is contained in the videos now before the Court, and that video footage "speak[s] for itself." *Marcavage*, 689 F.3d at 110. While Oakley cites several cases generally standing for the proposition that "summary judgment should not be granted [against a party who] is denied reasonable access to potentially favorable information," he offers no explanation as to how the information he seeks to discover concerning his conduct *before* he was asked to leave the arena might be even "potentially" helpful to his position in the remaining legal dispute. (Doc No. 110 at 7 (quoting *Robinson v. Transworld Airlines, Inc.*, 947 F.2d 40, 43 (2d Cir. 1991).) The Court therefore proceeds to consider Defendants' motion for summary judgment.

### D.  Video Footage

Turning to the merits of Oakley's assault and battery claims, the Court has no difficulty concluding that Defendants are entitled to summary judgment. There is no interpretation of the video footage that could lead a reasonable jury to conclude that the degree of force used by MSG security guards to remove Oakley from the Garden was "objectively unreasonable." *Lowth*, 82 F.3d at 573 (citation omitted).

Critically, each of the key factual allegations in Oakley's complaint that the Second Circuit identified as supporting Oakley's assault and battery claims is thoroughly contradicted by the video evidence. *See Oakley*, 980 F.3d at 283 (highlighting Oakley's allegations that MSG security guards "grabbed him" and "forcibly shov[ed] [him] to the ground"; that "when he got back to his feet, . . . he was grabbed by six officials and thrown onto the ground"; and that guards "instigated a physical altercation where there otherwise was no need for such violent conduct") (quotation marks omitted) (citing Doc. No. 36 ¶¶ 42, 43, 44, 47).

For instance, in his opposition brief, Oakley insists that his initial fall was a result of being "pushed to the ground near his seat." (Doc. No. 110 at 16.) But the video footage clearly shows that Oakley trips, nearly dragging an MSG guard down with him. (*Fan Vid.*, 0:13–0:14.)

Oakley next contends that the guards' use of physical force to escort him into the aisle was excessive because he "passively submitted to Defendants' actions." (Doc. No. 110 at 16.) That, too, mischaracterizes the encounter captured on video. In fact, the video footage shows MSG guards resorting to force only after *Oakley* physically escalates the situation by chest-bumping and poking in the face one guard and twice shoving another. (*Fan Vid.*, 0:42–0:58.) Indeed, the time Oakley refers to as a period of "passive[]" submission is the roughly 10 seconds immediately after he shoves the second MSG guard, thereby eliminating any inference that this brief moment of physical separation signals Oakley's cooperation.

Oakley next asserts that his second fall resulted when MSG guards "push[ed], thr[e]w, and/or drag[ged] [him] to the ground." (Doc. No. 110 at 17.) But the video clearly contradicts that characterization of events. At the point that Oakley loses his footing as the guards steer him toward the exit, the footage shows no intentional pushing, throwing, or dragging of Oakley toward the ground – and certainly nothing that can be deemed unreasonable force. (*Fan Vid.*, 1:10.) Indeed, in the moments before this second fall, security personnel can be seen moving Oakley at a

reasonable pace, with Oakley initially keeping up. (*Fan Vid.*, 1:04–1:10.) When Oakley falls, security personnel soften his landing and then immediately attempt to lift him back to his feet; it is then Oakley who resists, at one point audibly stating, "I don't want to stand up." (*Fan Vid.*, 1:15–1:35.) Tellingly, as Oakley lies prone on the ground complaining about his unfair ejection from the arena, he makes no accusation or complaint that anyone tripped him.

After Oakley rises to his feet once more, he clings to the railing and refuses to let go. (*Fan Vid.*, 2:35–2:58.) Far from "not resisting Defendants' efforts to drag him out of MSG," Oakley engages in a last-ditch effort to remain in the Garden, forcing the MSG guards to pry his hands free before they finally manage to escort him from the arena. (Doc. No. 110 at 20.)

In sum, while the parties "tell two different stories" about what happened in the Garden on February 8, 2017, *Scott*, 550 U.S. at 380, the video footage conclusively rebuts Oakley's version of events – and vindicates Defendants' version.

