## GIBSON DUNN

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Randy M. Mastro
Direct: +1 212.351.3825
Fax: +1 212.351.5219
RMastro@gibsondunn.com

November 29, 2021

VIA ECF AND E-MAIL  (CA02_RJSChambers@ca2.uscourts.gov)

Hon. Richard J. Sullivan
U.S. Circuit Court Judge
U.S. Court of Appeals for the Second Circuit
500 Pearl Street, New York, NY 10007

Re:  *Oakley v. MSG Networks, et al.*, 17-cv-6903 (RJS)

Dear Judge Sullivan:

I write as Defendants' counsel, pursuant to Your Honor's Rule 2(A), to request a pre-motion conference concerning our clients' intention to file a motion seeking sanctions against Plaintiff Charles Oakley and his lead counsel, Douglas Wigdor of Wigdor LLP, pursuant to Federal Rule of Civil Procedure 11.  While Oakley's few remaining claims have now been dismissed, he and his counsel have pursued—and continue to pursue—baseless allegations that they knew from the outset were false, but which furthered their smear campaign.  Indeed, as this Court earlier observed, "[f]rom its inception, this case has had the feel of a public relations campaign." (Dkt. 68 at 21.)  Now, this Court has dismissed Oakley's remaining assault and battery claims, finding them so "blatantly contradicted by the [video] record . . . that no reasonable jury could believe [them]."  (Dkt. 121 at 10 (citation omitted).)  Yet over the past four years, Oakley and his counsel had available to them dispositive video evidence "conclusively rebut[ting] Oakley's version of events" (*id.* at 9), including all of the relevant videos publicly filed with this Court in March 2018 (*see* Dkt. 43).  Moreover, Oakley and his counsel ignored detailed Rule 11 letters from Defendants' counsel warning them they would face sanctions if they continued to pursue these claims.[1]  And this Court even admonished them that the pursuit of "patently false" allegations "contradicted by video" "would potentially be a basis for sanctions." (Dkt. 93 at 18:17–22.)  Yet Oakley and his counsel continue to burden Defendants and the federal judiciary by pursuing this frivolous, vexatious litigation.  (*See* Dkt. 123 (Notice of Appeal).)  Such an abuse warrants sanctions.

**Factual and Procedural Background**.  As this Court is aware, Oakley's claims relate to his removal from Madison Square Garden ("MSG") on February 8, 2017.  Dispositive video evidence of Oakley's removal—most of it public—captured what transpired:  Oakley refused repeated requests by MSG security guards to leave, attacked and struck the MSG security guards, shouted profanities and assaulted other MSG security guards, and ultimately had to be forcibly removed from the arena by MSG security and uniformed NYPD officers (at least one of whom was present for all of the above-described conduct).  (*See generally* Dkt. 105 ¶¶ 5–6, 10–69.)  Oakley and his attorneys then attempted to shift the blame to Defendants by filing a baseless lawsuit that falsely accused Defendants of, *inter alia*, assaulting, battering, falsely imprisoning, defaming, and discriminating against Oakley.  (*See generally* Dkt. 1 ¶¶ 77–120.)

The original complaint spun a false narrative in which James Dolan and the MSG Defendants supposedly treated Oakley like a "common criminal" and ordered MSG security guards to "humiliate" Oakley by "roughly grabb[ing]" him, "push[ing] him to the ground" twice, and "dragg[ing]" him out of MSG, unprovoked (*see id.* ¶¶ 4, 41–48, 56).  Oakley and his counsel also falsely

---

[1]  The Rule 11 letters provided detailed information from which Oakley and his counsel would clearly understand that their allegations were demonstrably false.  These letters are available for the Court's review.

November 29, 2020
Page 2

claimed, among other things, that Oakley had attempted to defuse the situation by explaining to security personnel that he had "done nothing wrong," that security guards escalated the confrontation by "physically grab[bing] . . . Oakley to forcibly compel him to leave," and that Oakley acted in "self defense" when he assaulted the security guards. (*Id.* ¶¶ 41, 45, 46; *see also* Dkt. 36 ¶¶ 37, 45, 46, 48.) All of these allegations were flatly contradicted by readily available video evidence.

Oakley's original complaint was merely the first in a series of false pleadings that Oakley and his counsel filed over the course of more than four years, and before two different courts. For instance, even after being specifically warned by Defendants that their allegations were demonstrably false by clear video evidence in a letter sent on February 2, 2018, Oakley and his attorneys filed an Amended Complaint that not only *repeated* all of their prior misrepresentations regarding the events surrounding Oakley's removal, but also introduced *new* baseless allegations about Oakley's removal and the purported damages Oakley suffered following Defendants' allegedly defamatory statements. (*See* Dkt. 36.) Nor did Oakley and his counsel abandon their claims when Defendants sent their first Rule 11 Letter on March 7, 2018. Instead, Oakley and his counsel convinced this Court to not consider the dispositive video evidence (Dkt. 68 at 5–8), and then, after this Court nevertheless dismissed the Amended Complaint, used the false allegations regarding the force used to effectuate Oakley's removal to persuade the Second Circuit to reverse the dismissal of the assault and battery claims, *Oakley v. Dolan*, 980 F.3d 279, 283–84 (2d Cir. 2020).

