**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------------X
CHARLES OAKLEY,                                           :
                                                         :
                                    Plaintiff,           :     Civil Case No.: 17-cv-6903 (RJS)
                                                         :
                  v.                                     :
                                                         :
JAMES DOLAN, in his individual and professional          :
capacities, MSG NETWORKS, INC., THE MADISON              :
SQUARE GARDEN COMPANY and MSG SPORTS &                   :
ENTERTAINMENT, LLC,                                      :
                                                         :
                                    Defendants.          :
-----------------------------------------------------------------------X

**PLAINTIFF CHARLES OAKLEY'S MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFF'S MOTION TO FILE A SECOND AMENDED COMPLAINT**

**WIGDOR LLP**                          **PETRILLO KLEIN & BOXER LLP**

Douglas H. Wigdor                       Nelson A. Boxer
Renan F. Varghese

85 Fifth Avenue                         655 3rd Avenue, #22
New York, NY 10003                      New York, NY 10017
Telephone: (212) 257-6800               Telephone: (212) 370-0330
dwigdor@wigdorlaw.com                   nboxer@pkbllp.com
rvarghese@wigdorlaw.com

*Counsel for Plaintiff*                 *Counsel for Plaintiff*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

BACKGROUND ...............................................................................................................1

I.      FACTS ...................................................................................................................1

II.     PROCEDURAL BACKGROUND.........................................................................2

ARGUMENT ....................................................................................................................4

I.      PLAINTIFF SHOULD BE GRANTED LEAVE TO FILE A SECOND AMENDED
        COMPLAINT .........................................................................................................4

II.     DOLAN IS LIABLE UNDER A CONCERTED ACTION THEORY OF LIABILITY
        FOR ASSAULT AND BATTERY...........................................................................5

III.    DOLAN IS LIABLE UNDER AN AIDING AND ABETTING THEORY OF
        LIABILITY .............................................................................................................7

IV.     PLAINTIFF'S MOTION TO AMEND TO ADD AN ADDITIONAL EXAMPLE OF
        BATTERY SHOULD BE GRANTED.....................................................................9

V.      DEFENDANTS' ANTICIPATED ARGUMENTS IN OPPOSITION TO
        PLAINTIFF'S MOTION TO AMEND ARE MERITLESS ...........................................10

VI.     PLAINTIFF'S PROPOSED AMENDMENT IS TIMELY .............................................16

VII.    DEFENDANTS WILL NOT SUFFER SUBSTAINTIAL (OR INDEED, ANY)
        PREJUDICE, AND THERE IS NO OTHER REASON PLAINTIFF SHOULD NOT
        BE GIVEN LEAVE TO AMEND ...........................................................................19

CONCLUSION.................................................................................................................21

## <u>**TABLE OF AUTHORITIES**</u>

<u>Cases</u>                                                                                     <u>Page(s)</u>

<u>Abdell v. City of New York</u>,
    759 F. Supp. 2d 450 (S.D.N.Y. 2010)......................................................................... 19

<u>Abid v. Edwards</u>,
    8 A.D.3d 510 (2d Dep't 2004)...................................................................................... 7

<u>Barrow v. Wethersfield Police Dept.</u>,
    66 F.3d 466 (2d Cir. 1995) .......................................................................................... 16

<u>Ceara v. Deacon</u>,
    916 F.3d 208 (2d Cir. 2019) ................................................................................... 4, 18

<u>D'Elia v. 58-35 Utopia Parkway Corp.</u>,
    43 A.D.3d 976 (2d Dep't 2007)..................................................................................... 6

<u>Dunn v. Brown</u>,
    261 A.D.2d 432 (2d Dep't 1999).................................................................................. 7

<u>E.E.O.C. v. Nichols Gas & Oil, Inc.</u>,
    518 F. Supp. 2d 505 (W.D.N.Y. 2007) ....................................................................... 20

<u>Eassa v. Hartford Fire Ins. Co.</u>,
    No. 90-CV-321, 1991 WL 255111 (N.D.N.Y. Nov. 29, 1991) .................................. 13

<u>Foman v. Davis</u>,
    371 U.S. 178 (1982) ............................................................................................... 5, 17

<u>Halberstam v. Welch</u>,
    705 F.2d 472 (D.C. Cir. 1983) ...................................................................................... 8

<u>Herman v. Wesgate</u>,
    94 A.D.2d 938 (4th Dep't 1983) ................................................................................... 7

<u>Hogan v. Fischer</u>,
    738 F.3d 509 (2d Cir. 2013) ........................................................................................ 16

<u>Keel v. Hainline</u>,
    331 P.2d 397 (Okl. 1958) ............................................................................................. 8

<u>Krupski v. Costa Crociere S. p. A.</u>,
    560 U.S. 538 (2010) ........................................................................................... passim

Matter of Oswego Barge Corp.,
    439 F. Supp. 312 (N.D.N.Y. 1977) ........................................................... 5

McKiernan v. Vaccaro,
    168 A.D.3d 827, (2d Dep't 2019) ............................................................. 8

N.L.R.B. v. United Techs. Corp.,
    706 F.2d 1254 (2d Cir. 1983) ................................................................. 16

Oakley v. Dolan,
    980 F.3d 279 (2d Cir. 2020) .................................................................... 3

Oakley v. Dolan,
    No. 17 Civ. 6903 (RJS), 2020 WL 818920 (S.D.N.Y. Feb. 19, 2020) ..................................... 12

Oakley v. Dolan,
    No. 20-642, 2020 WL 6707696 (2d Cir. Nov. 16, 2020) ........................................... 3

Oakley v. Dolan,
    No. 21-2939, 2023 WL 3263618 (2d Cir. May 5, 2023) ........................................ 4, 10, 12, 15

Oakley v. MSG Networks,
    No. 17 Civ. 6903 (RJS), 2021 WL 5180229 (S.D.N.Y. Nov. 8, 2021) ............................ 3, 4, 12

