

**Valdi Licul**
vlicul@wigdorlaw.com

August 19, 2024

**VIA ECF AND EMAIL**

The Honorable Richard J. Sullivan
United States District Court, Southern District of New York
40 Foley Square, Room 2104
New York, New York 10007

    Re:    Oakley v. MSG Networks, *et al.*; Civil Case No. 17-cv-06903 (RJS)

Dear Judge Sullivan:

We represent Plaintiff Charles Oakley ("Plaintiff" or "Oakley").  We write jointly with Defendants MSG Networks, Inc., Madison Square Garden Sports Corp., and Sphere Entertainment Group, LLC (collectively, "MSG" or the "Defendants") pursuant to Rule 2(G) of Your Honor's Individual Rules and Practices.  The parties have reached an impasse concerning two discovery issues described below.  The parties conferred on these issues on August 6, 2024.  Valdi Licul, John S. Crain, and Marcelo Tirano were present for Plaintiff, and Lauren Myers, Jessica Benvenisty, and Maria Henain were present for Defendants.

**I.**    **Plaintiff's Position**

On September 12, 2017, Oakley filed this action alleging, inter alia, that Defendants used unreasonable force to remove him from a sports arena.  Oakley v. Dolan, 980 F.3d 279, 280 (2d Cir. 2020).  On April 1, 2024, after two rounds of appeals, this Court granted Oakley permission to amend his complaint to add new facts that center primarily on James Dolan, MSG's executive chairman, Dkt. 158 at 8-10, including facts from which it is reasonable to infer that Dolan (1) "directed the security guards to remove Oakley from the stadium," id. at 4; (2) "directed security personnel to use force, if necessary," id.; and (3) "instructed or encouraged the use of excessive force."  Id. at 5. Oakley subsequently served discovery requests seeking to depose Dolan, as well as the production of relevant documents and communications involving Dolan.  Oakley has also sought documents from other witnesses Defendants identified as being involved in, or having knowledge of, relevant events.

    **A.**    **James Dolan**

Defendants have opposed Dolan's deposition on the grounds that he is an "apex witness" and therefore immune to a deposition.  They further contend that the Second Circuit's May 5, 2023



Summary Order, Oakley v. Dolan, No. 21-2939, 2023 WL 3263618 (2d Cir. May 5, 2023), somehow excludes him from the case. They are wrong.

Given the broad scope of discovery, "an order to vacate a notice of taking [of a deposition] is generally regarded as both unusual and unfavorable." Investment Properties Int'l, Ltd. v. IOS, Ltd., 459 F.2d 705, 708 (2d Cir. 1972). Indeed, "it is exceedingly difficult to demonstrate an appropriate basis for an order barring the taking of a deposition." Naftchi v. New York Univ. Med. Ctr., 172 F.R.D. 130, 132 (S.D.N.Y. 1997). Moreover, "[h]ighly-placed executives are not immune from discovery." Gen. Star Indem. Co. v. Platinum Indem. Ltd., 210 F.R.D. 80, 83 (S.D.N.Y. 2002) (citations omitted). To justify blocking the deposition of a highly placed executive, the court should examine "the likelihood that the individual possesses relevant knowledge, whether another source could provide identical information, the possibility of harassment, and the potential disruption of business." Scott v. Chipotle Mexican Grill, Inc., 306 F.R.D. 120, 122 (S.D.N.Y. 2015). However, "plaintiffs have no burden to show that the deponents have any relevant knowledge." In re Garlock, 463 F. Supp. 2d 478, 481 (S.D.N.Y. 2006). It is instead Defendants' burden to demonstrate the deponent's lack of relevant knowledge. See id.

Here, Defendants cannot carry their burden. As this Court has already acknowledged, Dolan is alleged to be a key participant in Oakley's removal and may, according to the pleadings, have instructed and directed security personnel to use excessive force on Oakley. Dkt. 158 at 5. This makes Dolan a crucial witness rather than a distant "apex" witness. This information is unique to Dolan, and Defendants have not even tried to show harassment or potential business disruption. There is, in short, no reason to give Dolan any kind of special protection from a deposition.

