UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHARLES OAKLEY,

                Plaintiff,

-v-

MSG NETWORKS, INC., *et al.*,

                Defendants.

No. 17-cv-6903 (RJS)
MEMORANDUM AND ORDER

RICHARD J. SULLIVAN, Circuit Judge:

      Before the Court is the parties' joint letter regarding plaintiff Charles Oakley's proposed deposition of James Dolan, the executive chairman and chief executive officer of MSG Networks, Inc., Madison Square Garden Sports Corp., and Sphere Entertainment Group, LLC (collectively, the "MSG defendants"). (Doc. No. 178-1.) Oakley also seeks document production from Dolan and fifteen other witnesses "who (1) gave statements about the February 8, 2017 incident [during which Oakley was forcibly removed from Madison Square Garden]; (2) participated in the removal of Oakley; and (3) purport to have witnessed Oakley being abusive (together, the 'Interrogatory Witnesses')." (*Id.* at 2.) The MSG defendants object to the deposition of Dolan as well as any document production from him, and consent only to provide documents from one of the Interrogatory Witnesses. For the reasons set forth below, Oakley's motion to compel Dolan's deposition is GRANTED; Oakley's motion to compel document production from Dolan is GRANTED in part and DENIED in part; and Oakley's motion to compel document production from the Interrogatory Witnesses is GRANTED to the extent these individuals witnessed Oakley being "abusive," witnessed his removal, or participated in his removal.

I.  **Background**

This case stems from a 2017 incident at Madison Square Garden ("MSG") in which Oakley was forcibly removed from a New York Knicks basketball game. Shortly thereafter, Oakley brought a number of civil claims against the MSG defendants and Dolan. The defendants moved to dismiss the case in its entirety for failure to state a claim (Doc. No. 41), and the Court granted that motion (Doc. No. 68). The Second Circuit affirmed the Court's ruling with respect to all but Oakley's assault and battery claims, which named only the MSG defendants. *See Oakley v. Dolan*, 833 F. App'x 896, 902 (2d Cir. 2020); *Oakley v. Dolan*, 980 F.3d 279, 284 (2d Cir. 2020).

On remand, the MSG defendants moved for summary judgment on the assault and battery claims (Doc. No. 102), while Oakley simultaneously moved for leave to file a second amended complaint to add new claims against Dolan (Doc. No. 106). In November 2021, the Court granted the MSG defendants' motion for summary judgment and denied Oakley's motion to amend as futile. (Doc. No. 121.) In May 2023, the Second Circuit vacated the Court's grant of summary judgment and remanded the case for, among other things, reconsideration of Oakley's motion to amend. *See Oakley v. Dolan*, No. 21-2939, 2023 WL 3263618, at *3 (2d Cir. May 5, 2023).

Following the Second Circuit's decision, Oakley renewed his motion for leave to file a second amended complaint. (Doc. No. 148.) The Court granted the motion to the extent that the proposed amended complaint alleged new facts in support of the claims against the MSG defendants, but denied the motion insofar as it sought to add Dolan as a defendant, since "an amendment adding a new defendant without substituting a previous, improperly named defendant does not relate back under Rule 15(c)(1)(C)," making the new claims against Dolan time-barred. (Doc. No. 158 at 8.) Thereafter, the MSG defendants filed an answer (Doc. No. 166), and the parties commenced discovery on the only remaining claims in the case: Oakley's assault and battery claims against the MSG defendants.

