**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------X

CHARLES OAKLEY,                            :

                                      :

                   Plaintiff,      :    Civil Case No.: 17-cv-6903 (RJS)

                                        :

            v.                      :

                                        :

JAMES DOLAN, in his individual and professional  :
capacities, MSG NETWORKS, INC., THE MADISON  :
SQUARE GARDEN COMPANY and MSG SPORTS &  :
ENTERTAINMENT, LLC,                  :

                                        :

                   Defendants.   :

------------------------------------------------------------------------X

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'**
**<u>MOTION FOR RECONSIDERATION</u>**

**WIGDOR LLP**

Douglas H. Wigdor
Valdi Licul
John S. Crain

85 Fifth Avenue
New York, New York 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845
dwigdor@wigdorlaw.com
vlicul@wigdorlaw.com
jcrain@wigdorlaw.com

**PETRILLO KLEIN & BOXER LLP**

Nelson A. Boxer
Marcelo Triana

655 Third Avenue, #22
New York, New York 10017
Telephone: (212) 370-0330
nboxer@pkbllp.com
mtriana@pkbllp.com

*Counsel for Plaintiff*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................ ii

RELEVANT BACKGROUND .............................................................................................1

DISCUSSION .......................................................................................................................2

I.      Standard For Reconsideration .................................................................................2

II.     The Court Should Strike Dolan's Motion ...............................................................3

III.    Defendants Fail to Establish Prima Facie Entitlement to Reconsideration .........4

IV.     While the Court Need Not Reach the Merits, Defendants Are Also Wrong on the
        Merits .......................................................................................................................5

        A.      The Court Was Correct about the Relevance of Dolan's Testimony........................5

        B.      The Court was Correct About the Inapplicability of the Apex Doctrine ................7

V.      Defendants' New "Evidence" Makes No Difference to the Court's Decision ...................9

VI.     Defendants' Request for a Protective Order, Court Supervision or the Appointment of
        a Special Master Are Meritless ............................................................................10

CONCLUSION....................................................................................................................10

# TABLE OF AUTHORITIES

Cases                                                                                    Page(s)

Cosby v. City of White Plains, New York, ex rel. City of White Plains,
    No. 04 Civ. 5829 (CLB) (GAY), 2007 WL 853203 (S.D.N.Y. Feb. 9, 2007)............................ 6

Diesel Props S.r.L. v. Greystone Bus. Credit II LLC,
    No. 07 Civ. 9580 (HB), 2008 WL 5099957 (S.D.N.Y. Dec. 3, 2008) ................................... 8, 9

Dunlop v. City of New York,
    No. 06 Civ. 0433 (RJS), 2008 WL 11514988 (S.D.N.Y. Sept. 16, 2008)................................. 2

Escoffier v. Whole Foods Mkt. Grp., Inc.,
    No. 22 Civ. 6588 (AS), 2024 WL 3012480 (S.D.N.Y. June 13, 2024)...................................... 6

Idan Computer, Ltd. v. Intelepix, LLC,
    No. 09 Civ. 4849 (SJF) (ARL), 2010 WL 3516167 (E.D.N.Y. Aug. 27, 2010)...................... 10

In re Health Mgmt. Sys. Inc. Sec. Litig.,
    113 F. Supp. 2d 613 (S.D.N.Y. 2000) ................................................................ 2

Nnebe v. Daus,
    No. 06 Civ. 4991 (RJS), 2022 WL 16840242 (S.D.N.Y. Oct. 14, 2022) ................................. 2

Noonan v. Luther,
    206 N.Y. 105, 99 N.E. 178 (1912)............................................................... 6, 7

People v. Johnson,
    61 N.Y.2d 932, 463 N.E.2d 368 (1984)...................................................................... 7

Quaco v. Liberty Ins. Underwriters, Inc.,
    No. 17 Civ. 7988 (RJS), 2019 WL 3564548 (Aug. 5, 2019) .................................................. 3

