# KING & SPALDING

King & Spalding LLP
1185 Avenue of the Americas, 34th Floor
New York, NY 10036-4003
Tel: +1 212 556 2100
Fax: +1 212 556 2222
www.kslaw.com

Randy M. Mastro
Direct Dial: +1 212 827 4019
rmastro@kslaw.com

October 21, 2024

**VIA ECF AND E-MAIL**

Hon. Richard J. Sullivan, U.S. Circuit Court Judge
U.S. Court of Appeals for the Second Circuit
500 Pearl Street, New York, NY 10007

**Re: *Oakley v. MSG Networks, et al.*, No. 17-cv-6903 (RJS) (S.D.N.Y.)**

Dear Judge Sullivan:

I write as Defendants' counsel, pursuant to Your Honor's Rule 2(A), to request a pre-motion conference concerning our intention to file a motion seeking sanctions against Plaintiff Charles Oakley and his counsel, Wigdor LLP, for spoliation of evidence pursuant to Federal Rule of Civil Procedure 37.[1] Defendants have learned that Plaintiff destroyed all of his text messages from prior to February 2022, a period spanning *five years* since the incident leading to this lawsuit, and well after the duty to preserve was triggered by him as the Plaintiff here, along with the affirmative obligation of his counsel to ensure preservation. Over the past two months, Plaintiff and his counsel have repeatedly refused to answer Defendants' straightforward questions about this spoliation of critical evidence and have made little to no effort to recover the text messages in question, instead claiming that Defendants should subpoena individuals who Plaintiff may have texted—individuals who, unlike Plaintiff, were under no obligation to preserve their text messages from as long as seven years ago. The prejudice caused to Defendants by Plaintiff's spoliation cannot be overstated. After producing a mere 267 documents to Defendants, Plaintiff claims to have completed his entire production of relevant material. The documents that Plaintiff produced demonstrate that he has routinely—and primarily—used text messages to communicate generally and about this case, although he was only able to produce texts recent in time because of his spoliation of earlier text evidence.[2] Indeed, because the text messages Plaintiff sent and received close in time to his ejection from Madison Square Garden would have contained the most probative evidence in this action concerning what actually happened during the incident, Plaintiff's state of mind during it, and subsequent events (such as his criminal prosecution), there is no way to mitigate the prejudice caused by Plaintiff's mass destruction short of actually locating the text messages from back-up files or another source—which Plaintiff has not done (and, it seems, barely even attempted to do). Plaintiff's vast spoliation, and Plaintiff's counsel's failure to investigate the spoliation in good faith, or cooperate with Defendants' investigation into the spoliated evidence, warrants the severest of sanctions, up to and including dismissal of this case.

**Factual Background:** On August 22, 2024, one day after making their first and only production of documents to Defendants, counsel for Plaintiff acknowledged the minimal number of produced text messages by disclosing that Plaintiff had apparently destroyed all of his text messages dating prior to

---

[1] On October 14, Plaintiff requested that the parties file a joint letter on this issue (purportedly "consolidate[ing] all outstanding discovery issues"), clearly in an attempt to obscure the severity of its spoliation. In any event, Defendants understand a pre-motion conference letter to be proper, as this concerns a motion for sanctions, not a discovery dispute.

[2] *See, e.g.*, Dkt. 185-6 (texting an article about this case on May 6, 2023, and receiving this text response: "Bro sue the Shit out of Dolan"); 185-7 (texting eight individuals on May 10, 2024: "The judge finally issued his decision. He isn't letting us add Dolan individually as a defendant but he is letting us add the facts about his specific conduct to hold MSG liable which is fine. We are now going to get to do discovery and will start that process in May. Off to the races !"); 185-8 (discussing "bullet points to include on the Discovery" in this case over texts on May 15, 2024).

