UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHARLES OAKLEY,

                          Plaintiff,

          -v-

MSG NETWORKS, INC., *et al.*,

                          Defendants.

No. 17-cv-6903 (RJS)
MEMORANDUM
AND ORDER

RICHARD J. SULLIVAN, Circuit Judge:

Before the Court are several motions related to an ongoing discovery dispute concerning plaintiff Charles Oakley's request to depose James Dolan, the executive chairman and chief executive officer of Defendants MSG Networks, Inc., Madison Square Garden Sports Corp., and Sphere Entertainment Group, LLC (collectively, "MSG"). *First*, MSG has moved for partial reconsideration (Doc. No. 183) of the Court's September 10, 2024 memorandum and order (the "September 10 Order") (Doc. No. 181), which directed Dolan to submit to a deposition. *Second*, in the alternative, MSG has requested a protective order that limits the scope of Dolan's deposition and requires that Dolan not be deposed until after the depositions of all other MSG employees have been concluded. (*See* Doc. No. 184 at 10.) *Third*, Oakley has moved to maintain various redactions to exhibits that MSG submitted along with its motion for reconsideration. (*See* Doc. No. 188.) And *fourth*, MSG and non-party the National Basketball Association (the "NBA") have moved to maintain the redactions contained in a letter submitted by Oakley to the Court on November 1, 2024, which refers to materials produced in discovery and deemed confidential (Doc. Nos. 204, 206); Oakley in turn has moved to file that letter in unredacted form on the public docket (Doc. No. 205).

For the reasons set forth below, MSG's motion for partial reconsideration is DENIED; MSG's motion for a protective order is GRANTED in part and DENIED in part; Oakley's motion to maintain the redactions of the MSG exhibits is GRANTED; MSG's and the NBA's motions to maintain the redactions to Oakley's November 1 Letter are GRANTED in part and DENIED in part; and Oakley's motion to publicly file his November 1 Letter is GRANTED in part and DENIED in part.

## I.    Background

This case stems from an incident on February 8, 2017 at Madison Square Garden in which Oakley was forcibly removed from a New York Knicks basketball game. The Court assumes the parties' familiarity with the factual background and procedural history of this case as summarized in the September 10 Order. (*See* Doc. No. 181 at 2–3.)

As relevant here, in August 2024, the parties reached an impasse regarding various discovery disputes, including whether Oakley could depose Dolan. Consistent with the Court's Individual Rules and Practices, the parties then filed a joint letter to the Court on August 19, 2024, describing their respective positions on this issue. (*See* Doc. No. 178-1.) MSG opposed the taking of Dolan's deposition, arguing that he is an "apex witness" who does not have "unique knowledge that other witnesses are incapable of conveying" and that the deposition request was motivated by an intent to harass Dolan. (*Id.* at 4–5.) Oakley, in turn, argued that Dolan "is alleged to be a key participant in Oakley's removal" and thus had unique information to offer. (*Id.* at 2.) The Court granted Oakley's request to depose Dolan because MSG had failed to carry its burden of establishing that Dolan did not have relevant knowledge. (*See* Doc. No. 181 at 5.) The Court further explained that Dolan was an eyewitness to Oakley's removal and that Oakley had alleged that Dolan ordered his removal, all of which suggested that Dolan had knowledge relevant to determining what happened at the February 8 basketball game. (*See id.* at 5–6.) The Court also found that "there [was] no indication that the request to depose Dolan [was] merely designed to harass." (*Id.* at 6.)

## II.    Motion for Reconsideration

"The standard for granting [a motion for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).  Alternatively, the movant must demonstrate "the need to correct a clear error or prevent manifest injustice." *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (internal quotation marks omitted).  The Second Circuit has long recognized that a motion for reconsideration "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Analytical Survs., Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (internal quotation marks omitted); *see also Associated Press v. U.S. Dep't of Def.*, 395 F. Supp. 2d 17, 19 (S.D.N.Y. 2005) ("[A] motion for reconsideration is neither an occasion for repeating old arguments previously rejected nor an opportunity for making new arguments that could have been previously advanced.").

