**WIGDOR.**

**Valdi Licul**
vlicul@wigdorlaw.com

November 22, 2024

The Honorable Richard J. Sullivan
United States District Court, Southern District of New York
40 Foley Square, Room 2104
New York, New York 10007

      Re:    Oakley v. MSG Networks, *et al.*; Civil Case No. 17-cv-06903 (RJS)

Dear Judge Sullivan:

We represent Plaintiff Charles Oakley ("Plaintiff" or "Oakley").  We write jointly with Defendants MSG Networks, Inc., Madison Square Garden Sports Corp., and Sphere Entertainment Group, LLC (collectively, "MSG" or the "Defendants") pursuant to Rule 2(G) of Your Honor's Individual Rules and Practices.  The parties have reached an impasse concerning the discovery issues described below.  The parties conferred several times, most recently on November 14, 2024, with Valdi Licul and Katherine Vask present for Plaintiff, and Lauren Myers, John Goodwin, and Maria Henain present for Defendants.  Pursuant to Your Honor's Order on November 20, 2024, the parties submit this joint letter in eight pages.

**Plaintiff's Position**
    **I.**    **Depositions of Former Employees**

As the Court is aware, the central issues that a jury will have to decide in this assault and battery case are "*what* exactly happened" when Defendants forcibly removed Oakley from Madison Square Garden (the "Garden") on February 8, 2017, and "whether the force used to eject Oakley was reasonable."  Oakley v. Dolan, No. 21-2939, 2023 WL 3263618, at *1 (2d Cir. May 5, 2023) (emphasis in original).  Oakley asserts, in essence, that he arrived at the Garden without incident and took his seat to watch a basketball game, when he was confronted by more than half-a-dozen security guards who started a physical confrontation with him.  Defendants claim that Oakley was belligerent and abusive toward Garden staff, and thus had to be forcibly removed.  Defendants boast that they have more than a dozen witnesses to the events that evening, including security personnel, elevator operators and wait staff, who will support their version of events.   Naturally, Oakley has sought to depose these witnesses so that a jury can make the "intensely factual" determination of whether Defendants committed an assault and battery. Id. (quoting Oakley v. Dolan, 980 F.3d 279, 284 (2d Cir. 2020)).

Defendants, however, have sought to block Oakley from deposing former members of the security staff who participated in Oakley's removal, including Todd Jackson, Gene Perrotto and



Thomas Redmond (together, the "Former Employees"),[1] claiming these depositions are "cumulative" because Defendants have already offered the depositions of three other security personnel. But as this Court has already observed in a related discovery dispute, the unique "observations and recollections" of those involved in the events that evening "would shed light on whether the force used to remove Oakley was reasonable." Dkt. 181 (the "Order") at 8. And each of the witnesses, like the various videos depicting the events of that night, will have their own perspective from where they saw and heard what happened. For instance, Jamieson Antonio, a supervisor who was already deposed, admitted that he saw Oakley enter the building security area without incident, but saw nothing else until Oakley had already been dragged from his seat into the adjacent tunnel, where he saw Oakley lying on his back. Anthony Mongelli, a security officer who was present for the altercation at Oakley's seat, testified that he did not hear the interaction between Oakley and Keaton (Dolan's personal security guard), before security footage appears to show Keaton pushing Oakley in the chest while the other guards pull Oakley backwards. Indeed, Mongelli conceded that he was only "told later on" what Oakley said and therefore, according to him, his testimony on this issue "is only hearsay." Mongelli further admitted that he did not see Oakley's feet and did not know how Oakley fell. Such testimony, filled with major gaps and inconsistencies, cannot, as a matter of law, substitute for the testimony of the other security personnel who were present.

