UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHARLES OAKLEY,

                Plaintiff,

-v-

MSG NETWORKS, INC., *et al.*,

                Defendants.

No. 17-cv-6903 (RJS)
MEMORANDUM
AND ORDER

RICHARD J. SULLIVAN, Circuit Judge:

    Before the Court is the parties' joint letter regarding plaintiff Charles Oakley's request to (1) vastly exceed the presumptive ten-deposition limit under Federal Rule of Civil Procedure 30(a); (2) compel defendants MSG Networks, Inc., Madison Square Garden Sports Corp., and Sphere Entertainment Group, LLC (collectively, "MSG") to search the personal cellphones of witnesses currently employed by MSG; and (3) extend the fact and expert discovery deadlines by thirty days. (*See* Doc. No. 221 at 2–4.)  MSG opposes Oakley's first two motions, but consents to a thirty-day extension of the fact and expert discovery deadlines.  MSG, in turn, requests that the Court (1) limit the length of the depositions of the three witnesses that MSG designated under Federal Rule of Civil Procedure 30(b)(6) to seven hours in total, (2) quash subpoenas that Oakley served on four current MSG employees under Rule 45, and (3) order Oakley to cure various deficiencies in his document production. (*See id.* at 6, 8.)  For the reasons set forth below, Oakley's motion to exceed the ten-deposition limit is DENIED; Oakley's motion to compel MSG to search the personal cellphones of their employees is DENIED; MSG's motion to limit the total length of the Rule 30(b)(6) depositions to seven hours is DENIED; MSG's motion to quash Oakley's Rule 45 subpoenas seeking personal communications from MSG employees is DENIED; MSG's motion to order Oakley to cure

document-production deficiencies is GRANTED in part and DENIED in part; and Oakley's motion to extend the deadlines for fact and expert discovery is GRANTED on consent.

## I.    Background

This case stems from an incident on February 8, 2017 at Madison Square Garden in which Oakley was forcibly removed from a New York Knicks basketball game.  The Court assumes the parties' familiarity with the factual background and procedural history of this case as summarized in the Court's September 10, 2024 memorandum and order (the "September 10 Order") resolving the parties' previous discovery disputes.  (*See* Doc. No. 181 at 2–3.)

As relevant here, in November 2024, the parties reached an impasse regarding various additional discovery issues.  In particular, Oakley seeks to exceed the ten-deposition limit set forth in Federal Rule of Civil Procedure 30(a) in order to depose nine MSG security personnel who were involved in his removal from the Knicks game, as well as NBA security staff who "may have been present for the incident," several MSG guest services employees who may "have personal knowledge of Oakley being abusive to staff," two MSG employees who participated in MSG's review of the incident, and NBA Commissioner Adam Silver.  (Doc. No. 221 at 2.)  Oakley also requests that MSG conduct "searches of text messages (or messages on other messaging applications) on the personal phones of their employees," and that the Court extend the fact and expert discovery deadlines by thirty days.  (*Id.* at 3.)

MSG, in turn, argues that Oakley has not carried his burden to justify exceeding the presumptive ten-deposition limit and that permitting additional depositions "would be wildly disproportionate to the needs of this case." (*Id.* at 5.)  MSG also contends that Oakley already had an opportunity to request that MSG search the personal phones of their employees in the parties' previous discovery dispute yet only focused on searches of the corporate emails of those employees. (*See id.* at 7.)  Additionally, MSG makes a series of its own discovery requests.  For starters, MSG moves to

limit the aggregate duration of the depositions of the three witnesses that it designated under Rule 30(b)(6) to seven hours in total. (*See id.* at 6.) MSG also seeks to quash the subpoenas that Oakley served on four current MSG employees under Rule 45. (*See id.* at 8.) Finally, MSG requests that the Court order Oakley to cure various deficiencies in his document production related to his bank records, medical records, communications regarding drafts of his autobiography, and invoices, retainers, and disengagement letters from his attorneys. (*See id.*)

The parties have conferred several times on these issues, including most recently on November 14, 2024. (*See id.* at 1.) Unable to reach any agreements, the parties submitted a joint letter to the Court on November 22, 2024, describing their respective positions on the disputed discovery requests. (*See generally id.*) The Court addresses each in turn below.

