655 Third Avenue, 22nd Fl.
New York, NY 10017

T: 212.370.0330
www.pkbllp.com

**Petrillo Klein + Boxer**

**NELSON A. BOXER**
nboxer@pkbllp.com
D: 212.370.0338
M: 917.273.2693

December 12, 2024

**By Email**

The Hon. Richard J. Sullivan
United States Circuit Judge
U.S. Court of Appeals for the Second Circuit
40 Foley Square
New York, NY 10007

    Re:  *Oakley v. MSG Networks, et al.*
           <u>17 Civ. 6903 (RJS)</u>

Dear Judge Sullivan,

On behalf of Plaintiff Charles Oakley ("Mr. Oakley"), we respectfully submit the below-referenced exhibits in advance of the hearing, scheduled for December 19, 2024 ("December 19 Hearing"), in the above-referenced case regarding the request for sanctions by Defendants MSG Networks, Inc., Madison Square Garden Sports Corp. and Sphere Entertainment Group, LLC (collectively "Defendants") pursuant to Rule 37 of the Federal Rules of Civil Procedure ("Rule 37"). (*See* Doc. 222.)

Specifically, attached are the following exhibits we intend to introduce during the December 19 Hearing:

1. Exhibit 1, redacted Engagement Agreements with Mr. Oakley, dated August 8, 2017, and August 26, 2019, at PL00003054 to PL00003061, produced to defense counsel on November 18, 2024, in response to Defendants' First Set of Special Interrogatories;

2. Exhibit 2, an expert opinion of Professor Roy D. Simon, Jr. ("Professor Simon"), dated December 11, 2024, concerning the Mr. Oakley's counsels' compliance with Rule 37(e)[1];

3. Exhibit 3, an excerpt of the videotape of Defendants' deposition of Mr. Oakley, dated October 23, 2024, at time stamps 5:34:50-6:00:00;

---

[1] Upon further reflection on the colloquy with the Court on November 20, 2024, (Doc. 225, Nov. 20 Hr'g. Tr. at 44:9-17), we believe that an expert opinion would help the Court in rendering its decision.

4. Exhibit 4, an excerpt of the transcript of Defendants' deposition of Mr. Oakley, dated October 23, 2024, at pages 1-5 and 466-493;

5. Exhibit 5, excerpts of the transcript of Defendants' deposition of Akhtar Farzaie ("Mr. Farzaie"), dated December 2, 2024, at pages 1-3, 46-63, 68-69, and 76;

6. Exhibit 6, excerpts of the transcript of Defendants' deposition of Joseph Masters ("Mr. Masters"), dated November 26, 2024, at pages 1-5, 30-33, and 42-45; and

7. Exhibit 7, Defendants' subpoena to AT&T Inc. ("AT&T"), dated November 26, 2024, for Mr. Oakley's text messages.

We remain of the view that a Court hearing is unnecessary to adjudicate Defendants' request to file a Rule 37 motion, particularly given that Mr. Oakley has already been deposed by Defendants on this topic, (*see* Exs. 3 & 4), and given the substance of Professor Simon's opinion. We thus respectfully request, given the parties' submission of exhibits, that the Court adjudicate the Defendants' application to make a spoilation motion without a hearing.

Regarding the scheduled December 19 Hearing, we direct the Court to the relevance of the exhibits submitted herewith:

First, Professor Simon—a distinguished, experienced expert in the field of lawyer ethics and the author of a book on the topic of professional conduct under New York rules—opined that the explicit "condition" to Plaintiff counsel undertaking the representation of Mr. Oakley, detailed in counsels' engagement agreements—that is, to "locate, retain and preserve all documents . . . whether paper or electronic . . . related [] in any way [] to your claims against MSG" —was robust, clear, and detailed, and was "reasonable," as that term is used in Rule 37(e). (*See* Ex. 2 ¶¶ 29, 34, 42; Ex. 1 at PL00003056, PL00003060.) In Professor Simon's opinion, the "cautionary instructions in Wigdor's letter of engagement were clear and detailed and constituted 'reasonable steps to preserve' ESI," and that a lawyer "is not required to take any additional steps to ensure that the client preserved ESI, even if other steps were theoretically possible." (*Id.* ¶¶ 34-35.) Professor Simon further opined that the claims alleged in the Complaint were not of the sort that would require a lawyer to image a client's cell phone. (*Id.* ¶¶ 24-27, 36-37.)

Second, Mr. Oakley did not text often, instead preferring to communicate by phone. This is proven by Mr. Oakley's deposition testimony, (Ex. 3 at 5:36:38-5:37:00; Ex. 4 at 467:5-12), as well as by the testimony of his friends, (Exs. 5 & 6).

For example, during the Defendants' deposition of Mr. Farzaie (Exhibit 5), defense counsel directed Mr. Farzaie to open his cellphone and read into the record all of Mr. Farzaie's text messages with Mr. Oakley. Mr. Farzaie recounted more than 30 text messages to Mr. Oakley from February 8 to 24, 2017. (Ex. 5 at 46:22-63:8.) Mr. Oakley had "no response" to all but two of Mr. Farzaie's messages. (*E.g.*, Ex. 5 at 55:2-11, 55:18-20, 57:7-11, 59:10-17.) The only messages Mr. Oakley sent were: (i) "Post it," referring to a video clip Mr. Farzaie sent Mr. Oakley, (*id.* at 56:11-14); (ii) "What up?," seemingly unprompted, (*id.* at 57:14-16); and (iii) "I have a press conference in ATL," on February 14, 2017, when Mr. Farzaie asked if Mr. Oakley would be in New York, (*id.* at 59:18-20). Messrs. Farzaie and Oakley were and are good friends. (*Id.* at 76:2-20.) Mr. Farzaie even testified that Mr. Oakley would call him to ask for something, after which he would send a

text message back to Mr. Oakley. (*Id.* at 61:18-21.) Ultimately, Mr. Farzaie's testimony and the contents of his cellphone corroborate Mr. Oakley's testimony that Mr. Oakley infrequently texted, (Ex. 3 at 5:36:38-5:37:00; Ex. 4 at 467:5-12).

