# KING & SPALDING

King & Spalding LLP
1185 Avenue of the Americas, 34th Floor
New York, NY 10036-4003
Tel: +1 212 556 2100
Fax: +1 212 556 2222
www.kslaw.com

Randy M. Mastro
Direct Dial: +1 212 827 4019
RMastro@kslaw.com

December 19, 2024

**VIA ECF AND E-MAIL**

Hon. Richard J. Sullivan, U.S. Circuit Court Judge
U.S. Court of Appeals for the Second Circuit
500 Pearl Street, New York, NY 10007

Re:  *Oakley v. MSG Networks, et al.*, No. 17-cv-6903 (RJS) (S.D.N.Y.)

Dear Judge Sullivan:

We represent Defendants MSG Networks, Inc., Madison Square Garden Sports Corp., and Sphere Entertainment Group, LLC (collectively, "MSG" or the "Defendants"). We write jointly with Plaintiff Charles Oakley ("Plaintiff" or "Oakley") pursuant to Rule 2(G) of Your Honor's Individual Rules and Practices. The parties have reached an impasse concerning the discovery issues described below. The parties first conferred on this issue September 9, 2024, with Jessica Benvenisty, Lauren Myers, and Sarah Moseley present for Defendants and Valdi Licul, John Crain, and Marcelo Triana present for Plaintiff. The parties have since exchanged several letters concerning this issue.

**Defendants' Position**

**I.   Plaintiff Should be Compelled to Produce Documents Withheld or Redacted Based on Improper Assertions of Attorney-Client Privilege and/or Work Product.**

Plaintiff produced an amended privilege log on September 17, 2024 and a supplemental privilege log on September 27, 2024 in this action (together, the "Privilege Log"). Based on the information provided in the Privilege Log—and Defendants' multiple attempts to seek further information from Plaintiff—it is clear that several of Plaintiff's privilege assertions are premised on an overbroad and unsupported view of attorney-client privilege and work product. For that reason, Defendants move to compel Plaintiff to produce, in unredacted form, the documents appearing on the Privilege Log as Entries 6, 8-11, 16-23, 27, and 32. In the alternative, Defendants respectfully request that this Court conduct an *in camera* inspection of the documents in order to assess Plaintiff's privilege assertions, as provided for in this Court's December 10, 2024 Memorandum and Order. ECF No. 228 at 10; *see also Valassis Commc'ns, Inc. v. News Corp.*, 2018 WL 4489285, at *3 (S.D.N.Y. Sept. 19, 2018) ("[A court's] *in camera* review ensures that, as to any document as to which the privilege is upheld, there was a bona fide request for legal advice and not a subterfuge to evade discovery obligations.").

a.   Communications With Public Relations Professionals

Plaintiff's Privilege Log reflects that Plaintiff is improperly withholding communications involving non-lawyer third parties who appear to have collaborated with Plaintiff and his counsel on public relations strategy as "Attorney Work Product" and "Attorney Client Communication":

- <u>Entry Nos. 17-19</u>: Communications between Plaintiff, counsel, and MJ Pedone "regarding witness statements." Plaintiff testified at his deposition that Ms. Pedone—a public relations professional[1]—is a longtime friend of his.
- <u>Entry Nos. 20-23</u>: Communications between Plaintiff, counsel, and Alex Koblenz "regarding book draft." Plaintiff testified during his deposition that Mr. Koblenz is his manager who helped him secure a book deal.
- <u>Entry Nos. 9, 27, 32</u>: Communications between Plaintiff and Tanya Young Williams regarding "the criminal complaint against Oakley" and "criminal case." Although Plaintiff's counsel represented to Defendants that Ms. Williams is an attorney from whom Plaintiff sought legal advice,[2] public sources suggest she is an "on-air legal analyst," journalist, and television personality, but not that she is a practicing lawyer.[3]

It is well settled that communications related to public relations strategy, even when a lawyer is present and even when they relate to litigation (which is not even apparent from the Privilege Log entries regarding "book draft" and "witness statements"), are not protected by attorney-client privilege. *See, e.g.*, *Universal Standard Inc. v. Target Corp.*, 331 F.R.D. 80, 88, 93-94 (S.D.N.Y. 2019) ("discussions regarding a public relations strategy surrounding the filing of the instant lawsuit" were not privileged); *Church & Dwight Co. v. SPD Swiss Precision Diagnostics, GmbH*, 2014 WL 7238354, at *2 (S.D.N.Y. Dec. 19, 2014) (following courts that have "generally rejected" extending privilege to communications with "outside marketing firms"); *Haugh v. Schroder Inv. Mgmt. N. Am. Inc.*, 2003 WL 21998674, at *3 (S.D.N.Y. Aug. 25, 2003) (communications amounting to "standard public relations services" were not "necessary" to the provision of legal advice and, therefore, not privileged); *Calvin Klein Trademark Trust v. Wachner*, 198 F.R.D. 53, 54-55 (S.D.N.Y. 2000) (communications with public relations agency "in anticipation of filing the instant lawsuit" were not privileged).

