# KING & SPALDING

King & Spalding LLP
1185 Avenue of the Americas, 34th Floor
New York, NY 10036-4003
Tel: +1 212 556 2100
Fax: +1 212 556 2222
www.kslaw.com

Randy M. Mastro
Direct Dial: +1 212 827 4019
RMastro@kslaw.com

January 2, 2025

**VIA ECF AND E-MAIL**

Hon. Richard J. Sullivan, U.S. Circuit Court Judge
U.S. Court of Appeals for the Second Circuit
500 Pearl Street, New York, NY 10007

Re:  *Oakley v. MSG Networks, et al.*, No. 17-cv-6903 (RJS) (S.D.N.Y.)

Dear Judge Sullivan:

We represent current employees of Defendants and non-parties James Dolan, Jamieson Antonio, Anthony Mongelli, and Thomas Ortiz (the "Current Employees"), as well as former employees of Defendants and non-parties Gene Perrotto, Jayson Jacknow, Kori Keaton, Thomas Redmond, Richard Claffey, Kevin Heussler, Bernadette Andrews, Barry Watkins, and Karen Hoffman (the "Former Employees") (together, the "Employees"), in connection with Plaintiff Charles Oakley's ("Plaintiff" or "Oakley") thirteen subpoenas for documents directed at each of the individual non-parties named above. We write jointly with Oakley pursuant to Rule 2(G) of Your Honor's Individual Rules and Practices. The Employees and Oakley have reached an impasse concerning the discovery issues described below. The Employees and Oakley conferred on this issue on December 26, 2024, with John Goodwin present for the Employees and Valdi Licul and Katherine Vask present for Oakley.

**Employees' Position**[1]

From June through September 2024, the parties to this case heavily negotiated an ESI protocol. Pursuant to those negotiations—and as memorialized in the governing ESI protocol—Oakley requested only that Defendants search "Defendants' corporate email system" *See* ECF 221 at 7. The parties agreed to that protocol, except for a dispute raised with the Court regarding corporate email searches for certain of Defendants' employees and former employees in an August 19, 2024 joint letter. *See id.* This Court resolved that dispute in a September 10, 2024 Order that required Defendants to search and produce corporate emails from 16 individuals, including all of the Employees except for Richard Claffey. ECF 181; *see also* ECF 228 at 6. Over the course of the following months, Defendants complied with the Court's September 10 Order and also voluntarily searched for and produced responsive corporate emails from Mr. Claffey. Now, Oakley seeks to re-trade on party negotiations, and positions Oakley took half a year ago, at the tail end of

---

[1] In a joint letter dated Nov. 22, 2024, Defendants moved to quash the subpoenas served on the Current Employees (Oakley did not move to compel from the Former Employees in that letter). ECF 221 at 8. This Court denied that motion on Dec.10, 2024 **on the basis that Defendants lack standing to challenge the subpoenas**, finding that those subpoenas should be challenged by the Current Employees themselves. ECF 228 at 7. Because the motion was decided on the threshold issue of standing, the Court did not reach the merits of whether the subpoenas should be quashed, nor did it compel production from the Current Employees. *Id.* This letter, by contrast, moves to quash on behalf of both the Current and Former Employees themselves, who have standing. Furthermore, because in the Nov. 22 joint letter Oakley only sought production from *Defendants* in response to the Rule 45 subpoenas—not from the Current Employees themselves, who were not party to that letter and thus could not move for the Court to reconsider its decision—*see* ECF 221 at 3 (Oakley stating "even if the ESI Protocol did not require Defendants to search, they would nevertheless be required to do so in response to the Rule 45 document subpoenas Oakley served on individuals")—the Current Employees have not waived their objections to Oakley's subpoenas, first served on Nov. 12, 2024.

discovery through the use of Rule 45 subpoenas. Between August and November 2024, Oakley served subpoenas on every Employee seeking "[a]ll documents, communications, and ESI concerning:" (1) "Charles Oakley," (2) "the security policy, practices, and procedures of Madison Square Garden," and (3) "the removal of Charles Oakley from MSG on February 8, 2017." Oakley also requested "[a]ll documents, communications, and ESI concerning this litigation" from Messrs. Jacknow, Keaton, Redmond, and Perrotto. The subpoenas to Messrs. Jacknow, Keaton, Redmond, and Perrotto have no date limitation; the others are limited to the period of February 8, 2017 and March 1, 2017. These subpoenas are intended to capture the **personal** communications, like text messages or personal emails, that Oakley failed to seek from Defendants directly during months of negotiations. The Employees respectfully ask that this Court quash Oakley's subpoenas.

