UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHARLES OAKLEY,

                            Plaintiff,

        -v-

MSG NETWORKS, INC., *et al.*,

                            Defendants.

No. 17-cv-6903 (RJS)
ORDER

RICHARD J. SULLIVAN, Circuit Judge:

Before the Court is a joint letter from plaintiff Charles Oakley and various non-parties,[1] who are all current and former employees of defendants MSG Networks, Inc., Madison Square Garden Sports Corp., and Sphere Entertainment Group, LLC (collectively, "MSG") and have moved to quash subpoenas that Oakley served on them pursuant to Federal Rule of Civil Procedure 45. (*See* Doc. No. 243.) For the reasons set forth below, the Employees' motion to quash the Rule 45 subpoenas is GRANTED in part and DENIED in part.

**I.    Background**

This case stems from an incident on February 8, 2017 at Madison Square Garden in which Oakley was forcibly removed from a New York Knicks basketball game. The Court assumes the parties' familiarity with the factual background and procedural history of this case as summarized in the Court's September 10, 2024 memorandum and order. (*See* Doc. No. 181 at 2–3.)

On August 19, 2024, the parties submitted a joint letter pursuant to the Court's Individual Rules and Practices after they had reached an impasse regarding various discovery disputes. (*See*

---

[1] The non-parties are James Dolan, Jamieson Antonio, Anthony Mongelli, and Thomas Ortiz (the "Current Employees") and Gene Perrotto, Jayson Jacknow, Kori Keaton, Thomas Redmond, Richard Claffey, Kevin Heussler, Bernadette Andrews, Barry Watkins, and Karen Hoffman (the "Former Employees" and collectively, the "Employees").

Doc. No. 178-1.)  Among the issues raised was Oakley's request to compel MSG to produce the Employees' corporate emails stored on MSG's systems.  (*See id.* at 2–3.)  On September 10, 2024, the Court granted Oakley's request and ordered MSG to produce those emails.  (*See* Doc. No. 181 at 8–9.)

On October 30, 2024, Oakley served Rule 45 subpoenas on the Current Employees seeking "all communications and ESI concerning Oakley and his removal from MSG, including e-mails, text messages, or instant messages in applications such as WhatsApp from February 8, 2017, to March 1, 2017."  (Doc. No. 243 at 4.)  Oakley also served subpoenas on the Former Employees seeking the same information (*see id.* at 5), though the subpoenas served on four of the Former Employees contain no temporal limitation whatsoever (*see id.* at 2).

On November 22, 2024, Oakley and MSG filed another joint letter wherein Oakley moved to compel MSG to search for "text messages (or messages on other messaging applications) on the personal phones of [its] employees."  (Doc. No. 221 at 3.)  MSG opposed that motion and also moved to quash Oakley's Rule 45 subpoenas.  (*See id.* at 7–8.)  On December 10, 2024, the Court denied Oakley's motion to compel MSG to search the personal phones of its employees because Oakley did not include that request in his previous motion to compel document production from MSG.  (*See* Doc. No. 228 at 6–7.)  The Court concluded that the law-of-the-case doctrine foreclosed relitigation of MSG's document production obligations and that "[a]llowing Oakley to engage in such piecemeal discovery requests would run contrary to" the objectives of Federal Rules of Civil Procedure.  (*Id.* at 6.)  In that same order, the Court denied MSG's request to quash the Rule 45 subpoenas on the ground that MSG lacked standing to make such a motion on behalf of the third parties.  (*See id.* at 7.)

On January 2, 2025, Oakley and the Employees filed the above-referenced joint letter, in which the Employees now move to quash Oakley's Rule 45 subpoenas on the grounds that they are inconsistent with the Court's prior rulings, constitute an "end-run" around the discovery process, and

are unduly burdensome.  (*See* Doc. No. 243 at 2–3.)  Oakley has opposed the motion to quash.  (*See id.* at 4–5.)

## II.    Legal Standard

Rule 45 permits a party to command a non-party to "produce designated documents, electronically stored information, or tangible things in that person's possession, custody, or control." Fed. R. Civ. P. 45(a)(1)(A)(iii).  The issuing party "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1).  A non-party can move to quash a Rule 45 subpoena, and a court "must quash or modify a subpoena that," among other things, "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A).  In evaluating a motion to quash, courts have held that "[t]he party seeking discovery bears the initial burden of proving that the information and testimony sought in the subpoena are relevant and proportional to the needs of the case, and the burden then shifts to the party opposing discovery to show that the information sought is . . . unduly burdensome."  *Cohen v. Grp. Health Inc.*, No. 22-mc-200 (PAE) (KHP), 2022 WL 4534552, at *2 (S.D.N.Y. Sept. 28, 2022).  To determine if a subpoena imposes an undue burden, courts typically "consider[] the relevance of the information sought, the party's need for the information, the breadth of the request, and the burden imposed."  *Blake Marine Grp. LLC v. Frenkel & Co.*, No. 18-cv-10759 (AT) (KHP), 2019 WL 1723567, at *1 (S.D.N.Y. Apr. 18, 2019).

