UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHARLES OAKLEY,

                Plaintiff,

-v-                                        No. 17-cv-6903 (RJS)
                                                           ORDER

MSG NETWORKS, INC., *et al.*,

                Defendants.

RICHARD J. SULLIVAN, Circuit Judge:

      Before the Court is a joint letter from plaintiff Charles Oakley and non-party Frank Benedetto, who was previously employed as Vice President of Security for Madison Square Garden ("MSG"), concerning subpoenas served by Oakley on Benedetto. (*See* Doc. No. 249.) The Court has construed the joint letter as (1) a motion by Oakley to compel Benedetto to sit for a deposition; (2) a motion by Oakley to compel Benedetto to produce documents; (3) Benedetto's opposition to these motions; and (4) a motion, in the alternative, by Benedetto for a protective order limiting the scope of his deposition to his observations of Oakley's removal from MSG. (*See id.*) For the reasons set forth below, Oakley's motion to compel Benedetto to sit for a deposition is GRANTED, Benedetto's motion for a protective order is GRANTED, and Oakley's motion to compel Benedetto to produce documents is DENIED.

**I.    Background**

      This case stems from an incident on February 8, 2017 at MSG in which Oakley was forcibly removed from a New York Knicks basketball game. The Court assumes Oakley's and Benedetto's familiarity with the factual background and procedural history of this case as summarized in the Court's September 10, 2024 memorandum and order. (*See* Doc. No. 181 at 2–3.)

## II. Legal Standard

Federal Rule of Civil Procedure 45 permits a party to command a non-party to testify at a deposition as well as to "produce designated documents, electronically stored information ['ESI'], or tangible things in that person's possession, custody, or control." Fed. R. Civ. P. 45(a)(1)(A)(iii). The issuing party "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). If the commanded party refuses to comply, the issuing party may move the district court for an order compelling production. Fed. R. Civ. P. 45(d)(2)(B)(i). In deciding whether to enforce Rule 45 subpoenas, courts have held that "[t]he party seeking discovery bears the initial burden of proving that the information and testimony sought in the subpoena are relevant and proportional to the needs of the case, and the burden then shifts to the party opposing discovery to show that [producing] the information sought is . . . unduly burdensome." *Cohen v. Grp. Health Inc.*, No. 22-mc-200 (PAE) (KHP), 2022 WL 4534552, at *2 (S.D.N.Y. Sept. 28, 2022). To determine if a subpoena imposes an undue burden, courts "consider[] the relevance of the information sought, the party's need for the information, the breadth of the request, and the burden imposed." *Blake Marine Grp. LLC v. Frenkel & Co.*, No. 18-cv-10759 (AT) (KHP), 2019 WL 1723567, at *1 (S.D.N.Y. Apr. 18, 2019).

## III. Discussion

### A. Oakley's Motion to Compel Benedetto's Deposition

Oakley has carried his initial burden in demonstrating that Benedetto's potential testimony regarding Oakley's removal is relevant to the remaining factual disputes and proportional to the needs of this case. Indeed, the Second Circuit specifically recognized the importance of eyewitness testimony in "overcom[ing] the limitations in the video record and giv[ing] context" to (1) what occurred on the evening of February 8, 2017, and (2) whether the force used to remove Oakley was reasonable. *Oakley v. Dolan*, No. 21-2939, 2023 WL 3263618, at *3 (2d Cir. May 5, 2023).

Benedetto was the Vice President of Security for MSG, was present at the Garden that night, and may have "communicated with other participants and MSG executives" about Oakley's removal before, during, and/or after the incident. (Doc. No. 249 at 3.) Accordingly, Oakley has made a *prima facie* showing that Benedetto has relevant testimony to offer regarding Oakley's removal.

In response, Benedetto advances several arguments as to why the Court should deny Oakley's motion to compel, but none of them is persuasive. *First*, Benedetto argues that Oakley's "delay in moving to compel [Benedetto's] deposition . . . warrants denial of his motion." (*Id.*) But fact discovery in this case has not yet closed, and Oakley's motion is therefore timely under the revised case management plan and subsequent extensions of the fact discovery deadline. (*See* Doc. No. 180 at 1–2; Doc. No. 228 at 10–11; Doc. No. 240 at 1.) *Second*, Benedetto insists that "he could offer only cumulative and irrelevant testimony." (Doc. No. 249 at 4.) But as the Court explained in granting Oakley's motion to compel the deposition of another former MSG security executive, Oakley is entitled to "test what witnesses [to] the same events have to say and whether they contradict or corroborate each other." (Doc. No. 247 at 175.) *Third*, Benedetto asserts that Oakley's "motion is premised on the false notion that Mr. Benedetto's dismissal from MSG is somehow relevant to" Oakley's removal. (Doc. No. 249 at 4.) But the relevance of Benedetto's testimony turns not on the fact that he was terminated from MSG but rather on the fact that he was the Vice President of Security, was present at MSG on the night in question, and thus may have relevant testimony concerning what he observed and what others told him about Oakley's removal. *Fourth*, Benedetto argues, without explanation, that sitting for a deposition would be "unduly burdensome." (*Id.* at 5.) But an individual seeking to quash a Rule 45 subpoena "cannot merely assert that compliance with the subpoena would be burdensome without setting forth the manner and extent of the burden." *Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Ams.*, 262 F.R.D. 293, 299 (S.D.N.Y. 2009) (internal quotation marks omitted); *see also United States v. M/Y Amadea*, No. 23-cv-9304 (DEH), 2024 WL 4471617, at *3

