**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------X

CHARLES OAKLEY,                                    :
                                                   :        Civil Action No. 17 Civ. 6903 (RJS)
                          Plaintiff,               :
                                                   :
              v.                                   :
                                                   :
MSG NETWORKS, INC., *et al.*                       :
                                                   :
                          Defendants.              :
----------------------------------------------------------------X

### MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR CLARIFICATION OR, IN THE ALTERNATIVE, PARTIAL RECONSIDERATION

**WIGDOR LLP**

Douglas H. Wigdor
Valdi Licul
John S. Crain
Katherine Vask

85 Fifth Avenue
New York, New York 10003
Telephone: (212) 257-6800
Facsimile : (212) 257-6845
dwigdor@wigdorlaw.com
vlicul@wigdorlaw.com
jcrain@wigdorlaw.com
kvask@wigdorlaw.com

**PETRILLO KLEIN & BOXER LLP**

Nelson A. Boxer
Marcello Triana

655 Third Avenue, #22
New York, New York 10017
Telephone: (212) 370-0330
nboxer@pkbllp.com
mtriana@pkbllp.com

*Counsel for Plaintiff*

Plaintiff Charles Oakley ("Plaintiff" or "Oakley") respectfully seeks clarification, or in the alternative, partial reconsideration of this Court's Order dated January 15, 2025 (ECF No. 264, the "Order") granting a protective order limiting the scope of non-party Frank Benedetto's deposition.

## RELEVANT BACKGROUND

Oakley previously served a subpoena on non-party Frank Benedetto ("Benedetto") for documents and testimony at a deposition. On January 6, 2025, counsel for Oakley and Benedetto filed a joint letter, ECF No. 249 ("Joint Letter"), which the Court construed as "(1) a motion by Oakley to compel Benedetto to sit for a deposition; (2) a motion by Oakley to compel Benedetto to produce documents; (3) Benedetto's opposition to these motions; and (4) a motion, in the alternative, by Benedetto for a protective order limiting the scope of his deposition to his observations of Oakley's removal from MSG." ECF No. 264. Oakley argued that Benedetto, MSG's Vice President of Security, was immediately fired after, and because of, Oakley's ejection from the Garden. Joint Letter at 2.

In its January 15 Order, the Court compelled Benedetto to sit for a deposition and ruled, *inter alia*, that the scope of Benedetto's deposition shall be limited to "what he personally observed on the night of February 8, 2017 and any statements made to him regarding Oakley's removal, including any such statements made by other MSG executives at the time of his firing." Id. at 5. Oakley respectfully seeks clarification of the Court's January 15, 2025 Order on whether (1) he is permitted to ask Benedetto whether, and to what extent, Oakley's ejection from the Garden contributed to his termination from MSG; and (2) if he is permitted to ask Benedetto what he communicated to others, if anything, about Oakley's ejection. To the extent the Court clarifies that Oakley is not permitted to ask these questions, Oakley respectfully seeks partial

reconsideration of the Court's January 15 Order to permit questions regarding (1) Benedetto's termination from MSG, to the extent it is related to Oakley's ejection; and (2) statements Benedetto made to others about Oakley's ejection.

## DISCUSSION

### I.    Clarification

"Rule 60(a) enables a court to clarify or explain an order to correct a failure to memorialize part of its decision, to reflect the necessary implications of the original order, to ensure that the court's purpose is fully implemented, or to permit enforcement." Commerzbank AG v. Bank of New York Mellon, No. 15-cv-10029 (GBD)(BCM), 2024 WL 1309239, at *2 (S.D.N.Y. Mar. 27, 2024) (citations omitted) (cleaned up). A motion for clarification is intended to "resolve alleged ambiguities in that order." Id. citing McCaffrey v. Gatekeeper USA, Inc., No. 14-cv-493 (VSB), 2022 WL 1321494, at *1 (S.D.N.Y. May 3, 2022).

In its Order, the Court acknowledged that Benedetto "may have relevant testimony concerning what he observed" and that Oakley may question "Benedetto regarding what he personally observed on the night of February 8, 2017 and any statements made to him regarding Oakley's removal, including any such statements made by other MSG executives at the time of his firing." To ensure that he is able to seek complete testimony about what happened on February 8, 2017, Oakley seeks clarification on whether he may ask Benedetto what he communicated to others about what he observed that night. Oakley further seeks clarification as to whether the Court's language permits Oakley to question Benedetto about the reasons stated for his firing, if they are related to Oakley's removal. Oakley seeks clarification from the Court to ensure compliance with the Order.

II.    **Reconsideration**

A motion for reconsideration must state "concisely the matters or controlling decisions which the moving party believes the court has overlooked."  Local Civil Rule 6.3. Reconsideration is appropriate "only when the [moving party] identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice."  Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust, 729 F.3d 99, 104 (2d Cir.2013) (citation omitted).

