UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CHARLES OAKLEY,

                           Plaintiff,

   -v-

MSG NETWORKS, INC., *et al.*,

                          Defendants.

No. 17-cv-6903 (RJS)
MEMORANDUM
AND ORDER

---

RICHARD J. SULLIVAN, Circuit Judge:

      Before the Court is a joint letter from plaintiff Charles Oakley and defendants MSG Networks, Inc., Madison Square Garden Sports Corp., and Sphere Entertainment Group, LLC (collectively, "MSG"), which the Court has construed as a motion by MSG to compel Oakley to produce various documents that he claims are protected by the attorney-client privilege and/or the work-product doctrine. (*See* Doc. No. 238.) For the reasons set forth below, MSG's motion to compel production of the withheld documents is GRANTED in part and DENIED in part.

I. **Background**

      This case stems from an incident on February 8, 2017 at Madison Square Garden in which Oakley was forcibly removed from a New York Knicks basketball game. The Court assumes the parties' familiarity with the factual background and procedural history of this case as summarized in the Court's September 10, 2024 memorandum and order. (*See* Doc. No. 181 at 2–3.)

      On November 22, 2024, the parties submitted a joint letter pursuant to the Court's Individual Rules and Practices after they had reached an impasse regarding various discovery disputes. (*See* Doc. No. 221.) Among the issues raised was MSG's request to compel Oakley to produce "communications concerning drafts of his autobiography" as well as "invoices, retainers,

and disengagement letters (and . . . two engagement letters)" that Oakley either had redacted or withheld on the basis of privilege. (*Id.* at 8.) On December 10, 2024, the Court noted that neither party had explained whether Oakley had produced a privilege log in accordance with Southern District of New York Local Rule 26.2. (*See* Doc. No. 228 at 9–10.) Accordingly, the Court ordered Oakley to produce a privilege log forthwith and denied MSG's request without prejudice to renewal upon receiving Oakley's privilege log. (*See id.*)

On December 19, 2024, the parties filed a joint letter, informing the Court that Oakley had produced the privilege log but that they remained at an impasse regarding the privilege disputes originally raised in their November 22, 2024 joint letter. (*See* Doc. No. 238.) MSG argued that Oakley's "privilege assertions are premised on an overbroad and unsupported view of attorney-client privilege and work product" and thus moved to compel Oakley to produce, in unredacted form, various documents listed on his privilege log. (*Id.* at 1.) Oakley agreed to produce three of the documents at issue but opposed production of the remaining documents, arguing that they are protected under either the attorney-client privilege or work-product doctrine. (*See id.* at 4–5.) On December 23, 2024, the Court ordered Oakley to produce a copy of the relevant portions of his privilege log and unredacted copies of all the disputed documents for *in camera* inspection. (*See* Doc. No. 241 at 5.) Having now reviewed both the redacted and unredacted versions of the documents at issue, the Court resolves MSG's motion to compel as follows.

**II.     Legal Standard**

Under Federal Rule of Evidence 501, "in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." The parties all agree that New York assault and battery law governs this case, so New York's law of attorney-client privilege applies. A party invoking the attorney-client privilege under New York law must show (1) "that

the information was a communication between client and counsel," (2) "that it was intended to be and was kept confidential," and (3) that "it was made in order to assist in obtaining or providing legal advice or services to the client." *HSH Nordbank AG N.Y. Branch v. Swerdlow*, 259 F.R.D. 64, 70 (S.D.N.Y. 2009) (quoting *Charter One Bank, F.S.B. v. Midtown Rochester, LLC*, 738 N.Y.S.2d 179, 190 (Sup. Ct. 2002)).  As the Second Circuit has explained, courts must "construe the privilege narrowly because it renders relevant information undiscoverable" and thus must only apply the privilege "where necessary to achieve its purpose." *In re Cnty. of Erie*, 473 F.3d 413, 418 (2d Cir. 2007) (internal quotation marks omitted).  The party asserting attorney-client privilege bears the burden of establishing that each of the three elements has been met and that the privilege has not been waived.  *See id.*

While the "voluntary disclosure of confidential material to a third party generally results in forfeiture of any applicable attorney-client privilege," *United States v. Ghavami*, 882 F. Supp. 2d 532, 537 (S.D.N.Y. 2012), the work-product doctrine sweeps more broadly, *see United States v. Nobles*, 422 U.S. 225, 238 n.11 (1975), and "is not necessarily waived by disclosure to third parties," *Williams v. Bridgeport Music, Inc.*, 300 F.R.D. 120, 123 (S.D.N.Y. 2014).[1]  Indeed, a party only waives work-product protection if his disclosure to a third party "substantially increases the opportunity for potential adversaries to obtain the information." *Id.* (internal quotation marks omitted).

