# KING & SPALDING

King & Spalding LLP
1185 Avenue of the Americas, 34th Floor
New York, NY 10036-4003
Tel: +1 212 556 2100
Fax: +1 212 556 2222
www.kslaw.com

January 24, 2024

Randy M. Mastro
Direct Dial: +1 212 827 4019
RMastro@kslaw.com

**VIA ECF AND E-MAIL**

Hon. Richard J. Sullivan, U.S. Circuit Court Judge
U.S. Court of Appeals for the Second Circuit
500 Pearl Street, New York, NY 10007

Re:  *Oakley v. MSG Networks, et al.*, No. 17-cv-6903 (RJS) (S.D.N.Y.)

Dear Judge Sullivan:

We represent Defendants MSG Networks, Inc., Madison Square Garden Sports Corp., and Sphere Entertainment Group, LLC (collectively, "MSG") and non-party James Dolan. We write jointly with Plaintiff Charles Oakley, pursuant to Rule 2(G) of Your Honor's Individual Rules and Practices, over an issue on which the parties have reached an impasse concerning the location of the deposition of James Dolan and the manner in which the deposition will be conducted. The parties conferred on January 16, 2025, with Randy Mastro present for MSG and Mr. Dolan, and Douglas Wigdor present for Oakley.

**MSG and Mr. Dolan's Position**

Your Honor has previously noted that "courts have recognized an additional layer of protection for senior corporate executives subject to depositions." ECF 218 at 9 (citing *Scott v. Chipotle Mexican Grill*, 306 F.R.D. 120, 122 (S.D.N.Y. 2015)). [REDACTED]

As the Court is no doubt aware, on December 4, 2024, the CEO of UnitedHealthcare was fatally shot while leaving a hotel in midtown Manhattan to attend an investor meeting. In the wake of this tragic incident, many corporations, including MSG, have re-evaluated and strengthened their executive security protocols in order to ensure that their leadership is adequately protected from similar threats.

Oakley has already deposed nine witnesses over the course of fact discovery in this action, including three current MSG security guards, one former MSG security guard, an NBA security representative, and four MSG corporate representatives. All nine of these depositions, by Oakley's own election, have taken place virtually over Zoom.[2] [REDACTED]

---

[1] Oakley claims that because MSG did not propose redactions when sending its initial portion of this letter to Oakley, MSG did not intend to redact sensitive portions of the letter. This is not only false, but it misunderstands the joint letter process, in which the moving party (here, MSG) is in control of the submission of the letter. MSG always intended to redact sensitive portions of this letter prior to submitting it, and was going to propose such redactions once the letter was complete.

[2] Oakley has also announced his intention to depose former MSG head of security Frank Benedetto and John McEnroe over Zoom over the next week.



Making matters worse, Oakley's counsel stated that Mr. Dolan's security detail can ▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ This is insufficient. If Dolan's deposition is to take place ▇▇▇▇▇▇▇▇▇▇—and it should not—at a minimum MSG security will need to do a sweep of the offices in advance to ensure Mr. Dolan's safety, and will need to be present in the room for the entirety of Mr. Dolan's deposition. It would be irresponsible from a security standpoint to expose this prominent CEO to an unfamiliar environment without taking measures in advance to ensure the environment is secure. Of course, such procedures will only add to the time and expense incurred on all sides here, which can be avoided if Oakley works with MSG on its reasonable requests.

MSG concerns with proceeding ▇▇▇▇▇▇▇▇▇▇▇▇▇▇ are well-founded. Mr. Dolan is a prominent public figure, and it would not be within security best practices to expose him to potential threats in an unsecured location. Furthermore, Oakley has previously made veiled references about Mr. Dolan that have raised security concerns. *See* "In Exile From the Knicks, but Still at Home in Cleveland," The New York Times, *available at* https://www.nytimes.com/2016/11/02/sports/basketball/charles-oakley-knicks-cleveland.html ("'I wouldn't mind having a sit-down dinner with Dolan. I wouldn't mind cooking him dinner.' Pause. 'Might put something in it, though!'"). And during the January 21 deposition of nonparty Lee Lessner, there were two power outages ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ that interrupted proceedings for an extended period of time, raising additional concerns about the security profile of that venue.

