# KING & SPALDING

King & Spalding LLP
1185 Avenue of the Americas, 34th Floor
New York, NY 10036-4003
Tel: +1 212 556 2100
Fax: +1 212 556 2222
www.kslaw.com

April 4, 2025

Damien Marshall
Partner
Direct Dial: +1 212 790 5357
DMarshall@kslaw.com

**VIA ECF AND E-MAIL**

Hon. Richard J. Sullivan, U.S. Circuit Court Judge
500 Pearl Street, New York, NY 10007

### Re: *Oakley v. MSG Networks, et al.*, No. 17-cv-6903 (RJS) (S.D.N.Y.)

Dear Judge Sullivan:

I write as MSG's counsel to request a pre-motion conference to seek leave to file a motion for summary judgment dismissing this case. As explained here, the entire evidentiary record—every eyewitness, video recording, and document produced in discovery pertaining to Oakley's ejection from MSG—undermines Oakley's sole remaining assault and battery claim and belies his self-serving Rule 56 declaration that permitted him to evade summary judgment on appeal. Even Oakley himself, through his deposition testimony and prior admissions, contradicts the false narrative crafted by his counsel. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." ECF 140 at 6 (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)); *id.* at 4 ("[W]e do not accept Plaintiff's facts to the extent that they are 'blatantly contradicted by the record.'"). That is the case here: Oakley's "version of the facts" is "so blatantly contradicted by the record" that "no reasonable jury could believe it." MSG is entitled to summary judgment as a matter of law.

As Your Honor is aware, the Court previously granted summary judgment based "solely on video footage documenting Oakley's removal from the Garden." ECF 121 at 4. The Second Circuit reversed on the narrow ground that summary judgment was premature because the video evidence then in the record did not so "blatantly contradict" claims Oakley himself made in a Rule 56 declaration—namely, that he supposedly did *not* refuse to leave but, nevertheless, was "grabbed" and "push[ed]" to the ground by MSG security guards—to warrant immediate dismissal. ECF 140 at 6-7, 9; *see also* ECF 114 at ¶¶ 11, 13. The Second Circuit reasoned that, given the "choppy and degraded video quality," the lack of audio in the only footage capturing this incident from its beginning, and the absence of any video "clearly show[ing] Oakley's feet and lower legs" when he initially fell to the floor, the video record, on its own, did not "unequivocally establish that Oakley" was afforded the opportunity to leave and "merely lost his footing" when he first rose. ECF 140 at 8–9. Accordingly, the Second Circuit held it could not "conclude as a matter of law that no reasonable jury could conclude that the defendants gave Oakley a reasonable opportunity to depart, and that they used only reasonable force." *Id.* at 9. The Second Circuit therefore sent the case back for fact discovery, which "could have yielded additional videos showing other camera angles, as well as helpful eyewitness testimony to overcome the limitations in the video record and give context." *Id.*

Over the past year, the parties have conducted fulsome discovery far more robust than the limited video-only record previously before the Second Circuit. That record has established beyond any doubt that MSG security "afforded" Oakley "a reasonable opportunity to leave," *Noonan v. Luther,* 206 N.Y. 105, 108 (1912), and that there was nothing "objectively unreasonable" about the force MSG security guards

then used to remove Oakley, *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 573 (2d Cir. 1996), *as amended* (May 21, 1996). Accordingly, Oakley's claims for assault and battery must now fail.

Specifically, the eyewitnesses to Oakley's ejection from Madison Square Garden confirm the same basic narrative that: (1) although irrelevant to the ultimate disposition of this case, Oakley was abusive and profane from the moment he entered the Garden;[1] (2) MSG security and an NYPD officer requested that Oakley leave and gave him an opportunity to do so, but Oakley refused; (3) Oakley, not MSG, physically (and verbally) escalated the situation, necessitating the use of force to remove him; (4) MSG at all times used the minimum amount of force necessary to remove Oakley, who aggressively physically resisted removal; and (5) Oakley slipped and fell in the risers and at the Zamboni Gate, and was not pushed to the ground by MSG security (or anyone else) at any time. In MSG's summary judgment motion, the Court will be presented with uncontroverted testimony from these witnesses, among others:

- **NYPD Officer Robin Kraemer**, who was stationed outside of MSG, heard Charles Oakley shout "Tell Dolan I'm f*cking here" as he arrived at the Garden.
- **Oakley's Seatmate, Timothy Oberweger**, who gave Oakley his ticket and escorted him to the game after drinking with him at a bar across the street, witnessed Oakley's increasing "agitation" once seated, heard MSG security "first" ask Oakley to "settle down" before "requesting that he leave," and sat there shocked as Oakley "refuse[d] to comply."
- **Tennis star John McEnroe**, who was directly in front of Oakley during the incident, witnessed MSG security ask Oakley to leave, heard Oakley respond, "F*ck you, I ain't leaving," and saw Oakley "physically resist the efforts of the MSG security guards to escort him out of the arena."
- **Former MSG Director of Executive Protection Kori Keaton**, who heard Oakley cursing in his seat, made the decision to ask Oakley to leave, informed Oakley that he had to leave the Garden, and then had to put his "hands up" and "step back" to avoid being hit as Oakley lunged at him.
- **MSG Chairman James Dolan**, who was sitting near Oakley, testified that he didn't realize at first Oakley was behind him, then, once alerted by Keaton of Oakley's cursing and hearing the profanities himself, he told Keaton, and thereby the security team, to "do what they have to do."
- **Former MSG Director of Arena Operations Thomas Redmond**, who was among the security staff on duty that evening, observed Oakley shouting profanities, calmly requested that Oakley leave the Garden of his own volition, and was then physically assaulted, twice, by Oakley.
- **Former MSG Security Supervisor Jayson Jacknow**, who heard Oakley yelling obscenities at MSG security, heard Keaton tell Oakley to leave (Oakley responded, "f*ck you, I'm not going anywhere"), was struck in the forearm and shoved twice by Oakley before security had begun to remove him, and observed Oakley "thr[o]w himself to the ground on purpose at the Zamboni gate."
- **MSG Security Guard Thomas Ortiz**, who was positioned close to Oakley's seats, witnessed Oakley curse at Dolan and MSG security, physically assault Redmond and Jacknow, fall down twice without being pushed, and refuse to cooperate as MSG security tried to remove him.
- **MSG Security Supervisor Jamieson Antonio**, who was on duty that night, also observed Oakley refuse to cooperate with MSG security by the Zamboni gate, throw himself on the ground and refuse

