

**Valdi Licul**
vlicul@wigdorlaw.com

April 9, 2025

The Honorable Richard J. Sullivan
United States District Court, Southern District of New York
500 Pearl St., Room 2530
New York, New York 10007

      Re:    Oakley v. MSG Networks, *et al.*; Civil Case No. 17-cv-06903 (RJS)

Dear Judge Sullivan:

We represent Plaintiff Charles Oakley ("Plaintiff" or "Oakley") and write in response to the April 4, 2025 pre-motion conference letter by Defendants' MSG Networks, Inc., Madison Square Garden Sports Corp., and Sphere Group, LLC (collectively "Defendants" or "MSG") seeking leave to file a motion for summary judgment ("MSG Ltr."). Dkt. 439. The Second Circuit has twice reversed and remanded Orders dismissing this case as a matter of law. Defendants nevertheless seek permission to make a third motion seeking the same relief in direct defiance of the Second Circuit's instructions that it is up to a "jury" to decide "whether the use of force [to eject Oakley] was reasonable under the circumstances." Oakley v. Dolan, 980 F.3d 279, 283-84 (2d Cir. 2020) (Oakley I); see Oakley v. Dolan, No. 21-2939, 2023 WL 3263618, at *3 (2d Cir. May 5, 2023) (Oakley II) ("once a jury sorts out *what* exactly happened, it must make a determination as to whether the force used to eject Oakley was reasonable") (emphasis in original).

Defendants' proposed motion ignores entirely the standard for summary judgment. "If, as to the issue on which summary judgment is sought, there is *any* evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper." Oakley II, 2023 WL 3263618, at *2 (emphasis in original) (citing Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 82–83 (2d Cir. 2004)). Here, the Second Circuit has already made clear that video footage has created a factual dispute. See Oakley II, 2023 WL 3263618, at *3 ("the only video record of Oakley's initial encounter with security guards does not compel the conclusions that Oakley was provided a reasonable opportunity to leave the Garden and that any force used by the guards during that initial encounter was reasonable"); see also id. at *2 ("the video evidence does not 'blatantly contradict' Oakley's Rule 56 declaration and does not compel as a matter of law the conclusion that the MSG Defendants' use of force was reasonable"). Accordingly, the Second Circuit held that "[g]iven the material dispute about whether and when the security guards pushed Oakley, we cannot conclude as a matter of law that no reasonable jury could conclude that the defendants gave Oakley a reasonable opportunity to depart, and that they then used only reasonable force." Id. at *3. MSG has no basis to depart from this finding.

There are more than 25 videos of various lengths, angles, and audibility in the factual record. Only a jury can view this evidence, along with the rest of the record, to judge whether the force deployed was reasonable. Certainly, it cannot be said that "there is [not] *any* evidence in the record from which a reasonable inference could be drawn in favor of" Oakley.



Nevertheless, Defendants claim to have discovered a new video that supports their position. MSG Ltr. at 3 (citing MSG_OAKLEY_0000834) (the "New Video"). As a threshold matter, the New Video does not depict the entirety of "*what* exactly happened," Oakley II, 2023 WL 3263618, at *3 (emphasis in original), namely James Dolan signaling his personal bodyguard who, in turn, ominously marches an imposing small army of security personnel (more than half a dozen) to confront a seated Oakley, thus committing an assault. See Compoverde v. Sony Pictures Ent., No. 01 Civ. 7775 (LAP), 2002 WL 31163804, at * 10 (S.D.N.Y. Sept. 30, 2022) (plaintiff pleaded an assault claim where "defendants' employees moved toward them threateningly"). And, crucially, the New Video also fails to capture the critical initial moment when security guards push Oakley in the chest and pull him backwards immediately after he rises from his seat, thus committing a battery. Accordingly, the Stadium Video, which *does* show "Oakley standing up while surrounded by security guards and falling to the side," Oakley II, 2023 WL 3263618, at *3, remains the only video of that moment. The Second Circuit found that the Stadium Video of Oakley "does not . . . reflect as a matter of law that the security guards only resorted to force *after* Oakley physically escalate[d] the situation," id. at *3 (emphasis in original), and found that the Stadium Video was not inconsistent with Oakley's testimony "that immediately after he stood, he was grabbed and pulled backward by security guards." Id. at *2. In other words, the New Video has not altered the Second Circuit's analysis of the initial moment of the battery, and a reasonable jury could find that even before Oakley was pushed to the ground, Defendants assaulted Oakley, used excessive force and did not give him a reasonable opportunity to leave. This, by itself, precludes summary judgment.

