

**Valdi Licul**
vlicul@wigdorlaw.com

June 4, 2025

The Honorable Richard J. Sullivan
U.S. Court of Appeals for the Second Circuit
500 Pearl St., Room 2530
New York, New York 10007

       Re:    Oakley v. MSG Networks, *et al.*; Civil Case No. 17-cv-06903 (RJS)

Dear Judge Sullivan:

We represent Plaintiff Charles Oakley ("Plaintiff" or "Oakley") and write pursuant to Rule 2(A) of Your Honor's Individual Rules and Practices to request a pre-motion conference. Plaintiff Charles Oakley will move this Court to respectfully request an order, pursuant to Rule 11(c) of the Federal Rules of Civil Procedure, for sanctions against Defendants MSG Networks, Inc., The Madison Square Garden Company and MSG Sports & Entertainment, LLC. (collectively, "Defendants" or "MSG") and their counsel of record, King & Spalding LLP.

**I.**      **IMPROPER RULE 11 SANCTIONS MOTION**: As MSG knows, a sanctions motion under Rule 11 is itself subject to the Rule 11 standard. Fed. R. Civ. P. 11, 1993 Advisory Comm. Notes (observing that filing of frivolous Rule 11 motion "is itself subject to the requirements of the rule and can lead to sanctions"). Like any other motion, a Rule 11 motion may not be "presented for any improper purpose," Fed. R. Civ. P. 11(b)(1), and must be "warranted by . . . law." Fed. R. Civ. P. 11(b)(2). To determine whether a motion is "warranted" under Rule 11, the court must determine whether the statements in the motion to be sanctioned are "objective[ly] unreasonable." In re Pennie & Edmonds LLP, 323 F.3d 86, 90 (2d Cir. 2003). One "improper purpose" for bringing a Rule 11 motion is "to emphasize the merits of a party's position." Fed. R. Civ. P. 11, 1993 Advisory Comm. "[A] firmly held conviction of the correctness of one's position does not authorize collateral attack on an opponent's legal arguments by resort to Rule 11." On Time Aviation, Inc. v. Bombardier Cap. Inc., 570 F. Supp. 2d 328, 333–36 (D. Conn. 2008) (sanctioning representations made by the defendant, who had argued that the plaintiff's summary judgment opposition was without basis and sanctionable). An improper, duplicative purpose should be found where, for instance, a Rule 11 motion fails to "offer[] . . . evidence or argument as to the 'collateral issue [of] whether the attorney has abused the judicial process.'" Lee v. Grand Sichuan E. (N.Y.) Inc., No. 12 Civ. 08652 (SN), 2014 WL 199512, at *3 (S.D.N.Y. Jan. 17, 2014) (quoting Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 396 (1990).)

That is exactly what has occurred here. MSG has filed a Rule 11 motion to express their "firmly held conviction of the correctness of [their] position," On Time Aviation, Inc., 570 Supp. 2d at 332, rather than to correct an "abuse[] [of] the judicial process." Lee, 2014 WL 199512 at *3.



Indeed, their Rule 11 motion merely underscores arguments from their summary judgment brief and then requests dismissal. Their sanctions motion, then, is meant to emphasize salient summary judgment arguments—no more. See, e.g., MSG's Brf. in Supp. of Rule 11 Sanctions, Dkt. 411 at 25 (ECF pagination) ("Rule 11 Mot.") ("As detailed in MSG's motion for summary judgment . . ."). Aware that Oakley would make this argument, MSG uses different record citations for the same key evidence. Compare Rule 11 Mot. at 22 (citing ECF 358-12[1] at 0:11-0:20) with 56.1 Statement, Dkt. 399 ("56.1 Statement") at 21 ¶ 121 (citing Ex. 30 at 0:07-:015). Such gamesmanship does not change the fact that their Rule 11 Motion simply recycles their summary judgment motion with added rhetorical flairs and changed emphasis.

Nor does MSG address the "'collateral issue [of] whether the attorney has abused the judicial process.'" Lee, 2014 WL 199512, at *3 (citation to quoted case omitted). MSG offers no reason to think that Oakley has done anything but litigate to the extent permitted by the Federal Rules. They claim that Oakley has pursued this claim merely to "harass" MSG. Rule 11 Mot. at 27. But they fail to substantiate that argument, and they have long bandied around the word "harassing" simply to "emphasize the merits of [their] position." See Dkt. 218 at 7-8 (this Court holding that there was no evidence that Oakley was deposing Dolan to harass him). Nor can they strengthen their arguments on this point by outright lying that Oakley "has failed to identify *any* specific damages." Rule 11 Mot. at 28. MSG also complains that the lawsuit has lasted "seven and a half years." Id. at 27. Of course, that is only so because there have been two appeals in this case, both of which Oakley has won. Oakley can hardly be faulted for taking meritorious appeals. And while MSG tries to cast aspersions on a purported scheme to "wrest a settlement," Rule 11 Mot. at 28, they are well aware from the course of confidential settlement communications that Oakley has never espoused a remotely unreasonable position in negotiations.

