**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------X
CHARLES OAKLEY,                                                     :
                                                                   :          Civil Action No. 17 Civ. 6903 (RJS)
                                        Plaintiff,                  :
                                                                   :
                        v.                                         :
                                                                   :
MSG NETWORKS, INC., *et al.*                                       :
                                                                   :
                                        Defendants.                :
----------------------------------------------------------------X


**<u>PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF RULE 11 SANCTIONS</u>**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES...................................................................................................ii

PRELIMINARY STATEMENT ............................................................................................1

BACKGROUND ...................................................................................................................2

I.      The Second Circuit's Instructions Regarding this Case ............................................2

II.     Discovery in this Case and James Dolan's Lies ......................................................4

III.    MSG's Rule 11 Motion..........................................................................................7

STANDARD OF LAW........................................................................................................10

I.      MSG's Rule 11 Motion is Objectively Unreasonable in Multiple Respects ....................10

        A.      MSG's "Improper Purpose" Argument under Fed. R. Civ. Proc. 11(b)(1) was
                Based Solely on an Unsworn Hearsay Statement of MSG's Own Attorney, Randy
                Mastro, and a False Assertion about Oakley's Damages......................................12

        B.      MSG Brazenly Mischaracterized the Second Circuit's Holding ...........................13

        C.      MSG Has Always Been Aware that Oakley Swore that Kori Keaton Pushed Him
                in the Chest, and to Assert Otherwise was Objectively Unreasonable .................14

II.     MSG Filed its Rule 11 Motion for the Improper Purpose of Bolstering a Summary
        Judgment Motion ...................................................................................................15

III.    False Statements About Dolan's Involvement................................................................16

IV.     Sanctions are Warranted .......................................................................................17

CONCLUSION....................................................................................................................19

# TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page(s)**

Adams v. New York State Educ. Dep't,
   No. 08 Civ. 5996 (VM) (AJP), 2010 WL 4970011 (S.D.N.Y. Dec. 8, 2010) ........................ 11

Bressler v. Liebman,
   No. 96 Civ. 9310 (LAP), 1997 WL 466553 (S.D.N.Y. Aug. 14, 1997) .................................. 10

Bunnell v. Haghighi,
   183 F. Supp. 3d 364 (E.D.N.Y. 2016) .................................................................................... 16

Chien v. Skystar Bio Pharm. Co.,
   256 F.R.D. 67 (D. Conn. 2009) ............................................................................................... 11

Cooter & Gell v. Hartmarx Corp.,
   496 U.S. 384 (1990) ................................................................................................................ 15

Corp. Printing Co. v. New York Typographical Union No. 6,
   886 F. Supp. 340 (S.D.N.Y. 1995) ......................................................................................... 17

Dakus v. Koninklijke Luchtvaart Maatschappij, N.V.,
   No. 22 Civ. 7962 (RA), 2024 WL 4265646 (S.D.N.Y. Sept. 23, 2024) .................................. 11

Gambello v. Time Warner Commc'ns, Inc.,
   186 F. Supp. 2d 209 (E.D.N.Y. 2002) ................................................................................... 10

Hernandez v. Denny's Corp.,
   177 A.D.3d 1372 (4th Dep't 2019) ........................................................................................... 2

Holland v. City of Poughkeepsie,
   90 A.D.3d 841 (2d Dep't 2011) ................................................................................................ 2

In re AOL, Inc. Repurchase Offer Litig.,
   No. 12 Civ. 3497 (DLC), 2013 WL 6331802 (S.D.N.Y. Dec. 5, 2013) .................................. 16

In re Pennie & Edmonds LLP,
   323 F.3d 86 (2d Cir. 2003) ..................................................................................................... 10

Jenkins v. Methodist Hosps. of Dallas, Inc.,
   478 F.3d 255 (5th Cir. 2007) .................................................................................................. 17

Lee v. Grand Sichuan E. (N.Y.) Inc.,
   No. 12 Civ. 08652 (SN), 2014 WL 199512 (S.D.N.Y. Jan. 17, 2014) .................................... 15

Margo v. Weiss,
    No. 96 Civ. 3842 (MBM), 1998 WL 765185 (S.D.N.Y. Nov. 3, 1998).................................. 11

Oakley v. Dolan,
    980 F.3d 279 (2d Cir. 2020)........................................................................................................ 2

Oakley v. Dolan,
    No. 21-2939, 2023 WL 3263618 (2d Cir. May 5, 2023) ................................................. passim

Oakley v. MSG Networks, Inc.,
    No. 17 Civ. 6903 (RJS), 2024 WL 4134903 (S.D.N.Y. Sept. 10, 2024)............................... 4, 5

On Time Aviation, Inc. v. Bombardier Cap. Inc.,
    570 F. Supp. 2d 328 (D. Conn. 2008)....................................................................................... 15

On Time Aviation, Inc. v. Bombardier Cap., Inc.,
    354 F. App'x 448 (2d Cir. 2009) ................................................................................................ 7