E. Remaining Arguments

Oakley raises two final arguments in his opposition brief, but neither alters the Court's conclusion that summary judgment in favor of Defendants is warranted. First, Oakley argues that summary judgment based on *any* video evidence is improper where, as here, there has been no additional discovery. (Doc. No. 110 at 20– 23.) But neither the Second Circuit nor the Supreme Court has ever articulated such a rule; indeed, many excessive force cases involve the granting or affirmance of summary judgment, prior to discovery, based on video evidence.[2] And the Second Circuit has explained that "a plaintiff cannot defeat a motion for summary judgment . . . only with speculation about what discovery might uncover." *Contemporary Mission, Inc. v. U.S. Postal Serv.*, 648 F.2d 97, 107 (2d Cir. 1981). Oakley's bare assertions that he wishes to discover different videos of the incident, taken from other angles or at different times, will not prevent entry of summary judgment, especially since Oakley cannot explain what relevant information such videos, if they exist, might reveal. *See Gray v. Town of Darien*, 927 F.2d 69, 74 (2d Cir. 1991) ("[P]laintiffs only speculate as to what evidence, if any, further discovery would produce.").

Oakley additionally argues that evaluations of reasonable force should be left to the jury, relying on the Second Circuit's observation that "[b]ecause of its intensely factual nature, the question of whether the use of force was reasonable under the circumstances is generally best left for a jury to decide." *Oakley*, 980 F.3d at 284. This proposition is of course generally true – any *genuine* dispute of a factual nature should be left to the jury as factfinder. This maxim is not, however, an ironclad rule, and the Second Circuit's observation did not amount to a directive

---

[2] *See, e.g.*, *Angula v. Brown*, 978 F.3d 942, 949–52 (5th Cir. 2020) (affirming pre-discovery grant of summary judgment on excessive force claims where video evidence "blatantly contradicted" plaintiff's allegations); *Aldridge v. City of Warren*, 682 F. App'x 461, 463–65 (6th Cir. 2017) (affirming pre-discovery grant of summary judgment on excessive force claims where video offered by defendants "undercut[]" plaintiff's version of events); *Smith v. United States*, 843 F.3d 509, 512–16 (D.C. Cir. 2016) (affirming pre-discovery grant of summary judgment in light of video and audio recordings that "contradicted [plaintiff's] complaint").

8

that a jury must decide the excessive force claims in this particular case.

In fact, courts in this Circuit routinely resolve excessive force claims at the summary judgment stage. *See, e.g.*, *MacLeod v. Town of Brattleboro*, 548 F. App'x 6 (2d Cir. 2013); *Kalfus v. N.Y. & Presbyterian Hosp.*, 706 F. Supp. 2d 458 (S.D.N.Y. 2010), *aff'd*, 476 F. App'x 877 (2d Cir. 2012); *Berman v. Williams*, No. 17-cv-2757 (JGK), 2019 WL 4450810, at *7 (S.D.N.Y. Sept. 17, 2019) (granting summary judgment where video evidence "undermines the plaintiff's claim that the defendants used excessive force"); *Lin v. City of New York*, No. 1-cv-9994 (PAE), 2016 WL 7439362, at *11–12 (S.D.N.Y. Dec. 21, 2016) (granting summary judgment where video evidence "refutes" plaintiff's allegations of excessive force). And since Oakley's remaining claim is a state-law claim for assault and battery, it bears noting that New York state courts also frequently resolve such cases on summary judgment. *See, e.g.*, *N.M. v. City of New York*, 96 N.Y.S.3d 856 (1st Dep't 2019); *Harris v. City of New York*, 62 N.Y.S.3d 411, 413–14 (2d Dep't 2017); *Walker v. City of New York*, 50 N.Y.S.3d 320 (1st Dep't 2017); *Estevez v. City of New York*, 931 N.Y.S.2d 303 (1st Dep't 2011).

The Second Circuit in this case also alluded to a distinction between excessive force claims arising in the *criminal* context, "in circumstances that are tense, uncertain, and rapidly evolving," and unreasonable force claims arising in the *civil* context. *Oakley*, 980 F.3d at 284 (quoting *Graham v. Connor*, 490 U.S. 386, 396–97 (1989)). The Second Circuit explained that the quantum of force reasonable to effect arrest might "not necessarily [be] reasonable" to effect civil removal. *Id.* Regardless, acknowledging that the *threshold* level for unreasonable force might be lower in the civil context does not mean that Oakley has raised a genuine issue of fact as to whether that threshold has been met. He has not. The video footage unambiguously demonstrates that the force used to remove Oakley was by no possible assessment "objectively unreasonable." *Lowth*, 82 F.3d at 573 (citation omitted).