On remand from the Second Circuit, Oakley and his counsel then attempted to use those same false allegations in an effort to *expand* this litigation—and to re-insert James Dolan into this lawsuit after the Second Circuit affirmed his dismissal as a defendant—by means of a proposed Second Amended Complaint (*see* Dkt. 108-2). Notably, Oakley and his counsel continued to pursue their motion for leave to amend (and their original claims) even after this Court explicitly stated, during the course of the parties' pre-motion conference that the video evidence, "it seems to me, does contradict a fair amount of what's in the complaint," and that "to the extent that what's alleged in the complaint turns out to be patently false and contradicted by video, that would potentially be a basis for sanctions." (Dkt. 93 at 18:17–22.) Oakley and his counsel then likewise ignored Defendants' *second* Rule 11 Letter, which warned that "Oakley's . . . continued misrepresentations to the Court," request to amend his pleading again, and "pursuit of assault and battery claims against the Defendants are baseless and sanctionable."

Most recently, in the course of granting Defendants' motion for summary judgment and denying Oakley's motion for leave to amend, this Court held:

> [T]he undisputed video evidence conclusively demonstrates that the Garden's security guards did not use excessive force as they escorted Oakley from the arena. To the contrary, the video clearly shows that: (1) the guards asked Oakley to leave; (2) they gave him a chance to leave; and (3) when he refused to leave, and in fact escalated the confrontation, they removed him from the Garden by using a degree of force that was indisputably reasonable and appropriate under the circumstances. No rational jury could conclude otherwise, and Oakley's previously offered versions of the events are "so blatantly contradicted by the [video] record . . . that no reasonable jury could believe [them]."

November 29, 2020
Page 3

(Dkt. 121 at 10 (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).) Yet even this decisive ruling has not tempered Oakley's or his counsel's continuing pursuit of Oakley's meritless claims. (*See* Dkt. 123 (Notice of Appeal).)

**Basis for Sanctions**. Sanctions are warranted under Rule 11(b)(3), because Oakley and his counsel have flagrantly breached their obligations to make "an inquiry reasonable under the circumstances," and to verify that "the factual contentions have evidentiary support." Courts in this District have made clear that a "baseless factual contention" warrants severe sanctions because it "poses a greater threat to justice than a baseless legal contention." *In re Sept. 11th Liab. Ins. Coverage Cases*, 243 F.R.D. 114, 124 (S.D.N.Y. 2007) (Hellerstein, J.). Here, Oakley and his counsel were aware *for years* that the central claims in this case were premised on outright lies, yet they have parroted these same false allegations in no less than *12* filings before this Court, with zero regard for this Court's—and Defendants'—time and resources. *See* Dkt. 1, 24, 36, 50, 61, 83, 107, 108-1, 110, 111, 114, 117.

Additionally, Oakley and his counsel should be sanctioned under Rule 11(b)(1), because they have instituted and prolonged this baseless action for the "improper purpose" of "harass[ing]" Defendants. *See* Fed. R. Civ. P. 11(b)(1). As previously explained, Oakley and his counsel have repeatedly made unsupportable legal arguments and asserted bald-faced lies that have no place in a federal courtroom, and were instead aimed at achieving fleeting victories in the court of public opinion.[2] As this Court observed when it initially granted Defendants' motion to dismiss, "[f]rom its inception, this case has had the feel of a public relations campaign." (Dkt. 68 at 21.) By subverting the Court's truth-seeking function in service of this misguided public relations campaign, Oakley and his counsel have wasted judicial time and resources, forced Defendants to incur four years' worth of legal expenses, and caused Defendants substantial reputational damage.[3] Rule 11 sanctions are thus appropriate here as a means to "curb[] abuses of the judicial system" and "reimburse the party against whom the offending papers have been interposed." *U.S. v. Int'l Bhd. of Teamsters, AFL-CIO*, 948 F.2d 1338, 1343–44 (2d Cir. 1991) (citation omitted).[4]

Respectfully,

/s/ Randy M. Mastro

---

[2] Oakley's in-court attacks on Dolan and the MSG Defendants carried over to his out-of-court attacks, in which he went so far as to outrageously liken his removal to a "lynching," and described the Knicks organization as a "plantation." (Golic & Wingo, "Charles Oakley Blasts Knicks Ownership" (Mar. 4, 2020), *available at* https://www.espn.com/video/clip?id=28835054; Dan Feldman, "Charles Oakley on James Dolan's Knicks: It's a Plantation," NBC Sports (Mar. 4, 2020), *available at* https://nba.nbcsports.com/2020/03/04/charles-oakley-on-james-dolans-knicks-its-a-plantation/).

[3] These "significant costs" and "substantial unnecessary expenditures" constitute yet another basis for imposing sanctions here. *See, e.g.*, *Shangold v. Walt Disney Co.*, 275 F. App'x 72, 74–75 (2d Cir. 2008).

[4] Oakley and his counsel's failed motion again seeking leave to amend is also sanctionable under Rule 11(b)(2) because it was "not warranted by existing law," and because it was "patently clear" that it had "absolutely no chance of success." *Binghamton Masonic Temple, Inc. v. Bares*, 168 F.R.D. 121, 126 (N.D.N.Y. 1996) (quoting *Sussman v. Bank of Isr.*, 56 F.3d 450, 457 (2d Cir. 1995)); *see also* Dkt. 109 at 14–25 (arguing that the motion for leave to amend was barred by various legal doctrines); Dkt. 121 at 9–10 (denying the motion).