Pasternack v. Shrader,
    863 F.3d 162 (2d Cir. 2017) ................................................................. 19

Presser v. Key Food Stores Co-op., Inc.,
    218 F.R.D. 53 (E.D.N.Y. 2003) .............................................................. 20

Rastelli v. Goodyear Tire & Rubber Co.,
    79 N.Y.2d 289 (1992) ........................................................................ 5

Scollo ex rel. Scollo v. Nunez,
    847 N.Y.S.2d 899 (Sup. Ct. 2007) ............................................................. 8

Shatkin v. Jakson,
    No. 07 Civ. 00332A(M), 2008 WL 11363382 (W.D.N.Y. Feb. 27, 2008) ............................... 5

Shea v. Cornell Univ.,
    192 A.D.2d 857 (3d Dep't 1993) ............................................................. 12

Sims v. Bergamo,
    3 N.Y.2d 531 (N.Y. 1957) .................................................................... 17

U.S. For & on Behalf of Mar. Admin. v. Cont'l Illinois Nat. Bank & Tr. Co. of Chicago,
  889 F.2d 1248 (2d Cir. 1989) ................................................................................................. 13

United States v. Quintieri,
  306 F.3d 1217 (2d Cir. 2002) ................................................................................................. 15

Weldon v. Rivera,
  301 A.D.2d 934 (3d Dep't 2003)........................................................................................... 6, 7

Wilson v DiCaprio,
  278 A.D.2d 25 (1st Dep't 2000) ............................................................................................. 8

Rules

Federal Rule of Civil Procedure 15 ........................................................................................ passim

Federal Rule of Civil Procedure 12(b)(6) ................................................................................. 2

Plaintiff Charles Oakley ("Plaintiff" or "Mr. Oakley"), by and through his undersigned counsel, respectfully submits this Memorandum of Law in Support of His Motion for Leave to Amend the Amended Complaint and file a Second Amended Complaint ("SAC") pursuant to Federal Rule of Civil Procedure ("Rule") 15.

## BACKGROUND

### I.   FACTS

On February 8, 2017, Mr. Oakley entered Madison Square Garden (the "Garden") to watch a Knicks game.  ¶¶ 26, 29.[1]   Mr. Oakley entered the arena without incident and proceeded to his seats, which were located several rows behind where Dolan was sitting.  ¶¶ 30-32. Within minutes of unobtrusively taking his seat, Dolan signaled to Defendants' security guards who proceeded to surround Mr. Oakley and demand that he leave the Garden.  ¶¶34-38.  When Mr. Oakley requested an explanation as to why he was being forced to leave the Garden when he had done nothing wrong, the security guards refused to answer, instead demanding to know why he was sitting close to Dolan.  ¶ 39.

At the guards' instruction, Mr. Oakley rose to his feet, at which point he was immediately pushed/pulled backwards by Defendants' security guards.  ¶¶41-42.  Though Mr. Oakley attempted to defuse the situation by assuming a defensive posture, Defendants' security personnel grabbed him and pushed him to the ground.  ¶¶ 43-48.

When Mr. Oakley stood up, the security guards continued to demand that Mr. Oakley leave the Garden immediately.  ¶ 49.  When Mr. Oakley again asked for an explanation as to his removal from the Garden, the security guards further escalated the incident by physically

---

[1]     "¶ __" or "¶¶ __" throughout this memorandum of law cite paragraphs within Plaintiff's Proposed Second Amended Complaint, attached as Ex. B to the Wigdor Declaration and previously filed with the Court on December 11, 2020, unless otherwise expressly stated.

grabbing Mr. Oakley in an effort to forcibly compel him to leave the Garden and throwing him to the ground.  ¶¶ 50, 52.  Mr. Oakley was thereafter placed in restraints and roughly thrown out of the Garden; in doing so, Defendants greatly exceeded the amount of force that was necessary, especially given that Mr. Oakley had at no point instigated the violent conduct.  ¶¶ 46, 50, 54, 55.

## II.   <u>PROCEDURAL BACKGROUND</u>

On September 12, 2017, Plaintiff commenced this action against Defendants, asserting, *inter alia*, claims for assault and battery.  Dkt. No. 1.  On February 9, 2018, Plaintiff filed his Amended Complaint.  Dkt. No. 36.  On March 30, 2018, Defendants moved to dismiss Plaintiff's Amended Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  Dkt. No. 42.  In support of their motion to dismiss, Defendants, for the first time, submitted video footage that they claimed demonstrated that Mr. Oakley instigated the violent altercation at the Garden (the "Videos").  Dkt. No. 42 at pp. 5-8, 32-34.

Instead, the Videos revealed that, contrary to Plaintiff's belief that Defendants' security personnel had unilaterally decided to use unreasonable force in ejecting him from the Garden, they were at all times following Dolan's instructions.  Specifically, the Videos showed Dolan's behavior immediately before, during, and after Plaintiff was assaulted, thereby making clear that he acted in concert with his security guards in using unreasonable force against Plaintiff.  In the Videos, Dolan observes Mr. Oakley, calls over a security guard and speaks with the guard extensively.  ¶ 34.  After the security guard speaks with Dolan, the guard proceeds to say something to Mr. Oakley.  ¶ 35.  Shortly thereafter, Dolan signals to the same security guard he had been speaking with moments earlier, pointing downwards with his right index finger.  ¶ 36.  The security guard then gathers a group of additional security personnel and surround Oakley, in

an obvious display of force.  After Defendants' security personnel completed their violent and unreasonable assault on Plaintiff, Dolan can be seen giving his security guards a "thumbs up" gesture, clearly indicating that he approved of their conduct and that they had successfully carried out his instructions.  ¶ 56.