Further, the Second Circuit's May 5, 2023 Summary Order hardly precludes Dolan's deposition. Indeed, given Dolan's central role, including potentially having directed security personnel to use unreasonable force on Oakley, Dkt. 158 at 5, it would be virtually impossible to comply with the Second Circuit's directive to "sort out[], *what* exactly happened" and "whether the force used to eject Oakly was reasonable," Oakley, 2023 WL 3263618, at *3 (emphasis in original), without taking evidence from Dolan. As one example, if Dolan directed the manner of Oakley's removal based upon personal animosity and not, as Dolan has claimed publicly, because Oakley was allegedly acting abusively, that information would be critical in measuring the appropriate amount of force used. Moreover, Dolan's malice is certainly relevant to Oakley's request for punitive damages. Allam v. Meyers, 906 F. Supp. 2d 274, 292 (S.D.N.Y. 2012).

### B. Plaintiff is Entitled to Discovery from Witnesses Disclosed by Defendants

Oakley also sought relevant documents from Dolan and 15 other witnesses Defendants identified as persons who (1) gave statements about the February 8, 2017 incident; (2) participated in the removal of Oakley; and (3) purport to have witnessed Oakley being "abusive" (together, the "Interrogatory Witnesses"). Defendants consent to discovery from only one Interrogatory Witness



and unreasonably object to all 15 others and Dolan.[1]  Of the remaining 15 Interrogatory Witnesses, they have told us to choose only five.[2]  To date, they have refused to even run the ESI search terms or provide a hit report.

"Once any possibility of relevance sufficient to warrant discovery is shown, the burden shifts to the party opposing discovery to show the discovery is improper." Condit v. Dunne, 225 F.R.D. 100, 106 (S.D.N.Y. 2004).  While "burden" is an available objection, "general and conclusory objections as to . . . burden are insufficient to exclude discovery of requested information." King v. Habib Bank Ltd., No. 20 Civ. 4322 (LGS) (OTW), 2023 WL 3558773, at *2 (S.D.N.Y. Apr. 21, 2023) (citation omitted).  Such an objection must be stated, instead, "with . . . particularity." Holloway v. City of New York, No. 21 Civ. 3858 (AMD) (CLP), 2023 WL 6614599, at *10 (E.D.N.Y. Sept. 28, 2023).  With respect to ESI, for example, the objecting party must show that the information is "inaccessible" or "provide details on the burdens and costs that would result from providing the discovery."  Thomas v. City of New York, 336 F.R.D. 1, 3 (E.D.N.Y. 2020) (quoting 8 Arthur R. Wright & Charles Alan Miller et al., Federal Practice and Procedure § 2008.2 (3d ed. 2020)).

Here, Oakley has demonstrated the relevance of Dolan and the 15 remaining Interrogatory Witnesses. Dolan is the central actor in the events underlying this lawsuit and Defendants have admitted that the remaining Interrogatory Witnesses have relevant information.  Accordingly, Oakley's request to run (1) 35 search terms over four years for Dolan and (2) 26 terms over a 3-week period for the Interrogatory Witnesses is hardly disproportionate.  Moreover, conducting these searches using ESI methods will not pose any serious burden.  Defendants' conclusory objection that 15 is a large number and their refusal to provide a hit report (from which the parties could determine the actual number of responsive "hits") are woefully insufficient to block Oakley's access to important information.

## II.   Defendants' Position

### A.   Even Though Mr. Dolan Should Not Be a Custodian, Defendants Will Add Him If Plaintiff Is Willing to Compromise.

As discussed in detail below, Mr. Dolan is not a proper custodian.  Despite this, two weeks ago Defendants agreed to add Mr. Dolan as a custodian for an almost two-month period (February 7, 2017 to March 31[3]) if Plaintiff would agree to cull Plaintiff's unreasonable list of 20 custodians to

---

[1] Defendants also added two custodians to the list. Adding new custodians (who likely have information Defendants view as favorable) does nothing to resolve the issues raised here.
[2] Defendants offer to search Dolan for a three-month period if we agree to five Interrogatory Witnesses.  Since that is irrational, this condition on Dolan is irrational as well.
[3] Defendants have revised the end date offer to March 1, in light of Your Honor's order finding that this case is limited to an "isolated evening in 2017." Dkt. 174 at 5.


five.[4]  Plaintiff refused Defendants' offer and, while that offer still stands, if Plaintiff is unwilling to compromise then Plaintiff's request to search Mr. Dolan's emails for a four-year period is improper, unduly burdensome, and disproportionate to the needs of this case.