The parties have now reached an impasse on various discovery disputes. Oakley seeks to depose Dolan, which the MSG defendants oppose on the grounds that Dolan is an "apex witness" who does not have "unique knowledge that other witnesses are incapable of conveying." (Doc. No. 178-1 at 4.) Oakley has also requested the production of emails from multiple MSG witnesses. Initially, Oakley requested discovery from eight specified custodians and numerous unspecified ones, including: "(1) Mr. Dolan (a linear review of Mr. Dolan's entire inbox from February 7–14, 2017 to present); and (2) seven former or current employees, with search terms, from February 10, 2017 to March 1, and an unlimited placeholder for unspecified 'Defendant employees.'" (*Id.* at 3 n.4.) Oakley later modified that placeholder to name twenty MSG custodians and to limit the search of Dolan's emails to a four-year period. (*See id.* at 3 & n.4.) The MSG defendants now object on the grounds that Dolan is not a proper custodian, the proposed four-year search period for Dolan's emails is overbroad, and searching the emails of the remaining custodians will pose an "undue burden." (*Id.* at 4–5.) They instead offered a counterproposal identifying as custodians five individuals – "(1) Barry Watkins (former EVP and Chief Communications Officer); (2) a security or operations person identified by [p]laintiff; (3) Lawrence Burian (former EVP, General Counsel); (4) Marc Schoenfeld (former SVP and Associate General Counsel); and (5) James Dolan" – who would produce relevant emails sent or received between February 8, 2017 and March 1, 2017. (*Id.* at 5.)

On August 6, 2024, the parties conferred on these issues. (*See id.* at 1.) Unable to reach an agreement, the parties submitted a joint letter to the Court on August 19, 2024, describing their respective positions on the disputed discovery requests. (*See id.*)

II.     **Legal Standards**

Rule 26 provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case," considering, among other things, "the parties' relative access to relevant information," "the importance of the

3

discovery in resolving the issues," and "whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Rule 26 further provides that "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable." *Id.*

"The party seeking discovery bears the initial burden of proving the discovery is relevant." *In re Subpoena to Loeb & Loeb LLP*, No. 19 Misc. Civ. 241 (PAE), 2019 WL 2428704, at *4 (S.D.N.Y. June 11, 2019). Once that party has shown relevance, "it is up to the responding party to justify curtailing discovery." *Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of N.Y.*, 284 F.R.D. 132, 135 (S.D.N.Y. 2012); *see also State Farm Mut. Auto. Ins. Co. v. Fayda*, No. 14-cv-9792 (WHP) (JCF), 2015 WL 7871037, at *2 (S.D.N.Y. Dec. 3, 2015) ("[T]he party resisting discovery has the burden of showing undue burden or expense."). However, "[g]eneral and conclusory objections as to relevance, overbreadth, or burden are insufficient to exclude discovery of requested information." *Lindsey v. Butler*, No. 11-cv-9102 (ER), 2017 WL 4157362, at *3 (S.D.N.Y. Sept. 18, 2017).

Recognizing "the possibility of business disruption and the potential for harassment" of senior executives, courts may properly scrutinize "requests to depose high-ranking corporate . . . officials, who are sometimes referred to as 'apex witnesses.'" *Chevron Corp. v. Donziger*, No. 11-cv-0691 (LAK) (JCF), 2013 WL 1896932, at *1 (S.D.N.Y. May 7, 2013). Nevertheless, "senior executives are not exempt from deposition, and because principles relating to apex witnesses are in tension with the broad availability of discovery, it is important to excuse a witness from giving testimony only in compelling circumstances." *Id.* (internal citations omitted). Indeed, "it is exceedingly difficult to demonstrate an appropriate basis for an order barring the taking of a deposition." *Naftchi v. N.Y. Univ. Med. Ctr.*, 172 F.R.D. 130, 132 (S.D.N.Y. 1997). The party seeking the deposition has "no burden to show that the deponents have any relevant knowledge." *Scott v. Chipotle Mexican Grill, Inc.*, 306 F.R.D. 120, 122 (S.D.N.Y. 2015). Rather, the opposing party "bears the burden of proving that the proposed deponent has nothing to contribute." *Speadmark, Inc. v. Federated Dep't Stores*,

*Inc.*, 176 F.R.D. 116, 118 (S.D.N.Y. 1997). In deciding whether to allow the deposition of a corporate executive, courts may consider "the likelihood that the individual possesses relevant knowledge, whether another source could provide identical information, the possibility of harassment, and the potential disruption of business." *Scott*, 306 F.R.D. at 122.