Saldarriaga v. Taradex, Inc.,
    20 Civ. 4099 (WFK), 2021 WL 54086 (E.D.N.Y. Jan. 6, 2021)............................................. 10

Shrader v. CSC Transp., Inc.,
    70 3d 255 (2d Cir. 1995) ............................................................................. 2

Secs. & Exch. Comm. v. Amerindo Invest. Advisors Inc.,
    No. 056 Civ. 5231 (RJS), 2015 WL 13678845 (S.D.N.Y. Aug. 14, 2015) ................................ 3

Tardif v. City of New York,
    991 F.3d 394 (2d Cir. 2021) ........................................................................ 6

U.S. CFTC.  v. Wilson,
   No. 13 Civ. 7884 (RJS), 2016 WL 9632961 (S.D.N.Y. Nov. 2, 2016) ...................................... 2

**Rules**

Rule 53(a)(1) ........................................................................................................................ 10

Plaintiff Charles Oakley submits this brief in opposition to Defendants' Motion for Reconsideration of the Court's discovery ruling dated September 10, 2024, Dkt. 181 ("Order"). For the reasons set forth below, the motion should be denied in its entirety.

## **RELEVANT BACKGROUND**

In response to a joint discovery dispute letter filed by the parties, on September 10, 2024, this Court compelled the deposition of Defendants' Chief Executive Officer, James Dolan (amongst other holdings). In doing so, the Court rejected Defendants' contention that Dolan should not be deposed because he is an "Apex witness," i.e. a high-ranking executive lacking relevant information. Defs.' Brf. in Supp. of Reconsideration, Dkt. 184 ("Defs.' Brf.") at 5-10.

Defendants now question two aspects of the Court's Order. First, they argue that the Court was wrong when it reasoned that Dolan's deposition was needed given the record evidence showing he ordered Oakley's removal from Madison Square Garden on February 8, 2017. They argue that this ruling improperly introduced a "subjective" element into the reasonability-of-force analysis, and that a jury will not be allowed to hear any evidence that Dolan ordered and approved of any excessive force used in removing Oakley. Defs.' Brf. at 5-7. Second, they argue that Dolan's mere presence at the game that night is not reason enough for him to be deposed—apparently ignoring that the Court's holding was based not on Dolan's "mere presence," but on the record evidence that Dolan ordered and approved the removal. Defs.' Brf. at 7-8. Finally, they claim that there is new evidence warranting reconsideration, in certain text messages Oakley received from one unidentified individual and his public relations agent. Defs.' Brf. at 9-10.

To the extent this is a motion for reconsideration at all, it is easily rejected, as set forth below. As to the first two points, Defendants are merely questioning and taking issue with the

Court's holding, which is not a proper basis for reconsideration.  They have already made their arguments as to the Apex doctrine, and the Court has already rejected those arguments.  To the extent they attempt new arguments, they were all available at the time of the original joint letter.  As to the third point, the new "evidence" proves nothing at all, because none of the attached texts were sent by Oakley, amongst other reasons.

## DISCUSSION

I.    **Standard for Reconsideration**

"[R]econsideration of a previous order is an extraordinary remedy to be employed sparingly in the interest of finality and conservation of scare judicial resources."  Dunlop v. City of New York, No. 06 Civ. 0433 (RJS), 2008 WL 11514988, at *2 (S.D.N.Y. Sept. 16, 2008) (quoting In re Health Mgmt. Sys. Inc. Sec. Litig., 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000)).  "The standard for granting [a motion for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."  Nnebe v. Daus, No. 06 Civ. 4991 (RJS), 2022 WL 16840242, at *1 (S.D.N.Y. Oct. 14, 2022) (brackets in original) (quoting Shrader v CSC Transp., Inc., 70 3d 255, 256-57 (2d Cir. 1995)).  Finally, while a court may also grant reconsideration "to correct clear error or prevent manifest injustice," U.S. CFTC. v. Wilson, No. 13 Civ. 7884 (RJS), 2016 WL 9632961, at * 1 (S.D.N.Y. Nov. 2, 2016) (internal citation omitted), this generally requires a showing of "controlling decisions or data that the court overlooked."  Id. (quoting Schrader, 70 F.3d at 257).  In short, "a motion for reconsideration 'may not be used to advance facts, issues, or arguments not previously presented to the Court, nor may it be used as a vehicle for

relitigating issues already decided by the Court." Quaco v. Liberty Ins. Underwriters, Inc., No. 17 Civ. 7988 (RJS), 2019 WL 3564548, at *1 (S.D.N.Y. Aug. 5, 2019) (cleaned up).