February 2022. On September 10, 2024, Defendants sent a letter to Plaintiff asking several questions about the circumstances surrounding the destruction of the text messages and whether there could be copies of the text messages in another source.[3] Plaintiff and his counsel refused to provide written answers to Defendants' questions and, instead, the parties met and conferred on September 16, 2024. During that meet and confer, counsel for Plaintiff represented that in February 2022, Plaintiff traded in his iPhone for a newer model—counsel believed the trade-in took place at a Verizon store—and that all of Plaintiff's text messages prior to that date had been lost. Counsel for Plaintiff also represented that it was Plaintiff's regular practice to "routinely" trade in his mobile device for a newer model. Although counsel confirmed that Plaintiff texts using iMessage, which ordinarily backs up text messages to iCloud unless that function is manually turned off, in Plaintiff's case counsel represented that there were no back-up files of the missing text messages, purportedly because Plaintiff did not have, and has never had, an iCloud account or any other automatic retention system in place. Counsel also stated that Wigdor LLP informed Plaintiff of his obligation to retain all documents potentially relevant to this action, including text messages, "at the outset" of this litigation, but refused to reveal specifically when and how counsel advised Plaintiff of his duty or whether counsel took any steps—such as checking Plaintiff's iCloud account to confirm the retention feature was on—to ensure that relevant evidence was not spoliated. Indeed, counsel admitted that his firm did not ever attempt to preserve, collect, image, or copy Plaintiff's personal devices. Following the meet and confer, on October 4, 2024, Defendants sent Plaintiff a follow-up letter detailing their concerns that Plaintiff had spoliated evidence central to this case. Given Plaintiff's approaching deposition—scheduled for October 23, 2024—Defendants requested a written response to the letter by Friday, October 11, 2024. By October 14, 2024, Plaintiff still not had responded, and counsel for Plaintiff later confirmed it would not provide a written response to either of Defendants' letters. That day, counsel for Plaintiff provided the names of individuals with whom Plaintiff "believes, to the best of his recollection, he may have texted with about the events of February 8, 2017" and exhorted Defendants to bear the burden of finding the missing text messages "via the subpoena process."

**Basis for Sanctions:** Sanctions are warranted because the record demonstrates that Plaintiff intentionally destroyed relevant evidence to deprive Defendants of its use. Under Rule 37(e)(2), a party acts with an intent to deprive when: "(1) evidence once existed that could have been material to the proof of a claim at issue in the case; (2) the spoliating party engaged in an affirmative act causing the evidence to be lost; (3) the party did so while it was under a duty to preserve the evidence; and (4) the affirmative act causing the loss cannot be explained as not involving a bad faith reason." *Moody v. CSX Transportation*, Inc., 271 F. Supp. 3d 410, 431 (W.D.N.Y. 2017).[4] As there is rarely direct evidence of a scheme to spoliate, "circumstantial evidence may be accorded equal weight with direct evidence" in analyzing intent. *Resnik v. Coulson*, 2019 WL 2256762, at *13 (E.D.N.Y. Jan. 4, 2019), *report and recommendation adopted*, 2019 WL 1434051 (E.D.N.Y. Mar. 30, 2019).

There is significant circumstantial evidence of intent to spoliate here. *First*, given Plaintiff's propensity to communicate via text message in general and about this case specifically, the lost text messages plainly "could have been material" to Plaintiff's claims, and it is "impossible to fully understand the extent of the prejudice caused by the spoliation of evidence." *Resnik*, 2019 WL

---

[3] Pursuant to the Court's rules, Defendants have not included any exhibits to this letter, but request the opportunity to make a supplemental submission to this Court, as permitted.

[4] Once intent is shown, Defendants need not separately demonstrate prejudice. "This is because the finding of intent required by the subdivision can support not only an inference that the lost information was unfavorable to the party that intentionally destroyed it, but also an inference that the opposing party was prejudiced by the loss of information that would have favored its position." Fed. R. Civ. P. 37, Committee Notes to the 2015 Amendment.