MSG contends that the Court should reconsider its order permitting Dolan's deposition because (1) Dolan's testimony is not relevant to the reasonableness of force used against Oakley, (2) Dolan's deposition would violate the apex-witness doctrine, and (3) newly discovered evidence suggests that the deposition is intended to harass Dolan.  However, as explained below, MSG has not met the "strict" standard for reconsideration since it has neither presented any "controlling decisions or data that the court overlooked," *Shrader*, 70 F.3d at 257, nor demonstrated "the need to correct a clear error or prevent manifest injustice," *Virgin Atl. Airways, Ltd.*, 956 F.2d at 1255.  Rather, MSG

merely seeks to "relitigat[e] old issues" and "tak[e] a second bite at the apple," which are clearly not grounds for reconsideration.  *Analytical Survs., Inc.*, 684 F.3d at 52.

A.    **Relevance of Dolan's Testimony**

MSG argues that Dolan's testimony is not relevant to whether the amount of force used to remove Oakley was reasonable because reasonableness is judged using an objective standard.  (*See* Doc. No. 184 at 5–7.)  In support of this argument, MSG presents no new legal authority and instead selectively quotes from the Court's April 4, 2024 order (the "April 4 Order") denying Oakley's request to add Dolan as a defendant in the second amended complaint.  (*See id.* at 6.)  MSG argues that, in the April 4 Order, the Court concluded that Dolan's testimony was not "relevant to the force inquiry."  (*Id.*)  While the Court did note that Dolan's alleged hand gesture *alone* "does not carry any connotation of unreasonable (as opposed to reasonable) force," the Court explained in that same paragraph that Oakley's allegations concerning Dolan's hand gestures and conversations with security guards could "support the . . . inference that Dolan instructed or encouraged the use of . . . excessive force."  (Doc. No. 158 at 5.)  MSG therefore fails to show any inconsistency between the September 10 Order and the April 4 Order.  It is also worth noting that the April 4 Order was based on the untimeliness of Oakley's request, not on relevance grounds.  Indeed, the Court never held, or even suggested, that Dolan did not have relevant knowledge and could not be deposed.

After all, it is a fundamental principle that "[e]vidence is relevant if:  (a) it has *any tendency* to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  Fed. R. Evid. 401 (emphasis added).  It is also well-established that the "basic standard of relevance . . . is a liberal one," *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 587 (1993), and imposes a "low bar . . . in a discovery dispute," *St. Francis Hosp. & Med. Ctr., Inc. v. Hartford Healthcare Corp.*, No. 22-cv-50 (SVN), 2023 WL 6226396, at *4 (D. Conn. Sept. 26, 2023).  The Supreme Court has "recognized that evidence[,] to be

relevant to an inquiry, need not conclusively prove the ultimate fact in issue"; rather, as the text of Rule 401 makes clear, it must only have *some* tendency to make a fact more or less likely. *McKoy v. North Carolina*, 494 U.S. 433, 440 (1990).

Oakley is therefore entitled to depose Dolan regarding the instructions he gave to the MSG security guards on the evening of the incident. Oakley's assault and battery claims ultimately boil down to two considerations: (1) the amount of force used to remove Oakley from the Garden and (2) whether that force was objectively reasonable under the circumstances. Despite the Court's prior rulings and the surveillance footage of the incident, the Second Circuit concluded that there were "material disputes about whether and when the security guards pushed Oakley." *Oakley v. Dolan*, No. 21-2939, 2023 WL 3263618, at *3 (2d Cir. May 5, 2023). As a result, Dolan's potential testimony about whether he instructed the security guards to push Oakley or use force in removing him is relevant to a fact of consequence in this case. In other words, if Dolan instructed the security guards to push Oakley or otherwise use force against him, that testimony would support the reasonable inference that the guards followed Dolan's instructions and would therefore make it more probable that the guards did in fact push him. A jury would then need to decide from an objective perspective – independent of the guards' subjective motives – whether that use of force was reasonable under the circumstances. *See Oakley*, 2023 WL 3263618, at *3 ("[O]nce a jury sorts out *what* exactly happened, it must make a determination as to whether the force used to eject Oakley was reasonable."). Therefore, given the material disputes over whether and how much force was used, Dolan's testimony clears the low bar of relevance.