**II.      Plaintiff's Need To Take More Than Ten Depositions**

Defendants have also refused to consent to Oakley taking more than ten depositions. But Fed. R. Civ. P 30(a)(2)(A)(i), which contains a presumptive limit of ten depositions, empowers courts to permit additional depositions, where necessary. Atkinson v. Goord, No. 01-cv-0761 (LAK) (HBP), 2009 WL 890682, at *1 (S.D.N.Y. Apr. 2, 2009). Here, the need for more than ten depositions is obvious. First, Defendants have identified nine security personnel who were involved in, and thus have personal knowledge of, Oakley's removal. As explained above, each of these witnesses will have seen and heard different things. Second, discovery has revealed that NBA security staff may have been present for the incident and have knowledge that Dolan ordered Oakley's removal – contrary to Defendants' persistent denials. Third, Defendants have identified several guest services employees, including servers and elevator operators, who they claim have personal knowledge of Oakley being abusive to staff. Fourth, discovery has revealed that two MSG employees collected information about what happened, including witness statements. Fifth, testimony shows that one of those employees, Barry Watkins, an MSG executive, was not only seated next to Dolan and personally witnessed the altercation, but appeared to be involved in conversations between Dolan security personnel in the lead up to the assault and battery. And finally, NBA commissioner Adam Silver met with Dolan and Oakley in the aftermath of the incident and thus has personal knowledge of statements made by each of the individuals about what happened. Oakley should have an opportunity to depose all of these witnesses.

---

[1] Defendants have also objected to the depositions of two other former security personnel, Kori Keaton and Jayson Jacknow, for similar reasons. Oakley moved to compel their depositions in Florida and Louisiana, where they reside.



### III. Defendants' Deficient Document Production

Defendants claim that they are only obligated to search the corporate email server for responsive documents and refuse to conduct any searches of text messages (or messages on other messaging applications) on the personal phones of their employees. But discovery has revealed that security personnel communicate by phone and text, not by email. Moreover, the day after the incident, Defendants took possession of the cell phone of a top security executive who was fired because of the Oakley incident. Clearly, Defendants should be made to search these devices for responsive communications. See Smith v. Pergola 36 LLC, No. 1:22-cv-4052 (LJL), 2022 WL 17832506, at *4 (S.D.N.Y. Dec. 21, 2022); accord Alter v. Rocky Point Sch. Dist., No. 13-1100 (JS) (AKT), 2014 WL 4966119, at *10 (E.D.N.Y. Sept. 30, 2014) (sanctioning failure to preserve information on employees' personal computers).[2]

Defendants rely on the parties' ESI Protocol in this matter to block relevant searches. But Defendants agreed to search texts and other messages at a conference on August 14, 2024, only to later backtrack. Nonetheless, the ESI Protocol, which Defendants never signed and this Court has not ordered, is not a license for Defendants to ignore obvious sources of relevant information. See Paragraph III(3) (requiring a "search to the extent the Producing Party is aware of a document that is or may be responsive to discovery requests, the failure to inspect or produce . . . such a document shall not be justified on the basis that such document was not identified under any Alternate Search Methodology [i.e. the search prescribed by the Protocol])."

Separate and apart from the ESI Protocol, Defendants had a duty under Fed. R. Civ. P. 26(g)(1)(A) to make a "reasonable inquiry" to affirm their disclosures were "complete and correct. No reasonable inquiry would have excluded at a minimum ascertaining what documents these witnesses possess. See Albert v. Lab'y Corp. of Am., 536 F. Supp. 3d 798, 800 (W.D. Wash. 2020) ("[An ESI search] does not supplant the requirement of Rule 34 that an initial, reasonable search for responsive documents be conducted in the first place.")

Finally, even if the ESI Protocol did not require Defendants to search, they would nevertheless be required to do so in response to the Rule 45 document subpoenas Oakley served on individuals. Plaintiff sent subpoenas to various participants to the incident requesting all communications and ESI concerning Oakley and his removal from MSG, including e-mails, text messages, or instant messages in applications such as WhatsApp from February 8, 2017, to March 1, 2017. Once again, Defendants have lodged baseless objections, making clear that their true purpose is to hide relevant information.

### IV. Discovery Deadline

Plaintiff respectfully requests a 30-day extension of the fact and expert discovery deadlines. The Court's decision on many issues in this letter, particularly whether Plaintiff is permitted to take more than ten depositions, will determine who Plaintiff will depose and impact Plaintiff's ability

---

[2] It may be that Defendants refuse to even search for responsive information because they took no measures, from 2017 to this day, to preserve potentially relevant information. Three current MSG employees who participated in Oakley's removal have admitted that they have never searched their devices for responsive information. Accordingly, we have requested that Defendants produce any preservation notices and explain what efforts were made to search for information.



to complete discovery in time. Even if Plaintiff is limited to ten depositions, Plaintiff will have to assess who to depose and schedule and conduct these depositions in a limited timeframe. Any expert potentially retained by Plaintiff will need to review deposition transcripts to create a report; therefore, Plaintiff disagrees with Defendants' proposal to conduct any remaining depositions after the close of fact and expert discovery.