## II.    Depositions

### A.  Oakley's Request to Exceed the Ten-Deposition Limit

Federal Rule of Civil Procedure 30(a) "presumptively limit[s] to ten the number of depositions that each side may conduct." *Galgano v. County of Putnam*, No. 16-cv-3572 (KMK) (PED), 2021 WL 2138759, at *1 (S.D.N.Y. May 26, 2021). A party may exceed this limit either by joint stipulation, *see* Fed. R. Civ. P. 30(a)(2)(A), or with leave of the court, *see id.* 30(a)(2); *Dela Raba v. Suozzi*, No. 06-cv-1109 (DRH) (AKT), 2006 WL 8435603, at *1 (E.D.N.Y. Nov. 17, 2006). The purpose behind the ten-deposition limit is to "enable courts to maintain a tighter rein on the extent of discovery and to minimize the potential cost of wide-ranging discovery." *Sigala v. Spikouris*, No. 00-cv-983 (ILG), 2002 WL 721078, at *3 (E.D.N.Y. Mar. 7, 2002) (alterations accepted and internal quotation marks omitted). Accordingly, when determining whether to permit a party to exceed the presumptive limit, a court must consider the factors set forth in Rule 26(b)(2)(C), namely whether (1) "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive," Fed. R. Civ. P. 26(b)(2)(C)(i);

3

(2) "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action," *id.* 26(b)(2)(C)(ii); and (3) the proposed discovery is "relevant to any party's claim or defense and proportional to the needs of the case," taking into account "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit," *id.* 26(b)(1). The party seeking to exceed the ten-deposition limit bears the "burden of demonstrating cause to exceed [that] limit." *Ritchie Risk-Linked Strategies Trading (Ir.), Ltd. v. Coventry First LLC*, 273 F.R.D. 367, 368 (S.D.N.Y. 2010).

Oakley has failed to meet that burden here. First, Oakley's motion is premature because "courts will generally not grant leave to expand the number of depositions until the moving party has exhausted the ten depositions permitted as of right under Rule 30(a)(2)(A)." *Gen. Elec. Co. v. Indem. Ins. Co. of N. Am.*, No. 06-cv-232 (CFD) (TPS), 2006 WL 1525970, at *2 (D. Conn. May 25, 2006). Second, Oakley has "made no effort to rank or prioritize the depositions [he] seek[s] to take," relying instead on the Court "to undertake the necessary winnowing of [Oakley's] witness list on [his] behalf," which is "inappropriate." *Galgano*, 2021 WL 2138759, at *2. Third, permitting more than ten depositions here "would undermine Rule 30(a)(2)(A)(i)'s objective of promoting a cost-effective approach to discovery and would instead endorse a profligate, 'scorched earth' approach." *Id.* While Oakley argues that each of the proposed witnesses will shed light on "what exactly happened when Defendants forcibly removed Oakley from Madison Square Garden" (Doc. No. 221 at 1 (emphasis omitted) (internal quotation marks omitted)), "the mere fact that many individuals may have discoverable information does not necessarily entitle a party to depose each such individual," *Sigala*, 2002 WL 721078, at *3 (alterations accepted and internal quotation marks omitted); *see also Commodity Futures Trading Comm'n v. Commodity Inv. Grp., Inc.*, No. 05-cv-5741 (HB), 2005 WL

4

3030816, at *1 (S.D.N.Y. Nov. 10, 2005) ("Although a witness might have discoverable information, a party is not always entitled to depose that individual."). Oakley offers no explanation as to why these additional witnesses are likely to have unique information that is distinguishable from that of the other witnesses who have already been noticed for depositions. And since, as the Court has repeatedly made clear, this case is limited to "a single instance of assault and battery on an isolated evening in 2017," (Doc. No. 174 at 5), allowing Oakley to depose more than ten individuals would be disproportional to the needs of this case. Accordingly, Oakley's motion to exceed the ten-deposition limit is DENIED.[1]