Similarly, Mr. Masters, another good friend of Mr. Oakley deposed by the Defendants (Exhibit 6), testified that he would regularly speak on the phone with Mr. Oakley, and would speak on the phone more than texting with Mr. Oakley. (Ex. 6 at 31:19-25, 42:21-43:11.) Mr. Masters testified that although he has texted with Mr. Oakley, Mr. Oakley is "not a huge texter, so I think we're more, you know, calling each other." (*Id.* at 42:24-43:3.)

Thus, it is unsurprising that defense counsel cited to no evidence or support whatsoever for the following statement it made in a letter to the Court on October 21: "given Plaintiff's propensity to communicate via text messages in general and about this case specifically . . . ." (Doc. 194 at 2.)

Third, not all of Oakley's text messages were lost after he twice replaced his broken phone. We produced 23 recent text messages to the defense on August 21, 2024, in response to Defendants' First Set of Request for Production of Documents, dated May 31, 2024. As noted above, during his deposition, Mr. Farzaie read more than 30 of his text messages to Mr. Oakley from February 2017. And Mr. Oakley testified that "some" contacts and, as a result presumably some text messages, were not copied from his broken phone to a new phone. (*See* Ex. 3 at 5:44:04-5:47:00; Ex. 4 at 475:18-478-21).

Fourth, Defendants' motion for sanctions may be mooted by their outstanding subpoena (Exhibit 8) to AT&T Inc., requesting six categories of documents regarding Mr. Oakley's text messages, including: (1) documents identifying individuals Mr. Oakley corresponded with by text message concerning this case from February 1, 2017, to February 1, 2022; (2) documents identifying individuals Mr. Oakley corresponded with by phone call concerning this case from February 1, 2017, to February 1, 2022; and (3) documents and communications showing all text messages from February 1, 2017, to February 1, 2022, concerning this case between Mr. Oakley and 11 specified individuals, including Messrs. Farzaie and Masters. (Ex. 7 at 13.)

Fifth, we direct the Court to our submission on October 24, 2024 (Doc. 196), for our presentation of the pertinent law and arguments about why the Defendants' contemplated Rule 37 motion should be denied.

\* \* \* \* \*

The exhibits outlined above and attached establish that (1) Mr. Oakley's counsel and Mr. Oakley acted reasonably, as that term is used in Rule 37, to preserve electronic evidence; (2) Mr. Oakley was not a frequent user of text message; (3) text messages between Mr. Oakley and his close friend (who also spoke with media on behalf of Mr. Oakley, (Ex. 5 at 68:20-69:11), in February 2017) demonstrate and corroborate the absence of any text messages of consequence from Mr. Oakley, let alone any Oakley text messages that speak to the ultimate issues in this case; (4) Mr. Oakley did not intend to deprive the Defendants of his text messages, as Mr. Oakley did not purposefully break his phone, and the carrier attempted to download the content of the broken phone to the new phone; (5) the Defendants claim of prejudice is unsupported by any evidence, is at odds with Mr. Oakley's limited use of text messaging, and is implausible in an action alleging a tort on

a specific date and time that was captured on videotape; and (6) whether or not any additional text messages can be recovered are the subject of Defendants' ongoing discovery.

If the Court is inclined to proceed with a hearing on Defendants' anticipated motion, we further request that the Court hold a joint hearing to simultaneously address our contemplated Rule 37 motion against the Defendants.  As the Court is aware, on September 10, 2024, the Court granted Mr. Oakley's motion to compel the Defendants to produce responsive documents belonging to 15 custodians.  (Doc. 181 at 7-9.)  Nevertheless, nearly two months later, on December 5, 2024, Defendants disclosed for the first time that, in 2020 and 2021, their email system destroyed some or all of the emails from the relevant time period for 12 of the 15 custodians.  As a result, if the Court directs the parties to move forward with a hearing on Defendants' contemplated Rule 37 motion, we respectfully request that the Court hold a simultaneous hearing on our contemplated motion for Rule 37 sanctions because of Defendants' spoliation of documents belonging to the 12 custodians.

In sum, our previous correspondence, and the evidence submitted and described herein, establish that Rule 37 spoilation sanctions against Mr. Oakley or his counsel are uncalled for.

Respectfully submitted,

**PETRILLO KLEIN & BOXER LLP**

By: */s/ Nelson A. Boxer*
　　Nelson A. Boxer
　　Marcelo Triana
655 Third Avenue
New York, NY 10017
Telephone: (212) 370-0330
nboxer@pkbllp.com
mtriana@pkbllp.com

　　-and-

**WIGDOR LLP**

Douglas H. Wigdor
Valdi Licul
Katherine Vask
85 Fifth Avenue
New York, NY 10003
Telephone: (212) 257-6800
dwigdor@wigdorlaw.com
vlicul@wigdorlaw.com
kvask@wigdorlaw.com

*Attorneys for Plaintiff*

cc: Randy M. Mastro (by e-mail)