Nor do these communications constitute work product, which "does not extend to public relations activities even if they bear on … litigation strategy[,] because the purpose of the rule is to provide a zone of privacy for strategizing about the conduct of litigation itself, not for the strategizing about the effects of the litigation on the client's customers, the media, or the public generally." *Egiazaryan v. Zalmayev*, 290 F.R.D. 421, 435 (S.D.N.Y. 2013) (citations omitted); *see also Bloomingburg Jewish Educ. Ctr. v. Vill. of Bloomingburg, New York*, 171 F. Supp. 3d 136, 142 (S.D.N.Y. 2016) ("[P]ublic relations advice, even if it bears on anticipated litigation, falls outside the ambit of protection of the … work product doctrine." (citations and alterations omitted)).

Plaintiff's assertion of "Attorney Work Product" and "Attorney Client Communication" over Entry No. 21 is particularly egregious because Plaintiff's counsel conceded in an October 4 letter to Defendants that the attachment to this communication (which included Mr. Koblenz) is a draft of Plaintiff's book *The Last Enforcer*. Plaintiff has provided no basis to withhold any book drafts, many of which have been produced in this action, and all of which were presumably shared with

---

[1] *See MJ Pedone*, Indra Public Relations, https://indrapr.com/member/mj-pedone.
[2] In an October 4, 2024 letter to Defendants, Plaintiff's counsel stated that "[e]veryone named in the privilege log is an attorney from whom Mr. Oakley sought legal advice (or is his wife), with the exceptions of MJ Pedone and Alex Koblenz." Defendants reserve the right to challenge entries on the Privilege Log to the extent they uncover further information to suggest this is not true of anyone else that appears on the Privilege Log.
[3] *See Tanya Young Williams*, The Huffington Post, https://www.huffpost.com/author/tyoung4u-824.

Plaintiff's co-author, Frank Isola, thereby defeating any privilege assertion (were there any valid privilege to assert, which there is not). *Schaeffler v. U.S.*, 806 F.3d 34, 40 (2d Cir. 2015) ("A party that shares otherwise privileged communications with an outsider is deemed to waive the privilege by disabling itself from claiming that the communications were intended to be confidential.").

### b. Invoices, Disengagement Letters, and Retainer Agreements

The Privilege Log includes several invoices and disengagement letters related to Plaintiff's representation in his criminal action, all of which have been withheld in this action. *See* Entry Nos. 6, 8, 16. Moreover, the Privilege Log includes two retainer agreements that were entered between Plaintiff and his counsel in this action, and which Plaintiff produced on November 18, 2024 in heavily redacted form, purportedly to conceal information protected by "Attorney Work Product" and "Attorney Client Communication." *See* Entry Nos. 10-11. These assertions of privilege are patently improper and Plaintiff has provided no reasonable basis to conclude otherwise.

As this Court has observed, it is "black letter law that attorneys' bills and communications regarding retainer agreements are not privileged." ECF No. 228 at 8 (quoting *Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 319 F.R.D. 100, 105 (S.D.N.Y. 2017)); *see also Bank Hapoalim, B.M. v. Am. Home Assurance Co.,* 1993 WL 37506, at *5 (S.D.N.Y. Feb. 8, 1993) ("Documents regarding payment of fees, billing and time expended are generally subject to discovery."); *Duttle v. Bandler & Kass*, 127 F.R.D. 46, 52 (S.D.N.Y. 1989) ("[C]ommunications regarding retainer agreements are not privileged."); *Hayden v. Int'l Bus. Machines Corp.*, 2023 WL 4622914, at *4 (S.D.N.Y. July 14, 2023) (holding plaintiff "must produce the retainer agreement," "transmittal e-mails," and "communications concerning the termination of the retainer agreements"). Accordingly, Plaintiff may not withhold or redact such records except to the extent they "reveal litigation strategy or the specific nature of the service provided." *Mohr v. Sec. Credit Servs., LLC*, 141 F. Supp. 3d 179, 185 (N.D.N.Y. 2015) (internal quotation marks omitted); *see also DiBella v. Hopkins*, 403 F.3d 102, 120 (2d Cir. 2005) ("[A]ttorney time records and billing statements are not privileged when they do not contain detailed accounts of the legal services rendered.").

To the extent Plaintiff redacted the produced retainer agreements because Plaintiff does not view the redacted information as relevant, that too is improper. The Federal Rules of Civil Procedure do not authorize redacting otherwise discoverable documents for responsiveness or irrelevance; "the only bases for prohibiting a party from seeing a portion of a document in the Rules are claims of privilege or work product protection," neither of which are applicable here. *Burris v. Versa Prod., Inc*., 2013 WL 608742, at *3 (D. Minn. Feb. 19, 2013). In addition, redacting allegedly nonresponsive or irrelevant portions of discoverable documents "breed[s] suspicions and [] may deprive[] the reader of context." *In re State St. Bank & Tr. Co. Fixed Income Funds Inv. Litig*., 2009 WL 1026013, at *1 (S.D.N.Y. Apr. 8, 2009).