*First,* as explained above, the parties to this case agreed—and the Court ordered—that Defendants must search and produce responsive material only from the corporate email files of the Employees (among others). Oakley now seeks to end-run around the agreement it reached asking that Defendants search only its corporate email systems and, to that end, served *thirteen* Rule 45 subpoenas on almost every person, in their **individual capacities**, raised in the parties' August 19 discovery dispute letter and the Court's September 10 ruling. That Oakley served a Rule 45 subpoena on Defendants' President and Chief Executive Officer, in his personal capacity, for discovery material they neglected but could have sought from Defendants themselves, makes the audacity of Oakley's maneuvering clear. But "subpoenas under Rule 45 are clearly not meant to provide an end-run around the regular discovery process under Rules 26 and 34." *Burns v. Bank of Am.*, 2007 WL 1589437, at *14 (S.D.N.Y. 2007) (quashing document subpoena served on defendant's employee seeking "the same documents as demanded in" plaintiff's discovery requests to defendants); *Lemoine v. Mossberg Corp.*, 2020 WL 3316119, at *1 (D. Conn. June 18, 2020) (when a party is "not satisfied with the responses [to document requests] received" by opposing party, a "Rule 45 subpoena is not an alternative to . . . the appropriate procedures for bringing discovery disputes to the Court for resolution"). Among the 110 Requests for Production Oakley has propounded on Defendants in this action are multiple requests concerning the exact topics sought in these Rule 45 subpoenas. Counsel for the Employees also represents Defendants and, within the scope of party discovery, agreed to search for and produce corporate emails from the Employees, among others, responsive to these and other requests.[2] Indeed, Defendants have already produced documents from Messrs. Dolan, Claffey, Watkins, and Perrotto.

*Second,* on December 10, 2024, this Court reaffirmed its September 10 order and denied Oakley's request to "compel MSG to search the personal phones of its employees for relevant text messages" because they did not seek to do so in the negotiated ESI protocol. ECF 228 at 6. If Oakley is now permitted to obtain those same text messages and other personal communications by simply serving Rule 45 subpoenas on the Employees in their personal capacities—including Mr. Dolan— that portion of the Court's December 10 order would also be rendered meaningless. The Court should not vitiate its own rulings by assenting to such unreasonable discovery tactics.

---

[2] Ironically, Oakley seeks to force 13 individuals with no claims or allegations against him to search for and produce relevant communications from their personal cell phones, but Oakley himself, who affirmatively brought a federal lawsuit against Defendants related to his ejection and has written a book (and generated income therefrom) that features the incident, has deleted his own text messages from the same period.

***Third***, the subpoenas seek discovery that is vastly "disproportional to the needs of this case, in which Oakley asserts a single instance of assault and battery on an isolated evening in 2017." ECF 174 at 5. When the Second Circuit remanded this case after the trial court granted Defendants' motion for summary judgment, it gave a clear directive for "additional discovery" on only the narrow issue of whether the force used to remove Oakley on February 8, 2017 was reasonable—including what occurred during Oakley's "initial 'fall'"; "the initial encounter between Oakley and the MSG security guards"; whether "Oakley was provided a reasonable opportunity to leave the Garden"; and whether "any force used by the guards during that initial encounter was reasonable." *Oakley v. Dolan*, 2023 WL 3263618, at *2–3 (2d Cir. May 5, 2023). Consistent with this directive, Oakley has (i) received hundreds of documents from Defendants in this action, (ii) taken depositions of three security personnel (Messrs. Antonio, Mongelli, and Ortiz) who collectively were present, involved in, and witnessed the entirety of the incident at issue, and (iii) taken depositions of three corporate representatives on six topics. Oakley will soon depose at least one other former security employee (Mr. Keaton). And following this Court's order, Oakley will also depose Mr. Dolan. ECF 181 at 6; ECF 218 at 6. In light of the significant discovery Oakley has or will obtain in this action, it is both cumulative and disproportional to the needs of the case for Oakley to burden third parties with document requests, especially given the intrusive nature of collecting, reviewing, and producing text messages from the personal cell phones of employees whose only involvement in this lawsuit stems from their employment on one night in February 2017, many of whom have not been employed by Defendants for as many as five years.