## III.    Discussion

Oakley has carried his initial burden in demonstrating that the information sought in the Rule 45 subpoenas is relevant to the factual disputes in this case.  Specifically, MSG identified each of the Employees as individuals who "were either part of the security force that ejected Oakley," "purportedly observed Oakley behaving inappropriately from the time he entered into the arena or at his seat," or "conducted an investigation into the incident in the days thereafter."  (*See* Doc. No. 243 at 5.)  The Court has already held that "[t]he observations and recollections of all such individuals

would shed light on whether the force used to remove Oakley was reasonable." (Doc. No. 181 at 8.) Accordingly, Oakley has made a *prima facie* showing that the Rule 45 subpoenas seek relevant information.

However, Oakley has failed to carry his initial burden that the requests contained within the Rule 45 subpoenas are proportional to the needs of this case. The subpoenas seek "all documents, communications, and ESI concerning: (1) Charles Oakley, (2) the security policy, practices, and procedures of Madison Square Garden, and (3) the removal of Charles Oakley from MSG on February 8, 2017." (Doc. No. 243 at 2 (alterations accepted and internal quotation marks omitted).) While most of the subpoenas are limited to the period of February 8, 2017 to March 1, 2017, four of them served on the Former Employees do not contain any time limitation with respect to the documents sought. (*See id.*) Courts have regularly held that subpoenas seeking "All Documents" or "All Communications" on a given issue are "overbroad," "impermissible," and "presumptively improper." *Hedgeye Risk Mgmt., LLC v. Dale*, No. 21-cv-3687 (ALC) (RWL), 2023 WL 4353076, at *2 (S.D.N.Y. July 5, 2023) (internal quotation marks omitted) (collecting cases). Indeed, as the Employees correctly argue, the broad subjects listed in the subpoenas "are likely to draw in a host of irrelevant information." (Doc. No. 243 at 3.) For example, Oakley's request for documents pertaining to MSG's security practices covers "the entire subject matter" of many of the Employees' work for MSG. (*Id.*) Additionally, the Court has already limited document production in this case to the time period of February 8, 2017 to March 1, 2017 (*see* Doc. No. 181 at 7), yet four of the subpoenas are not confined to this – or any – period. In light of these concerns, the Court hereby limits the scope of Oakley's Rule 45 subpoenas to personal communications, including personal emails, text messages, and messages on other applications, from February 8, 2017 to March 1, 2017 regarding the sole topic of Oakley's removal from MSG.

The Employees advance several other arguments as to why Oakley's Rule 45 subpoenas should be quashed in their entirety, but none of these is persuasive. Specifically, the Employees contend that the subpoenas are inconsistent with the Court's previous orders that limited the scope of MSG's document production obligations to its corporate email systems. (*See* Doc. No. 243 at 2.) But Oakley's Rule 45 subpoenas are not precluded by these orders, which pertained only to *MSG*'s document production obligations, not the obligations of non-party witnesses. (*See* Doc. No. 228 at 6 ("[T]he Court has already ruled on *MSG*'s document production obligations." (emphasis added)).) And while the Employees insist that Oakley's request constitutes an "end-run" around the discovery process (Doc. No. 243 at 2), the cases they rely on are readily distinguishable from the situation here, since Oakley is *not* seeking to serve a Rule 45 subpoena on a party to the case, *see Burns v. Bank of Am.*, No. 03-cv-1685 (RMB) (JCF), 2007 WL 1589437, at *14 (S.D.N.Y. June 4, 2007), or seeking information that "could have been requested from the party-opponent during the normal course of discovery," *Lemoine v. Mossberg Corp.*, No. 18-cv-1270 (KAD), 2020 WL 3316119, at *1 (D. Conn. June 18, 2020). Indeed, MSG previously argued that Oakley was not entitled to request from it the personal communications of its employees because such personal communications were not reasonably accessible and as "a corporate defendant, [MSG] is required to search *only corporate emails*." (Doc. No. 221 at 7 (emphases altered).)

The Employees also contend, without explanation, that the Rule 45 subpoenas would be "remarkably burdensome." (Doc. No. 243 at 3.) But an individual seeking to quash a Rule 45 subpoena "cannot merely assert that compliance with the subpoena would be burdensome without setting forth the manner and extent of the burden." *Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Ams.*, 262 F.R.D. 293, 299 (S.D.N.Y. 2009) (internal quotation marks omitted); *see also United States v. M/Y Amadea*, No. 23-cv-9304 (DEH), 2024 WL 4471617, at *3 (S.D.N.Y. Oct. 11, 2024) ("When a party moves to quash a subpoena on the basis of undue burden, he must do more than simply allege

that compliance will be inconvenient."). Because the Employees have not specifically articulated how the Rule 45 subpoenas will be unduly burdensome, and in light of the Court's limitation on the scope of these subpoenas, the Court concludes that the Employees have not met their burden to quash the subpoenas in their entirety.

**IV.    Conclusion**

For the reasons stated above, IT IS HEREBY ORDERED THAT the Employees' motion to quash Oakley's Rule 45 subpoenas is GRANTED in part and DENIED in part. The scope of Oakley's Rule 45 subpoenas shall be limited to the Employees' personal communications, including personal emails, text messages, and messages on other applications, from February 8, 2017 to March 1, 2017 regarding the sole topic of Oakley's removal from MSG.

SO ORDERED.

Dated:      January 9, 2025
            New York, New York

_____
RICHARD J. SULLIVAN
UNITED STATES CIRCUIT JUDGE
Sitting by Designation