(S.D.N.Y. Oct. 11, 2024) ("When a party moves to quash a subpoena on the basis of undue burden, he must do more than simply allege that compliance will be inconvenient.").

For all these reasons, Oakley's motion to compel Benedetto's deposition is GRANTED.

### B. Benedetto's Motion for a Protective Order

In the alternative, Benedetto moves for a protective order limiting the scope of his deposition to what he personally observed with respect to Oakley's removal from MSG. (*See* Doc. No. 249 at 5.) Under Federal Rule of Civil Procedure 26(c)(1), a court "may, for good cause, issue an order . . . forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters." However, "[t]he party seeking the protective order carries the burden to show that good cause exists for issuance of the order." *Capri Sun GmbH v. Am. Beverage Corp.*, 414 F. Supp. 3d 414, 424 (S.D.N.Y. 2019) (internal quotation marks omitted). And "[t]o establish good cause under Rule 26(c), courts require a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Ampong v. Costco Wholesale Corp.*, 550 F. Supp. 3d 136, 139 (S.D.N.Y. 2021) (internal quotation marks omitted).

The Court concludes that good cause exists to limit the scope of Benedetto's deposition to what Benedetto observed, and what other individuals told him, regarding Oakley's removal. Oakley makes no secret of his intention to also question Benedetto about his termination from MSG shortly after the February 8, 2017 incident. (*See* Doc. No. 249 at 1–3.) But neither the fact that Benedetto was fired nor the circumstances surrounding his termination are relevant with respect to the remaining issues in the case – namely, "(1) the amount of force used to remove Oakley from the Garden and (2) whether that force was objectively reasonable under the circumstances." (Doc. No. 218 at 5.) The Court will not tolerate any attempt to use the deposition for the purposes of harassment or to generate negative media publicity for either Benedetto or the Defendants. As the Court has previously observed, "[f]rom its inception, this case has had the feel of a public relations campaign, with the

4

parties seemingly more interested in the court of public opinion than the merits of their legal arguments." (Doc. No. 68 at 21.) In permitting the deposition to go forward, the Court will allow Oakley to question Benedetto regarding what he personally observed on the night of February 8, 2017 and any statements made to him regarding Oakley's removal, including any such statements made by other MSG executives at the time of his firing. But a more general discussion of Benedetto's termination and the work conditions at MSG prior to the termination are off limits and may not be pursued.

Accordingly, Benedetto's motion for a protective order is GRANTED. It is hereby ordered that Oakley's deposition of Benedetto shall be limited to what Benedetto observed on the evening of February 8, 2017 and what other individuals told him regarding Oakley's removal.

### C. Oakley's Motion to Compel Document Production

Finally, Oakley has moved to compel Benedetto to produce documents, including those related to his termination. (*See* Doc. No. 249 at 1.) Benedetto, in turn, has responded that he has produced "all documents, communications[,] or ESI concerning Charles Oakley." (*Id.* at 5 (alterations accepted and internal quotation marks omitted).) For the reasons outlined above, Oakley has failed to carry his burden in showing that records related to Benedetto's termination are relevant to this dispute. *See Cohen*, 2022 WL 4534552, at *2. And because Benedetto has produced all other documents related to Oakley, the motion to compel is DENIED.

### IV. Conclusion

For the reasons stated above, IT IS HEREBY ORDERED THAT Oakley's motion to compel Benedetto to sit for a deposition is GRANTED, Benedetto's motion for a protective order is GRANTED, and Oakley's motion to compel Benedetto to produce documents is DENIED. The scope

of Benedetto's deposition shall be limited to what Benedetto observed on the evening of February 8, 2017 and what other individuals told him regarding Oakley's removal.

SO ORDERED.

Dated:   January 15, 2025
         New York, New York

_____
RICHARD J. SULLIVAN
UNITED STATES CIRCUIT JUDGE
Sitting by Designation