As the Court observed, the Second Circuit acknowledged the significance of eyewitness testimony in giving context to what occurred on February 8, 2017.  Oakley v. Dolan, No. 21-cv-2939, 2023 WL 3263618, at *1 (2d Cir. May 5, 2023) ("[O]nce a jury sorts out *what* exactly happened, it must make a determination as to whether the force used to eject Oakley was reasonable.") (emphasis in original).

First, the Court made a clear error when it did not adhere to the Second Circuit's decision by prohibiting questions regarding Benedetto's departure from MSG.  The Court stated that the "the relevance of Benedetto's testimony turns not on the fact that he was terminated from MSG but rather on the fact that he…may have relevant testimony concerning what he observed and what others told him about Oakley's removal."  Order at 3.  This characterization overlooks the undeniable nexus between Benedetto's dismissal from MSG and Oakley's removal from the Garden, as evidenced by both Benedetto's admission and Dolan's public statements.[1]  In the interest of justice, Oakley should be permitted to evaluate the veracity of the Defendants'

---

[1]    Benedetto "didn't work out and this was probably the last straw…we're looking at everything we did here and that happened along the way, and that's one of the casualties." James Dolan on Charles Oakley, Phil Jackson, Carmelo Anthony rumors, YES NETWORKS, https://www.youtube.com/watch?v=BayYj760ZI8 (last accessed Dec. 20, 2024) (beginning at 5:30).

narrative of events.  For instance, whether Benedetto was fired, in whole or in part, because he allowed Oakley to enter MSG on February 8, 2017, is relevant to assess whether Oakley was ejected for the reasons purported by the Defendants.  Defendants claim that Oakley was belligerent and abusive toward Garden staff, and thus had to be forcibly removed.  Should Benedetto reveal that Dolan fired him because he allowed Oakley to enter the Garden, the evidence will suggest that Oakley was forcibly removed due to a personal animus rather than any allegedly inappropriate behavior.

Similarly, Oakley should be permitted to evaluate whether Benedetto's understanding and rendition of events may have changed from February 8, 2017, to the present.  At the very least, Oakley should be permitted to question whether his ejection had anything to do with Benedetto's termination.

It is imperative to affirm that Oakley has no intention of using Benedetto's deposition to harass or generate negative media publicity for anyone.  Oakley has no interest in asking Benedetto questions unrelated to his ejection from the Garden.  To the extent there are confidentiality concerns about Benedetto's disclosure of the circumstances of his departure, he may designate portions of the deposition as "Confidential" or "Highly Confidential" pursuant to the Protective Order in this action to safeguard this information.

Second, the Court made a clear error when it did not adhere to the Second Circuit's decision by limiting questions to any statements made to Benedetto regarding Oakley's removal.  The Court overlooked the need for Oakley to obtain information regarding Benedetto's communications to others regarding what happened on February 8, 2017.  Statements Benedetto made to others about Oakley's ejection, related to his dismissal from MSG or not, are material to assess what happened on February 8, 2017, and what Benedetto's honest impressions of that

night were.  Oakley should be permitted to find out if Benedetto's prior statements about Oakley's ejection contradict the Defendants' defenses and any current testimony.

Furthermore, in light of the recently disclosed technical "glitch" that destroyed Benedetto's emails and the apparent loss of Benedetto's company-provided cellphone, (ECF No. 252), the only way for Oakley to gain insight into highly relevant communications about his ejection is by asking Benedetto what, if anything, he communicated to others and what others, if anything, have said to him about the incident.  In the interest of justice, and to establish "*what exactly happened*," Oakley should be permitted to inquire about Benedetto's statements about the incident. See Oakley, 2023 WL 3263618, at *1.

## CONCLUSION

Oakley respectfully requests that the Court clarify or, in the alternative, reconsider the limitations set on Benedetto's deposition and permit questioning regarding (1) Benedetto's firing from MSG, to the extent it is related to Oakley's ejection; and (2) statements Benedetto made to other MSG employees about Oakley's ejection.

Dated: January 18, 2025
       New York, New York

**WIGDOR LLP**

By: _____
       Douglas H. Wigdor
       Valdi Licul
       John S. Crain
       Katherine Vask

85 Fifth Avenue
New York, NY 10003
Telephone:  (212) 257-6800
Facsimile:   (212) 257-6845
dwigdor@wigdorlaw.com
vlicul@wigdorlaw.com
jcrain@wigdorlaw.com
kvask@wigdorlaw.com

**PETRILLO KLEIN & BOXER LLP**

Nelson A. Boxer
Marcelo Triana

655 Third Avenue
New York, NY 10017
Telephone: (212) 370-0330
Facsimile: (212) 370-0391
nboxer@pkbllp.com
mtriana@pkbllp.com

*Counsel for Plaintiff*

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that this brief contains 1,350 words and complies with the page count and word count limitations set forth in Local Civil Rule 6.3 of the United States District Courts for the Southern and Eastern Districts of New York.

By: _____
        Valdi Licul