The work-product doctrine is "intended to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy with an eye toward litigation, free from unnecessary intrusion by his adversaries." *United States v. Adlman*, 134 F.3d 1194, 1196 (2d Cir.

---

[1] Although New York law governs the attorney-client privilege, "[f]ederal law governs the applicability of the work[-]product doctrine in all actions in federal court." *Wultz v. Bank of China Ltd.*, 304 F.R.D. 384, 393 (S.D.N.Y. 2015) (internal quotation marks omitted).

1998) (internal quotation marks omitted). The Second Circuit has explained that the party invoking the work-product doctrine "bears [a] heavy burden [in] establishing its applicability." *In re Grand Jury Subpoena Dated July 6, 2005*, 510 F.3d 180, 183 (2d Cir. 2007). Specifically, the party asserting work-product protection "must demonstrate that the material at issue (1) [is] a document or a tangible thing, (2) that was prepared in anticipation of litigation, and (3) was prepared by or for a party, or by his representative." *von Kahle v. Cargill, Inc.*, 599 F. Supp. 3d 181, 186 (S.D.N.Y. 2022) (internal quotation marks omitted).

### III.   Discussion

#### A.   Invoices

Entries 6 and 8 on Oakley's privilege log are invoices from attorneys whom Oakley retained in legal disputes unrelated to this case. Under New York law, "attorney time records and billing statements are not privileged when they do not contain detailed accounts of the legal services rendered." *DiBella v. Hopkins*, 403 F.3d 102, 120 (2d Cir. 2005). However, "bills showing services, conversations, and conferences between counsel and others are protected from disclosure." *De La Roche v. De La Roche*, 617 N.Y.S.2d 767, 769 (1st Dep't 1994).

With respect to entry 6, Oakley produced the invoice in a redacted format, obscuring the portion of the document that provided a description of the services rendered. Because these descriptions all show conversations and correspondence between counsel and others, the Court concludes that they are protected by the attorney-client privilege and were properly redacted. Accordingly, MSG's motion to compel production of an unredacted copy of entry 6 is DENIED.

With respect to entry 8, Oakley has indicated that he produced the invoice in an unredacted format. Therefore, MSG's motion to compel production of entry 8 is DENIED as moot.

### B. Retainer Agreement

Entries 10 and 11 are Oakley's retainer agreements with his counsel in this case. New York law is clear that "[t]he terms of an attorney's retainer agreement are not privileged." *People v. Belge*, 399 N.Y.S.2d 539, 540 (4th Dep't 1977). Even though Oakley does not dispute that retainer agreements lack protection under the attorney-client privilege, he has only produced redacted versions of these documents because he argues that "[t]he remainder of the agreements are plainly irrelevant to address Oakley's claims." (Doc. No. 238 at 5.) However, "courts in this circuit have often rejected defendants' requests for redaction of irrelevant text within relevant documents." *Cyris Jewels v. Casner*, No. 12-cv-1895 (KAM) (SLT), 2016 WL 2962203, at *4 (E.D.N.Y. May 20, 2016); *see also Howell v. City of New York*, No. 06-cv-6347 (ERK) (VVP), 2007 WL 2815738, at *2 (E.D.N.Y. Sept. 25, 2007) ("It is not the practice of this court to permit parties to selectively excise from otherwise discoverable documents those portions that they deem not to be relevant."). Thus, MSG's motion to compel production of entries 10 and 11 is GRANTED.