MSG has been eminently reasonable in its requests regarding bona fide safety concerns. Oakley's counsel, on the other hand, has not engaged with these requests in a reasonable manner, nor has he articulated any compelling reason why he cannot take Mr. Dolan's deposition remotely or at

---

[3] The location of Mr. Dolan's deposition was not addressed in MSG's and Mr. Dolan's prior motion for a protective order because (1) that motion dealt with the scope of Mr. Dolan's deposition, (2) every one of Oakley's depositions in this case has occurred over Zoom, including in some instances where the deposition notices listed ▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇ (such as the notices for current employees Jamieson Antonio, Anthony Mongelli) or another in-person location (such as the notice for former employee Kori Keaton), and (3) the parties have worked out logistical issues before, and MSG did not expect to encounter this degree of intransigence. It was not until Oakley's counsel took a firm position on the evening of January 20, 2025, that MSG and Mr. Dolan knew Oakley was going to draw a line on the location of the deposition.

the offices of MSG or its law firm. We therefore respectfully request that the Court order Oakley's counsel to take Mr. Dolan's deposition at MSG's offices.

Furthermore, as the Court is already well aware, MSG and Mr. Dolan are very concerned about the potential for irrelevant and abusive lines of questioning. Just today, Oakley produced (obviously in anticipation of Mr. Dolan's deposition) various articles concerning other incidents and public comments Mr. Dolan has made about other fans and people, which have nothing to do with Oakley or this case. MSG appreciates that the Court has recognized that it is "hard to envision any topics beyond Dolan's eyewitness account, communications with security guards, and hand gestures to security guards would be relevant deposition testimony," ECF 218 at 9, and that "the Court will have little patience for lawyers who use the discovery process as a sport for purposes unrelated to the development of evidence, id. at 10. MSG hopes it will not be necessary, but if Oakley's counsel does not stay within the bounds of these relevant topics, MSG's counsel may have to intervene and promptly "move to terminate or limit the deposition." Id. at 9.

**Plaintiff's Position**

In this belated[4] letter, Defendants move for a sweeping protective order: (1) To move the already-noticed location of Dolan's deposition to Zoom or, in the alternative, to a location of their choosing; or (2) in the alternative to any of those options, to require Plaintiff's counsel ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ These absurd requests should be denied.

As an initial matter, in spite of their supposed security concerns, Defendants sent an initial draft of this letter without suggesting that it be placed under seal, leaving Plaintiff to suggest redactions that would ensure that the parties were not inadvertently publishing the time and place of Dolan's deposition. This shows that there is no real security concern.

As Defendants admit, they have already moved the Court for a protective order to govern the manner of Dolan's deposition. When they made their motion on September 24, 2024, Dolan's deposition notice, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, had been pending for two months. The Court then saw no reason to modify the place or manner of Dolan's deposition and declined to add any special procedural protections, calling the request an "unwarranted extravagance." See Oakley v. MSG Networks, Inc., No. 17 Civ. 6903 (RJS), 2024 WL 4859024, at *5 (S.D.N.Y. Nov. 21, 2024) ("the Court is unmoved by MSG's request for Court supervision or the appointment of a special master to oversee Dolan's deposition, which the Court regards as an unwarranted extravagance to which the parties are not entitled.") This motion is therefore properly construed as a motion for reconsideration, because Dolan already had (and took) an opportunity to move for a protective order governing the manner of Dolan's deposition. See Midamines SPRL Ltd. v. KBC Bank NV, No. 12 Civ. 8089, 2016 WL 11359166, at *2 (S.D.N.Y. Mar. 31, 2016) (Sullivan, J.) (A motion for reconsideration is "not 'an opportunity for making new arguments that could have been previously advanced.'") This motion simply fails,

---

[4] Defendants did not make their request until January 16, 2025. By their own description, Defendants have understood the issue for months. In particular, Dolan received a notice of deposition in July ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

accordingly, to meet this standard for a reconsideration motion and should be rejected outright.