---

[1] MSG presents this point because Oakley has consistently (and wrongly) argued that he was a model citizen prior to his ejection, but it is important to note that MSG's rationale for removing Oakley is **not** at issue in this case. As the Court explained in its previous summary judgment decision, it is now the law of the case, affirmed by the Second Circuit in its November 16, 2020 order (and untouched in its subsequent May 5, 2023 order), that "Defendants were not required to supply a reason for expelling Oakley – a ticketholder licensee at the Knicks game – from Madison Square Garden." ECF 121 at 6; *see also* ECF 74 at 11 (Second Circuit holding in first appeal that Oakley contended "incorrectly" that "the act of removal was unreasonable"); ECF 140 at 5 (Second Circuit noting that reasonableness of force was the only issue in second appeal).

to get up, and then grab a railing to impede his removal, injuring Antonio when Oakley "smashed [him] up against" a sharp piece of metal.

- **NYPD Officer John Maher**, who was working at MSG that evening, observed Oakley's cursing and refusal to leave, repeatedly asked Oakley to leave with him but was rebuffed, and made the decision to arrest and handcuff Oakley based on Oakley's assault of several MSG personnel.

These witnesses all tell a consistent story, further corroborating what was already clear from the video evidence: MSG used reasonable force in removing Oakley. Despite months of voluminous document discovery, numerous depositions, and extensive use of third-party subpoenas, Oakley has identified **zero** witnesses to the incident who corroborate his false narrative.

And there can be no doubt that Oakley's false narrative was crafted for him by his lawyers. We know this from: (1) contemporaneous Oakley interviews following the incident; (2) draft after draft of Oakley's autobiography; and (3) additional video uncovered in discovery—all of which flatly contradict Oakley's Rule 56 Declaration. In videotaped interviews the day after the incident, and again in February 2022, Oakley freely admitted that he was told by MSG security while he was still "sitting down" in his seats—long before any physical altercation had begun—that he "had to leave the gym" and that he refused, saying "I'm not leaving," after which he "slipped down and fell" before being removed from the Garden. MSG_OAKLEY_0000723; 725.[2] Oakley made many more damning admissions to the ghostwriter of his autobiography, who took verbatim notes of interviews with Oakley and used them as the basis for describing the February 8, 2017 incident in drafts of the book. *See* ECF 318-1 at 76:08-80:16. In every draft of the autobiography Oakley's story was consistent—he slipped and fell that night when first approached, rather than being pushed, and he "never should have touched" MSG security—until Oakley's attorney Doug Wigdor edited the final version and rewrote the text to conform to the false narrative he had put forth in Oakley's declaration. Indeed, Wigdor struck Oakley's admissions and replaced them with a fictional account that Oakley was pushed to the ground without provocation, supposedly on Dolan's orders. See ECF 304-2. And Wigdor tried to hide what he had done by asserting a privilege claim over his final edits that this Court rejected. *See* ECF 281.

Finally, additional video uncovered in discovery clearly shows Oakley, at the time of his initial fall, slipped without provocation, belying his declaration's claim he was pushed to the ground by MSG security. *See* MSG_OAKLEY_0000834 (cell phone footage from immediately behind Charles Oakley showing Oakley's lower legs and feet pressed up against a riser immediately after his initial fall); *see also* Oakley Dep. Exhibit 10 (cell phone footage of Oakley's initial fall from the previously-unseen front angle showing that Oakley slipped and no MSG security guard was in any position to have possibly pushed him). Thus, there is no question about what happened that night, based on both the originally-submitted and since-uncovered videos.

For all of these reasons, this Court should permit MSG to move for summary judgment on Oakley's sole remaining claim and, as detailed in another letter filed with this one, to impose Rule 11 sanctions on Oakley and his counsel for pursuing this frivolous claim.[3]

---

[2] In his deposition, Oakley further undermined his Rule 56 declaration by testifying that he did not "recall" his conversation with MSG security that night, Oakley Dep. 58:24-59:8, in contrast to his declaration, in which he swore MSG security "berated [him] and loudly demanded to know why [he] was sitting so close to 'Dolan,'" ECF 114 ¶ 9, further demonstrating that the entire declaration lacks credibility and should be discarded.

[3] Alternatively, MSG moves to dismiss Oakley's claim as lacking any damages and strike his punitive damages claim.

Respectfully submitted,

*/s/ Damien Marshall*

Damien Marshall