Further, the New Video shows that Oakley was pushed to the ground. It shows that guards grabbed Oakley and, as Oakley faced the aisle and put his arms in the air, one of the guards shoved Oakley from behind (on his upper left arm), causing Oakley to go down. New Video at 0:13. This is exactly what Oakley has been saying for years. Dkt. 114 at ¶¶ 13-15. See Adedeji v. Hoder, 935 F. Supp. 2d 557, 568 (E.D.N.Y. 2013) (one nudge was "excessive" under all of the facts and circumstances).[1]

Defendants' argument that Oakley admitted that he "slipped" fares no better. The crux of Defendants' argument is that a statement in a draft of Oakley's biography written by Frank Isola that Oakley "slipped" means that Oakley's contention that he was "pushed" to the ground is false. But that is decidedly not what Isola said. Isola, who wrote the draft, testified that he did not understand the word "slipped" to mean that Oakley fell on his own. Isola Tr. 211:21-212:3. Rather, "slipped" meant to Isola that Oakley fell because of the "confrontation" with MSG's guards. Isola Tr. at 212:2-6. Indeed, Defendants tried desperately to get Isola to testify that Oakley "slipped" on his own, but Isola refused:

---

[1] Defendants argued to the Second Circuit that "one MSG security guard tried to grab Oakley's arm in an apparent effort to *prevent* him from falling." Dkt. 48 at 8 (emphasis in original). The New Video proves this statement false. It shows the guard restraining Oakley with both hands and making continuous contact with Oakley's arm for at least ten seconds before he pushes Oakley to the ground.



> Q. And you are saying what is implied is that he [Oakley] wasn't pushed but slipped?
>
> A. No, no, no. I'm saying there is a reason why he had to have slipped. You know, there is a lot of big bodies there, guys are kind of grabbing at each other and it is going to happen.

Isola Tr. at 172:18-25. Isola's testimony that Oakley went to the ground because of his confrontation with the guards is consistent with Oakley's declaration, where he stated that he "did not trip and fall on [his] own," Dkt. 114 ¶ 14, and with the New Video showing Oakley being pushed from behind.

In addition to the Stadium Video, the New Video and Oakley's testimony, additional evidence establishes that summary judgment should not be granted. For example, and without limitation,

- Video evidence (which MSG initially withheld) and testimony from MSG's own witnesses showing Oakley entering the arena peaceably and socializing amiably with MSG employees, thus undermining any argument that the amount of force used was reasonable because Oakley was behaving abusively "from the moment he entered the Garden." MSG Ltr. at 2.
- Testimony from Dolan admitting that he did not hear Oakley cursing until he had a conversation with his personal bodyguard about ejecting Oakley.
- Testimony from Dolan's bodyguard admitting that, prior to his conversation with Dolan about ejecting Oakley, he did not notice Oakley yelling, cursing or making a scene.
- Testimony from Dolan, corroborated by internal NBA documents, that Dolan was in fact "involved" in Oakley's removal and "authorized" Oakley's ejection, proving that subsequent statements by Defendants, and statements by their counsel to this Court, that Dolan was not "involved in the decision to remove Oakley," Dkt. 153 at 1, and was merely "one *of thousands* or eyewitness," Dkt. 184 at 7 (emphasis in original), were knowingly false.
- Video evidence that guards dragged Oakley to the ground a second time during the ejection and, after Oakley was able to get up, continued to physically batter him, including trying to drag him out by his neck.

Based on this disputed record, this Court, like the Second Circuit, "cannot conclude as a matter of law that no reasonable jury could conclude that the defendants gave Oakley a reasonable opportunity to depart, and that they used only reasonable force." Oakley II, 2023 WL 3263618, at *3.[2] Therefore, the Court should not permit Defendants to cause any further delay by making a senseless motion for summary judgment.

---

[2] That Defendants seek to present self-serving testimony from security personnel involved in the assault and battery on Oakley and current and former MSG employees, as well as two guests (who likely want to avoid being banned from the Garden by Dolan), does not warrant summary judgment.



Hon. Richard J. Sullivan<br>
April 9, 2025<br>
Page 4

Respectfully submitted,

Valdi Licul

cc: All Counsel of Record (*via* ECF)