MSG's Rule 11 motion is also "objectively unreasonable." On Time Aviation, Inc. v. Bombardier Cap., Inc., 354 F. App'x at 451. MSG argues that it is dispositive of Oakley's case that "he was asked to leave and refused." Rule 11 Mot. at 23. But the Second Circuit has already rejected the argument. The question is not whether Oakley was asked to leave but whether he had "a reasonable opportunity to leave." Oakley II, 2023 WL 3263618[2], at *3. 20 to 30 seconds elapsed between Oakley being asked to leave and his first being pushed by MSG's security guards. Clearly, Oakley will have a cogent argument that he did not have a reasonable opportunity to depart. MSG then argues that "Oakley admitted that he 'slipped' and fell" and "'slipped' and fell *on his own*" (emphasis added). Rule 11 Mot. at 22. But assuredly, "on his own" is not language that appears anywhere in the evidence cited. Rather, it is MSG's self-serving editorialization. Of course, MSG would seek to add this editorialization—without such editorialization, there is a fact dispute over a video, not judgment in MSG's favor let alone sanctions. Finally, MSG's entire motion is fallacious because it depends on their own unilateral narrowing of issues. As MSG well understands, Oakley's case does not depend solely on whether he was given a chance to depart

---

[1]   The correct citation here is 358-11.

[2]   We adopt the short citation used by MSG.



Hon. Richard J. Sullivan
June 4, 2025
Page 3

and whether he then fell to the ground, which are the only two facts MSG addresses. Oakley has a separate claim for assault, based on MSG's employees' initial threatening approach towards him, and his claim of battery depends upon the entire encounter between him and the guards, including Oakley being pushed and pulled as he rose from his seat.

The evidence does not really matter to MSG. They have *always* known that they would move for sanctions at the end of this case as part of their litigation strategy. This is, after all, their third threatened or filed Rule 11 sanctions motion, and they have been undeterred by two reversals by the Second Circuit.

**II.     FALSE STATEMENTS ABOUT DOLAN'S INOLVEMENT**: The motion is also brought on the grounds that MSG has filed a number of false statements with the Court, including that Dolan "was not" "involved in the decision to remove Oakley," ECF No. 153 at 1, and "not involved in Oakley's removal that evening," ECF. No. 181 at 6; that "it is not true" that Dolan "'may have' directed MSG security or personally authorized the ejection," ECF No. 184 at 2; and Dolan was simply "one of thousands of eyewitnesses at the Garden, many of whom were much closer to the incident," id. at 7 (emphasis in original). But Dolan admitted that these statements by counsel were false: "Q. Would you say that you were involved in the decision to remove [Oakley]? A. Yes, I would say I would." Dolan Dep. at 176:23-25 (emphasis added). Dolan further conceded that he "authorized" Oakley's ejection. Id. at 176:13-14 ("I authorized Mr. Keaton to do what he needed to do.") (emphasis added); Id. at 179:17-19 ("I gave him the authority to do what he thought he should do, and that is what happened") (emphasis added). Indeed, MSG's expert witness conceded Dolan's involvement and internal NBA security documents state – unequivocally – that Dolan ordered Oakley's removal.

Accordingly, these actions by MSG, Dolan and their counsel are sanctionable under Rule 11. See, e.g., Bunnell v. Haghighi, 183 F. Supp. 3d 364, 372 (E.D.N.Y. 2016) ("Sanctions are appropriately awarded pursuant to Rule 11 for [defendant's] failure to correct the misstatement in his answer. Although [defense counsel] arguably had a reasonable basis at the time the answer was filed to believe that [defendant] entered into a contract to purchase the Alternate Property on August 25, 2012, he refused to withdraw that allegation even after it was shown to be inaccurate."). These representations and the failure to withdraw them also constitute unprofessional conduct. NYRPC 3.3(a)(1) ("[a] lawyer shall not knowingly . . . make a false statement of fact or law to a tribunal or fail to correct a statement of material fact or law previously made to the tribunal by the lawyer"); 4.1 ("In the course of representing a client, a lawyer shall not knowingly make a false statement of fact or law to a third person."); 8.4(c) ("[a] lawyer of law firm shall not . . . engage in conduct involving dishonesty, fraud, deceit or misrepresentation").

Respectfully submitted,

Valdi Licul

cc: All Counsel of Record (*via* ECF)