Patsy's Brand, Inc. v. I.O.B. Realty, Inc.,
    No. 98 Civ. 10175 (JSM), 2002 WL 59434 (S.D.N.Y. Jan. 16, 2002)..................................... 11

Pfizer, Inc. v. Y2K Shipping & Trading, Inc.,
    No. 00 Civ. 5304 (SJ), 2004 WL 896952 (E.D.N.Y. Mar. 26, 2004)........................................ 11

Precision Specialty Metals, Inc. v. United States,
    315 F.3d 1346 (Fed. Cir. 2003)................................................................................................. 17

Safe-Strap Co. v. Koala Corp.,
    270 F. Supp. 2d 407 (S.D.N.Y. 2003)....................................................................................... 16

Sept. 11th Liab. Ins. Coverage Cases,
    243 F.R.D. 114 (S.D.N.Y. 2007) .............................................................................................. 10

**Rules**                                                                         **Page(s)**

Fed. R. Civ. Proc. 11 ..................................................................................................... passim

Fed. R. Evid. 602 .................................................................................................................. 12

Fed. R. Evid. 801(c), 805 ...................................................................................................... 12

NYRPC 3.3(a)(1) ................................................................................................................... 17

NYRPC 3.4(d)(2) ..................................................................................................................... 8

Plaintiff Charles Oakley ("Plaintiff" or "Oakley"), by and through his undersigned counsel, respectfully submits this Memorandum of Law in support of his motion for Rule 11 Sanctions against Defendants MSG Networks, Inc., Madison Square Garden Sports Corp., and Sphere Entertainment Group, LLC's (collectively, "Defendants" or "MSG") and their counsel of record, King & Spalding LLP and Randy Mastro, Esq.

## PRELIMINARY STATEMENT

For people who live in a glass house, MSG and its counsel are fond of throwing stones. As they endlessly malign Oakley and his counsel as liars and barrators, they themselves file statements that they must know are false and baseless. Their sanctions motion is no different. In it, MSG elides crucial parts of the Second Circuit holding that controls this litigation; claims that Oakley has recently fabricated evidence of which it has been aware—aware as a matter of objective fact, since Judge Robinson explained it to Randy Mastro during Second Circuit oral argument—for nearly four-and-a-half years; unethically cites as evidence Randy Mastro's own unsubstantiated and unsworn assertions; and speciously argues that Oakley's claims lack "specific damages," even though "specific damages" is not an element in an assault and battery case. Meanwhile, MSG and its counsel lied to the Court repeatedly that James Dolan, MSG's CEO, was "not involved" in Oakley's removal from the Garden, only for Dolan to testify at his deposition that he was, in fact, involved.

To correct a record that has been shamelessly distorted by MSG and its counsel, and to ensure that neither can continue engaging in objectively unreasonable litigation, Oakley and his attorneys file this motion for Rule 11 sanctions.

## BACKGROUND

**I.**     **The Second Circuit's Instructions Regarding this Case**

This case concerns whether Oakley was the victim of an assault and battery when MSG security personnel ejected him from Madison Square Garden ("the Garden") on February 8, 2017, during a New York Knicks basketball game.  The operative pleading in this matter is Oakley's Second Amended Complaint, Dkt. 164 (Ex. A,[1] "SAC"), filed April 18, 2024. The SAC was unambiguously divided into two causes of action, one for "Assault," SAC at ¶¶ 95-99, another for "Battery," id. at ¶¶ 99-101.

The Second Circuit has twice weighed in on this case.  Each time, the appellate court emphasized the need for a jury to resolve this matter.

In Oakley v. Dolan, 980 F.3d 279 (2d Cir. 2020) ("Oakley I"), the Second Circuit reversed this Court's dismissal.  In doing so, the court stressed that "[b]ecause of its intensely factual nature, the question of whether the use of force was reasonable under the circumstances is generally best left for a jury to decide."  Id. at 284 (quoting Holland v. City of Poughkeepsie, 90 A.D.3d 841, 844 (2d Dep't 2011)).  The Second Circuit further stated that "[e]ven in the arrest context" where law enforcement personnel are often permitted to use greater force, "the reasonableness of the force used is often a jury question."  Id. (citing Hernandez v. Denny's Corp., 177 A.D.3d 1372, 1375 (4th Dep't 2019)).

In Oakley v. Dolan, No. 21-2939, 2023 WL 3263618 (2d Cir. May 5, 2023) ("Oakley II"), the Second Circuit again returned the case to this Court.  This time, the Second Circuit had the opportunity to review video of Oakley's ejection, including videos recorded by fans and Stadium

---

[1]     References to "Ex. __." refer to the Declaration of Valdi Licul in Opposition to MSG's Motion for Sanctions and in Support of Oakley's Motion for Sanctions and the accompanying exhibits.