Because "no reasonable jury could," in light of the videos, determine that MSG guards used unreasonable force to remove Oakley from the premises, the Court grants Defendants' motion for summary judgment on Oakley's assault and battery claims. *Scott*, 550 U.S. at 380.

### III. MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT

Finally, Oakley requests permission to add James Dolan as a defendant on the remaining assault and battery claims, under either a concerted action theory or an aiding and abetting theory of liability.[3] But even assuming that Dolan instigated the altercation and directed the guards to remove Oakley from the premises, the fact remains that both theories of liability require that the underlying tort – assault and battery – actually occurred. *See Bigio v. Coca-Cola Co.*, 675 F.3d 163, 172 (2d Cir. 2012); *Segal v. Firtash*, No. 13-cv-7818 (RJS), 2014 WL 4470426, at *7 (S.D.N.Y. Sept. 9,

---

[3] Under a concerted action theory of liability, a defendant may be liable for "having an understanding, express or tacit, to participate in a common plan or design to commit a tortious act." *Rastelli v. Goodyear Tire & Rubber Co.*, 79 N.Y.2d 289, 295 (1992) (citation and quotation marks omitted). An aiding-and-abetting claim requires demonstrating that a defendant knowingly and substantially assisted in a wrongful act that inflicted an injury. *See Scollo ex rel. Scollo v. Nunez*, 847 N.Y.S.2d 899, at *4 (Sup. Ct. 2007), *aff'd sub nom. Scollo v. Nunez*, 874 N.Y.S2d 380 (2d Dep't 2009).

2014). Because the Court has granted summary judgment in favor of Defendant MSG on the assault and battery claims, there is no underlying tort to which Oakley's proposed claims against Dolan can apply. Accordingly, Oakley's motion for leave to amend is denied as futile. *See* Fed. R. Civ. P. 15(a)(2) (requiring the Court's leave to amend a complaint); *see also Chunn v. Amtrak*, 916 F.3d 204, 208 (2d Cir. 2019) (denying as futile a request to add an additional defendant when the new claim "turns on the same" issues as the meritless claim "and fails for the same reasons").

### IV. CONCLUSION

For the past three years, much ink has been spilled describing and characterizing what transpired between Charles Oakley and the security guards tasked with escorting him from Madison Square Garden during a Knicks game in February 2017. These descriptions and characterizations have had their place in the pleadings, in the Defendants' motions to dismiss, and on appeal. But at this stage of the proceedings, the case is no longer about words. It's about evidence. And the undisputed video evidence conclusively demonstrates that the Garden's security guards did not use excessive force as they escorted Oakley from the arena. To the contrary, the video clearly shows that: (1) the guards asked Oakley to leave; (2) they gave him a chance to leave; and (3) when he refused to leave, and in fact escalated the confrontation, they removed him from the Garden by using a degree of force that was indisputably reasonable and appropriate under the circumstances. No rational jury could conclude otherwise, and Oakley's previously offered versions of the events are "so blatantly contradicted by the [video] record . . . that no reasonable jury could believe [them]." *Scott*, 550 U.S. at 380.

Therefore, for the reasons stated above, IT IS HEREBY ORDERED THAT Defendants' motion for summary judgment is GRANTED. IT IS FURTHER ORDERED THAT Oakley's request for leave to file another amended complaint is DENIED. The Clerk of Court is respectfully directed to terminate the motions pending at docket numbers 102 and 106 and to close this case.

SO ORDERED.

_____
RICHARD J. SULLIVAN
United States Circuit Judge
Sitting by Designation

Dated:  November 8, 2021
        New York, New York

\* \* \*

Plaintiff Charles Oakley is represented by Douglas H. Wigdor, Renan F. Varghese, and Kenneth D. Walsh of Wigdor LLP, 85 Fifth Ave., 5th Fl., New York, New York 10003; and Nelson A. Boxer of Petrillo Klein & Boxer LLP, 655 Third Ave., 22nd Fl., New York, New York 10017.

Defendants James Dolan, MSG Networks, Inc., The Madison Square Garden Company, and MSG Sports & Entertainment, LLC are represented by Randy M. Mastro, Akiva Shapiro, Grace E. Hart, and Declan T. Conroy of Gibson, Dunn & Crutcher LLP, 200 Park Ave., New York, New York 10166; and James Walden and Milton L. Williams of Walden Macht & Haran LLP, 250 Vesey St., 27th Fl., New York, New York 10281.