On February 19, 2020, the Court granted Defendants' motion to dismiss in its entirety. On November 16, 2020, the Second Circuit reversed the Court's decision dismissing Plaintiff's claims for assault and battery, remanding the case for further proceedings in a published decision.[2]  *Oakley v. Dolan*, 980 F.3d 279 (2d Cir. 2020).  Following remand, on December 8, 2020, Defendants filed a letter requesting a pre-motion conference concerning their anticipated pre-answer, pre-discovery motion for summary judgment.  Dkt. 75.  Shortly thereafter, on December 11, 2020, Plaintiff requested a pre-motion conference seeking to move to amend and file a second amended complaint, which Plaintiff attached (in both clean and redline versions) to his letter.  Dkt. No. 83.  On December 22, 2020, the Court ordered a briefing schedule on both parties' anticipated motions.  Dkt. No. 90.

The parties fully briefed their respective motions on March 9, 2021.  On November 8, 2021, the Court granted Defendants' motion for summary judgment, examining some (but not all) of the Videos and finding that they "conclusively demonstrate[ ] that the Garden's security guards did not use excessive force as they escorted Oakley from the arena."  *Oakley v. MSG Networks*, No. 17 Civ. 6903 (RJS), 2021 WL 5180229, at *8 (S.D.N.Y. Nov. 8, 2021).  As to Plaintiff's motion to amend, the Court held that: "Because the Court has granted summary judgment in favor of Defendant MSG on the assault and battery claims, there is no underlying

---

[2]        The Second Circuit affirmed the Court's decision on Plaintiff's remaining claims in a separate unpublished summary order.  <u>Oakley v. Dolan</u>, No. 20-642, 2020 WL 6707696 (2d Cir. Nov. 16, 2020).

tort to which Oakley's proposed claims against Dolan can apply.  Accordingly, Oakley's motion for leave to amend is denied as futile." *Id.*

Plaintiff subsequently appealed the Court's summary judgment decision.  On May 5, 2023, the Second Circuit granted Plaintiff's appeal and reversed summary judgment.  In so holding, the Second Circuit examined all of the Videos and found that they did not "record the initial conversation between Oakley and the MSG security guards, and it is difficult to clearly see what happened." *Oakley v. Dolan*, No. 21-2939, 2023 WL 3263618, at *3 (2d Cir. May 5, 2023).  As a result, the Second Circuit found that the Videos do "not compel the conclusions that Oakley was provided a reasonable opportunity to leave the Garden and that any force used by the guards during that initial encounter was reasonable." *Id.*  The Second Circuit therefore held that Plaintiff's claims must ultimately be adjudicated by a jury: "once a jury sorts out what exactly happened, it must make a determination as to whether the force used to eject Oakley was reasonable." *Id.*

Finally, as to Plaintiff's motion to amend, the Second Circuit explained that "Given our reversal of the district court's summary judgment for the MSG Defendants, the district court's futility analysis is no longer applicable." *Id.*  It therefore remanded the motion to amend back to this Court for its consideration in light of the appellate order.  On June 26, 2023, this Court ordered a briefing schedule on Plaintiff's motion to amend.

## ARGUMENT

## I.   PLAINTIFF SHOULD BE GRANTED LEAVE TO FILE A SECOND AMENDED COMPLAINT

Fed. R. Civ. P. 15(a) ("Rule 15(a)") provides that the Court "should freely give leave [to amend a pleading] when justice so requires." *Ceara v. Deacon*, 916 F.3d 208, 214–15 (2d Cir. 2019) (quoting Fed. R. Civ. P. 15(a)).  The decision whether to grant leave to amend a pleading

should be granted freely absent a showing of undue delay, bad faith or dilatory tactics.  *See Foman v. Davis*, 371 U.S. 178, 1818 (1982).  The liberal tenor of Rule 15(a) is reinforced by the underlying goals of the Federal Rules of Civil Procedure, namely, that cases are litigated on the merits whenever possible.  *Id.*; *see also Matter of Oswego Barge Corp.*, 439 F. Supp. 312, 323 (N.D.N.Y. 1977).

In analyzing a motion to amend, courts focus on the possibility of recovery under the amendment, not the likelihood of recovery.  *Shatkin v. Jakson*, No. 07 Civ. 00332A(M), 2008 WL 11363382, at *1 (W.D.N.Y. Feb. 27, 2008), *report and recommendation adopted*, No. 07 Civ. 332, 2009 WL 10681988 (W.D.N.Y. Jan. 23, 2009).  Therefore, the merits of a potential claim should not be considered unless the claim is clearly frivolous or legally insufficient.  *See id.*  Here, Plaintiff's proposed amendment, seeking to add Dolan as a defendant for the remaining assault and battery claims, and adding an allegation that Defendants assaulted Plaintiff when they first surrounded him in his seat, sufficiently sets forth the possibility of recovery such that Plaintiff's motion to amend should be granted.  Moreover, because there has been no discovery in this case, and Defendants have not even submitted an Answer to either of Plaintiff's previous complaints, they would suffer no prejudice should Plaintiff's motion to amend be granted.

## II. DOLAN IS LIABLE UNDER A CONCERTED ACTION THEORY OF LIABILITY FOR ASSAULT AND BATTERY

The SAC states a cause of action against Dolan under a concerted action theory of liability for his security guards' assault and battery of Oakley.  Concerted action liability "provides for joint and several liability on the part of all defendants having an understanding, express or tacit, to participate in a common plan or design to commit a tortious act."  *Rastelli v. Goodyear Tire & Rubber Co.*, 79 N.Y.2d 289, 295 (1992) (internal quotations omitted).  Importantly, there is no requirement that the defendant actually commit the assault at issue.  *See*

*Weldon v. Rivera*, 301 A.D.2d 934, 935 (3d Dep't 2003) ("one who does not directly cause an injury may be jointly and severally liable for said injury").  Rather, the crux of a concerted action analysis turns on whether the pleadings allege that the individual defendant was acting in cooperation with the tortfeasor, or otherwise ratified and adopted his actions.  *See D'Elia v. 58-35 Utopia Parkway Corp.*, 43 A.D.3d 976, 978 (2d Dep't 2007) (finding that defendants liable under concerted action theory for assault even where there was "no evidence was adduced at trial that either of those defendants struck the blows that caused D'Elia's most significant injury").