Principally, Mr. Dolan is not a proper custodian because he is not relevant to the remaining issue in the case—whether the force used to remove Oakley on February 8, 2017 was reasonable.  The only claims remaining are assault and battery, which are not pled against him, *Oakley v. Dolan*, 833 F. App'x 896, 898 (2d Cir. 2020), and Your Honor confirmed this case is limited to "a single instance of assault and battery on an isolated evening in 2017," Dkt. 174 at 5, in which Mr. Dolan played no part.  Oakley was "seated rows behind" Mr. Dolan, and there is no allegation that Mr. Dolan was involved in physically removing Oakley in any respect.  *Oakley*, 2023 WL 3263618, at *2–3; Dkt. 164 at ¶¶ 29, 32-35; *Vaigasi v. Solow Mgmt. Corp.*, 2016 WL 616386, at *13–14 (S.D.N.Y. Feb. 16, 2016) (denying motion to compel where "plaintiff's remaining claims arise out of three discrete events").  Plaintiff nevertheless demands that Defendants search Mr. Dolan's correspondence for a *four-year* period because he "potentially" and "may have" "directed security personnel" "to use excessive force on Oakley"—*supra* Section I.A—rank and untrue speculation.

Moreover, Plaintiff has failed to demonstrate that Mr. Dolan "would provide unique relevant information" or "unique responsive documents" that would not be encompassed by other custodians.  *Blackrock Allocation Target Shares v. Bank of N.Y. Mellon*, 2018 WL 2215510, at *9 (S.D.N.Y. May 15, 2018); *see also* Fed. R. Civ. P. 26(b)(2)(C)(i); *Assured Guar. Mun. Corp. v. UBS Real Est. Secs. Inc.*, 2013 WL 1195545, at *4–5 (S.D.N.Y. Mar. 25, 2013) (the "proposed custodian" did not "possess relevant documents" that were not already "within the custody of the named custodians.").  And, although Plaintiff wrongly speculates Mr. Dolan "may have" "instructed" security to use excessive force, even this counterfactual scenario would not bear on whether the force *actually used* in removing Oakley was reasonable.  Indeed, that Mr. Dolan is unlikely to have unique knowledge is evidenced by the fact that Plaintiff has (improperly) identified **19 other custodians** (which Defendants object to as explained below). Thus, Plaintiff's demand that Defendants run 35 search terms over a four-year period of Mr. Dolan's emails is overbroad; as this Court recently found, a request spanning a period of years "is disproportional to the needs of this case," "in which Oakley asserts a single instance of assault and battery on an isolated evening in 2017."  *See* Dkt. 174 at 5.

Again, Defendants' offer to add Mr. Dolan as a custodian still stands, but Plaintiff should be required to limit its custodian list to a reasonable number of five custodians, not nineteen.

---

[4] Plaintiff's initial proposal included eight custodians: (1) Mr. Dolan (a linear review of Mr. Dolan's entire inbox from February 7–14, 2017, and a search of his inbox with search terms from February 15, 2017 to present); and (2) seven former or current employees, with search terms, from February 10, 2017 to March 1, and an unlimited placeholder for unspecified "Defendant employees." Plaintiff modified that placeholder to include 20 custodians, including an NYPD officer, whom Defendants do not have documents for, which brings the disputed number to 19.


### B. Mr. Dolan Should Not Be a Deponent.

On July 18, 2024, Plaintiff noticed a deposition of Mr. Dolan for September 19. During a meet-and-confer on August 6, Defendants explained that taking the deposition of MSG's highest-level executive—its Chairman and Chief Executive Officer—especially given that he is not relevant to the "single instance of assault and battery" at issue, is improper. Dkt. 174 at 5. Mr. Dolan, an "apex witness," is "safeguarded from depositions" unless "the executive has unique evidence, personal knowledge of the claims at issue, and other witnesses are incapable of providing testimony about the conduct alleged." *Harapeti v. CBS Television Stations Inc.*, 2021 WL 3932424, at *2 (S.D.N.Y. Sept. 2, 2021); *Chevron Corp. v. Donziger*, 2013 WL 1896932, at *1 (S.D.N.Y. May 7, 2013) ("courts give special scrutiny to requests to depose high-ranking corporate and governmental officials"). Plaintiff has failed to meet his burden to show Mr. Dolan has unique knowledge that other witnesses are incapable of conveying.