### III.   Discussion

#### A.   Deposition of James Dolan

The MSG defendants object to Dolan's deposition because "[p]laintiff has failed to meet his burden to show Mr. Dolan has unique knowledge that other witnesses are incapable of conveying." (Doc. No. 178-1 at 4.) But the defendants misunderstand which party bears the burden here. It is the *defendants* who must show that Dolan has "nothing to contribute" to this litigation, *Speadmark*, 176 F.R.D. at 118, and it is by no means clear that Dolan "do[es] not possess information relevant to [Oakley's] claims" or that he only "posses[es] information that duplicates the information" that would be provided by lower-level MSG security officials. *Gen. Star Indem. Co. v. Platinum Indem. Ltd.*, 210 F.R.D. 80, 83 (S.D.N.Y. 2002). In fact, it appears obvious that Dolan possesses information that is relevant to Oakley's claims and cannot be obtained from any other witness.

At the most basic level, Dolan was an eyewitness to the removal of Oakley and can provide personal observations as to Oakley's behavior that evening and the force used to remove him. Additionally, Oakley has alleged that, moments before his removal, Dolan "called over a security guard that he employed and conversed with the security guard," who then spoke with Oakley. (Doc. No. 164 ¶¶ 32–33.) This means that Dolan is one of only two people who can attest to the contents of that conversation. *See Markowitz v. Precipart Corp.*, No. 20-cv-5033 (GRB) (JMW), 2022 WL 1508638, at *2 (E.D.N.Y. Apr. 15, 2022) (permitting the deposition of a high-ranking corporate executive when there were "one-on-one meetings/conversations . . . to which only he could testify"). Likewise, Oakley alleges that "Dolan signaled to the same security guard . . . [by] pointing

5

downwards with his right index finger" and that "[i]n response to Dolan's gesture, the security guard radioed to other security personnel at MSG and a large group of security personnel proceeded to converge on Mr. Oakley." (Doc. No. 164 ¶¶ 34–35.) Only Dolan can explain whether he signaled the guard and, if so, what his signal was intended to convey. All this information is relevant to determining whether the amount of force used was reasonable. And even if, as the MSG defendants assert, Dolan was not involved with Oakley's removal that evening, "a claim that the witness lacks knowledge is subject to testing by the examining party." *Consol. Rail Corp. v. Primary Indus. Corp.*, No. 92-cv-4927 (PNL), 1993 WL 364471, at *1 (S.D.N.Y. Sept. 10, 1993).

In response to Oakley's proposal, the MSG defendants point to the history of this litigation, alluding to concerns of harassment. But there is no indication that the request to depose Dolan is merely designed to harass, particularly since Dolan's involvement that evening is relevant to understanding what the security guards did when removing Oakley from the arena. And even when litigation involves a "rancorous history," courts have still permitted depositions of apex witnesses who have "relevant knowledge," like Dolan does here. *Donziger*, 2013 WL 1896932, at *1.

In sum, Dolan is a far cry from the prototypical apex witness, who sits removed from the key facts of the dispute. Dolan had a courtside seat to the action here. He likely possesses relevant knowledge that cannot be obtained from other witnesses, and most importantly, the MSG defendants have failed to convincingly show that his deposition will result in harassment or potential disruption of the business of MSG. Oakley's motion to depose James Dolan is therefore GRANTED.

### B. Document Production from James Dolan

Oakley has also requested that the MSG defendants run "35 search terms over four years for Dolan." (Doc. No. 178-1 at 3.) The MSG defendants object that "Mr. Dolan is not a proper custodian because he is not relevant to the remaining issue in the case" – that is, whether the use of force against Oakley was reasonable. (*Id.*) But as outlined above, Dolan likely has relevant information given that

6

he allegedly ordered Oakley's removal, conferred with the lead security guard before the removal, and presumably witnessed what unfolded thereafter.