## II.    **The Court Should Strike Dolan's Motion**

As a threshold matter, this Court should strike Dolan's motion for flagrant violations of the Local Rules and this Court's Individual Rules.  The Local Civil Rules make clear that a motion for reconsideration may not be used as a vehicle for seeking new relief that could have, but was not, previously requested.  Local Civil Rule 6.3 (party seeking reconsideration must "set[] forth concisely the matters or controlling decisions which counsel believes the court has overlooked").  Moreover, this Court's Individual Rule 2(G) requires that (1) parties meet and confer concerning any discovery issues and (2) all "discovery" disputes be raised by joint letter.  Finally, both Local Civil Rule 6.3 and Individual Rule 2(G) prohibit a party from attaching "affidavits or "exhibits" to its motion for reconsideration without first obtaining permission from the court.

Here, Dolan seeks "court supervision" or the "appointment of a special master" to supervise his deposition.  Defs.' Brf. at 10.  In support of his unsubstantiated fear that he might be "harass[ed]" at his deposition, he submits, for the first time, an affidavit from his attorney and several exhibits.  Defs.' Decl., Dkt. 185.  Clearly, Dolan could have, but did not, seek such relief in his original motion.  The first time Dolan mentions such relief is in his current reconsideration motion.  He also could have requested permission to submit five of the eight exhibits, all of which were available to him while this motion was pending.  Mastro Decl. Exs. 1, 5, 6, 7 and 8. Again, he chose not to.  Accordingly, the Court should strike Dolan's motion.  See Secs. & Exch. Comm. v. Amerindo Invest. Advisors Inc., No. 056 Civ. 5231 (RJS), 2015 WL 13678845, at *1

(S.D.N.Y. Aug. 14, 2015) (denying reconsideration because, inter alia, the movant failed to submit a pre-motion letter).

III.    **Defendants Fail to Establish Prima Facie Entitlement to Reconsideration**

Defendants' motion also fails because it either cannot satisfy any of the requisites for reconsideration, or seeks to relitigate issues already decided or that could have been raised previously. Accordingly, it may be denied without considering its merits.

First, Defendants aver "clear error" in the Court's decision to permit Dolan to be deposed about the reasonability of the force used to remove Oakley from Madison Square Garden on February 8, 2017. Defendants argue that "Mr. Dolan's Testimony is Not Relevant to the Reasonableness of Force." Defs.' Brf. at 5. They then take issue with the Court's analysis of the reasonability issue. Id. at 5-6. This is not only relitigation of a settled issue, it is regurgitation of an argument Defendants made in their original opposition. *Compare* Defs.' Brf. at 6 ("Even if Mr. Dolan had explicitly directed MSG's security guards to use force . . . that fact would not change the *objective* reasonableness of any force ultimately used.") *with* Joint Ltr., Dkt. 177 at 4 ("[A]lthough Plaintiff wrongly speculates that Mr. Dolan 'may have' 'instructed' security to use excessive force, even this counterfactual scenario would not bear on whether the force *actually used* in removing Oakley was reasonable.") The only difference is that Defendants have now provided an out-of-context quote from the Court's previous Order, mischaracterizing the Court's reasoning (as explained below). This is, generously, a futile addition of cumulative legal ornamentation. It is not a reason to seek reconsideration.