1434051, at *15. The loss is especially harmful to Defendants because it includes Plaintiff's text messages during and immediately after the events giving rise to this case, which would be highly relevant to Plaintiff's state of mind during, and his reaction to, his ejection—not to mention Plaintiff's claimed damages for his "physical pain, mental anguish, humiliation, stress and anxiety, emotional pain and suffering, and emotional distress," per his initial disclosures. Plaintiff's spoliation has left Defendants with essentially *no contemporaneous evidence or communications* from Plaintiff.[5]

*Second*, Plaintiff's unexplained trading-in of his phone during the pendency of this litigation—which he chose to file—is an "affirmative act" of evidence destruction. *See, e.g., Google LLC v. Starovikov*, 2022 WL 16948296, at *9 (S.D.N.Y. Nov. 15, 2022) (party's turning over of a laptop containing relevant information to an employer was an "affirmative act" supporting a finding of intent to spoliate); *Moody*, 271 F. Supp. 3d at 431 ("While knowing they had a duty to preserve the event recorder data, defendants allowed the original data on the event recorder to be overwritten, and destroyed or recycled Lewandowski's laptop without ever confirming that the data had been preserved in another repository."). Indeed, given that it was Plaintiff's "regular practice" to trade in his phone without regard for the preservation of his text messages, it is likely that he affirmatively destroyed evidence on one or multiple occasions prior to February 2022.

*Third,* there is no dispute that Plaintiff has been under a duty to preserve from February 2017 to the present. *Finally*, there is substantial circumstantial evidence of bad faith in this act of spoliation. *See, e.g., Moody*, 271 F. Supp. 3d at 431(court may infer intent to spoliate from conscious dereliction of duty to preserve) *Ottoson v. SMBC Leasing & Fin., Inc.*, 268 F. Supp. 3d 570, 581–82 (S.D.N.Y. 2017) (failure to take "any reasonable steps to preserve" relevant evidence during litigation was probative of intent to spoliate). Here, Plaintiff destroyed his text messages *years* after the filing of this case, even though he was represented by sophisticated counsel who had supposedly informed him of his duty to preserve them. Plaintiff either did not use iCloud—or did, and chose to disable its automatic retention function—while under this preservation duty. Furthermore, Plaintiff's counsel did not image Plaintiff's individual devices at the outset of litigation (or at any time since) to ensure preservation, which is what any reasonably diligent counsel would have done with an individual client, especially a high profile individual who primarily communicates through text messages. And Plaintiff and his counsel outright refused to investigate—or cooperate with Defendants' investigation into—the missing text messages.[6] Rule 37 sanctions—including adverse inferences or even dismissal of this case—are thus appropriate here.[7] Fed R. Civ. P. 37(e)(2); *see also Experience Hendrix*, 2018 WL 6191039, at *10-11 (ordering adverse inference where text messages were intentionally spoliated); *Bryant v. Gen. Cas. Co. of Wisconsin,* 337 F.R.D. 1, 8 (N.D.N.Y. 2020) (dismissing action as sanction for plaintiff's spoliation of evidence).

Respectfully,
*Randy M. Mastro*

---

[5] Plaintiff's production includes a total of *25 emails from 2017*—with *none* from February 8, 2017 or February 9, 2017—and only *five* emails in which Oakley wrote to others (and in one, Oakley told the recipient to text him).

[6] Plaintiff's failure to cooperate in the investigation into the missing text messages—which has already cost Defendants a significant amount of time and resources, and will continue to do so—warrants an award of attorneys' fees and costs. *See Experience Hendrix, L.L.C. v. Pitsicalis,* 2018 WL 6191039, at *11 (S.D.N.Y. Nov. 28, 2018).

[7] Even if the Court were to find that Plaintiff's spoliation was the result of negligence—which it clearly was not, given his counsel's affirmative obligation to ensure preservation—it should still grant such relief as necessary, such as an adverse inference, to cure the prejudice to Defendants from the absence of these text messages. *See, e.g. Europe v. Equinox Holdings, Inc.*, 592 F. Supp. 3d 167, 178 (S.D.N.Y. 2022).