Likewise, the Second Circuit identified a material dispute as to whether "the security guards only resorted to force *after* Oakley physically escalated the situation." *Id.* Whether Oakley instigated the altercation, in turn, is relevant to whether the use of force was "wrongful under all the circumstances." *Hines v. Westchester Cnty.*, 170 N.Y.S.3d 483, 484 (2d Dep't 2022) (internal

quotation marks omitted).  Put differently, it might have been reasonable for the security guards to use greater force if Oakley was behaving aggressively, as MSG claims.  (*See* Doc. No. 184 at 3–4.) Once again, Dolan's potential testimony is relevant to this material dispute identified by the Second Circuit.  If Dolan instructed the security guards to use force against Oakley regardless of Oakley's behavior, that evidence would have at least some tendency to undermine the allegation that Oakley instigated the altercation and was behaving belligerently, which then bears on the totality of the circumstances that the jury must assess in determining the objective reasonableness of the force.

Finally, whether or not Dolan – MSG's CEO and executive chairman – instructed the security guards to use force against Oakley is relevant to the issue of damages in the event that the factfinder determines that excessive force was used.  That is because punitive or exemplary damages "have been allowed in cases where the wrong complained of is morally culpable, or is actuated by evil and reprehensible motives, not only to punish the defendant but to deter him, as well as others who might otherwise be so prompted, from indulging in similar conduct in the future."  *Walker v. Sheldon*, 10 N.Y.2d 401, 404 (1961).

For all these reasons, the Court did not err in concluding that Dolan's deposition testimony clears the low threshold of relevance.

## B.    Apex-Witness Doctrine

MSG next asserts that the September 10 Order is inconsistent with the apex-witness doctrine. (*See* Doc. No. 184 at 7–8.)  But MSG provides no controlling decisions or data that the Court overlooked.  MSG contends that, based on the Court's previous ruling, "Dolan can now be hauled into a deposition any time a fan within his line of sight is ejected from a game, concert, or event at the Garden or other MSG venues."  (*Id.* at 2.)  But this argument mischaracterizes the Court's prior ruling, which was not based on Dolan's "generalized knowledge of the incident in question," as MSG claims.  (*Id.* at 8 (internal quotation marks omitted).)  Rather, the Court explained that Oakley may

depose Dolan because Dolan is alleged to have witnessed Oakley's belligerent conduct, directed Oakley's removal, and authorized the use of force to do so.  In other words, Dolan is not the prototypical apex witness who sits in the figurative skybox, far removed from the scene of the dispute with no unique knowledge or involvement in the underlying conduct.  *See Shiber v. Centerview Partners LLC*, No. 21-cv-3649 (ER), 2023 WL 3071554, at * 3 (S.D.N.Y. Apr. 25, 2023) (finding the apex doctrine applicable when the executive "was not involved in the decision" at issue in the lawsuit (internal quotation marks omitted)).  As the Court observed, Dolan "had a courtside seat to the action," and is alleged to have been a participant in the conduct at issue.  (Doc. No. 181 at 6.) Therefore, the apex doctrine is plainly inapplicable here.

### C.    Harassment Concerns

MSG further argues that newly discovered evidence indicates that Oakley's intent in deposing Dolan is simply to harass him.  (*See* Doc. No. 184 at 9–10.)  In support of this argument, MSG has submitted eight exhibits purporting to reveal Oakley's intent to harass Dolan.  But two of these exhibits (*see* Doc. Nos. 185-1, 185-5) are publicly available news articles that predate the parties' discovery dispute.  Because these articles could "have been found by due diligence" prior to the Court's ruling, the Court may not consider them on a motion for reconsideration.  *Space Hunters, Inc. v. United States*, 500 F. App'x 76, 81 (2d Cir. 2012) (internal quotation marks omitted).

MSG also points to several text messages that were sent to Oakley by third parties, one of whom encouraged him to "sue the [expletive] out of Dolan" (Doc. No. 185-6 at 3), another of whom told Oakley to "go for discovery, depositions, and anything else he can hit" (Doc. No. 185-7 at 3), and a third of whom noted that the potential "public relations, social medial, [and] social responsibility toll" of discovery could encourage settlement talks (Doc. No. 185-8 at 4).  MSG offers no evidence to suggest that Oakley responded to or endorsed any of these messages.  Nor do the messages, which

all date from months before the present discovery dispute, indicate that Oakley's intent in deposing Dolan is simply to harass him.