**Plaintiff's Response to Defendants' Section IV**
As a preliminary matter, Plaintiff's counsel made clear that numerous tags were lost by the eDiscovery software provider during the document review process, to explain a short delay in Oakley's document production. This in no way suggests that there are thousands of documents that Plaintiff is failing to produce. Document tags are a labeling feature, used to categorize documents (i.e. "non-responsive," "privileged," "responsive," etc.). Many pages of documents can have multiple tags, and many documents may be labeled "non-responsive."

- Regarding Request No. 6: Oakley has produced all non-privileged documents in response to the defendants' request. The parties do not dispute that Oakley, not MSG, was criminally charged for assault and Oakley already produced documents to defense counsel responsive to this request.
- Regarding Requests Nos. 9 and 10: Oakley did not regularly use a credit or debit card to make purchases, and instead, primarily paid in cash in 2017. During a phone call with Oakley and his counsel, a bank representative confirmed that the bank Oakley used in 2017 no longer has statements from February 2017. Oakley does not have documents responsive to these requests.
- Regarding Requests Nos. 14 and 15: Oakley's counsel has already informed defense counsel that we are in the process of obtaining Oakley's medical records and that, without waiving privilege, Oakley will produce relevant records concerning (1) any medical treatment Oakley received for injuries arising from the assault and battery and (2) treatment Oakley received for emotional distress, to the extent Oakley intends to rely on medical proof of emotional distress. See In re Sims, 534 F.3d 117, 131 (2d Cir. 2008) (finding that plaintiff does not waive psychotherapist-patient privilege when seeking garden-variety emotional distress damages).
- Oakley produced two retainer agreements: one from 2017 and one from 2019.
- Oakley maintains his objection that the communications listed in requests Nos. 17 through 23 are privileged. Unlike the attorney client privilege, "work-product protection is not necessarily waived by disclosure to third parties." Williams v. Bridgeport Music, Inc., 300 F.R.D. 120, 123 (S.D.N.Y. 2014) (citing In re Pfizer Inc. Sec. Litig., No. 90-cv-1260 (SS), 1993 WL 561125, at *6 (S.D.N.Y. Dec. 23, 1993)). "Rather, the courts generally find a waiver of the work product privilege only if the disclosure substantially increases the opportunity for potential adversaries to obtain the information." Id. "Implicit in this analysis is the question of whether the third party itself can or should be considered an adversary. Accordingly, courts have generally held that where the disclosing party and the third party share a common interest, there is no waiver of the work product privilege." Merrill Lynch & Co. v. Allegheny Energy, Inc., 229 F.R.D. 441, 446



(S.D.N.Y. 2004) (internal citations omitted).  Plaintiff has not withheld drafts or other documents related to the book; rather, Plaintiff objects to the production of communications about the book that involve attorneys' opinions and advice that were intended to be confidential.

**Defendants' Position**

**I. Oakley's 21 Depositions are Excessive, Cumulative, Burdensome, and Violate the Federal Rules.** Oakley has noticed/subpoenaed *21* depositions, including of individuals who did not participate in or see Oakley's removal—far exceeding the 10-deposition limit permitted under the Federal Rules of Civil Procedure ("FRCP"). Of the 21 depositions, *nine* were noticed in the past two weeks, even though Oakley has been aware of the individuals' identities for months. FRCP 30(a)(2)(A) "limits parties to ten depositions each unless both parties stipulate to additional depositions or if the court grants leave to exceed this limit," regardless of whether the depositions are disputed. *Commodity Futures Trading Comm'n v. Commodity Inv. Grp., Inc.*, 2005 WL 3030816, at *1 (S.D.N.Y. Nov. 10, 2005). Neither have occurred here. Moreover, the party seeking to depose additional witnesses has the "burden of demonstrating cause to exceed the ten-deposition limit contemplated by the Federal Rules." *Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC*, 273 F.R.D. 367, 368 (S.D.N.Y. 2010).