### B. MSG's Request to Limit the Length of the Rule 30(b)(6) Depositions

Under Federal Rule of Civil Procedure 30(b)(6), a party may name as a deponent a corporation, which must then designate one or more individuals to testify on its behalf about "information known or reasonably available to the organization." On August 12, 2024, after Oakley noticed his intent to depose MSG, the Court issued an order limiting the topics for the Rule 30(b)(6) depositions. (*See* Doc. No. 174.) MSG subsequently designated three individuals to testify on these topics and now moves to limit the length of these three depositions to seven hours in total. (*See* Doc. No. 221 at 6.) However, the Advisory Committee's Note to Rule 30 is clear: "For purposes of [the seven-hour] durational limit, the deposition of each person designated under Rule 30(b)(6) should be considered a separate deposition." Fed. R. Civ. P. 30 advisory committee's note to 2000 amendment. As a result, MSG's motion to limit the length of the Rule 30(b)(6) depositions to seven hours in total is DENIED.

---

[1] The Court notes that Oakley filed separate motions to compel depositions of two former MSG employees. (*See* Doc. Nos. 210, 213.) Oakley is hereby ordered to submit a letter informing the Court whether those two witnesses are part of the ten individuals whom Oakley wishes to depose and whether the motions to compel depositions of those witnesses are now moot in light of the Court's ruling here limiting Oakley to ten depositions in total.

### III. Document Production

#### A. Oakley's Request for MSG to Search Their Employees' Personal Phones

In addition to the above deposition-related disputes, Oakley has requested that the Court compel MSG to search the personal phones of its employees for relevant text messages. (*See* Doc. No. 221 at 3.) However, this is not Oakley's first attempt to compel MSG to produce communications from its employees regarding the February 8, 2017 incident. In the parties' August 19, 2024 joint letter on discovery disputes, Oakley sought to compel document production from MSG employees who gave statements about the incident, participated in Oakley's removal, and/or claimed to have witnessed him being abusive. (*See* Doc. No. 178-1 at 2–3.) It was clear from the parties' joint letter that Oakley's requested document production solely pertained to a search of MSG employees' corporate emails (*see id.* at 3–4 & n.4); indeed, Oakley's section of the joint letter made no mention of text messages or searches of the personal phones of MSG employees. For that reason, the Court's September 10 Order, which resolved that discovery dispute, repeatedly referenced searches of corporate emails. (*See* Doc. No. 181 at 3, 7–8.) At no point did Oakley move for reconsideration of that order or otherwise inform the Court that he was also seeking text messages on MSG employees' personal phones. In fact, MSG asserts – and Oakley does not dispute – that Oakley made no request for the employees' personal text messages until *after* the Court's September 10 Order. (*See* Doc. No. 221 at 7 n.4.) Accordingly, since the Court has already ruled on MSG's document production obligations, "[t]he law of the case doctrine forecloses relitigation of issues expressly or impliedly decided by the [C]ourt." *Vista Food Exch., Inc. v. Lawson Foods, LLC*, No. 17-cv-7454 (ALC) (SN), 2020 WL 7390224, at *2 (S.D.N.Y. Oct. 26, 2020) (alterations accepted and internal quotation marks omitted). Allowing Oakley to engage in such piecemeal discovery requests would run contrary to Rule 1's command that the Federal Rules of Civil Procedure be "construed, administered, and employed by the [C]ourt . . . to secure the just, speedy, and inexpensive determination of every action

and proceeding." Oakley's request to compel MSG to search the personal phones of their employees is therefore DENIED.