**Plaintiff's Position**

    **I.        Privileged Communications**

Work product protection and attorney-client privilege are distinct. <u>See</u> <u>United States v. Nobles</u>, 422 U.S. 225, 238, n.11 (1975) ("the work-product doctrine is distinct from and broader than the attorney-client privilege"). Unlike the attorney client privilege, "work-product protection is not necessarily waived by disclosure to third parties." <u>Williams v. Bridgeport Music, Inc.</u>, 300 F.R.D. 120, 123 (S.D.N.Y. 2014) (citing <u>In re Pfizer Inc. Sec. Litig.</u>, No. 90-cv-1260 (SS), 1993 WL 561125, at *6 (S.D.N.Y. Dec. 23, 1993)); <u>see</u> <u>Bank of Am., N.A. v. Terra Nova Ins. Co.</u>, 212 F.R.D. 166, 169 (S.D.N.Y. 2002). "Rather, the courts generally find a waiver of the work product privilege only if the disclosure substantially increases the opportunity for potential adversaries to obtain the information." <u>Id.</u> "Implicit in this analysis is the question of whether the third party itself can or should be considered an adversary. Accordingly, courts have generally held that where the disclosing party and the third party share a common interest, there is no waiver of the work product privilege." <u>Merrill Lynch & Co. v. Allegheny Energy, Inc.</u>, 229 F.R.D. 441, 446 (S.D.N.Y. 2004) (internal citations omitted).

Documents subject to work-product privilege may include either "non-opinion work product," containing non-privileged facts, or "opinion work product," comprising the attorney's opinions, judgments and thought processes. <u>Strougo v. BEA Assocs.</u>, 199 F.R.D. 515, 521 (S.D.N.Y. 2001) "Opinion work product receives higher protection so that litigation strategy is not revealed, and a party seeking to discover it must show "extraordinary justification." <u>Id</u>.

Plaintiff has provided Defendants with drafts and other documents related to his book. Plaintiff objects to the production of communications about the book that involve attorneys' opinions and advice. The communications listed in entries Nos. 20 through 23 to Plaintiff's Privilege Log involve a legal review of the contents of Oakley's book draft and include legal advice in connection with the drafting and publishing. These communications were intended to be confidential as they include the attorneys' thought processes and opinions disclosed to a non-adversarial third-party. That Oakley shared his attorneys legal advice about his book with a friend who works in public relations cannot – as a matter of law – constitute a waiver of work-product protection because Oakley and Koblenz clearly share a common interest. <u>Merrill Lynch & Co.</u>, 229 F.R.D. at 446.

Regarding Entry Nos. 17-19, the e-mails between counsel, Oakley and MJ Pedone are similarly withheld pursuant to work product privilege. The communications with MJ Pedone do not involve "public relations strategy surrounding the filing of the instant lawsuit," as Defendants suggest. None of the communications in Entries 17-19 and 2023 involve public relations activities bearing on any litigation strategy.

With respect to Entry Nos. 9, 27, 32: Oakley has now produced these documents.

## II.      Invoices, Disengagement Letters, and Retainer Agreements

Nos. 6 and 8 are invoices for legal services provided in connection with two separate civil matters unrelated to the instant action or the connected criminal case. Oakley has produced these invoices in redacted format, as they contain legal strategy. Oakley has also produced a disengagement letter identified in Entry No. 16 to Defendants in redacted format. The last sentence is redacted pursuant to attorney-client privilege and work product privilege as it contains attorney advice and legal strategy. The attorney who ceased representing Charles included advice on how to move forward and that information is subject to privilege.

Without waiving any objections, Oakley produced two redacted retainer agreements logged as entries Nos. 10 and 11 for the limited purposes of addressing the two issues Defendants have raised: (1) notices given to Oakley to preserve documents connected to this litigation; and (2) Oakley's financial arrangements with current counsel. The remainder of the agreements are plainly irrelevant to address Oakley's claims and Defendants have not made a showing as to why they require unredacted versions of the retainer agreements. See Giudice v. Harlan, No. 15-cv-7330 (LTS) (JCF), 2016 WL 6875894, at *2 (S.D.N.Y. Nov. 21, 2016) ("The inclusion of a document on a privilege log . . . does not override Rule 26(b)(1)'s core requirement of relevance."); Devins v. Lazoff, No. 09-cv-9599 (PAC) (KNF), 2012 WL 1080182 (S.D.N.Y. Mar. 30, 2012) (declining to order production of documents included on a privilege log that were not relevant to the plaintiff's claims). As a result, Defendants are not entitled to the unredacted retainers.

Respectfully,

*/s/ Randy M. Mastro*

Randy M. Mastro