"Within this Circuit, courts have held nonparty status to be a significant factor in determining whether discovery is unduly burdensome." *In re 650 Fifth Ave. & Related Props.*, 2013 WL 12335763, at *2 (S.D.N.Y. Aug. 29, 2013); *Athalonz, LLC v. Under Armour, Inc.*, 2024 WL 1555685, at *3 (S.D.N.Y. Apr. 10, 2024) (same). Here, the subpoenas are remarkably burdensome. They would require the Employees to search for and collect personal communications from almost seven years ago concerning a workplace incident that some of them did not even witness. The burden is further compounded by the fact that Oakley's requests are overbroad in several respects. *Hedgeye Risk Management, LLC v. Dale*, 2023 WL 4353076, at *1 (S.D.N.Y. July 5, 2023) (noting "[c]ourts regularly quash subpoenas that are overbroad" and collecting cases). *First*, the requests are not reasonably tailored, seeking "***[a]ll*** documents, communications and ESI" (emphasis added). *Id.* at *1 ("Each document request starts with 'All Documents' or 'All Communications,' which often is a red flag for overbreadth and undue burden."). *Second*, the subpoenas are not limited to the narrow issues remaining in this case, and instead, are likely to draw in a host of irrelevant information. *See In re Nonparty Subpoenas Duces Tecum*, 2019 WL 2122898, at *5 (S.D.N.Y. May 15, 2019) (granting motion to quash subpoena where the "sweeping scope" of requests sought "irrelevant information" along with relevant information). It is patently unreasonable to request that the Employees produce personal documents concerning "Charles Oakley" (a well-known former basketball player at the arena at which the Employees work or used to work) or "the security policy, practices, and procedures of Madison Square Garden" (for many Employees, the entire subject matter of their work or former work for Defendants). *Third*, four of the subpoenas contain no date limitation. This Court previously limited Defendants' production of custodial documents to the period of February 10, 2017 to March 1, 2017, ECF 181 at 7. *See Althalonz*, 2024 WL 1555685, at *3 (quashing subpoena where requests were not limited in time).

**<u>Plaintiff's Position</u>**

**I.      The Current Employees**

Oakley served Rule 45 document subpoenas on four current MSG employees: James Dolan, Thomas Ortiz, Jamieson Antonio, and Anthony Mongelli ("Current Employees") on October 30, 2024.  The subpoenas requested all communications and ESI concerning Oakley and his removal from MSG, including e-mails, text messages, or instant messages in applications such as WhatsApp from February 8, 2017, to March 1, 2017.  The Current Employees did not produce any responsive documents.  Accordingly, on November 22, 2024, the parties raised the issue with the Court by joint letter.  MSG claimed that as "a *corporate defendant*, it is required to search only corporate emails," arguing, *inter alia*, that information from the Current Employees' personal devices was not "reasonably accessible" to the corporate defendants.  Dkt. 221 at 7 (emphasis in original).  Importantly, the Current Employees, who are represented individually by Defendants' counsel, did not raise any other arguments in opposition to Oakley's motion to compel, such as claiming that the subpoenas were burdensome or disproportionate to the needs of the case.[3]  On December 10, 2024, this Court ruled that MSG was not required to "search the personal phones of their employees," but nevertheless denied the motion to quash the individual subpoenas served on the Current Employees because MSG lacked standing.  Dkt. 228 at 7.  For the following reasons, the Current Employees should be required to comply with the subpoenas.

First, the Current Employees have never moved to quash the subpoenas.  Accordingly, they have waived any objections.  To the extent the Current Employees objected in conjunction with MSG in the November 22, 2024 joint letter (the Current Employees retained MSG's counsel to represent them in their individual capacities in responding to the subpoenas), the proper remedy to challenge this Court's December 10 denial of the motion to quash was to move for reconsideration within 14 days.  S.D.N.Y. Local Rule 6.3.  They failed to do that as well.  They should not be given a third opportunity to regurgitate the same arguments, or raise new ones, to avoid compliance.