### C. Disengagement Letter

Entry 16 is a disengagement letter from Oakley's counsel in the criminal case related to Oakley's removal from Madison Square Garden. Courts have regularly held that "communications concerning the termination of the retainer agreement are not privileged." *Hayden v. Int'l Bus. Machs. Corp.*, No. 21-cv-2485 (VB) (JCM), 2023 WL 4622914, at *4 (S.D.N.Y. July 14, 2023). However, portions of such documents may be privileged if they convey "litigation strategy or other confidential information." *Terpin v. Pinsky*, No. 20-cv-3557 (CS) (AEK), 2022 WL 3572928, at *3 (S.D.N.Y. Aug. 19, 2022) (internal quotation marks omitted). Oakley has produced a redacted version of entry 16 on the basis that the withheld portion of the document conveys litigation

strategy. (*See* Doc. No. 238 at 5.) After inspecting the unredacted document *in camera*, the Court agrees with Oakley. Accordingly, MSG's motion to compel production of the unredacted version of entry 16 is DENIED.

### D. Communications Between Oakley's Counsel and MJ Pedone

Entries 17 through 19 consist of an email chain between Oakley's counsel, Douglas Wigdor, and MJ Pedone, a public-relations strategist. Oakley acknowledges that these communications are not protected by the attorney-client privilege but instead asserts that they are covered under the work-product doctrine. (*See id.* at 4.) In response, MSG argues that the work-product doctrine "does not extend to public relations activities." (*Id.* at 2 (internal quotation marks omitted).) For starters, it is clear to the Court after reviewing these documents *in camera* that they do not involve public-relations activities and thus MSG's objection is inapposite. Rather, these emails simply involve Pedone sending Wigdor a single piece of potential evidence related to this case. Nevertheless, "the collection of evidence, without any creative or analytic input by an attorney or his agent, does not qualify as work product." *Riddell Sports Inc. v. Brooks*, 158 F.R.D. 555, 559 (S.D.N.Y. 1994); *see also Wultz v. Bank of China Ltd.*, 304 F.R.D. 384, 393 (S.D.N.Y. 2015) ("[T]he [work-product] doctrine is not satisfied merely by a showing that the material was prepared at the behest of a lawyer or was provided to a lawyer."). Because the email chain at issue did not involve any creative or analytic input by Oakley's attorney, MSG's motion to compel production of entries 17 through 19 is GRANTED.

### E. Communications Regarding Oakley's Autobiography Draft

Entries 20 through 23 consist of emails between Wigdor and Alex Koblenz, one of Oakley's "friend[s] who works in public relations," regarding Oakley's autobiography. (Doc. No. 238 at 4.) Oakley argues that these emails are protected by the work-product doctrine because

they "involve a legal review of the contents of Oakley's book draft and include legal advice in connection with the drafting and publishing." (*Id.*; *see also id.* ("[T]hey include the attorneys' thought processes and opinions.").) However, based on the Court's *in camera* review of the documents, it is clear that none of them reveal the thought processes and opinions of Oakley's attorneys. Indeed, in the email attaching a redline of the edited version of the book manuscript, Wigdor simply states, "I spoke with Charles who is copied in this email[,] and the changes accurately reflect what happened on the night in question." In other words, Wigdor was simply relaying Oakley's factual statements regarding what allegedly happened when he was removed from Madison Square Garden on February 8, 2017. There is no indication whatsoever in the documents that the changes reflected Wigdor's legal advice or that their disclosure would risk revealing "the mental processes of an attorney as reflected in documents prepared for litigation." *In re Grand Jury Subpoenas Dated March 19, 2002 and August 2, 2002*, 318 F.3d 379, 384 (2d Cir. 2003). Thus, Oakley has failed to carry his "heavy burden" in claiming protection under the work-product doctrine. *In re Grand Jury Subpoena Dated July 6, 2005*, 510 F.3d at 183; *see also id.* at 183–84 ("[T]he party asserting the privilege must show a real, rather than speculative, concern that the work product will reveal counsel's thought processes in relation to pending or anticipated litigation." (internal quotation marks omitted)). As a result, MSG's motion to compel production of entries 20 through 23 is GRANTED.

### IV. Conclusion

For the reasons stated above, IT IS HEREBY ORDERED THAT the MSG's motion to compel Oakley to produce the redacted and withheld documents is GRANTED in part and

7

DENIED in part. Oakley shall produce unredacted versions of entries 10–11, 17–19, and 20–23 forthwith.

SO ORDERED.

Dated:      January 27, 2025
               New York, New York

                                           RICHARD J. SULLIVAN
                                           UNITED STATES CIRCUIT JUDGE
                                           Sitting by Designation