In any case, Defendants fail to meet the burden for establishing good cause for the protective order. See Allen v. City of New York, 420 F. Supp. 2d 295, 301 (S.D.N.Y. 2006) ("Under Fed.R.Civ.P. 26(c), the party seeking a protective order has the burden of showing that good cause exists for issuance of that order.") (quoted citations removed). That burden is even harder to meet, here, since the "presumption" is that the noticing Party "may choose the location of the deposition." United States v. M/Y Amadea, a Motor Yacht Bearing Int'l Mar. Org. No. 1012531, No. 23 CIV. 9304 (DEH), 2025 WL 50027, at *3 (S.D.N.Y. Jan. 8, 2025); accord Viera v. United States, No. 18 Civ. 9270 (KHP), 2019 WL 6683556, at *2 (S.D.N.Y. Dec. 6, 2019) (same); Hui Wang v. Omni Hotels Mgmt. Corp., No. 3:18-Civ. 2000 (CSH), 2019 WL 2083296, at *3 (D. Conn. May 13, 2019) (same, and collecting authorities); Sabhnani v. Mirage Brands, LLC, No. 22 Civ. 00936 JSJMW, 2022 WL 16965009, at *1 (E.D.N.Y. Nov. 16, 2022) (same, and collecting authorities); see also Fed. R. Civ. P. 30(b)(1) (noticing party has responsibility of determining the location of a deposition); 8A Wright & Miller, Fed. Prac. & Proc. Civ. § 2112 (3d ed., Jun. 2024 Update) ("the examining party may set the place for the deposition of another party wherever he or she wishes").

Defendants cite only three non-conclusory, non-question-begging (but still absurd) reasons for Dolan to be concerned about the safety of a deposition ▮▮▮▮▮▮▮▮▮ (1) the murder of the CEO of UnitedHealthcare on December 4, 2024; (2) an 11-year old New York Times article; (3) a brief tech problem during a deposition in this case on January 21, 2025—the latter of which Defendants threw in as an afterthought in the midst of drafting, given the timing of the meet and confer and letter draft. But Defendants do not actually explain the nexus between any of these reasons and a risk to Mr. Dolan. (2) and (3) do not even come close to articulating a safety risk to Dolan, and reason (1), standing alone, is not sufficient to overturn the usual presumption in favor of the noticer choosing the deposition's location. Even accepting that (1) suggests some minimal security risk, there is no hint of a violent crusade against CEOs afoot; all of the publicly-known information suggests that it was a narrowly targeted and planned attack by a lone wolf. This threat is remote and implausible. Indeed, the request itself echoes other instances of Dolan's persecution conspiracy theories, such as accusing every fan who criticizes him of being an alcoholic.[5] Nor is it unusual for only some depositions in a case to be taken by Zoom. Doing so does not create a "precedent" against Plaintiff's right to set the time, place, and manner of a deposition.

Underscoring that point (2) is near frivolous, Dolan has stated publicly that he thinks Oakley was joking when he made this supposedly "threatening" statement. Specifically, Michael Kay asked Dolan in an interview: "Are you afraid for your safety when [Oakley is] around? Because he said that whenever he comes to the Garden there's security following him even into the bathroom. Are you afraid that he's going to come after you?" To which Dolan responded, "No, um they- the uh- I don't so, (laughs) although he's… he's been quoted saying things like he would poison my food. **You know, I don't think he's serious about that stuff."**

---

[5] Defendants also misconstrued Plaintiff's offer regarding Dolan's security. The relevant lobby is immediately outside the door of the conference room that would be used for the deposition. The offer amounted to a substantive accommodation of Dolan's security team.

On the reverse of this coin, 

Finally, Defendants' citation to *Scott v. Chipotle Mexican Grill*, 306 F.R.D. 120, 122 (S.D.N.Y. 2015), suggesting that there is a CEO privilege, is highly misleading. *Scott* says there should be a layer of protection from "discovery that is unreasonably cumulative or is obtainable from a 'more convenient, less burdensome, or less expensive' source." *Id.* It says absolutely nothing about the time, place, or manner of depositions.

Respectfully,

/s/ Randy M. Mastro

Randy M. Mastro

---

Before the Court is Defendants' motion for a protective order that would change the location of the deposition of James Dolan or, in the alternative, institute additional security measures. The law in this district is clear: "[T]he party noticing the deposition usually has the right to choose the location." *Viera v. United States*, No. 18-cv-9270 (KHP), 2019 WL 6683556, at *2 (S.D.N.Y. Dec. 6, 2019) (internal quotation marks omitted). Defendants have failed to establish good cause for a protective order to alter the location of the deposition or institute additional security measures beyond those which Plaintiff has already offered. *See Allen v. City of New York*, 420 F. Supp. 2d 295, 301 (S.D.N.Y. 2006); *see also* Fed. R. Civ. P. 26(c). Accordingly, Defendants' motion for a protective order is DENIED. Dolan's deposition shall take place at the location noticed by Plaintiff. The Clerk of Court is respectfully directed to terminate the motion pending at Doc. No. 277.

SO ORDERED:
Dated: 1/27/2025      RICHARD J. SULLIVAN
                     U.S.C.J., Sitting by Designation