Video.  Id. at *3.  The "Stadium Video" is the same as Defendants' Summary Judgment Exhibit 21, Dkt 400-21 ("Exhibit 21" or the "Stadium Video").[2]  The Second Circuit concluded that the Stadium Video, which was "the only video record of Oakley's initial encounter with the security guards[,] does not compel the conclusions that Oakley was provided a reasonable opportunity to leave the Garden and that any force used by the guards during the initial encounter was reasonable."  Oakley II, 2023 WL 3263618 at *3.  The Second Circuit came to this decision knowing that Oakley swore in his Declaration that he had questioned the security guards who first asked him to leave.  See Dkt. 114 ("Oakley Decl.") at ¶ 8.  As was explained to Randy Mastro during oral argument, even if Oakley paused or did not immediately comply, that did not license an instantaneous escalation to violence.  See Ex. S, Second Cir. Oral Argument at 33:7-10 ("Hon. Guido Calabresi: Once he refuses to leave, it doesn't mean, if I say I'm not going to leave, it doesn't mean that somebody can immediately beat me up.").

The Second Circuit's reasoning explicitly depended upon viewing the "Stadium Video" in conjunction with Oakley's declaration.  See Oakley II, 2023 WL 3263618 at *3 ("if Oakley's declaration describes the incident depicted on the Stadium Video . . . then the record does not, as the district court suggested, reflect as a matter of law that the security guards only resorted to force *after* Oakley physically escalated the situation."); (" In this case, the only video record of Oakley's initial encounter with the security guards does not compel the conclusions that Oakley was provided a reasonable opportunity to leave the Garden and that any force used by the guards during that initial encounter was reasonable. *See* Stadium Video at 7:56–8:23."); ("the video record shows Oakley falling two other times after that initial encounter. *See* Fan Video at 0:13–

---

[2]      Any references to the Declaration of Damien Marshall, Dkt. 400, and the exhibits attached thereto are indicated herein as "Defs.' Ex. __."

0:14 and at 1:10; Stadium Video at 8:41–8:42 and at 9:36–9:40. None of these videos clearly show Oakley's feet and lower legs, and thus do not unequivocally establish that Oakley merely lost his footing.").

The Second Circuit ultimately held that the case presented material disputes of fact that required a jury trial:

> Finally, once a jury sorts out *what* exactly happened, it must make a determination as to whether the force used to eject Oakley was reasonable. Given material disputes about whether and when security guards pushed Oakley, we cannot conclude as a matter of law that no reasonable jury could conclude that the defendants gave Oakley a reasonable opportunity to depart, and that they then used only reasonable force.

Id. (emphasis in original).

## II.    Discovery in this Case and James Dolan's Lies

After the second remand, the parties engaged in motion practice concerning whether Oakley should be permitted to add James Dolan as a defendant, including "new facts regarding Dolan's involvement in [Oakley's] removal from the arena." Dkt. 158 at 2.[3] The parties also engaged in motion practice concerning whether Oakley could depose Dolan or whether, as MSG, Dolan and their counsel argued, Dolan was an apex witness.[4]

---

[3]    Oakley also sought permission to "plead[] new facts regarding the force used by MSG's security personnel, asserting that '[a]s he rose from his seat, the security personnel grabbed [him] and roughly pulled him backwards.'" Dkt. 158 at 2 (quoting Dkt. 150 at 8), and that "Defendants assaulted Plaintiff when they first surrounded him in his seat." ECF 149, p.5. This Court ultimately permitted Oakley to amend his complaint as to the new facts, id. at 10, but denied Oakley permission to add Dolan as a defendant because any claims against him were time barred. Id. at 8.

[4]    The District Court rejected MSG's contention that Dolan was an apex witness. Oakley v. MSG Networks, Inc., No. 17 Civ. 6903 (RJS), 2024 WL 4134903, at *3 (S.D.N.Y. Sept. 10, 2024).

4

In connection with both motions, MSG, Dolan and their counsel made knowingly false statements to the Court.  For example, in opposing Oakley's request to amend, they contended that Dolan "was not" "involved in the decision to remove Oakley." Dkt. 153 at 1 (emphasis added).  In opposing Oakley's request to depose Dolan, they contended that (1) Dolan was an apex witness and "not involved in Oakley's removal that evening," Dkt. 181 at 6 (emphasis added); (2) "it is not true" that Dolan "'may have' directed MSG security or personally authorized the ejection," Dkt. 184 at 2 (emphasis added); and (3) Dolan was simply "one of thousands of eyewitnesses at the Garden, many of whom were much closer to the incident."  Id. at 7.

MSG also argued that the attempt to depose Dolan was harassing, a contention that the Court found meritless.  See Oakley v. MSG Networks, Inc., No. 17 Civ. 6903 (RJS), 2024 WL 4134903, at *3 (S.D.N.Y. Sept. 10, 2024), reconsideration denied, No. 17 Civ. 6903 (RJS), 2024 WL 4859024 (S.D.N.Y. Nov. 21, 2024) ("In response to Oakley's proposal, the MSG defendants point to the history of this litigation, alluding to concerns of harassment. But there is no indication that the request to depose Dolan is merely designed to harass, particularly since Dolan's involvement that evening is relevant to understanding what the security guards did when removing Oakley from the arena.").