Here, the SAC alleges sufficient facts to plead that Dolan and his security personnel acted pursuant to a common plan or scheme in carrying out the assault and battery on Mr. Oakley.  As alleged in the SAC, Mr. Oakley unobtrusively took his seat at the Garden.  ¶¶ 30-32.  Based on evidence obtained since filing the First Amended Complaint, it is apparent that Mr. Oakley was not behaving inappropriately at any point.  To the contrary, in the Videos, he is seen cordially interact with fans and employees at the Garden.  ¶ 33.  Shortly after Mr. Oakley takes his seat, Dolan speaks with a security guard for close to a minute.  ¶ 34.  Almost immediately, Dolan signals to the same security guard with a downward pointing gesture with his right index finger. ¶¶ 34-36.  *Within seconds*, the security guard converges on Oakley with several other members of Defendants' security personnel.  ¶ 37.  The fact that the security guards approached Oakley as a direct and immediate response to Dolan's signal sufficiently alleges that they were acting in concert with Dolan and/or at his direction.

After Dolan's own employees, over whom he exercised control, began to attack Oakley, in full view of all of the fans at the Garden and within feet of where he was sitting, Dolan failed to take any action to stop this violent and unreasonable use of force.  Rather, he allowed his security personnel to continue to assault Oakley and refused to intervene.  Once his security

6

guards completed their violent assault of Mr. Oakley, Dolan gave a thumbs up gesture, signaling that the security guards, in using unreasonable force, had successfully followed Dolan's instructions.

Dolan's conduct, disclosed for the first time in the Videos that Plaintiff received in connection with Defendants' motion to dismiss, adequately pleads facts sufficient to hold Dolan liable under a concerted action theory of liability.  *See, e.g., Herman v. Wesgate*, 94 A.D.2d 938, 939 (4th Dep't 1983) ("Here, the conduct of the defendants alleged to be dangerous and tortious is the pushing or throwing of guests, against their will, from the barge into the water. Liability of an individual defendant will not depend upon whether he actually propelled plaintiff into the water; participation in the concerted activity is equivalent to participation in the accident resulting in the injury") (citation omitted); *Weldon*, 301 A.D.2d at 935 (denying motion to dismiss for concerted participation in assault where defendant participated in activities that preceded injury but were not proximate cause); *Abid v. Edwards*, 8 A.D.3d 510, 511 (2d Dep't 2004) (same); *Dunn v. Brown*, 261 A.D.2d 432, 433 (2d Dep't 1999) ("The court also properly concluded that material issues of fact exist as to whether the defendant Jason Del Pilar, acting in concert with the defendant Russell E. Brown, intended to assault the plaintiff").  Given the allegations in the SAC, Dolan would not be entitled to summary judgment on a concerted action claim.  *See Herman*, 94 A.D.2d at 938 ("Whether codefendants acted in concert is generally a question for the jury").  As a result, the claim is clearly sufficiently pled to warrant granting Plaintiff's motion to amend.

## III.   DOLAN IS LIABLE UNDER AN AIDING AND ABETTING THEORY OF LIABILITY

Similarly, Plaintiff's proposed amendments plausibly allege that Dolan aided and abetted the assault and battery of Oakley.  To be liable for an assault under an aiding and abetting theory,

a defendant must have committed some overt act, either by words or conduct, in furtherance of the assault. *McKiernan v. Vaccaro*, 168 A.D.3d 827, 830, (2d Dep't 2019). The elements of an aiding and abetting violation for assault and/or battery under New York law are "(1) a wrongful act producing an injury; (2) the defendant's awareness of a role as a part of an overall illegal or tortious activity at the time he provides the assistance; and (3) the defendant's knowing and substantial assistance in the principal violation." *Scollo ex rel. Scollo v. Nunez*, 847 N.Y.S.2d 899 (Sup. Ct. 2007), *aff'd sub nom. Scollo v. Nunez*, 60 A.D.3d 840 (2009) (citation omitted). Moreover, "the contributing activity itself need not be so obviously nefarious as cheering a beating or prodding someone to drive recklessly." *Halberstam v. Welch*, 705 F.2d 472, 482 (D.C. Cir. 1983) (citing *Keel v. Hainline*, 331 P.2d 397 (Okl. 1958)). As set forth in the SAC, Dolan's actions on February 9, 2017 sufficiently satisfy Plaintiff's minimal burden for amendment.

Here, as the SAC alleges, Dolan did more than merely encourage the assault and battery against Plaintiff: he commanded, ratified and approved it. *See id.* (analyzing cases involving theories of aiding and abetting torts that dealt with "direct encouragement by word or deed at the scene of the tort"). Moreover, based on the videos provided by Defendants, Dolan can be seen engaging in a minimum of two overt acts. First, Dolan signaled to his security personnel who thereafter immediately approached Plaintiff in a group and assaulted him. The fact that Dolan's signal prompted a large group of security personnel to assault Mr. Oakley strongly suggests that they at all times intended to use force to effectuate his ejection and were doing so based on their Dolan's instructions. *See, e.g., Wilson v DiCaprio*, 278 A.D.2d 25, 26 (1st Dep't 2000) (individual defendant's "shout to the group, 'We'll go kick his ass,' and the immediate reaction of the other members of the group to follow and assault plaintiff were sufficient allegations that

[the defendant] encouraged the assault and that such encouragement was a substantial factor in causing the assault").

Second, after Dolan witnessed his security personnel violently ejecting Mr. Oakley, he gave a "thumbs up" gesture. This thumbs up gesture adequately pleads that Dolan supported and aided and abetted the use of unreasonable force in throwing Mr. Oakley out of the Garden.