Furthermore, Mr. Dolan's status as the alleged "direct[or]" of security officers "does not immediately confer the requisite 'unique knowledge' required to defeat the apex doctrine." *Amaya v. Ballyshear LLC*, 2021 WL 12101052, at *2 (E.D.N.Y. Sept. 30, 2021). Plaintiff noticed eight other depositions, demonstrating that he understands other lower-level individuals have knowledge of the "single instance of assault and battery" still at issue in this case. Dkt. 174 at 5; *see, e.g.*, *Six W. Retail Acquisition v. Sony Theatre Mgmt. Corp.*, 203 F.R.D. 98, 102 (S.D.N.Y. 2001) (it is "appropriate to preclude a redundant deposition of [a] highly-placed executive while allowing other witnesses with the same knowledge to be questioned."). The Court should reject Plaintiff's request to depose Mr. Dolan as yet another attempt to improperly re-insert him into the case. *Donziger*, 2013 WL 1896932, at *1 ("The rancorous history of this litigation lends credibility to Chevron's concern that the deposition has been noticed for purposes of harassment.").[5]

### C. Plaintiff's Remaining Proposed Custodians are Overbroad and Unduly Burdensome.

Plaintiff's initial proposal of custodians consisted of eight individuals with an unlimited placeholder for additional employees, which he later used to bring the number to 20.[6] Despite Plaintiff's request for 20 custodians where MSG requested one, MSG suggested, as a means of compromising, that the following individuals serve as custodians for a time period of February 8, 2017 to March 1, 2017: (1) Barry Watkins (former EVP and Chief Communications Officer); (2) a security or operations person identified by Plaintiff; (3) Lawrence Burian (former EVP, General Counsel); (4) Marc Schoenfeld (former SVP and Associate General Counsel); and (5) James Dolan.[7] Defendants' proposal was meant to include custodians who "are likely to have relevant

---

[5] If Mr. Dolan is deposed, he should not be deposed until any other lower-level employees allegedly involved in the "single instance of assault and battery," Dkt. 174 at 5, are deposed.

[6] Contrary to Plaintiff's claim, identifying individuals in Rule 26(a) disclosures and Local Rule 33.3(a) interrogatories is much broader than custodians for ESI. *Compare* Fed. R. Civ. P. 26(a)(1)(A)(i) ("individual likely to have discoverable information") and L.R. 33.3(a) (interrogatories are "names of witnesses with knowledge of information relevant to the subject matter of the action,") *with Blackrock*, 2018 WL 2215510, at *9 (requiring a showing of "unique relevant information" to add custodians).

[7] Since Messrs. Burian and Schoenfeld were in-house MSG lawyers, Defendants offered to search their inboxes "for a cabined set of documents … includ[ing] non-privileged, factual information/witness accounts about Oakley's



Hon. Richard J. Sullivan
August 19, 2024
Page 6

information" but "eliminat[e] custodians [] with redundant information," consistent with F.R.C.P. 26(b).  *Raine Grp. LLC v. Reign Cap., LLC,* 2022 WL 538336, at *2 (S.D.N.Y. Feb. 22, 2022); *Stinson v. City of New York*, 2015 WL 4610422, at *4 (S.D.N.Y. July 23, 2015).  Moreover, this proposal would limit the undue burden on Defendants to search 19 custodial files.[8]  *In re Morgan Stanley Mortgate Pass-Through Certificates Litig.*, 2013 WL 4838796, at *2 (S.D.N.Y. Sept. 11, 2013) ("[P]laintiffs have not made a sufficient showing that the burden of review [] would justify expanding the search to include these dozens of additional custodians.").

Plaintiff rejected MSG's proposal outright and did not propose any further narrowing of its custodial list.  This response is not a good faith attempt to narrow the party's dispute with respect to custodians.  Dkt. 174 at 4 ("Oakley has therefore failed to meet his burden to 'make a *prima facie* showing that the discovery sought is more than merely a fishing expedition.") (*citing C.K. through P.K. v. McDonald*, 345 F.R.D. 262, 266 (E.D.N.Y. 2023)).  Again, as a means of compromising, Defendants reiterate their proposal of the five custodians and date range listed above (with reasonable search parameters applied).

We thank the Court for its time and attention to this matter.

Respectfully submitted,

Valdi Licul

cc:  All Counsel of Record (*via* ECF)

---

removal … provided that doing so would not waive the attorney-client privilege." Defendants did not propose these individuals because they would have "favorable" information, but because they likely possess relevant documents.

[8] Defendants' review of which custodians may have relevant documents is ongoing, but Defendants should not have to bear this burden when Plaintiffs have failed to show that each proposed custodian possess unique, relevant knowledge.  *See, e.g.*, *Blackrock*, 2018 WL 2215510, at *9.  Defendants also have not "refused" to run search terms. The parties are negotiating over terms, but it is more efficient and less burdensome to settle on custodians initially.