The MSG defendants alternatively argue that the proposed four-year search period for Oakley's emails is excessive. The Court agrees. As previously noted, "Oakley asserts a single instance of assault and battery on an isolated evening in 2017." (Doc. No. 174 at 5.) Oakley has not articulated how Dolan's emails from years after the incident are likely to yield evidence concerning whether the MSG defendants used reasonable force when removing Oakley from MSG on the night in question. He has therefore failed to "make a *prima facie* showing that the discovery sought is more than merely a fishing expedition." *C.K. ex rel. P.K. v. McDonald*, 345 F.R.D. 262, 266 (E.D.N.Y. 2023) (internal quotation marks omitted). Indeed, Oakley has offered no justification as to why he is seeking to review Dolan's emails for a four-year period when he is only seeking three weeks' worth of emails for the remaining Interrogatory Witnesses. At this point in the litigation, Dolan is nothing more than a fact witness, just like the remaining Interrogatory Witnesses, so there is no apparent reason to treat them differently for discovery purposes. And, as this Court has previously ruled, even if Dolan's subsequent emails during the four-year period were somehow relevant to Oakley's claims of assault and battery, such extensive discovery would be disproportional to the needs of this case. (*See* Doc. No. 174 at 5.)

Accordingly, any searches of Dolan's emails must be confined to the same period as the searches of the other Interrogatory Witnesses' emails, namely from February 8, 2017 to March 1, 2017. Oakley's motion to compel production from James Dolan is therefore GRANTED in part and DENIED in part.

### C. Document Production from the Fifteen Interrogatory Witnesses

Finally, Oakley has requested that the defendants run "26 terms over a 3-week period for the Interrogatory Witnesses." (Doc. No. 178-1 at 3.) The Interrogatory Witnesses are fifteen individuals

who "(1) gave statements about the February 8, 2017 incident; (2) participated in the removal of Oakley; and (3) purport to have witnessed Oakley being abusive." (*Id.* at 2.) It is unclear to the Court what Oakley means by witnesses who "gave statements about the February 8, 2017 incident." (*Id.*) To the extent that Oakley intends the three listed categories to cover all individuals who either witnessed him allegedly being abusive, witnessed his removal, or participated in his removal, then Oakley has made a *prima facie* showing of relevance. The observations and recollections of all such individuals would shed light on whether the force used to remove Oakley was reasonable.

      The MSG defendants object to this requested production on the grounds that it is overbroad and unduly burdensome. But once again they "have not articulated anything more than general statements that allowing discovery from the additional custodians would cause an undue burden. Defendants do not provide any evidence or specific factual allegations to support their assertion that discovery from the additional custodians would unduly add to the cost or time needed." *Thomas v. City of New York*, 336 F.R.D. 1, 3 (E.D.N.Y. 2020) (internal quotation marks omitted). For example, the MSG defendants have not even provided a hit report identifying the number of responsive records for Oakley's proposed search terms to help illustrate the potential burden imposed by his request. *See Black Love Resists in the Rust ex rel. Soto v. City of Buffalo*, 334 F.R.D. 23, 29 (W.D.N.Y. 2019) ("[Defendants] have not quantified that burden in terms of the number of documents subject to collection and review or the amount of time and manpower that would be reasonably required to comply with the requests." (internal quotation marks omitted)). "Given the general importance of eyewitness testimony and the lack of evidence of unusual burden," Oakley's requested document production is "not disproportional to the needs of the case under Rule 26(b)(1)." *Medina v. County of Los Angeles*, No. 21-cv-05554-DMG, 2022 WL 16847547, at *3 (C.D. Cal. Oct. 4, 2022).

Oakley's motion to compel production from the Interrogatory Witnesses is therefore GRANTED to the extent that these custodians are individuals who witnessed Oakley allegedly being abusive, witnessed his removal, or participated in his removal.

\* \* \*

For the reasons stated above, IT IS HEREBY ORDERED THAT Oakley's motion to depose James Dolan is GRANTED.  Furthermore, Oakley's motion to compel production of documents from Dolan and the Interrogatory Witnesses is GRANTED in part and DENIED in part.  The Clerk of Court is respectfully directed to terminate the motion pending at Doc. No. 178.

SO ORDERED.

Dated:     September 10, 2024
           New York, New York

_____
RICHARD J. SULLIVAN
UNITED STATES CIRCUIT JUDGE
Sitting by Designation