Defendants have not even attempted to frame their second argument as a valid ground for reconsideration. They simply argue that "Mr. Dolan's Deposition is Inconsistent with the Apex Doctrine." Defs.' Brf. at 7. Of course, they depended upon the "Apex Doctrine" in their original

brief, Joint Ltr. at 5, including the ancillary argument that Dolan should be deposed last, id. at 5 fn. 5. This is a simple rerun of the same exact argument. *Compare* Defs.' Brf. at 7 ("Mr. Dolan does not have . . . unique evidence") *with* Joint Ltr. at 5 ("Plaintiff has failed to meet his burden to show Mr. Dolan has unique knowledge . . ."). Nowhere do Defendants even purport to describe overlooked decisions or data, changes in law, new evidence, clear error or manifest injustice. Their motion on this point, too, is easily rejected.

## IV. While the Court Need Not Reach the Merits, Defendants Are Also Wrong on the Merits

### A. The Court Was Correct about the Relevance of Dolan's Testimony

Defendants claim that the Court "failed to adhere to its prior decision on what is relevant to the force inquiry." Defs.' Brf. at 6. They quote the Court's reasoning from its previous Order on Plaintiff's Motion to Amend the Complaint, where the Court explained that "Dolan's . . . hand gesture 'does not carry any connotation of unreasonable (as opposed to reasonable force).'" Id. (quoting Order on Mot. to Amend, Dkt. 158 at 5). But, in his original motion, Dolan never claimed his deposition is somehow barred by this isolated (and out-of-context) quotation from this Court's prior order.

In any event, Dolan misleadingly omits the rest of the Court's holding, which goes on to explain the objective relevance of Dolan's involvement.

> But the conversation and downward hand motion, when coupled with Dolan's thumbs-up gesture after Oakley had been forcibly removed from the arena, support a reasonable inference that the guards acted in accordance with Dolan's instructions. And since the Second Circuit has already determined that the facts in Oakley's Amended Complaint support a reasonable inference that the guards' use of force was excessive, *these new allegations support the further inference that Dolan instructed or encouraged the use of that excessive force.*

Order on Mot. to Amend at 5 (emphasis added). The Court's two orders are plainly consistent.

5

Dolan next claims that the Court erred by improperly introducing a "subjective" element into the use of force analysis. Defs.' Brf. at 5-6. But, again, Dolan never made this argument in his original motion. Rather, he contends that he has no "unique knowledge," id. at 6, – an argument that this Court properly rejected. Infra § IV.b.

In any case, two of Dolan's belated citations are district court cases that are not controlling and, in any event, say nothing about "subjectivity." Escoffier v. Whole Foods Mkt. Grp., Inc., No. 22 Civ. 6588 (AS), 2024 WL 3012480, at *3-4 (S.D.N.Y. June 13, 2024); Cosby v. City of White Plains, New York, ex rel. City of White Plains, No. 04 Civ. 5829 (CLB) (GAY), 2007 WL 853203, at *5-6 (S.D.N.Y. Feb. 9, 2007). Dolan's newly-added third case, Tardif v. City of New York, 991 F.3d 394 (2d Cir. 2021), hardly helps his position. Tardif stands for the unremarkable position that a defendant's asserted "justification" for the use of physical force is relevant in determining whether the amount of force used was "unreasonable." Id. at 411. However, to prove his claim, a plaintiff need not show that a defendant acted without "good faith" or "maliciously for the very purpose of causing harm." Id. at 414. In other words, a defendant can be found to have used "*unreasonable* force" even where he acted "in good faith to maintain or restore discipline." Id. at 416 (emphasis in original). Notably, Tardif did not, nor could it, have altered longstanding New York tort law that a defendant's "intent in using force" is relevant where, as here, the defendant seeks to "justify what would have been an assault." Noonan v. Luther, 206 N.Y. 105, 108, 99 N.E. 178, 179 (1912).