MSG also makes much of the fact that one of the law firms representing Oakley – Wigdor LLP – posted on X (formerly known as Twitter), "We may now question Mr. Dolan under oath" (Doc. No. 185-3 at 2), and Oakley's counsel – Douglas H. Wigdor – told the New York Post (and Wigdor LLP later posted on X), "Based on his performance at his deposition in the Anucha Browne Sanders case, I am very much looking forward to questioning Dolan in our offices in the coming weeks" (Doc. No. 185-2 at 4). But the first statement is simply an accurate characterization of the September 10 Order, thus evincing no intent to harass. And the latter statement merely reflects Wigdor's belief that deposing Dolan will be beneficial to Oakley's case. These statements do not resemble the circumstances that prompted other courts to block depositions of apex witnesses based on harassment concerns. *See Digit. Equip. Corp. v. Sys. Indus., Inc.*, 108 F.R.D. 742, 744 (D. Mass. 1986) (prohibiting deposition of a company president where a lawyer admitted he was going to "waste one of [the president's] afternoons" by taking the deposition (internal quotation marks omitted)).

For all the foregoing reasons, MSG's motion for reconsideration is DENIED.

### III. Motion for Protective Order

In the alternative, MSG seeks – for the first time – a protective order that would limit the topics of Dolan's deposition to his eyewitness account, communications with security guards, and hand gestures to security guards. (*See* Doc. No. 184 at 10.) MSG also requests that Dolan be deposed after all other MSG personnel and that the Court either supervise Dolan's deposition or appoint a special master. (*See id.*) Under Federal Rule of Civil Procedure 26(c)(1), a court "may, for good cause, issue an order . . . forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters." However, "[t]he party seeking the protective order carries the burden to show that good cause exists for issuance of the order." *Capri Sun GmbH v. Am. Beverage Corp.*,

414 F. Supp. 3d 414, 424 (S.D.N.Y. 2019) (internal quotation marks omitted). And "[t]o establish good cause under Rule 26(c), courts require a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Ampong v. Costco Wholesale Corp.*, 550 F. Supp. 3d 136, 139 (S.D.N.Y. 2021) (internal quotation marks omitted).

While the Court finds it hard to envision that any topics beyond Dolan's eyewitness account, communications with security guards, and hand gestures to security guards would be relevant deposition testimony, MSG has failed to carry its burden to establish good cause for the issuance of a protective order. MSG offers a single conclusory sentence requesting that the Court limit the scope of the deposition without providing any justification for why such a protective order is necessary. This does not suffice under Rule 26(c). Moreover, the Court expects that counsel will comply with their ethical obligations and ensure that Dolan's deposition focuses on the core issues remaining in this case and is not used for harassment or to generate gratuitous media publicity. And, of course, if Dolan's deposition "is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses" him, MSG can move to terminate or limit the deposition. Fed. R. Civ. P. 30(d)(3)(A). Likewise, sanctions are available if either party "impedes, delays, or frustrates the fair examination of" Dolan. *Id.* 30(d)(2).

With respect to MSG's request that Dolan be deposed after all other MSG personnel, "the order regarding the sequence of discovery is at the discretion of the trial judge." *Guidehouse LLP v. Shah*, No. 19-cv-9470 (MKV), 2020 WL 13927593, at *2 (S.D.N.Y. Oct. 27, 2020) (internal quotation marks omitted). "[C]ourts have recognized an additional layer of protection for senior corporate executives subject to depositions." *Scott v. Chipotle Mexican Grill*, 306 F.R.D. 120, 122 (S.D.N.Y. 2015) (internal quotation marks omitted). For this reason, courts have routinely ordered that CEOs and corporate officers be deposed after other employees. *See, e.g.*, *Guidehouse LLP*, 2020 WL 13927593, at *2 (citing cases); *see also Iowa Pub. Emps.' Ret. Sys. v. Merrill Lynch, Pierce,*

*Fenner & Smith Inc.*, No. 17-cv-6221 (KPF), 2020 WL 6273396, at *1 (S.D.N.Y. Aug. 28, 2020). Here, the Court is persuaded that deposing the other MSG employees first, particularly those who were directly involved in Oakley's removal and thus have the knowledge most relevant to determining whether unreasonable force was used against Oakley, will help "narrow the scope of [Dolan's] deposition." *Guidehouse LLP*, 2020 WL 13927593, at *2. The Court therefore orders that Dolan's deposition be conducted after all other MSG employees.