*First*, Oakley has not satisfied his burden to demonstrate "cause" because he has not specified which 10 witnesses he is prioritizing for deposition. *Galgano v. County of Putnam*, 2021 WL 2138759, at *2 (S.D.N.Y. May 26, 2021) ("[Defendants] have made no effort to rank or prioritize the depositions they seek to take."). Oakley must identify the witnesses he wishes to depose first *before* the Court can decide if depositions beyond the limit are warranted. *In re Actos Antitrust Litig.*, 639 F. Supp. 3d 453, 455 (S.D.N.Y. 2022). And, even if Oakley were to identify the 10 persons he wishes to depose, leave to depose excess individuals should not be granted pursuant to FRCP 26(b)(2)(A), which provides "that discovery should be limited if it is 'unreasonably cumulative or duplicative,' or 'the burden or expense of the proposed discovery outweighs its likely benefit' taking into consideration the needs of the case, the amount in controversy, other methods of obtaining the information, the importance of the issues to the litigation, and the importance of this particular discovery tool in resolving the issues." *Commodity*, 2005 WL 3030816, at *1. More than 10 depositions would be wildly disproportionate to the needs of this case, where the Second Circuit and this Court have already opined that the remaining issues are limited in scope and time to the events of a few minutes on one evening. Further, Oakley has not produced any documents concerning his actual damages or injury, is not arguing actual economic damages, and has yet to articulate any basis whatsoever for any amount in controversy. And given that the majority of these individuals were far removed from any use of force on Oakley that evening—for example, Oakley seeks to depose an elevator operator and a server—their testimony would be far from important to the only issue that remains in this litigation.

*Second*, the additional deponents are irrelevant. Oakley seeks to depose nearly half a dozen individuals who did not participate in his removal or were not witnesses to the event. For example, while the former elevator operator and server were at the game and briefly interacted with Oakley, they were not witnesses to or involved in his removal, and former guest services representative



Karen Hoffman was not even at the Garden that night. The other former guest services professional, Gene Perrotto, was not even a security employee and did not participate in Oakley's removal, nor did any of the three NBA individuals. Likewise, Dolan and the former MSG executives, while aware of the situation surrounding Oakley's removal and kept apprised as the incident unfolded, did not order the use of force to remove him. Indeed, as this Court just held, "Oakley's assault and battery claims ultimately boil down to two considerations: (1) the amount of force used to remove Oakley from the Garden and (2) whether that force was objectively reasonable under the circumstances." ECF 218 at 5.

***Third***, Oakley also seeks to depose individuals whose testimony is cumulative of the depositions that already took place or will occur. The five former security personnel who witnessed Oakley's removal would provide duplicative testimony to that of the three current security personnel who already testified, each of whom gave consistent testimony about Oakley's belligerent and violent behavior in refusing to leave.[3] And while former MSG employees Richard Claffey, Barry Watkins, and Karen Hoffman assisted with a post-hoc review of the incident, their testimony would be cumulative of MSG's corporate representative, who will testify about "Defendants' recording of the incident on February 8, 2017 and the subsequent investigation." *Athalonz, LLC v. Under Armour, Inc.*, 2024 WL 1555685, at *3 (S.D.N.Y. Apr. 10, 2024) (granting motion to quash where "any testimony or documents [the non-party] could provide would be duplicative of discovery that [plaintiff] may obtain from its party opponent"); *Hertz Corp. v. Accenture LLP*, 2020 WL 1150053, at *2 (S.D.N.Y. Mar. 9, 2020) ("[T]he mere fact that there are several individuals who may possess relevant information does not necessarily entitle a party to examine each of them.").