### B. MSG's Motion to Quash Oakley's Rule 45 Subpoenas

Federal Rule of Civil Procedure 45 permits a party to issue a subpoena that "command[s]" a non-party to "produce designated documents, electronically stored information, or tangible things in that person's possession, custody, or control." Fed. R. Civ. P. 45 (a)(1)(A)(iii). Oakley served Rule 45 subpoenas on four current MSG employees, "requesting all communications and [electronically stored information] concerning Oakley and his removal from MSG, including e-mails, text messages, or instant messages in applications such as WhatsApp from February 8, 2017, to March 1, 2017." (Doc. No. 221 at 3; *see id.* at 8.) MSG now moves to quash those subpoenas. (*See id.* at 8.) But the Second Circuit has made clear that "a party usually does not have standing to object to a subpoena directed to a non-party witness." *Langford v. Chrysler Motors Corp.*, 513 F.2d 1121, 1126 (2d Cir. 1975); *see also Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11-cv-1590 (LTS) (HBP), 2013 WL 57892, at *5 (S.D.N.Y. Jan. 4, 2013) ("A party lacks standing to challenge subpoenas issued to non-parties on the grounds of relevancy or undue burden."). Indeed, "only the person or entity to whom a subpoena is directed has standing to file a motion to quash." *Jacobs v. Conn. Cmty. Tech. Colls.*, 258 F.R.D. 192, 194–95 (D. Conn. 2009). An exception to this rule exists when a party "assert[s] some right or privilege personal to it, such as an interest in proprietary, confidential information that would be disclosed or an interest in maintaining a privilege that would be breached by disclosure." *US Bank Nat'l Ass'n v PHL Variable Ins. Co.*, No. 12-cv-6811 (CM) (JCF), 2012 WL 5395249, at *2 (S.D.N.Y. Nov. 5, 2012). However, MSG has not asserted any right or privilege in the "*personal* communications" of its employees on their personal phones that Oakley seeks to obtain through his Rule 45 subpoenas. (Doc. No. 221 at 8 (emphasis added).) As a result, MSG lacks standing here, and its motion to quash Oakley's Rule 45 subpoenas is thus DENIED.

### C. MSG's Request to Cure Oakley's Deficient Document Production

MSG asserts that Oakley's document production is deficient in five respects and seeks various remedies from the Court. The Court addresses each in turn.

*First*, MSG questions the completeness of Oakley's document production, which consisted of only 271 documents despite Oakley's prior assertion that he had applied "thousands of tags" during his document review. (Doc. No. 221 at 8.) MSG therefore requests that the Court order Oakley "to explain why so few documents were produced in light of th[is] expansive review." (*Id.*) Oakley has since responded to that request and explained that documents oftentimes have multiple tags and some documents may even be tagged as "non-responsive," resulting in a larger number of tagged documents than responsive ones. (*See id.* at 4.) Since Oakley has explained why so few documents have been produced relative to the number of tags applied, MSG's request is now moot. Accordingly, MSG's motion to compel Oakley to further explain the extent of his document production is DENIED.

*Second*, MSG notes that Oakley has not produced his bank or credit card statements from February 7–9, 2017. (*See id.* at 8.) Oakley has explained that "the bank [he] used in 2017 no longer has statements" from the time period in question. (*Id.* at 4.) To verify that fact, MSG has requested that the Court order Oakley to "disclose the name and location of [his] bank and the efforts taken to search for this information, which MSG has requested multiple times." (*Id.* at 8.) Oakley provides no explanation whatsoever as to why he has not provided MSG with the name and location of his bank despite these requests, and the Court sees no reason why this information, which is clearly relevant not only to whether Oakley purchased alcohol (and was intoxicated) at the time of the February 7 incident but also to whether Oakley may have been complicit in the spoilation of evidence, should be withheld. MSG's motion to compel Oakley to provide additional information regarding his bank account is thus GRANTED.

*Third*, MSG asserts that Oakley has not yet produced medical records, which, as Oakley does not dispute, are plainly relevant to his claim for damages. (*See id.*) Oakley explains that he is in the process of obtaining his medical records and will produce all relevant records concerning "any medical treatment [he] received for injuries arising from the [alleged] assault and battery," as well as any "treatment [he] received for emotional distress." (*Id.* at 4.) Under Federal Rule of Civil Procedure 34(b)(2)(A), a party must respond in writing to a document request within thirty days of being served. However, the parties do not indicate when MSG served its request for these medical records. As a result, the Court cannot determine whether Oakley's production of these documents is untimely and whether his failure to produce these documents prejudiced MSG in conducting their deposition of Oakley. Accordingly, the parties are hereby ordered to submit to the Court within three days a joint letter not to exceed one single-spaced page explaining when MSG served its request for Oakley's medical records. The Court will then determine whether to issue an order compelling the production of these records and whether to permit additional interrogatories or a second deposition of Oakley.