Second, even if the Current Employees did not waive their opposition to the subpoenas (which they have), their argument that the parties' ESI protocol barred the subpoenas is without merit.  The Current Employees are not signatories to the protocol.  To the extent the protocol is enforceable at all—it was neither executed by the parties nor ordered by the Court after MSG reneged on its promise to search personal devices—it merely governs MSG's search obligations.  Nowhere does it purport to limit the obligations of non-parties to respond to lawfully issued subpoenas under Rule 45.  Quite the contrary, the protocol expressly states that it does not "limit a Party's right to seek additional discovery."  ESI Protocol, Section III (6).  Indeed, in recognition that the protocol does not limit the availability of other discovery devices, MSG has issued nine Rule 45 subpoenas to non-parties seeking various categories of documents.[4]

---

[3] Three of these witnesses, Antonio, Mongelli and Ortiz, were interviewed by MSG in the days immediately after Oakley's ejection, yet admitted at their depositions that they have never been asked to preserve relevant electronic information and, to this day, have not conducted any search.  It is unclear whether Dolan, MSG's executive chairman who internal NBA documents show directed Oakley's ejection, has done anything to preserve or search for responsive documents.

[4] Oakley did not serve the Rule 45 subpoenas as an "end-run around the regular discovery process."  Burns v. Bank of Am., No. 03-cv-1685 (RMB) (JCF), 2007 WL 1589437, at * 14 (S.D.N.Y. June

4

Third, the Current Employees' objection that the subpoenas are unduly burdensome is wholly without merit. It is well settled that a non-party served with a subpoena has the burden of proving that the subpoena imposes an undue burden and "cannot merely assert that compliance with the subpoena would be burdensome without setting forth the manner and extent of the burden . . . and the probable negative consequences of insisting on compliance." In re Ex Parte Application of Kleimar N.V., 220 F. Supp. 3d 517, 522 (S.D.N.Y. 2016); see e.g., United States v. M/Y Amadea, No. 23-cv-9304 (DEH), 2024 WL 4471617, at *3 (S.D.N.Y. Oct. 11, 2024) ("When a party moves to quash a subpoena on the basis of undue burden, he must do more than simply allege that compliance will be inconvenient."). Other than to make the conclusory argument that "the subpoenas are remarkably burdensome," the Current Employees make no effort to explain what they have done, or what they would have to do, to search for responsive documents. See DoorDash, Inc. v. City of New York, No. 21-cv-7564 (GHW) (GS), 2024 WL 4589891, at *15 (S.D.N.Y. Oct. 25, 2024) ("Assessing undue burden in the context of a Rule 45 subpoena is a highly case specific inquiry.") (cleaned up). Moreover, Oakley has limited the search for responsive documents for the period February 8, 2017, through March 1, 2017, as already directed by the Court. Dkt. 181.

Finally, the need to enforce the subpoenas served on the Current Employees (including Dolan, who this Court has found is "likely to have relevant information given that he allegedly ordered Oakley's removal, conferred with the lead security guard before the removal, and presumably witnessed what unfolded thereafter") (Dkt. 181 at 7), is particularly acute given that MSG has only recently admitted that it has lost up to four years of electronic information (2017 to 2021) from nearly a dozen witnesses, including the Current Employees. The only way for Oakley to attempt to recover that data is to compel the Current Employees to respond to the subpoenas.

## II.     The Former Employees

Defendants have raised similarly baseless objections with respect to additional nine document subpoenas on former MSG employees. All these witnesses were identified by Defendants' discovery responses as having relevant information. They were either part of the security force that ejected Oakley (Gene Perrotto, Jayson Jacknow, Kori Keaton, Thomas Redmond, Kevin Heusler), purportedly observed Oakley behaving inappropriately from the time he entered into the arena or at his seat (Bernadette Andrews, Barry Watkins), or conducted an investigation into the incident in the days thereafter (Richard Claffey, Karen Hoffman) (collectively, the "Former Employees"). None of these witnesses have identified any particular burden in responding to the subpoenas. And their responses are necessary to recover the electronic information that MSG has admitted that it failed to preserve. For largely the same reasons stated above with respect to the Current Employees, this Court should compel the Former Employees to respond to the subpoenas.

---

4, 2017). This is not a case, such as Burns, where the "documents are available from a party." Id. (citation omitted); see Lemoine v. Mossberg Corp., No. 3:18-cv-01270 (KAD), 2020 WL 3316119, at *1 (D. Conn. June 18, 2020) (quashing non-party subpoenas where "the records in question can be obtained from defendant"). MSG has reneged on its agreement to search personal devices. Accordingly, only the non-parties can produce responsive documents.

Respectfully,

*/s/ Randy M. Mastro*

Randy M. Mastro