After the Court denied MSG's motion to bar the deposition of Dolan, MSG prolonged the motion practice by moving for reconsideration.  Dkt 184.  In its motion for reconsideration, MSG's position evolved.  No longer was Dolan "not involved" at all.  Now, he was "not involved *in the physical removal itself*." Dkt. 184 at 5 (emphasis added).  Nonetheless, MSG maintained its rhetoric that Dolan had only "some generalized knowledge" of Oakley's removal, suggesting

he was not involved.  Id. at 12 (citations and quotations omitted).  The Court easily denied the motion for reconsideration.  See Dkt. 218.

In its motion for reconsideration, MSG also previewed a tactic that would resurface in its summary judgment briefing and in the Rule 11 motion that is the subject of this brief.  MSG claimed to have "newly discovered evidence" that Oakley's "main objective in noticing Mr. Dolan's deposition is to harass him, generate fodder for Plaintiff's press campaign, and promote Plaintiff's counsel's law firm."  Dkt. 184 at 13.  The supposedly "newly discovered evidence" was text messages that Oakley had received from others without responding, and statements of fact by Wigdor LLP on social media about Dolan's deposition.  See Dkt. 218 at 7-8.  The Court easily denied the motion for reconsideration on all bases.  See id.

After claiming he had nothing to do with the removal, and then filing numerous meritless motions based on that contention, Dolan admitted at his deposition that he was, in fact, involved: "Q. Would you say that you were involved in the decision to remove [Oakley]?; A: "Yes, I would say I would."  Ex. I, Dolan Dep. at 176:23-25 (emphasis added).  Dolan further conceded that he "authorized" Oakley's ejection.  Id. at 176:13-14 ("I authorized Mr. Keaton to do what he needed to do.") (emphasis added); Id. at 179:17-19 ("I gave him the authority to do what he thought he should do, and that is what happened") (emphasis added).  Indeed, MSG's expert witness conceded Dolan's involvement.

This is not the only evidence that the statements by MSG, Dolan, and their counsel concerning Dolan's involvement were false.  Internal NBA security documents prove that Dolan ordered Oakley's removal.  For instance, an "After Action Report" written by NBA Director ███████, dated February 9, 2017 (only one day after Oakley's removal) flatly states that "MSG Security was requested by Knicks owner James Dolan to eject former Knicks legend Charles

Oakley." Ex. C at NBA_00024. Another report by Security Rep. ████████, also dated February 9, 2017, discloses that "Jim Dolan instructed His Security to remove Charles Oakley from the Arena." Id. at NBA_00026.

In discovery, no additional video emerged of the first moment MSG's security guards approached Oakley. The only video that exists of this moment remains the aforementioned Stadium Video.

## III.    **MSG's Rule 11 Motion**[5]

MSG has now filed a baseless and objectively unreasonable motion for Rule 11 sanctions.[6]

MSG argued in their Rule 11 motion, pursuant to Fed. R. Civ. Proc. 11(b)(1), that Oakley's entire case was presented for the "improper purposes" to "harass MSG and gin up publicity." Dkt. 411 ("Defs.' Brf.") at 27.[7] MSG's evidence in support of this accusation? First, they claimed that Oakley has no viable claim for damages. Id. at 28. To support this contention, MSG says, without explanation, that Oakley has no "specific damages," even though "specific damages" are not part of any claim in this case and even though Oakley plainly has claims for compensatory and punitive damages, which are the main categories of damage in any intentional tort case. See Defs' Brf. at 28. Next, MSG wrote that they "recently learned that Oakley has been trying to sell his story about the ejection and this case in the form of a documentary; there is every reason to believe that his counsel would feature prominently in it and use the film to

---

[5]    On April 22, 2025, Oakley served a Safe Harbor notice on MSG, giving notice of the instant motion regarding both their sanctions motion and the lies told about Dolan's involvement.

[6]    See On Time Aviation, Inc. v. Bombardier Cap., Inc., 354 F. App'x 448, 451 (2d Cir. 2009). MSG's Rule 11 motion is "objectively unreasonable."

[7]    All citations to pages in Defs.' Brf. are made using ECF pagination.

advance the same false narrative they invented." Id. at 28. But the only evidence MSG cites in support of the first contention is a court transcript where their own attorney *Randy Mastro* states "[w]e got the discovery on the documentary, and it's the same false narrative that Doug Wigdor crafted at the last minute to say in the book." Id. (citing ECF 388-3 at 20:4-6). But MSG never cites primary evidence from "discovery," making the statement not only legally baseless but unethical on the part of Randy Mastro. NYRPC 3.4(d)(2) (stating that attorneys shall not "assert personal knowledge of facts in issue except when testifying as a witness.").

In fact, everything said in the motion, and everything said by Mastro at the court hearing, is untrue. In March 2025, third-party SpringHill produced a promotional reel of a documentary in response to a subpoena in this matter, which must be what Mastro was referring to. Oakley's attorneys do not appear anywhere in it, and it contains no specific statement by Oakley about February 8, 2017. In it, Oakley talks about February 8, 2017 for approximately one second. In response to a reporter's question about potentially going to trial in the *criminal* matter, Oakley responds "love my chances." Ex. T at 2:43-44.