## IV. PLAINTIFF'S MOTION TO AMEND TO ADD AN ADDITIONAL EXAMPLE OF BATTERY SHOULD BE GRANTED

Aside from adding Dolan as an individual defendant, Plaintiff's SAC contains an additional allegation, also gleaned from the Videos, pertaining to another instance in which he was subjected to an assault and battery by Defendants. Specifically, as Plaintiff alleges, immediately after he was surrounded by Defendants' security guards while he was still seated, he rose to his feet and "the security personnel grabbed Mr. Oakley and roughly pulled him backwards as Defendant Dolan watched and refused to take action." ¶42. Again, the sole reason that this allegation did not appear in Plaintiff's Amended Complaint was because he did not have enough information to accurately describe the full sequence of events until after he received the Videos in the context of Defendants' motion to dismiss.

Consistent with the notice pleading requirements of the FRCP, Plaintiff initially pled the facts attendant to his assault and battery claims more generally, emphasizing the point that Defendants escalated the situation unreasonably and subjected him to excessive force. After receiving the Videos, Plaintiff was able to supplement his allegations with a more detailed account of the events attendant to his assault and battery claims. However, the substantive claims themselves never changed.

This more specific allegation does not change Plaintiff's causes of actions or the case in any way. Rather, it is merely another example of Defendants' use of unreasonable force in

ejecting Plaintiff from the Garden.  Importantly, the Second Circuit recognized as much, citing to this initial use of force in reversing the Court's decision to grant summary judgment in Defendants' favor.  *See Oakley v. Dolan*, 2023 WL 3263618, at *2 ("Oakley testifies that immediately after he stood, he was grabbed and pulled backward by the security guards").  Given that this initial example of Defendants' use of unreasonable force is unquestionably relevant to Plaintiff's claims in this case, it will be the subject of discovery irrespective of whether it is included in the SAC.  Given the fact that Defendants have not had to file an Answer in this case, and that no discovery has taken place, there is no prejudice to Defendants if Plaintiff's motion to amend were granted.  As a result, there is no basis to not allow Plaintiff to include it in the SAC.

## V.  DEFENDANTS' ANTICIPATED ARGUMENTS IN OPPOSITION TO PLAINTIFF'S MOTION TO AMEND ARE MERITLESS

It is anticipated that Defendants will offer several unavailing arguments in opposition to Plaintiff's motion to amend.  First, Defendants will likely claim that Plaintiff's motion to amend was "brought after undue delay and in bad faith."  Dkt. 109 at p. 9.  In support of their specious claim, Defendants cite to the fact that the Amended Complaint contained sufficient allegations to justify holding Dolan liable for assault and battery.  Obviously, given Defendants' repeated threats to seek sanctions against Plaintiff for not having sufficient basis to pursue his claims, had we included Dolan as an individual defendant from the onset of the case it would have been met with threats of sanctions and the argument that the claims lacked any factual basis.[3]  Defendants'

---

[3]      Indeed, on July 21, 2023, Defendants sent Plaintiff's counsel a letter threatening to seek sanctions in the event that Plaintiff proceeded with his motion to amend—a motion that the Second Circuit held was required to be considered by this Court.  In doing so, Defendants claimed that any attempt to hold Defendant Dolan liable for the assault and battery would be sanctionable.  Of course, if Plaintiff had sought to bring these claims against Defendant Dolan without the corroborating evidence in the form of the Videos, Defendants would have certainly made the same threats about moving for sanctions.  However, as should be obvious, if Plaintiff was attempting to embarrass Dolan, or intent on expanding the scope of this litigation as Defendants now claim, he could have named Dolan as

argument also conflates two separate issues—whether Dolan ordered Oakley to be ejected from the Garden and whether Dolan ordered that his employees employ unreasonable force in doing so.  While the allegations in the Amended Complaint can be read to support the former, they did not rise to the level of including Dolan as an individual defendant as the facts at that time did not support the latter.

The Amended Complaint admittedly alleged that Defendants' security personnel were following "Dolan's orders."  Dkt. No. 36 at ¶ 36.  However, at no point did the Amended Complaint allege that Dolan ordered the use of unreasonable force, such as to support holding him individually liable for assault and battery.  Rather, as alleged, "the sole reason that the security guards *were seeking to oust him from the Garden* was Defendant Dolan's orders."  *Id.* (emphasis added).  Importantly, this allegation was not based purely on speculation.  Instead, the Amended Complaint provided the basis for Plaintiff's allegation that Dolan had ordered Mr. Oakley to leave the Garden.  Specifically, based on his prior experiences with Defendants' security personnel, it was clear that Dolan had ordered that Mr. Oakley be told to leave the Garden.  *Id.* at ¶¶ 28.  Moreover, Defendants' security guards specifically mentioned Dolan in explaining why they told Oakley to leave the Garden.  *Id.* at ¶35.

In contrast, any allegation that Dolan ordered Defendants' security guards to use unreasonable force in effectuating his removal did not have adequate evidentiary support at the time Plaintiff filed the Amended Complaint.  The mere fact that Defendants' security personnel were following Dolan's orders in telling Plaintiff to leave the Garden would not have been sufficient to give rise to individual liability for assault and battery and would have undoubtedly led to a claim by Defendants (if not this Court), that such a contention was frivolous and

---

an individual defendant as to his assault and battery claims in the original Complaint.  Contrary to what Defendants now claim, that he did not do so demonstrates that Plaintiff has never litigated his claims in bad faith.

warranted sanctions.  As this Court has previously held on two occasions, Defendants had the absolute right to ask any patron to leave the Garden, and doing so, by itself, does not give rise to liability for assault and battery.  *See Oakley v. Dolan*, No. 17 Civ. 6903 (RJS), 2020 WL 818920, at *13 (S.D.N.Y. Feb. 19, 2020) ("MSG Defendants had the right to expel Oakley from the Garden"); *Oakley v. MSG Networks*, No. 17 Civ. 6903 (RJS), 2021 WL 5180229, at *4 (S.D.N.Y. Nov. 8, 2021) ("under New York state law, property owners have the right to remove licensees, such as ticketholders like Oakley, from their property for any reason or no reason at all").