Here, Dolan directed Oakley's removal. Dolan has justified the use of force to remove Oakley because, according to Dolan, upon entering MSG Oakley "became disruptive, yelling obscenities at MSG security guards and disturbing those around him, shouting: 'You got all these f***in' security here looking at me, I don't know what the f*** they're looking at, but they're

getting on my f\*\*\*in' nerves' and 'you're a rat, you rat f\*\*\*, you snitch.'"  Defs.' Brf. at 3.   In

fact, the videos produced by MSG in discovery show quite the opposite: that Oakley was friendly

and welcoming, greeting his former MSG colleagues and, in one instance, hugging an MSG

employee.  Oakley is entitled to present this truthful counternarrative to MSG's justification

defense by establishing that Dolan directed the use of force not because of Oakley's behavior

but, rather, "for punishment or through passion."  Noonan, 206 N.Y. at 108. Moreover, Oakley is

entitled to support his claims by showing that Dolan's subsequent "false, exculpatory"

explanations for using force are proof of "consciousness of guilt."  People v. Johnson, 61 N.Y.2d

932, 934, 463 N.E.2d 368, 370 (1984).  As this Court has already found, only Dolan can answer

these and related questions.

### B. The Court was Correct About the Inapplicability of the Apex Doctrine

Defendants have systematically mischaracterized the Court's holding in which the Court

rejected their Apex Doctrine argument.  The mischaracterization renders their arguments on this

point worthless and easily rejected.

To recapitulate, Defendants previously argued that Plaintiff could not depose Dolan

because "[p]laintiff has failed to meet his burden to show Mr. Dolan has unique knowledge that

other witnesses are incapable of conveying."  Order at 5.  After pointing out Defendants' legal

error—it was in fact Defendants' burden to establish that Dolan lacked relevant information,

rather than Plaintiff's burden to establish relevance—the Court then gave three separate reasons

to reject Defendants' contention that Dolan lacked relevant information: (1) "At the most basic

level, Dolan was an eyewitness to the removal"; (2) "Additionally, Oakley has alleged that,

moments before his removal, Dolan 'called over a security guard that he employed and

conversed with the security guard'" making Dolan one of two witnesses to that conversation; and

(3) "Oakley alleges that 'Dolan signaled to the same security guard . . . [by] pointing downwards with his right index finger,'" and "[o]nly Dolan can explain whether he signaled the guard and, if so, what his signal was intended to convey." Order at 5-6 (quoting the Complaint).

Though the Court's decision rested on these three separate bases, Defendants in their Motion for Reconsideration treat the Order as though it depended solely on the first, arguing "[i]t is clear error to hold that a high-ranking executive loses the protection of the apex doctrine by being in the line of sight of an incident." Defs.' Brf. at 7. In other words, Defendants addressed only "the most basic level," Order at 6, of the Court's holding, where the Court discussed how Dolan was, for one thing, a simple eyewitness. Defendants outright ignore the Court's two subsequent points about Dolan's relevant communications with security employees, points that were far more important to the holding. Since Defendants have not challenged two out of three independent bases for the Court's holding, their arguments on the merits are easily rejected.

Finally, repeating an argument made and rejected in their original motion, Defendants again ask the Court to put off Dolan's deposition until Plaintiff takes the depositions of security guards. However, they make this request under the rubric of the Apex doctrine. Since the Court has rejected the Apex doctrine as inapplicable, it may reject these arguments as well. Moreover, the Court has now ordered a 30(b)(6) deposition regarding relevant security policies of the Defendants, and both this deposition and Oakley's will occur before Dolan is deposed. Defendant has not established an entitlement to any additional sequencing. As the Court has already held, Dolan was a direct percipient witness and involved in the *actus reus* of the battery unlike in the cases Defendants cited. See Shiber at *3 (executive not involved in the relevant decision); Diesel Props S.r.L. v. Greystone Bus. Credit II LLC, No. 07 Civ. 9580 (HB), 2008 WL

5099957, at *2 (S.D.N.Y. Dec. 3, 2008) (executive had no "personal knowledge" of relevant events). Apex-based sequencing is therefore inappropriate,