Finally, the Court is unmoved by MSG's request for Court supervision or the appointment of a special master to oversee Dolan's deposition, which the Court regards as an unwarranted extravagance to which the parties are not entitled. Once again, counsel are officers of the Court and are expected to conduct depositions consistent with their ethical obligations. The Court sees no reason to presume that counsel are unwilling or unable to comply with those straightforward obligations during Dolan's deposition. At the same time, the Court will have little patience for lawyers who use the discovery process as a sport for purposes unrelated to the development of evidence.

Accordingly, MSG's motion for a protective order is GRANTED in part and DENIED in part.

**IV.    Motions to Seal**

The Second Circuit has explained that "[t]he common law right of public access to judicial documents is firmly rooted in our nation's history." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006). In determining whether the "presumption of access" to judicial records applies, a court must first determine whether the documents are "judicial documents." *Id.* (internal quotation marks omitted). Specifically, "a judicial document is one that has been placed before the court by the parties and that is relevant to the performance of the judicial function and useful in the judicial process." *Mirlis v. Greer*, 952 F.3d 51, 59 (2d Cir. 2020) (internal quotation marks omitted). Next, a court must "determine the weight of the presumption of access," which is "governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such

10

information to those monitoring the federal courts." *Id.* (internal quotation marks omitted). Finally, a court must balance the factors that disfavor disclosure, such as "the privacy interests of those resisting disclosure," "against the weight properly accorded the presumption of access." *Id.* (internal quotation marks omitted).

In support of its motion for reconsideration, MSG submitted eight exhibits, three of which contain redacted materials. (*See* Doc. No. 185-6 at 2–3; Doc. No. 185-7 at 2–3; Doc. No. 185-8 at 2– 5.) Oakley has now moved this Court to maintain those redactions, which merely conceal telephone numbers and two lines of "irrelevant messages about a private sensitive matter." (Doc. No. 189 at 2; *see* Doc. No. 188). Having now reviewed the unredacted exhibits, the Court agrees that the redactions obscure personal identifiable information as well as brief references to a private sensitive matter that has no bearing on any material issue in dispute in this case. Accordingly, the Court is persuaded that, even though these exhibits constitute judicial documents, the presumption in favor of open records has been outweighed by the privacy interests of Oakley and the individuals with whom he corresponded via text message. *See Lugosch*, 435 F.3d at 120. Oakley's motion to maintain the redactions to the MSG exhibits is thus GRANTED.

Oakley's November 1 Letter poses a more difficult question. In particular, the November 1 Letter contains quotations from two NBA internal security reports, which indicated that Dolan ordered Oakley's removal. The NBA, which produced these reports in discovery, labeled them as confidential. Oakley subsequently filed a motion and declaration ("Oakley's November 12 Motion and Declaration") requesting the Court's permission to file an unredacted version of the November 1 Letter on the public docket. (Doc. Nos. 205, 205-1.) Because that Motion and Declaration contained the same confidential information as the November 1 Letter, Oakley filed the Motion and Declaration in redacted form on the public docket. The NBA and MSG oppose Oakley's request and have moved

the Court to redact and seal the portions of Oakley's November 1 Letter that are based on the NBA reports.  (*See* Doc. Nos. 204, 206.)

For starters, Oakley's November 1 Letter is clearly a judicial document because it was submitted by a party and is relevant to the Court's determination of MSG's motion for reconsideration.  *See Brown v. Maxwell*, 929 F.3d 41, 49 (2d Cir. 2019) ("A document is . . . 'relevant to the performance of the judicial function' if it would reasonably have the *tendency* to influence a district court's ruling on a motion or in the exercise of its supervisory powers, without regard to which way the court ultimately rules or whether the document ultimately in fact influences the court's decision.").  Therefore, the presumption of public access applies, and the burden falls on MSG and the NBA to overcome that presumption here.

MSG argues that Oakley is "seek[ing] to make these confidential reports public as a vehicle to disparage MSG, the NBA, and Mr. Dolan, including in the tabloid press."  (Doc. No. 206 at 5.) But Oakley has merely included two limited quotes from the NBA's reports to refute MSG's repeated assertions that Dolan did not order Oakley's removal, was merely "one of *thousands* of eyewitnesses" to the events in question, and thus should be shielded from deposition by the apex doctrine.  (Doc. No. 184 at 7; *see* Doc. No. 178-1 at 4; Doc. No. 184 at 3, 5.)  The reports were clearly relevant to the Court's resolution of MSG's motions for reconsideration and for a protective order and are therefore material to "the exercise of Article III judicial power" and of value "to those monitoring the federal courts."  *Mirlis*, 952 F.3d at 59.