**II. Oakley Should Be Limited to Seven Hours for the 30(b)(6) Deposition.** MSG attempted to confirm with Oakley that the 30(b)(6) deposition of MSG counts as one deposition, and therefore Oakley must complete his examination of MSG's three designees in seven hours total. Fed. R. Civ. P. 30(d)(1). Oakley claims that he is entitled to seven hours of questioning time for *each* designee. This is nonsensical and an example of Oakley's desire to conduct overreaching discovery to fish and harass. *See* ECF 185-8 (text to Oakley advising that "[i]f Discovery is done intentionally and impactfully . . . you might be able to engage in settlement talks."). Under Oakley's tortured interpretation of Rule 30(b)(6), he would be permitted to depose three corporate representatives for 21 hours (and even more time if MSG designated more than three representatives), on topics this Court *already limited*. ECF 174. This is not how the deposition of corporate representatives is intended to work. *Rubie's Costume Co., Inc. v. Kangaroo Mfg., Inc.*, 2018 WL 4558405, at *1 (E.D.N.Y. Sept. 21, 2018) (30(b)(6) "deposition will be limited to seven hours, even if there is more than one 30(b)(6) deponent").

---

[3] Oakley's counsel showed these deponents video of the incident, and each testified as to what they experienced and witnessed as the incident unfolded. Together, these current employees provided eyewitness testimony of Oakley's alleged "single instance of assault and battery," ECF 174 at 5, from the moment he took his seat through his removal from the Garden, and additional depositions of security guards would be cumulative, *Delgado v. Donald J. Trump for President, Inc.*, 2024 WL 1604260, at *2 (S.D.N.Y. Apr. 12, 2024) (nonparty depositions were "not proportional to the needs of this case because it is cumulative of information [] through … party depositions").



Hon. Richard J. Sullivan
November 22, 2024
Page 7

**III. MSG's Document Production Complies With the FRCP, the Law of the Case, and the Parties' Agreements.** *First*, Oakley's demand for MSG's employees' *personal* emails and text messages is contrary to this Court's Order directing MSG to search only for *corporate emails*, which constitutes the law of the case on the issue of the scope of MSG's search. ECF 181 at 3, 7 ("Oakley has also requested the production of *emails* from multiple MSG witnesses. . . . Accordingly, any searches of Dolan's *emails* must be confined to the same period as the searches of the other Interrogatory Witnesses' *emails*."); *Food Exchange, Inc. v. Lawson Foods, LLC*, 2020 WL 7390224, at *2 (S.D.N.Y. Oct. 26, 2020) ("The law of the case doctrine forecloses relitigation of issues expressly or impliedly decided by the court."). Oakley already presented this issue to the Court, the Court ruled that MSG was only required to search *emails*. Oakley is not entitled to a second bite at the apple.

*Second*, Oakley's demand is precluded by this case's agreed-upon ESI protocol,[4] which did not require MSG to search anything more than "Defendants' corporate email system." Contrary to Oakley's counsel's contention at Wednesday's spoliation hearing, the parties agreed to that protocol, except for the dispute raised with your Honor regarding email searches for MSG's custodians. ECF 178-1 at 3 (Oakley requesting email searches in joint letter). No other disputes were outstanding on the protocol, and thus, your Honor already ruled on the scope of MSG's searches in that prior order. Courts routinely hold the parties to the search terms, time frames, custodians, and methods of search to which they agree in an ESI protocol. *Pincus Law Grp., PLLC v. Springer*, 2024 WL 3937542, at *4 (E.D.N.Y. Aug. 26, 2024) (rejecting request for documents that exceeded the time frame stipulated in the ESI protocol). Contrary to Oakley's assertions, MSG never agreed to search its employees' personal communications (and is not aware of responsive material in that category). Indeed, witness deposition testimony and interviews have actually shown that MSG's guards did not text about what was said to Oakley on Feb. 8, 2017, or the use of force against him that night. And Oakley's speculation that MSG "took no measures" to preserve potentially relevant communications is baseless. It is rather Oakley's counsel who admitted to taking no measures to preserve potentially relevant communications at Wednesday's spoliation hearing—not MSG.

*Third*, because MSG is a *corporate defendant*, it is required to search only corporate emails. FRCP 26(b)(2)(B) provides, "[a] party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost." Accordingly, MSG is only required to search "reasonably accessible" information, *i.e.*, its own corporate email systems. *Chen-Oster v. Goldman, Sachs & Co.*, 285 F.R.D. 294, 302 (S.D.N.Y. 2012) ("Reasonable accessible sources generally include … files available on or from a computer user's desktop, or on a company's network, in the ordinary course of operation.").