*Fourth*, MSG contends that "Oakley is improperly withholding relevant communications concerning drafts of his autobiography . . . between himself, counsel, and non-lawyer third parties who allegedly provided public relations strategy, on assertions of privilege and work product." (*Id.* at 8.) Oakley "objects to the production of communications about the book that involve attorneys' opinions and advice that were intended to be confidential." (*Id.* at 5.) In order to assert this privilege, Oakley must submit a privilege log in accordance with the requirements set forth in Southern District of New York Local Rule 26.2 ("S.D.N.Y. L.R. 26.2"). However, nothing in the parties' submissions indicates whether Oakley has produced such a privilege log. If Oakley has not produced a privilege log, he is hereby ordered to produce one forthwith. If, after reviewing the privilege log, the parties remain unable to resolve this dispute on their own, MSG may renew its motion, at which time the

Court may order *in camera* inspection of the communications at issue. For the moment, MSG's motion to compel is DENIED without prejudice to renewal.

*Fifth*, MSG argues that "Oakley is improperly withholding invoices, retainers, and disengagement letters (and redacted two engagement letters) [from his attorneys] on the basis of privilege." (*Id.* at 8.) Oakley responds that he has produced two retainer agreements but does not address whether he is withholding any invoices and disengagement letters nor does he provide any basis for withholding such documents. (*See id.* at 4.) "It is . . . black letter law that attorneys' bills and communications regarding retainer agreements are not privileged." *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 319 F.R.D. 100, 105 (S.D.N.Y. 2017) (alterations accepted and internal quotation marks omitted). Of course, portions of such records may be protected under the attorney-client privilege or work-product doctrine if they "reveal litigation strategy or the specific nature of the service provided." *Mohr v. Sec. Credit Servs., LLC*, 141 F. Supp. 3d 179, 185 (N.D.N.Y. 2015) (internal quotation marks omitted). But again, in order to assert privilege over these documents, Oakley must first produce a privilege log in accordance with S.D.N.Y. L.R. 26.2. To the extent that he has not done so, Oakley is hereby ordered to produce one forthwith. And if, after reviewing the privilege log, the parties remain unable to resolve this dispute on their own, MSG may renew its motion, at which time the Court may order *in camera* inspection of the records at issue. For the time being, MSG's motion to compel is DENIED without prejudice to renewal.

In sum, MSG's motion to cure deficiencies in Oakley's document production is GRANTED in part and DENIED in part.

### IV.     Extension of Discovery Deadlines

Finally, Oakley has requested that the Court extend the deadlines for fact and expert discovery by thirty days. (*See* Doc. No. 221 at 3–4.) Under the September 6, 2024 revised case management plan, depositions and fact discovery are to be completed by December 15, 2024, and expert

depositions are to be completed by January 31, 2025 (with expert disclosures made by November 25, 2024 and expert reports exchanged by December 20, 2024). (*See* Doc. No. 180 at 1–2.) On December 10, 2024, MSG informed the Court via email to Chambers that it consents to a single thirty-day extension of the deadlines for fact and expert discovery. Accordingly, Oakley's motion to extend the fact and expert discovery deadlines by thirty days is GRANTED on consent.

*   *   *

For the reasons stated above, IT IS HEREBY ORDERED THAT Oakley's motion to exceed the ten-deposition limit is DENIED; MSG's motion to limit the total length of the Rule 30(b)(6) depositions to seven hours is DENIED; Oakley's motion to compel MSG to search the personal phones of their employees is DENIED; MSG's motion to quash Oakley's Rule 45 subpoenas seeking personal communications from MSG employees is DENIED; MSG's motion to order Oakley to cure document-production deficiencies is GRANTED in part and DENIED in part; and Oakley's motion to extend the deadlines for fact and expert discovery is GRANTED on consent. IT IS FURTHER ORDERED THAT Oakley shall submit a letter to the Court no later than December 13, 2024 indicating whether his motions to compel depositions of two former MSG employees (Doc. Nos. 210, 213) are now moot in light of this order. Also by that date, the parties shall submit a joint letter of no more than one single-spaced page explaining when MSG served its request for Oakley's medical records.

SO ORDERED.

Dated:    December 10, 2024
          New York, New York

_____
RICHARD J. SULLIVAN
UNITED STATES CIRCUIT JUDGE
Sitting by Designation