In their Rule 11 motion, MSG also resorts to an utter mischaracterization of the Second Circuit decision in Oakley II, 2023 WL 3263618, in order to support a specious argument that there are only two remaining issues in this case. Specifically, they write that "discovery has proven that Oakley's counsel have long been aware that the two bases on which the Second Circuit allowed Oakley's case to proceed—that he was not given a reasonable opportunity to leave and was 'pushed' to the floor—are false." Defs.' Brf. at 21. But this is a faithless description of the Second Circuit's holding, most of which turned not solely on these "two bases" but, crucially, on ambiguities around what the Stadium Video depicted. The Stadium Video was crucial to the Second Circuit's reasoning because, in the Second Circuit's view, that video did not

"compel the conclusions that Oakley was provided a reasonable opportunity to leave the Garden and that any force used by the guards during that initial encounter was reasonable." <u>Oakley II</u>, 2023 WL 3263618, at *3.  Thus, it is totally untrue, as MSG goes on to argue, that "the Second Circuit . . . revers[ed] summary judgment *based on Oakley's declaration alone*."  Defs.' Brf. 26. For much the same reason, it was false and objectively unreasonable for MSG to state repeatedly in the brief that Oakley has no evidence in his favor apart from his declaration.  <u>See</u> <u>id.</u> at 25 ("there is absolutely no evidence in the record—except Oakley's prior declaration (which has been prove false) . . . .")[8]

Elsewhere, MSG resorts to statements it must know are untrue as a matter of objective, verifiable fact.  MSG claims that Oakley and his counsel have "contrive[d] new factual and legal theories to try to rehabilitate their losing case."  <u>Id.</u> at 26.  In this argument, MSG claims that Oakley has only recently fabricated the allegation that he was pushed in the chest immediately upon standing.  Not so.  In his 2021 declaration Oakley swore unequivocally that he was pushed upon standing.  Oakley Decl. at ¶ 11.  Judge Beth Robinson questioned Randy Mastro extensively about this exact paragraph.  <u>See</u> Second Circuit Tr., Ex. S at 30:12-13 (Hon. Robinson quoting the Oakley Declaration: "The security guard who had initially approached me pushed me away from him.").  Objectively, MSG cannot call this fact a recent fabrication, as it (and its counsel) are aware that this allegation has been a part of the case *for years*.

Finally, MSG filed their motion for sanctions with the "improper purpose" of bolstering their summary judgment motion.  Their brief in support of sanctions repeatedly refers to the discovery record, to the evidence, and even to their own summary judgment brief—a sure sign

---

[8]    Oakley will adduce a long record of additional evidence in opposition to MSG's motion for summary judgment.  The point, here, is to emphasize the scope of the Second Circuit's rulings.

that this is just a rehashing of merits arguments, not a good-faith sanctions motion.  See Defs.'

Brf. at 5 ("But *all* of the evidence in the fully-developed record . . ."); 15 ("Following discovery .

. ."); 21 ("discovery has proven . . ."); 22 ("discovery yielded . . ."); 25 ("there is no evidence in

the record . . ."); 26 ("the discovery record proves . . .").  And, even though they filed the

sanctions motion simultaneously with their summary judgment motion and therefore cannot

know how Oakley will dispute the facts, they claim that "Oakley has *no* evidence to point to in

support of his false allegations."  Id. at 26.

### STANDARD OF LAW

As MSG knows, a sanctions motion under Rule 11 is itself subject to the Rule 11

standard.  Fed. R. Civ. P. 11, 1993 Advisory Comm. Notes (observing that filing of frivolous

Rule 11 motion "is itself subject to the requirements of the rule and can lead to sanctions").  Like

any other motion, a Rule 11 motion may not be "presented for any improper purpose," Fed. R.

Civ. P. 11(b)(1), and must be "warranted by . . . law." Fed. R. Civ. P. 11(b)(2).  To determine

whether a motion is "warranted" under Rule 11, the court must determine whether the statements

in the motion to be sanctioned are "objective[ly] unreasonable[.]"  In re Pennie & Edmonds LLP,

323 F.3d 86, 90 (2d Cir. 2003).

### I.    MSG's Rule 11 Motion is Objectively Unreasonable in Multiple Respects

A motion is "objectively unreasonable" where the movant knowingly relies upon

verifiably and objectively false statements of fact or law.  See, e.g., Bressler v. Liebman, No. 96

Civ. 9310 (LAP), 1997 WL 466553, at *4–8 (S.D.N.Y. Aug. 14, 1997) (prior judgments barred

the claims at issue as a matter of law); Gambello v. Time Warner Commc'ns, Inc., 186 F. Supp.