Even Plaintiff's own belief that Dolan ordered the use of *some* force would have been insufficient to hold Dolan liable for his assault and battery.  Dkt. No. 36 at ¶ 3.  Liability does not arise where a property owner uses some quanta of force to effectuate a removal of an individual from private property.  *See Oakley v. Dolan*, 2023 WL 3263618, at *3 (holding that jury must ultimately determine "whether the force used to eject Oakley was ***reasonable***") (emphasis added).

What Plaintiff was missing was evidence of complicity and a specific overt act demonstrating that Dolan participated in the decision to use *unreasonable* force in ejecting Mr. Oakley from the Garden.  *See, e.g., Shea v. Cornell Univ.*, 192 A.D.2d 857 (3d Dep't 1993) (holding that a supervisor could not be held liable for assault perpetrated by employees without evidence of overt act).  Nothing that Defendants' security personnel had told Mr. Oakley, either on February 8, 2017 or in his prior interactions with them, indicated that, even if Dolan had ordered Oakley be told to leave the Garden, that he had played a role in their decision to use unreasonable force to effectuate that removal.[4]

---

[4]     To the contrary, Defendants' security personnel did not use any violence on the previous occasion when Dolan had ordered them to follow Oakley.

It was only upon receiving the Videos submitted by Defendants in connection with their motion to dismiss that Plaintiff had evidence concerning Dolan's active participation in, and approval of, the unreasonable force used against Oakley, warranting naming him as an individual defendant as to these claims.  What those Videos show – Dolan's signal to his large contingent of gathered security personnel, those security guards' response to immediately converge as a group and surround Oakley and then use immediate force, clearly demonstrate that Defendants assaulted Oakley at Dolan's direction.  Given that Dolan owns the Knicks, and employs the security guards who subjected Plaintiff to unreasonable force, he could have intervened when he saw the force being used, especially since he was seated merely feet away.  That he did not, and instead gave the security guards a thumbs-up gesture following the use of force, further demonstrates that he approved of the security guards' use of force.

Second, Defendants have argued that Plaintiff waited too long to seek leave to file a Second Amended Complaint and should have done so after receiving the videos in connection with their motion to dismiss.  *See* Dkt. No. 94 at pp. 12-13.  As a threshold matter, the Second Circuit has held that "delay, standing alone, is an insufficient basis to deny leave to amend." *U.S. For & on Behalf of Mar. Admin. v. Cont'l Illinois Nat. Bank & Tr. Co. of Chicago*, 889 F.2d 1248, 1254 (2d Cir. 1989).  As a result, courts allow motions to amend after the close of discovery and even trial.  *See, e.g., Eassa v. Hartford Fire Ins. Co.*, No. 90-CV-321, 1991 WL 255111, at *8 (N.D.N.Y. Nov. 29, 1991), *aff'd,* 979 F.2d 845 (2d Cir. 1992).  Moreover, the Supreme Court considered, and rejected, precisely this argument in *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538 (2010).  In *Krupski*, the Court of Appeals refused to allow the plaintiff to file the amended complaint because he "had unduly delayed in seeking to file, and in eventually

filing, an amended complaint." *Id*. at 552.  As the Supreme Court explained, there is no basis for

a finding that:

> a plaintiff's dilatory conduct can justify the denial of relation back
> under Rule 15(c)(1)(C) . . . The Rule plainly sets forth an exclusive
> list of requirements for relation back, ***and the amending party's
> diligence is not among them***. Moreover, the Rule mandates relation
> back once the Rule's requirements are satisfied; it does not leave the
> decision whether to grant relation back to the district court's
> equitable discretion.

*Id*. at 552-553 (emphasis added).

Additionally, any such argument ignores the facts surrounding Plaintiff's decision to

amend his original complaint prior to Defendants' motion to dismiss.  At the pre-motion

conference for Defendants' motion to dismiss, Plaintiff originally stated that he intended to wait

to amend his complaint until after Defendants had filed their motion to dismiss.  Dkt. No. 51-1 at

p. 46.  Notwithstanding the fact that Rule 15(a) expressly permits Plaintiff the right to wait to

amend until after Defendants have moved to dismiss, the Court indicated that doing so would

potentially open him up to the possibility of sanctions.  *Id*. (noting that Defendants could "move

for damages or just the cost of briefing something twice" in the event that Plaintiff amended his

Complaint after Defendants filed their motion to dismiss).  Defendants responded by stating that

they would seek sanctions in the event that Plaintiff's amendment required them to brief their

motion twice.  *Id*. at p. 48.  Even if the Court did not state that it would definitively award

sanctions in that circumstance, even the *possibility* of having Plaintiff pay Defendants'

costs/damages in this case forced Plaintiff to agree to amend the original complaint prior to

receiving Defendants' motion to dismiss as long as Defendants did not make new arguments in

their motion papers.  *Id*. at p. 51.  Having committed to the Court that he would not amend after

Defendants filed their motion to dismiss unless the motion presented new arguments, Plaintiff

did not dare risk sanctions by seeking to file another motion simply on the basis of new evidence. Instead, Plaintiff remained true to his word and forestalled seeking any amendment until such time as the motion to dismiss was finally adjudicated.