## V.    <u>Defendants' New "Evidence" Makes No Difference to the Court's Decision</u>

Defendants assert that three documents produced in discovery require reconsideration of the Court's reasoning there was "no indication that [Plainitff's] request to depose Dolan is merely designed to harass." Defs.' Brf. at 9 (quoting Order at 6). First, again, the Court's Order did not depend solely or even in any significant part on this reasoning about harassment, focusing instead on Dolan's actual involvement in the battery at the heart of this case. Order at 6 ("But there is no indication the request to depose Dolan is merely designed to harass, particularly since Dolan's involvement that evening is relevant to understanding what the security guards did.") Even assuming that the potential for harassment is a reason to scrutinize the relevance of the testimony of a higher-level executive, it is not a reason, on its own, to deny otherwise crucial testimony, nor have Defendants cited any case for the proposition that it can be.[1]

Nor does any of the cited evidence indicate a motive on the part of Plaintiffs to "harass." Notably, the three texts attached to Defendants' Motion do not quote Charles Oakley. Defs.' Brf. at 9. Instead, they quote one unidentified person and Oakley's press representative. <u>Id.</u> Oakley did not respond to any of these texts. Defs.' Decl., Dkt. 185 ("Defs.' Decl."), Exs. 6-8. This is better construed as evidence that Oakley lacks such motive, given his apparent lack of interest in responding. Nor is his attorneys' First-Amendment speech about this litigation evidence of motivation. Indeed, these statements are innocuous acknowledgments of the Court's ordering of Dolan's deposition. Defs.' Decl., Ex. 3 ("We may now question Mr. Dolan under oath."); Ex. 4 ("I am very much looking forward to questioning Dolan in our offices in the coming weeks.").

---

[1]    Indeed, this section, Defs.' Brf. at 9-10, cites no law at all on the Apex doctrine.

**VI.    Defendants' Request for a Protective Order, Court Supervision or the Appointment of a Special Master Are Meritless**

Even if the Court were to ignore Defendants' flouting of this Court's local and individual rules, their motion for Dolan to be deposed last is meritless.  They cite no relevant legal authority for their position.  Cf. Saldarriaga v. Taradex, Inc., 20 Civ. 4099 (WFK), 2021 WL 54086, at *1 (E.D.N.Y. Jan. 6, 2021) ("there is no priority of deposition in federal court.")  And because, as this Court has already ruled, the Apex doctrine is inapplicable, the parties do not need "an opportunity to determine if Mr. Dolan's deposition is . . . necessary."  Defs.' Brf. at 10.

Nor is there any issue that "cannot be effectively and timely addressed by an available district judge or magistrate judge of the district," as would warrant appointment of a special master.  Fed. R. Civ. P. 53(a)(1)(C).  The Court should only appoint a special master when the "need is clear," Advisory Notes to the 2003 Amendments to Rule 53(a)(1), and "[t]he appointment of a special master is the exception, not the rule."  Idan Comput., Ltd. v. Intelepix, LLC, No. 09 Civ. 4849 (SJF) (ARL), 2010 WL 3516167, at *3 (E.D.N.Y. Aug. 27, 2010).  The Court has already resolved two discovery motions, and no obstacles remain to completing discovery.  Defendants have not established any "need" for the exceptional appointment of a special master.

## CONCLUSION

For the foregoing reasons, Defendants' Motion should be denied in its entirety.

10

Dated: October 1, 2024
        New York, New York

**WIGDOR LLP**

By: _____
        Valdi Licul
        Douglas H. Wigdor
        John S. Crain

85 Fifth Avenue
New York, NY 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845
vlicul@wigdorlaw.com
dwigdor@wigdorlaw.com
jcrain@wigdorlaw.com

**PETRILLO KLEIN & BOXER LLP**


By:  /s Marcelo Triana
        Nelson A. Boxer
        Marcelo Triana

655 Third Avenue
New York, NY 10017
Telephone: (212) 370-0330
Facsimile: (212) 370-0391
nboxer@pkbllp.com
mtriana@pkbllp.com

*Attorneys for Plaintiff*