MSG and the NBA nevertheless contend that releasing these reports may make witnesses "reluctant to supply statements to the NBA during investigations[] like the one that took place here." (Doc. No. 206 at 6; *see also* Doc. No. 204 at 3.)  Although the need to protect the confidentiality of sources may, in some circumstances, be a compelling reason to redact or seal information from court filings, the Court is not persuaded that publicly filing the two sentences contained in the November 1

letter, which simply relay the preliminary fact findings of the NBA's investigation and do not identify any witnesses, will chill individuals from cooperating with future NBA investigations or reveal the NBA's sensitive practices for addressing security incidents.[1]

Nevertheless, Oakley's November 1 Letter also identifies by name the NBA personnel who drafted the reports. The Second Circuit has previously explained that "the privacy interests of innocent third parties should weigh heavily in a court's balancing equation." *United States v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995) (alterations accepted and internal quotation marks omitted); *see also Desarrolladora La Ribera, S. de R.L. de C.V. v. Anderson*, No. 24-cv-67 (LAK) (BCM), 2024 WL 2049413, at *3 (S.D.N.Y. May 6, 2024) (accepting a proposed redaction "to protect the legitimate privacy interests" of an individual who "[was] not affiliated with any party, [was] not accused of any wrongdoing, and did not ask to be involved in this lawsuit"). Accordingly, with respect to the names of the two NBA employees who prepared the reports, the Court finds that, at this stage of the litigation, the presumption of public access has been outweighed by the privacy interests of those employees.

In sum, Oakley's motion to file an unredacted version of his November 1 Letter is GRANTED in part and DENIED in part, and MSG's and the NBA's motions to redact Oakley's letter are GRANTED in part and DENIED in part. Oakley shall file his November 1 Letter and November 12 Motion and Declaration on the public docket with only the names of the NBA employees redacted.[2]

---

[1] MSG also argues that the NBA reports contain information of a "preliminary, unreliable nature." (Doc. No. 206 at 6.) But this case is a far cry from those cited by MSG, *see United States v. Amodeo*, 71 F.3d 1044, 1052 (2d Cir. 1995) (requiring the sealing of a report where "some or all [of the information] may be of doubtful veracity, possibly stemming in part from apparent personality conflicts"), and even if the draft nature of the report is a countervailing consideration, it does not outweigh the presumption of public access here.

[2] In support of its sealing request, the NBA submitted to the Court via email complete copies of the two NBA reports referenced in Oakley's November 1 Letter. However, these reports do not constitute "judicial documents" and thus are not subject to the presumption of open access. The Second Circuit has recognized that "the mere filing of a paper or document with the court is insufficient to render that paper a judicial document subject to the right of public access." *Lugosch*, 435 F.3d at 119 (internal quotation marks omitted). Rather, to be considered a judicial document, the item must be "placed before the court *by the parties*" and relevant to the judicial function. *Mirlis*, 952 F.3d at 59 (emphasis added). Notably, neither of the parties provided the Court with a copy of the reports, Oakley has not requested to file the reports

\*      \*      \*

For the reasons stated above, IT IS HEREBY ORDERED THAT MSG's motion for reconsideration is DENIED, MSG's motion for a protective order is GRANTED in part and DENIED in part, Oakley's motion to maintain redactions to exhibits filed in support of MSG's motion for reconsideration is GRANTED, Oakley's motion to file publicly his November 1 Letter is GRANTED in part and DENIED in part, and MSG's and the NBA's motions to seal the redactions to Oakley's November 1 Letter are GRANTED in part and DENIED in part. Oakley shall file his November 1 Letter and November 12 Motion and Declaration on the public docket with only the names of the NBA employees redacted. The Clerk of Court is respectfully directed to terminate the motions pending at Doc. Nos. 183, 188, 204, and 205.

SO ORDERED.

Dated:        November 20, 2024
              New York, New York

_____
RICHARD J. SULLIVAN
UNITED STATES CIRCUIT JUDGE
Sitting by Designation

---

in their entirety, and the Court never requested that the NBA or the parties provide a copy of the reports. Accordingly, the Court does not consider the NBA reports to be judicial documents and, absent objection from the parties, will delete all electronic copies.