---

[4] MSG can provide exhibits reflecting the parties' negotiations on the ESI protocol upon the Court's request. Prior to the Court's order (ECF 181), the ESI protocol only required MSG to search "Defendants' corporate email system." *After* the Court's order, Oakley's counsel added *for the first time* and despite months of negotiations, a provision that MSG search personal email and text messages. MSG has complied with the ESI protocol's search terms and custodians for their corporate email system per the Court's order.



***Fourth,*** Oakley's Rule 45 subpoenas on four MSG current employees and custodians—which seek their personal communications—are patently improper in light of the parties' ESI protocol and the Court's order compelling MSG to search for responsive emails only from these individuals' corporate accounts between February 8, 2017 and March 1, 2017. ECF 181 at 7. "[S]ubpoenas under Rule 45 are clearly not meant to provide an end-run around the regular discovery process under Rules 26 and 34." *Burns v. Bank of Am.*, 2007 WL 1589437, at *14 (S.D.N.Y. June 4, 2007) (quashing document subpoena served on defendant's employee seeking "the same documents as demanded in" discovery requests to defendants). The Court should quash these subpoenas.

**IV. Oakley's Document Production Deficiencies. (1)** Oakley produced 271 documents, despite his counsel representing that they applied (and then lost) "thousands of tags" during the review. MSG has tried, without success, to get Oakley's counsel to explain why so few documents were produced in light of the expansive review, and requests the Court order Oakley to explain. **(2)** Oakley claims he "do[es] not have documents responsive to" Requests 9 and 10 seeking receipts, credit card statements, or documents reflecting his whereabouts and purchases on February 7–9, 2017, which are probative to whether Oakley was under the influence of drugs or alcohol on February 8, 2017, because "[t]he bank Plaintiff used in 2017 no longer has the statements from the relevant time period," which is not credible. Oakley must disclose the name and location of this bank and the efforts taken to search for this information, which MSG has requested multiple times. **(3)** Oakley must immediately produce documents responsive to Requests 14 and 16 concerning "any medical diagnosis, treatment, medication, or therapy," which are probative to the amount or existence of damages, regardless of whether he intends to rely on them. Oakley ***has not produced a single document*** concerning the existence of any damages, despite MSG asking for this information since its initial requests in May. MSG also requests the Court grant it leave to serve additional interrogatories if needed after receipt of these documents given that Oakley's deposition has already occurred. **(4)** Oakley is improperly withholding relevant communications concerning drafts of his autobiography (one draft of which indicates that Oakley was not pushed, but "slipped" the night of the incident) between himself, counsel, and non-lawyer third parties who allegedly provided public relations strategy, on assertions of privilege and work product. *Universal Standard Inc. v. Target Corp.*, 331 F.R.D. 80, 88, 93-94 (S.D.N.Y. 2019) (public relations strategy not privileged); *Egiazaryan v. Zalmayev*, 290 F.R.D. 421, 435 (S.D.N.Y. 2013) (public relations strategy not protected work product). **(5)** Oakley is improperly withholding invoices, retainers, and disengagement letters (and redacted two engagement letters) on the basis of privilege. *Duttle v. Bandler & Kass*, 127 F.R.D. 46, 52 (S.D.N.Y. 1989) ("[a]ttorneys' bills and communications regarding retainer agreements are not privileged"). The relevance of these is underscored by Oakley's counsel's representation at the spoliation hearing that they complied with their preservation obligations given what they said in their engagement letters. MSG requests the Court order Oakley to remedy these deficiencies.

**VI. Fact Discovery.** In light of the narrow scope of the sole remaining issue in this case, MSG does not believe a blanket extension of the fact discovery cutoff is warranted, but understands that the Court may need to order certain specific depositions to take place after that date as necessary—



Hon. Richard J. Sullivan<br>
November 22, 2024<br>
Page 9

including Mr. Dolan's, which must "be conducted after all other MSG employees." ECF 218 at 10.

Respectfully submitted,

Valdi Licul

cc: All Counsel of Record (*via* ECF)