2d 209, 224-28 (E.D.N.Y. 2002) (no breach of employment contract where, *inter alia*, the

plaintiff admitted he was an at-will employee, admitted that he never asked for a contract, and

signed a paper acknowledging he was an at-will employee); In re Sept. 11th Liab. Ins. Coverage

Cases, 243 F.R.D. 114, 126–27 (S.D.N.Y. 2007) (insurer sanctioned for denying coverage, when policy endorsements clearly and objectively established coverage); Adams v. New York State Educ. Dep't, No. 08 Civ. 5996 (VM) (AJP), 2010 WL 4970011, at *9 (S.D.N.Y. Dec. 8, 2010) (attorneys sanctioned for realleging verbatim previously dismissed claim in amended complaint, without any new factual allegation); Margo v. Weiss, No. 96 Civ. 3842 (MBM), 1998 WL 765185, at *2 (S.D.N.Y. Nov. 3, 1998) (attorneys sanctioned where all four of their clients gave testimony that would put their claims outside of limitations period under controlling law, and then attempted to submit declarations contradicting the testimony); Chien v. Skystar Bio Pharm. Co., 256 F.R.D. 67, 72 (D. Conn. 2009) (attorney sanctioned where, *inter alia*, the complaint claimed security fraud based on omissions of material information from an SEC filing, but the SEC filing did in fact contain the material information); Dakus v. Koninklijke Luchtvaart Maatschappij, N.V., No. 22 Civ. 7962 (RA), 2024 WL 4265646, at *4 (S.D.N.Y. Sept. 23, 2024) (attorney sanctioned where the complaint alleged reliance on material misrepresentations by an airline in selling a ticket, but the plaintiff bought the ticket through a travel agent and never actually read any representations by the airline); Patsy's Brand, Inc. v. I.O.B. Realty, Inc., No. 98 Civ. 10175 (JSM), 2002 WL 59434, at *2–4 (S.D.N.Y. Jan. 16, 2002) (defendants' attorneys sanctioned in trademark suit, where their client twice claimed in affidavits that they possessed the trademark before the plaintiffs, and both times saw their claims easily refuted by objective proof as to the timing of the trademarks); Pfizer, Inc. v. Y2K Shipping & Trading, Inc., No. 00 Civ. 5304 (SJ), 2004 WL 896952, at *11 (E.D.N.Y. Mar. 26, 2004) (attorney sanctioned for using affidavit by doctor who lacked a medical license).

Here, three assertions underpinning MSG's sanctions motions were objectively false, and known to MSG to be objectively false when made.  First, MSG argued that Oakley and Wigdor

harbored an "improper purpose" in maintaining their lawsuit, but cited in support only Randy

Mastro's own statements and a clearly false assertion about Oakley's potential damages.

Second, MSG's legal arguments purposely omitted the Second Circuit's analysis of the Stadium

Video.  Third, MSG called it a "recent fabrication" that Oakley claimed to have been pushed in

the chest immediately upon standing, even though he swore in a declaration almost four-and-a-

half years ago that he was pushed upon standing up.

   A.   **MSG's "Improper Purpose" Argument under Fed. R. Civ. Proc. 11(b)(1) was Based Solely on an Unsworn Hearsay Statement of MSG's Own Attorney, Randy Mastro, and a False Assertion about Oakley's Damages**

        In its sanctions motion, MSG scurrilously and bizarrely accuses Oakley and his counsel

of maintaining false claims so that they could appear in a documentary and gain fame.  But MSG

cited in support of this fever-dream accusation only a hearing transcript where Randy Mastro

stated that "discovery" had revealed facts about the "documentary."  The statement objectively

lacked all evidentiary value—it was double hearsay, Fed. R. Evid. 801(c), 805; it was not based

on personal knowledge, Fed. R. Evid. 602; and it was not only unsworn, but not even subject to

the strictures of Rule 11 because it was an unsigned statement *ore tenus*.  See Fed. R. Civ. P.

Rule 11(a) ("Signature").  Such a resort to personal knowledge by an attorney not only has no

evidentiary value, it is impermissible under the New York Code of Professional Conduct.

Moreover, the statements, both by Mastro in Court and by MSG in their motion papers, are just

false.  Oakley has submitted the "discovery" in question as an exhibit, and the Court can see for

itself that MSG and its counsel have utterly mischaracterized and exaggerated it.  See Ex. T.

        MSG's only additional purported evidence of an "improper purpose" was an oblique

suggestion that Oakley has no damages.  That is plainly untrue.  Oakley's SAC alleges viable—

and potentially substantial—emotional distress and punitive damages.  There was no basis for

MSG to assert that Oakley lacks damages.  And its additional argument that Oakley has no

"specific damages" goes unexplained—while "specific damages" is a legal term of art, it is certainly not an element of the torts of assault and battery, and neither the Plaintiff nor the Defendant has ever claimed that it is.

Accordingly, the two supports for MSG's assertion of an "improper purpose" were both objectively meritless.

### B.    MSG Brazenly Mischaracterized the Second Circuit's Holding

Again and again, MSG states that the Second Circuit narrowed this case to only two issues (1) whether Oakley had a reasonable opportunity to leave; (2) whether Oakley was "pushed" before he fell in the fan videos. MSG then states that the Second Circuit rejected summary judgment on these two prongs based *solely* on Oakley's declaration. Finally, they conclude (3) that Oakley's declaration has been proven wholly untrue, negating both of the purportedly remaining two bases of this case. Putting together their poor gloss of the Second Circuit's holding with their view of the merits of the case, they conclude not only that dismissal in their favor is due but that it was unreasonable for Oakley to continue his case.