Third, contrary to what Defendants have claimed, Plaintiff's request to amend is not barred by the law of the case doctrine based on this Court's earlier ruling denying him leave to amend in the context of his motion to dismiss.  Under the law of the case doctrine, "when a court has *ruled on an issue*, *that decision* should generally be adhered to by that court in subsequent stages in the same case." *United States v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir. 2002) (citation omitted) (emphasis added).  Here, in his opposition to the motion to dismiss, Oakley stated, that "to the extent the Court *finds deficiencies in any of Plaintiff's claims*, Plaintiff respectfully requests the right to amend his pleadings *to address any such deficiencies*."  *See* Dkt. No. 50 at p. 40, n.19 (emphasis added).  Thus, this Court only denied Oakley's motion to amend to the extent that he sought to address any *deficiencies* in his claims in the Amended Complaint.  Plaintiff never asked for leave to amend his complaint to assert new claims against any of the Defendants or to clarify and augment the original assault and battery claims based on the Videos, nor has the Court ever ruled on such a motion such that it could be fairly characterized as the law of the case.

To the contrary, the law of the case argues in favor of permitting Plaintiff to proceed with his motion to amend.  As the Second Circuit explained in reversing this Court's decision granting summary judgment, "additional discovery could have yielded additional videos showing other camera angles, as well as helpful eyewitness testimony to overcome the limitations in the video record and *give context*."  *Oakley v. Dolan*, 2023 WL 3263618, at *3 (emphasis added).  Dolan's conversations with his security personnel and why they approached Oakley are all part of the "context" that the Second Circuit has found to be relevant to this case.  All of this information is

15

critical in making the determination of whether "the defendants gave Oakley a reasonable opportunity to depart," which is critical to adjudicating Plaintiff's assault and battery claims.

Fourth, the doctrine of *res judicata* similarly has no bearing on the instant motion to amend.  Under *res judicata* "a valid, *final judgment on the merits* is a bar to a subsequent action between the same parties, or those in privity with them, *upon the same claim or demand*." *N.L.R.B. v. United Techs. Corp.*, 706 F.2d 1254, 1259 (2d Cir. 1983) (emphasis added).  In the instant case, there is no final judgment on the assault and battery claims, and certainly not as they apply to Dolan.  Those claims were specifically twice remanded by the Second Circuit for further proceedings.  Contrary to what Dolan now claims, there is no binding legal decision in this case that operates as a bar to adding Dolan as a defendant for the assault and battery causes of action.

## VI.    PLAINTIFF'S PROPOSED AMENDMENT IS TIMELY

Any claim by Dolan that Plaintiff's allegations seeking to hold him liable for the assault and battery causes of action in this case are untimely is wholly without merit in light of the jurisprudence attendant to the relation back doctrine.  Under the relation back doctrine, an amended complaint adding a new party relates back to the date of the original pleading under Rule 15(c)(1), if the following conditions are met: (1) "[T]he claim must have arisen out of conduct set out in the original pleading;" (2) "the party to be brought in must have received such notice that it will not be prejudiced in maintaining its defense;" (3) "that party should have known that, *but for a mistake of identity*, the original action would have been brought against it;" and (4) "the original complaint [was] filed within the limitations period."  *Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013) (quoting *Barrow v. Wethersfield Police Dept.*, 66 F.3d 466, 468–69 (2d Cir. 1995)).  The purpose of the relation back doctrine is to "balance the interests of the defendant protected by the statute of limitations with the preference expressed in the Federal

Rules of Civil Procedure in general, and Rule 15 in particular, for resolving disputes on their merits." *Krupski*, 560 U.S. at 550 (first citing Advisory Committee's 1966 Notes 122; and then citing 3 Moore's Federal Practice §§ 15.02[1], 15.19[3][a] (3d ed. 2009)); *see also Foman*, 371 U.S. at 181 (stating that decisions regarding the Federal Rules of Civil Procedure should not hang on "mere technicalities").

The first, third and fourth requirements are plainly satisfied here.  First, Dolan's potential liability for Plaintiff's assault and battery claims, under both an aiding and abetting theory or a concerted action theory, plainly arise out of the same event that gave rise to Plaintiff's original complaint.

Second, there is no question that Dolan received notice of these claims.  Defendants' security personnel all work for Dolan and initiated the confrontation with Plaintiff after consulting with Dolan, who thereafter approved of their conduct by giving a "thumbs up" gesture.  Thus, Dolan's security personnel were acting in furtherance of their job duties.  *See Sims v. Bergamo*, 3 N.Y.2d 531, 535 (N.Y. 1957) (employee's perpetration of assault in furtherance of "maintenance of peace and order" in owner's property "would have been pursuant to unexpressed rules and in the performance of duties enjoined upon him by his employment and in the furtherance of his employer's interests").  Given that Dolan was named as a defendant in the original complaint, there is no question that he was given notice of Plaintiff's intent to hold all those responsible for his assault liable.  Finally, it is undisputed that Plaintiff's initial complaint, which named Dolan as a defendant for his role in the events of this case, was timely filed.  *See* Dkt. No. 1.

The third requirement is also satisfied.  *See* Fed. R. Civ. P. 15(c)(1)(C)(ii).  That is, Dolan "should have known that the original action would have been brought against him but for a

mistake of identity." *Ceara*, 916 F.3d at 211.  As the Supreme Court has held, Rule

15(c)(1)(C)(ii) focuses on whether the *defendant* "knew or should have known that it would have

been named as a defendant but for an error." *Krupski*, 560 U.S. at 548 ("Rule 15(c)(1)(C)(ii)

asks what the prospective *defendant* knew or should have known . . .  not what the plaintiff knew

or should have known at the time of filing her original complaint.").

      Prior to filing his original and amended complaints, Plaintiff was unaware of Mr. Dolan's

role in the assault and battery perpetrated against him.  Instead, while he believed that Dolan

ordered him ejected from the Garden, he had no basis to plead that Dolan himself engaged in

sufficient conduct warranting holding him personally liable for the assault and battery.  *See infra*

at pp. 10-12.  It was only after Defendants moved to dismiss the Amended Complaint that

Plaintiff came into possession of evidence demonstrating that Dolan, too, engaged in sufficient,

overt conduct to be held liable for the assault and battery at issue in this case.