To delve into the third step of MSG's reasoning, about the merits of the case, would be to improperly litigate the summary judgment motion, as MSG has done in its own sanctions motion. See supra, Background § III. Put another way, successfully countering a few of MSG's factual contentions would not render MSG's sanctions motion "objectively unreasonable" (even if it does—and will—suffice to defeat their summary judgment motion). What was "objectively unreasonable" about their sanctions motion, instead, was mischaracterizing the Second Circuit's holding and then lying about the basis for that holding. It is not true that the Second Circuit narrowed this case to two issues—whether Oakley had a reasonable opportunity to depart, and whether he was then pushed or "slipped on his own" in the fan videos. Instead, the Second

13

Circuit credited that the Stadium Video might itself depict an unreasonable use of force in the form of a push occurring before the fan videos, and credited, too, that it might depict such an unreasonable use of force *even if* Oakley initially refused to leave, delayed leaving or questioned whether he had to leave.  Indeed, Judge Calabresi instructed Mastro in no uncertain terms that MSG was not entitled to "beat [] up" Oakley, Ex. S at 33:7-10, because he may have at first declined to leave instantaneously.  Moreover, it is untrue that the Second Circuit denied summary judgment based solely on Oakley's Declaration.  It is beyond dispute—and no reasonable attorney could have thought otherwise—that the Stadium Video was also a crucial basis for the denial of summary judgment.

In sum, in a desperate attempt to win dismissal and sanctions, MSG went to an extreme. It reengineered the scope of the case in its own favor, to make it appear as though Oakley's complaint rested on a slender, easily destroyed reed.  In doing so, it advocated objectively unreasonable interpretations of controlling law and misstated the evidence.

### C.    MSG Has Always Been Aware that Oakley Swore that Kori Keaton Pushed Him in the Chest, and to Assert Otherwise was Objectively Unreasonable

Finally, it was objectively unreasonable for MSG to argue that Oakley only recently fabricated the allegation that MSG security guards pushed him in the chest upon first approaching him.  Simply, Oakley swore this fact in a Declaration filed in this case well over four years ago and the parties have been litigating it ever since.  Judge Robinson read to Randy Mastro the paragraph in question, where Oakley says he was pushed, during oral argument

before the Second Circuit, Ex. S at 30:8-17.  There is no reasonable basis for MSG to assert that

this is a newly fabricated claim.

## II.    MSG Filed its Rule 11 Motion for the Improper Purpose of Bolstering a Summary Judgment Motion

One "improper purpose" for bringing a Rule 11 motion is "to emphasize the merits of a

party's position."  Fed. R. Civ. P. 11, 1993 Advisory Comm.  "[A] firmly held conviction of the

correctness of one's position does not authorize collateral attack on an opponent's legal

arguments by resort to Rule 11."  On Time Aviation, Inc. v. Bombardier Cap. Inc., 570 F. Supp.

2d 328, 333–36 (D. Conn. 2008) (sanctioning representations made by the defendant, who had

argued that the plaintiff's summary judgment opposition was without basis and sanctionable),

aff'd Time Aviation, Inc. v. Bombardier Capital, Inc., 354 F. App'x 448, 451 (2d Cir. 2009).  An

improper, duplicative purpose should be found where, for instance, a Rule 11 motion merely

repeats arguments made in a contemporaneous summary judgment filing and fails to "offer[] . . .

evidence or argument as to the 'collateral issue [of] whether the attorney has abused the judicial

process.'"  Lee v. Grand Sichuan E. (N.Y.) Inc., No. 12 Civ. 08652 (SN), 2014 WL 199512, at *3

(S.D.N.Y. Jan. 17, 2014) (quoting Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 396 (1990).).

That is exactly what has occurred here.  MSG has filed a Rule 11 motion to express their

"firmly held conviction of the correctness of [their] position," On Time Aviation, Inc., 570 Supp.

2d at 332, rather than to correct an "abuse[] [of] the judicial process."  Lee, 2014 WL 199512, at

*3.  Indeed, MSG resorts repeatedly to argumentation about the record, about what discovery has

shown, about the evidence and the like.  Those, on their own terms, are arguments on the merits.

And, even though they filed this motion for sanctions concurrently with their motion for

summary judgment, without reading Oakley's opposition or taking stock of how he would

dispute the statements in their 56.1 statement, they now crow that "Oakley has *no* evidence to

point to in support of his false allegations." Defs.' Brf. at 26. The concurrence of MSG's

motions for summary judgment and for sanctions, and its mode of arguing disputed facts without

actually knowing how Oakley would dispute those facts in a 56.1 statement and opposition brief,

together point to the improper purpose of bolstering a summary judgment motion.

## III.    False Statements About Dolan's Inolvement

The motion is also brought on the grounds that MSG has filed a number of false

statements with the Court, including that Dolan "was not" "involved in the decision to remove

Oakley," Dkt. 153 at 1. By signing and filing the Opposition to the Motion to Amend, MSG and

their counsel certified to the Court that the Opposition's "denials of factual contentions" were

"warranted on the evidence" after an "inquiry reasonable under the circumstances." Fed. R. Civ.