      These newly discovered facts are sufficient to constitute a "mistake concerning the proper

party's identity."  Fed. R. Civ. P. 15(c)(1)(C)(ii) ("Rule 15(c)(1)(C)(ii)").  As the Supreme Court

has explained, "a plaintiff might know that the prospective defendant exists but nonetheless

harbor a misunderstanding about his status or role in the events giving rise to the claim at issue."

*Krupski*, 560 U.S. at 549.  Nevertheless, "[t]hat kind of deliberate but mistaken choice does not

foreclose a finding that Rule 15(c)(1)(C)(ii) has been satisfied."  *Id*.  Here, prior to receiving the

Videos with Defendants' motion to dismiss, Plaintiff believed that Dolan had ordered him to be

ejected from the Garden but that the security personnel acted of their own volition in assaulting

Plaintiff.  The videos demonstrate sufficient facts to disclose that Dolan did not just command

his security personnel to ask Mr. Oakley to leave the Garden, but that he specifically indicated

that they should use unreasonable force in doing so, and subsequently approved of their use of

unreasonable force.  Accordingly, Plaintiff's newly proposed claims against Mr. Dolan properly

relate back to the original pleading.

This Court's decision in *Abdell v. City of New York*, 759 F. Supp. 2d 450 (S.D.N.Y.

2010), is instructive.  In *Abdell,* the defendants argued that *Krupski* did not allow a plaintiff to

add an additional defendant to a pending case.  *Id.* at 457.  This Court rejected that argument,

explaining that "careful review of the *Krupski* opinion, however, belies this narrow

understanding of a Rule 15(c) 'mistake.'"  *Id.* ("The Supreme Court expressly contemplated

relation back where a plaintiff knows the existence of a prospective defendant but lacks

knowledge of that defendant's liability at the time of filing").  This Court then explained that

where a plaintiff was not aware of a potential individual defendant's role in the underlying

unlawful conduct, she "committed a mistake within the meaning of Rule 15(c) as modified by

the *Krupski* decision."  *Id.* Similarly, in the instant case, as explained above, Plaintiff was

unaware of Dolan's role in the use of unreasonable force – the alleged assault and battery – at the

time he filed his Amended Complaint.  This mistake in the scope of Dolan's role in Oakley's

assault and battery claims was precisely the type of mistake that the relation back doctrine is

designed to address.  As a result, Oakley's claims concerning Dolan's individual liability in this

case are timely.

**VII.    DEFENDANTS WILL NOT SUFFER SUBSTAINTIAL (OR, INDEED, ANY)
PREJUDICE, AND THERE IS NO OTHER REASON PLAINTIFF SHOULD NOT
<u>BE GIVEN LEAVE TO AMEND</u>**

Even under Rule 15(a)'s less permissive standard for amendment, Plaintiff should be

permitted to file the SAC.  In connection with a request seeking leave to amend under Rule

15(a), defendants carry the burden of showing that additional claims will cause undue prejudice.

*See Pasternack v. Shrader*, 863 F.3d 162, 174 (2d Cir. 2017).  In examining if additional causes

of action will prejudice defendants, courts in the Second Circuit consider "whether the assertion of a new claim would (i) require defendants to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." *E.E.O.C. v. Nichols Gas & Oil, Inc.*, 518 F. Supp. 2d 505, 508 (W.D.N.Y. 2007). Plaintiff is not seeking to amend his complaint in bad faith or with a dilatory motive, but rather to simply add claims against Dolan that arise out of the same set of facts and allegations that have been pled in support of the other claims currently before the Court.

Here, the addition of Dolan as an individual defendant would not change the scope of discovery in this case at all. Whether Dolan is an individual defendant or not, he remains a witness to the assault and battery and had a conversation with one of the security guards who assaulted Plaintiff immediately prior to the assault. Thus, Dolan would need to be deposed, both to determine what he witnessed and what he was told by Defendants' security personnel and their intention to use unreasonable force, irrespective of whether or not he is a defendant.

Second, given the fact that discovery in this case has not even begun, there is no argument that adding Dolan as an individual defendant for Plaintiff's assault and battery claims would somehow prejudice Defendants or delay the case in any manner. *See, e.g., Presser v. Key Food Stores Co-op., Inc.*, 218 F.R.D. 53, 56 (E.D.N.Y. 2003) (finding no prejudice to the defendants where "although over twenty-one months has elapsed since Plaintiff filed this lawsuit, discovery has not yet begun and no trial date is set").

Third, preventing Plaintiff from filing the SAC would preclude him from bringing claims against Dolan for assault and battery in any forum. Indeed, it is the relation back doctrine that makes Oakley's claims against Dolan viable and timely *in this case*. Because the statute of

limitations for assault and battery in New York is only a year, Plaintiff cannot institute a new action in another court seeking to hold Dolan liable.  Thus, the only prejudice in this case would be incurred by Plaintiff, in the event that his motion to amend is denied.

<u>**CONCLUSION**</u>

For the foregoing reasons, Plaintiff respectfully requests that the Court grant leave to amend his complaint and accept the proposed SAC, and for such other and further relief as this Court deems just and proper.

Dated: July 24, 2023
      New York, New York

Respectfully Submitted,

**WIGDOR**

By: _____
      Douglas H. Wigdor
      Renan F. Varghese

85 Fifth Avenue
New York, New York 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845
dwigdor@wigdorlaw.com
rvarghese@wigdorlaw.com

**PETRILLO KLEIN & BOXER LLP**

By: ___/s/ Nelson A. Boxer_____
      Nelson A. Boxer

655 3rd Avenue, #22
New York, NY 10017
Telephone: (212) 370-0330
nboxer@pkbllp.com

*Counsel for Plaintiff*