P. 11(b)(4); see In re AOL, Inc. Repurchase Offer Litig., No. 12 Civ. 3497 (DLC), 2013 WL

6331802, at *3 (S.D.N.Y. Dec. 5, 2013) ("Rule 11 imposes on attorneys an affirmative duty to

conduct a reasonable inquiry into the facts and the law.") (cleaned up); Safe-Strap Co. v. Koala

Corp., 270 F. Supp. 2d 407, 412 (S.D.N.Y. 2003) ("A party or an attorney violates Rule 11(b)(3)

when he falsely represents to the Court that the allegations and other factual contentions he made

have evidentiary support or, if specifically so identified, are likely to have evidentiary support

after a reasonable opportunity for further investigation or discovery."). However, according to

the NBA documents and Dolan's own deposition, the assertion that Dolan "was not" "involved

in the decision to remove Oakley," and that he did not "authorize" the removal, are utter

misstatements of fact that could not have been the product of a reasonable inquiry.

Accordingly, these actions by MSG, Dolan and their counsel are sanctionable under Rule

11. See, e.g., Bunnell v. Haghighi, 183 F. Supp. 3d 364, 372 (E.D.N.Y. 2016) ("Sanctions are

appropriately awarded pursuant to Rule 11 for [defendant's] failure to correct the misstatement

in his answer. Although [defense counsel] arguably had a reasonable basis at the time the

16

answer was filed to believe that [defendant] entered into a contract to purchase the Alternate Property on August 25, 2012, he refused to withdraw that allegation even after it was shown to be inaccurate."); Jenkins v. Methodist Hosps. of Dallas, Inc., 478 F.3d 255, 263 (5th Cir. 2007) (district court properly levied sanction under Rule 11, where brief misstated contents of supporting affidavit by adding a legally material word); Precision Specialty Metals, Inc. v. United States, 315 F.3d 1346, 1356 (Fed. Cir. 2003) (district court properly levied sanction under Rule 11 for ellipsis in case quotation that omitted seven words).

These representations and the failure to withdraw them also constitute unprofessional conduct. NYRPC 3.3(a)(1) ("[a] lawyer shall not knowingly . . . make a false statement of fact or law to a tribunal or fail to correct a statement of material fact or law previously made to the tribunal by the lawyer"); 4.1 ("In the course of representing a client, a lawyer shall not knowingly make a false statement of fact or law to a third person."); 8.4(c) ("[a] lawyer of law firm shall not . . . engage in conduct involving dishonesty, fraud, deceit or misrepresentation").

## IV.    **Sanctions are Warranted**

A knowing lie to the Court warrants sanctions. "A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4). "The court has available a variety of possible sanctions to impose for violations. . . issuing an admonition, reprimand, or censure; [or] requiring participation in seminars or other educational programs." 1993 Comm. N.; e.g. Corp. Printing Co. v. New York Typographical Union No. 6, 886 F. Supp. 340, 348 (S.D.N.Y. 1995) ("Non-monetary sanctions are an alternative form of sanction available to the court.") (citations omitted); Jenkins, 478 F.3d at 266 (upholding "public-reprimand sanctions"); Precision Specialty Metals, Inc., 315 F.3d at 1358 (affirming "reprimand").

Oakley requests his reasonable attorneys' fees for pursuing sanctions and for defending against MSG's sanctions motion.

Moreover, Mastro has consistently held himself above the rules other lawyers play by. He lightly files statements that are objectively untrue, and which he knows to be untrue. In order to cover his tracks, he then lashes out with strategic sanctions motions against his adversaries. Moreover, he has violated multiple ethical rules, including by making an objectively false statement and failing to withdraw or correct it, and by relying upon his own unsworn statements in court as evidence in a motion. The court should issue a censure to Mastro and order him to take a class in attorney ethics.

## CONCLUSION

For the foregoing reasons, Oakley's motion for sanctions under Fed. R. Civ. P. 11 should

be granted in its entirety.

Dated: July 7, 2025
      New York, New York

**WIGDOR LLP**

By: _____

    Valdi Licul
    Douglas H. Wigdor
    John S. Crain
    Katherine Vask

85 Fifth Avenue
New York, NY 10003
Telephone:  (212) 257-6800
Facsimile:   (212) 257-6845
vlicul@wigdorlaw.com
dwigdor@wigdorlaw.com
jcrain@wigdorlaw.com
kvask@wigdorlaw.com


**PETRILLO KLEIN & BOXER LLP**

Nelson A. Boxer
Marcelo Triana

655 Third Avenue
New York, NY 10017
Telephone: (212) 370-0330
Facsimile: (212) 370-0391
nboxer@pkbllp.com
mtriana@pkbllp.com


*Counsel for Plaintiff*

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that this brief contains 5,667 words and complies with the page count and word count limitations set forth in Local Civil Rule 7.1(c) of the United States District Courts for the Southern and Eastern Districts of New York.

By: _____
        Valdi Licul