**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------------X
CHARLES OAKLEY,                                       :
                                                      :      Civil Action No. 17 Civ. 6903 (RJS)
                          Plaintiff,                  :
                                                      :
            v.                                        :
                                                      :
MSG NETWORKS, INC., *et al.*                          :
                                                      :
                          Defendants.                 :
---------------------------------------------------------------X

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'**
**<u>MOTION FOR RULE 11 SANCTIONS</u>**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................................. ii

PRELIMINARY STATEMENT ..........................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND...........................................................2

I.      The Evidence and Pleadings Underlying MSG's Motion.......................................2

II.     The Second Circuit's Decision on Summary Judgment ........................................6

III.    The Instant Motion.................................................................................................8

LEGAL STANDARD.........................................................................................................11

DISCUSSION .....................................................................................................................12

I.      MSG's Allegations of an "Improper Purpose" Under 11(b)(1) are Easily Disposed as
        Unsupported by Any Evidence or Law................................................................12

II.     MSG's Arguments Depend on a Mischaracterization of the
        Second Circuit's Decision....................................................................................13

III.    The Whole Sanctions Motion is an Improper Attack on the Merits of
        Oakley's Evidence ...............................................................................................16

IV.     Inconsistent Statements Are Not Grounds for Dismissal, Let Alone Sanctions...............18

CONCLUSION....................................................................................................................22

## TABLE OF AUTHORITIES

**<u>Cases</u>**                                                                                                    **<u>Page(s)</u>**

<u>Abdelhamid v. Altria Grp., Inc.</u>,
   515 F. Supp. 2d 384 (S.D.N.Y. 2007)........................................................................ 11

<u>Adams v. New York State Educ. Dep't</u>,
   No. 08 Civ. 5996 (VM) (AJP), 2010 WL 4970011 (S.D.N.Y. Dec. 8, 2010) ......................... 17

<u>Baez v. JetBlue Airways</u>,
   745 F. Supp. 2d 214 (E.D.N.Y. 2010) ...................................................................... 11

<u>Bressler v. Liebman</u>,
   No. 96 Civ. 9310 (LAP), 1997 WL 466553 (S.D.N.Y. Aug. 14, 1997)................................... 17

<u>Browning Debenture Holders' Comm. v. DASA Corp.</u>,
   560 F.2d 1078 (2d Cir.1977)................................................................................ 11

<u>Buggie v. Cutler</u>,
   636 N.Y.S.2d 357 (2d Dep't 1995)........................................................................ 13

<u>Chien v. Skystar Bio Pharm. Co.</u>,
   256 F.R.D. 67 (D. Conn. 2009)............................................................................. 17

<u>Cooter & Gell v. Hartmarx Corp.</u>,
   496 U.S. 384 (1990)................................................................................... 11, 16

<u>Dakus v. Koninklijke Luchtvaart Maatschappij, N.V.</u>,
   No. 22 Civ. 7962 (RA), 2024 WL 4265646 (S.D.N.Y. Sept. 23, 2024)................................ 18

<u>Gambello v. Time Warner Commc'ns, Inc.</u>,
   186 F. Supp. 2d 209 (E.D.N.Y. 2002) ..................................................................... 17

<u>Jin Dong Wang v. LW Rest., Inc.</u>,
   81 F. Supp. 3d 241 (E.D.N.Y. 2015) ................................................................... 5, 21

<u>Lee v. Grand Sichuan E. (N.Y.) Inc.</u>,
   No. 12 Civ. 08652 SN, 2014 WL 199512 (S.D.N.Y. Jan. 17, 2014)................................... 16

<u>Lima v. Napoli</u>,
   No. 19 Civ. 1699 (JMA) (ST), 2023 WL 2429998 (E.D.N.Y. Feb. 10, 2023)........................ 16

<u>Margo v. Weiss</u>,
   No. 96 Civ. 3842 (MBM), 1998 WL 765185 (S.D.N.Y. Nov. 3, 1998)................................. 17

Matheson v. Kitchen,
    515 F. App'x 21 (2d Cir. 2013) ............................................................................. 18

Noonan v. Luther,
    206 N.Y. 105, 99 N.E. 178 (1912) ......................................................................... 21

Oakley v. Dolan,
    980 F.3d 279 (2d Cir. 2020) ............................................................................. 2, 11

Oakley v. Dolan,
    No. 21-2939, 2023 WL 3263618 (2d Cir. May 5, 2023) .................................. passim

Oakley v. MSG Networks, Inc.,
    No. 17 Civ. 6903 (RJS), 2024 WL 4134903 (S.D.N.Y. Sept. 10, 2024) ................. 10

Patsy's Brand, Inc. v. I.O.B. Realty, Inc.,
    No. 98 Civ. 10175 (JSM), 2002 WL 59434 (S.D.N.Y. Jan. 16, 2002) ..................... 18

Pfizer, Inc. v. Y2K Shipping & Trading, Inc.,
    No. 00 Civ. 5304 (SJ), 2004 WL 896952 (E.D.N.Y. Mar. 26, 2004) ....................... 18

Rivera v. Rochester Genesee Reg'l Transp. Auth.,
    743 F.3d 11 (2d Cir.2014) ...................................................................................... 18

Rojas v. Roman Catholic Diocese of Rochester,
    660 F.3d 98 (2d Cir.2011) ................................................................................ 18, 20

Safe-Strap Co. v. Koala Corp.,
    270 F. Supp. 2d 407 (S.D.N.Y. 2003) ..................................................................... 11

Scott v. Harris,
    550 U.S. 372 (2007) ................................................................................................. 6

Sept. 11th Liab. Ins. Coverage Cases,
    243 F.R.D. 114 (S.D.N.Y. 2007) ............................................................................ 17

Somnia, Inc. v. Change Healthcare Tech. Enabled Servs., LLC,
    No. 19 Civ. 08983 (PMH), 2021 WL 639529 (S.D.N.Y. Feb. 16, 2021) ................. 12

Storey v. Cello Holdings, LLC,
    347 F.3d 370 (2d Cir. 2003) ................................................................................... 11

Time Aviation, Inc. v. Bombardier Capital, Inc.,
    570 F. Supp. 2d 328 (2d Cir. 2008) ........................................................................ 16

**Statutes**                                                    **Page(s)**

U.S. Const. amend. I ................................................................................ 13


**Rules**                                                       **Page(s)**

Fed. R. Civ. P. 7 .................................................................................... 15

Fed. R. Civ. P. 11 ............................................................................. passim

Fed. R. Civ. P. 56(f) ............................................................................. 15

Fed. R. Evid. 602 .................................................................................. 12

Fed. R. Evid. 801(c); 805 ...................................................................... 12

Plaintiff Charles Oakley ("Plaintiff" or "Oakley"), by and through his undersigned counsel, respectfully submits this Memorandum of Law in opposition to Defendants MSG Networks, Inc., Madison Square Garden Sports Corp., and Sphere Entertainment Group, LLC's (collectively, "Defendants" or "MSG") motion for Rule 11 sanctions. Dkt. 411 ("Defs.' Brf.").[1]

## PRELIMINARY STATEMENT

This is MSG's third threatened or actual motion for Rule 11 sanctions. Like those others, it is baseless.

The fact is, MSG has always intended to file this motion for sanctions, and they would have done so no matter what emerged from discovery. This is unsurprising, given Mastro has a canned speech he uses when introducing a motion for sanctions. Compare Aug. 23, 2025 Hrg. at 22:16-23:2 ("This is our sanctuary, this is where so many of us grew up, and zealous advocacy is one thing, but to lie to a court . . . . ") with Tantaros v. Fox News Network, LLC, No. 1:17 Civ. 02958 (GBD), Dkt. 118 at 63:9-16 ("I don't like being here to have to do this. This is our home, our temple, where we grew up as lawyers practicing law and practicing law at the U.S. Attorney's Office . . . . But, your Honor, when a member of the bar in our temple disgraces our temple, violates everything we stand for, I have no choice but to come before this Court and say please make it right.").

MSG's motion is not just meritless, it is borderline incoherent, failing to address any of the relevant standards under Rule 11. By their reasoning, if there is any evidence in MSG's favor, Oakley and his attorneys must be sanctioned. The argument is not only legally baseless but risible. MSG asks the Court to sanction Oakley and his counsel based on the disputed statements of paid security guards and contractors, some of them former high-paid executives of

---

[1]    All citations to pages in Defs.' Brf. are made using ECF pagination.

1

MSG with every reason to lie or exaggerate.  MSG points to vague, evasive statements by

bystanders and calls them dispositive evidence against Oakley, requiring sanctions.  MSG abuses

the wording of Second Circuit precedents to pretend that this case is narrower than it really is.

Where it lacks proof, MSG cites a baseless verbal attack by its lawyer, Randy Mastro, and calls it

"evidence" of malfeasance.  Less shameless litigants would fear a judicial reprimand for such

utter misrepresentations, distortions and false citations.  Indeed, for Mastro to have cited himself

for a proposition of evidence violates New York's Rules of Professional Conduct, which provide

that an attorney shall not "assert personal knowledge of facts in issue except when testifying as a

witness."  N.Y. Rules of Prof. Conduct 3.4(d)(2).  But MSG views the federal docket as an

appropriate place to vent spleen and attack Oakley and his attorneys.

      The Court need not waste its time.  MSG's motion for sanctions is a side-show.  The

Court can safely ignore it and devote its attention to MSG's summary judgment motion, the

adjudication of which will show—for the third time—that, as the Second Circuit has said twice

already, this case should be decided by a jury.  See Oakley v. Dolan, 980 F.3d 279, 284 (2d Cir.

2020) ("Oakley I"); Oakley v. Dolan, No. 21-2939, 2023 WL 3263618, at *3 (2d Cir. May 5,

2023) ("Oakley II").

### FACTUAL AND PROCEDURAL BACKGROUND

### I.    The Evidence and Pleadings Underlying MSG's Motion

      Plaintiff filed a Second Amended Complaint, Dkt. 164 (Ex. A, "SAC") in this matter on

April 18, 2024.  The SAC was unambiguously divided into two causes of action, one for "Assault,"

SAC at ¶¶ 95-99, another for "Battery," id. at ¶¶ 99-101.  The first cause of action addresses, in

pertinent part, the moment when MSG's security guards surrounded Oakley and threatened him

with unwanted contact.  See id. ¶¶ 95-99.  Likewise, Oakley testified that the sudden approach of

the guards made him fear an imminent "attack."  Ex. J Oakley Dep. at 336:5-7 ("I see eight people

trying to attack me.").  Oakley also testified that, when the guards asked him to leave, he first

questioned why he was being asked.  See Dkt. 114 ("Oakley Decl.") at ¶ 8 ("I was confused about

why I was being forced to leave the Garden when I had done nothing wrong, and I asked the

security guards why I was being forced to leave.").  Neither purported "admission" stopped the

Second Circuit from ruling that it could not be determined as a matter of law whether MSG had

afforded Oakley "a reasonable opportunity to depart" despite his initial remonstrations.  Oakley II

at *3.

Oakley has sworn that, after the first moment when he was surrounded, he stood, and the

first guard who had approached him—now known to be Kori Keaton—then "pushed" him.  Oakley

Decl. at ¶ 10.[2]  This initial moment, however, has only ever been depicted in one low quality video,

attached to Defendants' Summary Judgment motion as Exhibit 21.  Dkt. 400-21.[3]  Of this moment

and the video depicting it, the Second Circuit has held that "the only video record of Oakley's

initial encounter with the security guards does not compel the conclusions that Oakley was

provided a reasonable opportunity to leave the Garden and that any force used by the guards during

that initial encounter was reasonable."  Oakley II, 2023 WL 3263618, at *3.  No additional video

footage of this moment has emerged in discovery.  And only one of MSG's witnesses was willing

to swear that Oakley was first to make contact in this initial moment.  Jackson Decl., Dkt. 402 at

¶ 11.  All of the other witness declarations are suspiciously vague and evasive about this moment

---

[2]      Therefore, it is decidedly untrue that Oakley has recently invented the allegation that
"Keaton . . . pushed him in the chest when [he] first stood."  Defs.' Brf. at 24 n. 7.
[3]      References to "Ex. __." refer to the Declaration of Valdi Licul in Opposition to MSG's
Motion for Sanctions and in Support of Oakley's Motion for Sanctions and the accompanying
exhibits.  Any references to the Declaration of Damien Marshall, Dkt. 400, and the exhibits
attached thereto are indicated herein as "Defs.' Ex. __."

or say nothing about Oakley's conduct upon standing up.  See Maher Decl., Dkt. 404 at ¶ 10 (stating vaguely that "Oakley stood up, clearly angry and belligerent, and appeared as though he was about to strike members of the MSG security team," without explaining Oakley's actual conduct, behavior, actions, or motions); McEnroe Decl., Dkt. 405 at ¶¶ 7-8 (swearing "I turned to witness what was going on . . . . I saw Oakley standing up, with MSG security guards around him[,]" but saying nothing about who touched whom first); Oberweger Decl., Dkt. 406 at ¶ 7 ("At some point, Mr. Oakley stood up, and the situation turned chaotic. . . . I don't recall the specific physical interactions between Mr. Oakley and the security guards[.]")[4]  Tellingly, the two witnesses, Jackson and Maher, who claim to recall this moment in a negative light towards Oakley, were both paid employees or contractors of MSG on February 8, 2017.[5]  McEnroe and Oberweger, bystanders, were unwilling to say anything about the initial approach.  One objective fact about this moment is that only 21 seconds elapsed from the time Keaton arrived in front of Oakley and when Oakley stood.  Defs.' Ex. 21 at 7:55-8:16.

Two videos do depict the subsequent events.  MSG's motion for sanctions relies on both. One is cited as "ECF 358-12," a citation which is meant to conceal the fact that it is the same video MSG has attached to its summary judgment motion as Exhibit 30 (the "Fan Video 1").  See Defs. Brf. at 22.  The other video is attached to their summary judgment motion as Exhibit 31 ("the "Fan Video 2").  See id.  MSG asserts—and says that it is sanctionable for anyone to believe otherwise— that these videos show Oakley slipping "on his own" while security tries to keep him upright.  See id. at 22-23.  In truth, Fan Video 2 yields little useable information, because most of the relevant action is blocked from view in it.  Fan Video 1, on the other hand, distinctly corroborates Oakley's

---

[4]      Redmond swore that he was not present for this moment.
[5]      MSG's desperate attempt to characterize them as "disinterested third party witnesses," Defs.' Brf. at 5, only goes to show that there is a dispute about witness credibility.

statement about what occurred at this moment on February 8, 2017. First, the video shows Redmond taking a tight grasp of Oakley's left arm. Fan Video 1 at 0:00-0:07. It then shows that Oakley, as he previously swore, "raised [his] hands in a defensive position and moved towards the stairs." <u>Compare</u> Oakley Decl. at ¶ 12 <u>with</u> Fan Video 1 at 0:09-0:13. Next, the video shows, as Oakley previously swore, that Oakley was "push[ed] . . . from behind, which caused [him] to fall and feel pain." <u>Compare</u> Oakley Decl. at ¶ 13 <u>with</u> Fan Video 1 at 0:11-0:14. That is, Redmond, while gripping Oakley's left arm tightly, walks towards Oakley and then jerks forward the arm holding Oakley, immediately after which Oakley falls. Fan Video 1 at 0:11-0:14.

MSG also bases its motion on a purported cover-up about a statement in Oakley's biography. In MGS's description of this supposed cover-up, Oakley admitted that he "slipped" rather than being "pushed." The writer of his biography, however, testified in this matter that he did not understand Oakley to be saying that he slipped on his own. <u>See</u> Ex. L, Isola Dep. at 172:18-25 ("Q: And you are saying what is implied is that he [Oakley] wasn't pushed but slipped; A: No, no, no. I'm saying there is a reason why he had to have slipped. You know, there is a lot of big bodies there, guys are kind of grabbing at each other and it's going to happen.").[6] In other videos cited by MSG as evidence of Oakley's supposed lie, Oakley characterized his fall in much the same way. <u>See</u> Defs.' Ex. 28 at 1:06-1:14 ("Then they started grabbing on me. I said don't grab on me. . . . Then next thing, one thing happened, I slipped down and fell . . . "). Even MSG's witness statements acknowledge that events were concealed in a fog of war. <u>See</u> McEnroe Decl.,

---

[6]    MSG's decision to ignore this statement by Isola, <u>see</u> Defs.' Brf. at 16, is a good example of "cherry-pick[ing] statements out of unclear testimony[.]" <u>Jin Dong Wang v. LW Rest., Inc.</u>, 81 F. Supp. 3d 241, 260 (E.D.N.Y. 2015). MSG cannot win summary judgment, let alone a sanctions motion, with such a selective, tendentious approach.

Dkt. 405 at ¶ 8 ("I saw Oakley standing up, with MSG security guards around him. Then, in a chaotic scene, I saw Oakley slip and fall to the floor.").

From the assault that made Oakley fear an imminent "attack;" to the first push by Keaton; through the fall depicted in the Fan Videos, there are several moments and two causes of action for a jury to consider. Nor did the battery end at this moment. After falling, the security guards hauled Oakley to the exit, pulling him to the ground along the way. Fan Video 1 at 0:58-1:19. The guards then prevented him from getting up. See Defs.' Ex. 29 at 1:10-2:30. Later, a security guard forcefully struck Oakley's arm. See id. at 2:50.

## II.    The Second Circuit's Decision on Summary Judgment

After this Court granted MSG's pre-discovery motion for summary judgment, the Second Circuit reversed and remanded. Because the appeal involved a pre-discovery summary judgment motion based on video evidence, the Second Circuit applied the standard articulated in Scott v. Harris, 550 U.S. 372 (2007), for resolving disputes between video footage and a contradictory sworn statement by the non-movant. Because crediting video footage over the non-movant's sworn statement is highly disfavored, Scott places a high burden on the movant in such situations. The summary judgment movant who asks a court to disregard a non-movant's sworn statement in favor of video evidence must demonstrate that the sworn statement is "blatantly contradicted" by "the video tape." Scott v. Harris, 550 U.S. at 380-81. Accordingly, the Second Circuit used this language when it held that the video evidence did not "'blatantly contradict' Oakley's Rule 56 declaration and d[id] not compel as a matter of law the conclusion that the MSG Defendants' use of force was reasonable." Oakley II, at *2.

The Second Circuit then went on to examine the record as a whole. Its decision emphasized, as discussed above, that there is no definitive—that is, video—proof about what

precisely occurred when Keaton and the rest of MSG security first approach Oakley. Put another way, because Oakley testified that a guard pushed him very soon after first approaching him, and because the one video of that moment[7] is not clear, the Second Circuit concluded that there were "material disputes about whether and when the security guards pushed Oakley" making it impossible to "conclude as a matter of law that no reasonable jury could conclude that the defendants gave Oakley a reasonable opportunity to depart, and that they then used only reasonable force." Oakley II, 2023 WL 3263618, at *3. As the Second Circuit made utterly clear, one of those disputes turned on what occurred during the initial encounter—a moment only depicted in one video. Moreover, in issuing its Order, the Second Circuit had before it Oakley's Declaration, where he swore that he first paused to ask why he was being asked to leave. See Oakley Decl. at ¶ 8. The Court nonetheless concluded that there remained a dispute about whether Oakley had been given "a reasonable opportunity to depart." Oakley II, 2023 WL 3263618, at *3. Clearly, it did not think MSG had the right to use summary force as soon as Oakley asked this question, even if it did agree that MSG had a general right to revoke Oakley's license. See Ex. S, Second Cir. Oral Argument at 33:7-10 ("Hon. Guido Calabresi: Once he refuses to leave, it doesn't mean, if I say I'm not going to leave, it doesn't mean that somebody can immediately beat me up."). And, clearly, the Second Circuit's decision turned not just on Oakley's declaration, but also a viewing of the "Stadium Video," which is MSG's summary judgment Exhibit 21. See Oakley II, 2023 WL 3263618, at *3 ("if Oakley's declaration describes the incident depicted on the Stadium Video… then the record does not, as the district court suggested, reflect as a matter of law that the security guards only resorted to force *after* Oakley physically escalated the situation").

---

[7]    Referred to in the opinion as the "Stadium Video" and attached to Defendants' summary judgment motion as Exhibit 21.

## III.     **The Instant Motion**

MSG's motion winds through 14 pages of vituperation of Oakley and his counsel, Defs.'

Brf. at 5-19, before arriving at a legal discussion, which is comparatively brief, id. at 19-28.  In

this discussion, MSG argues, first, that Oakley's claims are sanctionable as baseless under Fed. R.

Civ. P. 11(b)(3).  In support, they say that Oakley's counsel has continued the case despite knowing

that "the two bases on which the Second Circuit allowed Oakley's case to proceed—that he was

not given a reasonable opportunity to leave and was 'pushed' to the floor—are false."  Defs.' Brf.

at 21.  As an initial matter, it is not true that the Second Circuit narrowed this case to two issues,

as set forth above in the discussion of the Second Circuit's decision.  MSG claims that the proof

of falsity is conveyed by two videos upon which they depend for summary judgment, as well as

the witness statements they have likewise collected in support of summary judgment.  Id. at 23.

MSG then accuses Oakley of arguing the nonsense proposition "that 'slipped' and 'pushed' are

indistinguishable."  Id. at 23.  They cite no evidence that Oakley's counsel has ever argued that

these terms are "indistinguishable."  Oakley's counsel has never so argued.[8]  MSG then states that

it must be false that Oakley had "a reasonable opportunity to depart" MSG, because, they say,

Oakley has admitted that he was asked to leave but did not leave instantaneously.  Id. at 23-24.

But both purported admissions have been in the record since the beginning of this case and have

already been considered by the Second Circuit, as already set forth above.

---

[8]     The terms are not, of course, "indistinguishable."  Counsel has always argued, correctly, that "push" and "slip" are , instead, consistent in this context; someone who is pushed may slip. Compare MERRIAM-WEBSTER, "Slip" ("4 a: to slide out of place or away from a support or one's grasp . . . b : to slide on or down a slippery surface.") with MERRIAM-WEBSTER, "Push" ("1 a: to press against with force in order to drive or impel . . . b: to move or endeavor to move away or ahead by steady pressure without striking").  No amount of reengineering of the English language can change the plain definitions of these words or create a world contrary to physical reality where pushed people never slip and slipping people are never pushed.  That is undoubtedly why MSG has tried to add the words "on his own" to the record.

For good measure, MSG recycles most of the foregoing points into an argument under Fed.

R. Civ. P. 11(b)(2).  See Defs.' Brf. at 25-27.  As MSG admits, this section simply restates "MSG's

motion for summary judgment," id. at 25, and repeats the arguments made in the section

immediately prior, see id. at 26 ("Again,…").  It then accuses Oakley of "ginn[ing] up newfound

'assaults' and 'batteries,'" based on Oakley's allegations, first, that the security guards who first

approached Oakley made him fear imminent unwanted contact (i.e. assaulted him), and, second,

that Keaton pushed Oakley.  Id. at 26-27.  MSG elides that the SAC unambiguously pled the assault

claim, as set forth above and further elides that Oakley also testified to it.  MSG further elides that

there is no evidence about Keaton's push beyond that which the Second Circuit has already held

insufficient to permit summary judgment, and that Oakley has always sworn that Keaton pushed

him when Oakley first stood up—an aspect of the record recognized by the Second Circuit.  They

claim, falsely, that the Second Circuit reversed "summary judgment *based on Oakley's declaration*

alone," even though the Second Circuit based its decision in Oakley II on a viewing of the videos,

for instance the undisputed Ex. 21 attached to MSG's summary judgment motion.  Oakley II, 2023

WL 3263618.  Finally, MSG once more attempts to mischaracterize the Second Circuit's ruling in

Oakley II, claiming that the Second Circuit "impliedly recognized . . . that Oakley's counsel's

interpretation of videos . . . are preposterous."  Defs.' Brf. at 26.  A footnote appears to reference

the Second Circuit's use of the phrase "blatantly contradict," suggesting that the Second Circuit

thought it was a close call and that the weight of the video evidence was on MSG's side.  Id. at 26

fn. 9 ("Oakley fails to appreciate . . . that the *only reason* the Second Circuit reversed this Court's

decision on summary judgment was because Oakley put in a sworn declaration . . . that was not

'blatantly contradicted' by the video.").  But as set forth above, "blatantly contradicts" simply

restates the holding of <u>Scott</u> and was not meant to color the evidence in favor of any party or hint at some secret sub-holding.

Finally, MSG argues under Fed. R. Civ. P. 11(b)(1) that Oakley has brought this case for the improper purpose of harassing James Dolan and MSG.  Defs.' Brf. at 27-28.  They have long bandied accusations of harassment against Oakley, all of which this Court has found meritless.  <u>See</u> <u>Oakley v. MSG Networks, Inc.</u>, No. 17 Civ. 6903 (RJS), 2024 WL 4134903, at *3 (S.D.N.Y. Sept. 10, 2024), <u>reconsideration denied,</u> No. 17 Civ. 6903 (RJS), 2024 WL 4859024 (S.D.N.Y. Nov. 21, 2024) ("In response to Oakley's proposal, the MSG defendants point to the history of this litigation, alluding to concerns of harassment. But there is no indication that the request to depose Dolan is merely designed to harass, particularly since Dolan's involvement that evening is relevant to understanding what the security guards did when removing Oakley from the arena.").  In support of this new baseless accusation, MSG says that Oakley's counsel has been motivated by a desire to appear in a documentary with Oakley.  For proof, they cite a court transcript wherein Mastro claims, baselessly, that he "got the discovery on the documentary, and it's the same false narrative that Doug Wigdor crafted at the last minute to say in the book."  Dkt. 388-3 at 20:4-6.  This, of course, is not evidence.  In any case, the short promotional reel produced by third-party SpringHill contains only one second of Charles Oakley speaking about February 8, 2017—a reporter asks him about potentially going to trial (in the previous criminal matter) and Oakley responds "I love my chances."  Ex. T at 2:40-45.  For further support, MSG alleges that "Oakley has failed to identify *any* specific damages."  Defs.' Brf. at 28.  It is unclear what "specific damages" are, but the argument in any case elides Oakley's allegations of emotional distress and punitive damages.  SAC at 17.

This is MSG's third threatened or filed sanctions motion.  All prior threats and accusations have proven baseless.  First, MSG threatened sanctions based on Plaintiff's original complaint.  This threat was proven baseless by the Second Circuit's opinion in <u>Oakley I</u>, 980 F.3d at 284, reversing this Court's dismissal of the complaint.   Second, MSG threatened sanctions after gathering video evidence.  This threat was likewise proven baseless by the Second Circuit's opinion in <u>Oakley II</u>, 2023 WL 3263618, reversing this Court's grant of summary judgment.

## **LEGAL STANDARD**

"Rule 11 sanctions are appropriate only where there is clear evidence that a plaintiff's claims are brought in bad faith." <u>Baez v. JetBlue Airways</u>, 745 F. Supp. 2d 214, 226 (E.D.N.Y. 2010) (citing <u>Browning Debenture Holders' Comm. v. DASA Corp.</u>, 560 F.2d 1078, 1088 (2d Cir.1977).  This is a standard of "objective unreasonableness[.]"  <u>Storey v. Cello Holdings, LLC</u>, 347 F.3d 370, 387 (2d Cir. 2003) (internal quotation marks and citation omitted).

"In assessing whether Rule 11 sanctions should be imposed, the court does not judge the merits of an action." <u>Safe-Strap Co. v. Koala Corp.</u>, 270 F. Supp. 2d 407, 417 (S.D.N.Y. 2003) (citing <u>Cooter & Gell v. Hartmarx Corp.</u>, 496 U.S. 384, 396 (1990)).  Instead, the court must determine "a collateral issue: whether the attorney has abused the judicial process, and, if so, what sanction would be appropriate." <u>Cooter</u>, 496 U.S. at 396.  In assessing the facts underlying the instant motion, the court "must resolve all doubts in favor of the signer of the pleading[,]" here, Oakley and his counsel.  <u>Abdelhamid v. Altria Grp., Inc.</u>, 515 F. Supp. 2d 384, 392 (S.D.N.Y. 2007) (citation omitted).

## DISCUSSION

I.    **MSG's Allegations of an "Improper Purpose" Under 11(b)(1) are Easily Disposed as Unsupported by Any Evidence or Law**

MSG argues that Oakley and his counsel have brought this case "to Harass MSG and Gin Up Publicity." Defs.' Brf. at 27. This argument is easily disposed of at the outset, because it is not supported by any admissible evidence. As set forth above, the sole evidence submitted is a statement by Randy Mastro to the court during a hearing. The transcript of his statement is, first, double hearsay, for which no hearsay exception has been proposed for either level. See Fed. R. Evid. 801(c); 805. And a statement about what "discovery" shows, without citing any primary document, also necessarily lacks foundation under Fed. R. Evid. 602. This strange citation also serves as strong circumstantial evidence that MSG has failed to find any proof of an "improper purpose." Surely, if MSG had "got the discovery on the documentary" in which, they claim, Wigdor LLP is eager to appear, they would have put that evidence in the record and before the Court. They did not do so, and cannot do so, because no such evidence exists. The video they are referencing is completely innocuous and does not remotely support the conspiracy theory MSG advances (which is why MSG did not attach the video to their motion). See Ex. T. In fact, as set forth above, MSG's citation to Mastro's non-testimonial statement violates New York's Rules of Professional Conduct, which provide that an attorney shall not "assert personal knowledge of facts in issue except when testifying as a witness." N.Y. Rules of Prof. Conduct 3.4(d)(2).

Next, MSG claims that Oakley and his counsel must have an improper purpose because there are no "specific damages" in this case. Defs.' Brf. at 28. This is a confusing use of "specific damages," which is a term of art often used to denote monetary, liquidated damages in certain contract and tort cases. See, e.g., Somnia, Inc. v. Change Healthcare Tech. Enabled

Servs., LLC, No. 19 Civ. 08983 (PMH), 2021 WL 639529, at *5 (S.D.N.Y. Feb. 16, 2021) ("As such, the motion to dismiss the breach of contract claim for failure to plead causation between breaches and specific damages is denied.").  Such damages are not an integral element of a claim for assault and battery—nor does MSG argue that they are.  The thrust of their argument, instead, is that Wigdor LLP and Oakley must be motivated by a desire for publicity, since their case lacks economic damages, and absent economic damages there is nothing in it for Plaintiff and his attorneys except fame.  Defs.' Brf. at 28.  But this just makes no sense.  Put aside even that Wigdor LLP handles case of a much higher profile than this one and has no need to drum up press.  See, e.g., Wigdor LLP, "Statement of Douglas Wigdor in response to the video footage of Mr. Combs," May 17, 2024 https://www.wigdorlaw.com/news-press/statement-of-douglas-wigdor-in-response-to-the-video-footage-of-mr-combs/.  Apart from this pointless and scurrilous debate about Wigdor LLP's desire for notoriety, a debate that Wigdor LLP has no desire to engage in, a potential verdict in this case based on "non-specific" emotional distress and punitive damages stands to be substantial.  See, e.g., Buggie v. Cutler, 636 N.Y.S.2d 357, 359 (2d Dep't 1995) (discussing a jury award of compensatory and punitive damages in an assault and battery case).  In any case, Oakley and his counsel have a constitutional right to petition the courts of the United States for these damages.  See U.S. Const. amend. I. ("Congress shall make no law ... abridging ... the right of the people ... to petition the Government for a redress of grievances.")

In short, MSG's accusations of an "improper purpose" are scurrilous and unsupported by any valid evidence or legal principle.

## II.    MSG's Arguments Depend on a Mischaracterization of the Second Circuit's Decision

In order to support the syllogism that Oakley's alleged admissions merit both dismissal and sanctions, MSG misstates the Second Circuit's holding in Oakley II, 2023 WL 3263618.

MSG argues that "the two bases on which the Second Circuit allowed Oakley's case to proceed" are (1) "that he was not given a reasonable opportunity to leave…" and (2) that Oakley "was 'pushed' to the floor[.]" Defs.' Brf. at 21. This characterization allows them to argue that both bases have been disproven in discovery, and therefore nothing remains of Oakley's claims. But this totally mischaracterizes the Second Circuit's holding, and, since MSG's entire argument depends upon this mischaracterization, its sanctions motion is easily denied. (Indeed, it is itself sanctionable for so brazenly and objectively misstating a controlling holding.).

It is not even necessary to exhaust the entirety of the February 8, 2017 incident to show that MSG is wrong about the Second Circuit's holding. As set forth above, the Second Circuit's holding relied upon the independently sufficient reasoning that Oakley's description of the security guards' initial approach was (as it remains) disputed. Specifically, the Second Circuit pointed out that no video showed clearly what happened in this moment, making it impossible to reject Oakley's sworn statement that he was unreasonably pushed when he stood up from his seat. There is no new video depicting this initial moment. It of course does not matter that MSG has found some witnesses who will testify to the story MSG deems more favorable to its position about the initial approach. Only one of those witnesses was even willing to swear that Oakley was the first to try to make contact with MSG's security guards.

In sum, one sufficient basis for the Second Circuit's holding remains not only intact, but untouched: there is no new video evidence of the first approach, and no reason to discard Oakley's testimony—his consistent, unimpeached testimony—that Keaton pushed him first. See supra, Relevant Factual and Procedural Backgrounds, §§ I-II. The Court can discard this entire motion, and for that matter MSG's summary judgment motion, on that basis alone—and this is

14

without even relying upon the evidence of an initial assault where Oakley felt he was under "attack," and subsequently being dragged to the ground and struck.

Similarly, MSG's motion attempts to wish out of existence Oakley's unambiguously pled assault claim, mischaracterizing it as a recent invention event though it is clearly stated in the SAC. But MSG has filed no motion to dismiss the assault claim nor any motion for summary judgment against it. Instead, MSG asks the Court to hold that the claim never existed—asking for an annulment without hazarding divorce proceedings. Not only that, they now ask the Court to sanction Oakley for stating that the claim does exist. Annulling Oakley's assault claim—discarding it without considering its merits at all—would just be a backdoor to granting a motion for summary judgment that has not actually been filed. The fact remains that MSG filed no motion for summary judgment regarding this clearly pled claim, and Oakley has not been put to his proof on his allegations of assault. For MSG to prevail against the claim of assault at this juncture, the Court would have to *sua sponte* include the assault allegations in MSG's motion for summary judgment or otherwise grant an "annulment" as though the claims never existed. Neither step would be proper. Under Rule 7 Oakley is entitled to a "motion" to the extent MSG "request[s] a court order." Fed. R. Civ. P. 7(b)(1). If dismissal of the separate assault claim is sought, the motion must so state. Fed. R. Civ. P. 7(b)(1)(C). Deriding a claim as "frivolous" is not a "request" for a "court order" under Rule 7. If instead the Court wishes to grant "judgment independent of the motion" it must give "notice and a reasonable time to respond." Fed. R. Civ. P. 56(f).[9]

---

[9]    Oakley's statement that he was "confused" by the initial approach does not preclude a claim for assault. Contra Defs.' Brf. at 16. To argue that a claim for assault requires a negative emotion like fear is a classic 1L-torts type of error. Restatement (Second) of Torts § 24, "What Constitutes Apprehension," comment b (1965) ("The apprehension which is sufficient to make the actor liable may have no relation to fear.").

**III.    The Whole Sanctions Motion is an Improper Attack on the Merits of Oakley's Evidence**

In spite of acknowledging the standard, MSG never addresses the "collateral issue" of whether Oakley and his counsel actually "abused the judicial process." Cooter, 496 U.S. at 396. Nor do they address whether it was "objectively unreasonable" for Oakley to bring and continue this litigation. Instead, they refer the Court back to their summary judgment motion for the proposition that Oakley's claim is without merit. But "a Rule 11 sanctions motion may not properly substitute for a summary judgment motion." Lima v. Napoli, No. 19 Civ. 1699 (JMA) (ST), 2023 WL 2429998, at *12 (E.D.N.Y. Feb. 10, 2023) (citation omitted), report and recommendation adopted, No. 19 Civ. 1699 (JMA) (ST), 2023 WL 2731689 (E.D.N.Y. Mar. 31, 2023); see Fed. R. Civ. P. 11 Advisory Committee's Note (1993 Amendments) ("Rule 11 motions . . . should not be employed . . . to test the sufficiency or efficacy of allegations in the pleadings; other motions are available for those purposes."). "Nor should Rule 11 motions be prepared to emphasize the merits of a party's position." Lee v. Grand Sichuan E. (N.Y.) Inc., No. 12 Civ. 08652 SN, 2014 WL 199512, at *3 (S.D.N.Y. Jan. 17, 2014) (sanctioning a Rule 11 motion); see Time Aviation, Inc. v. Bombardier Capital, Inc., 570 F. Supp. 2d 328, 332 (2d Cir. 2008) ("[A] firmly held conviction of the correctness of one's position does not authorize collateral attack on an opponent's legal arguments by resort to Rule 11. To hold otherwise would be to condone wasteful motion practice as well as invite responsive cross-motions for sanctions.").

Accordingly, the Court should set aside any arguments here that are based on a wave of the hand toward MSG's summary judgment motion. It does not matter, for instance, that MSG repackaged a summary judgment argument in the assertion that "there is absolutely no evidence in the record . . . that would support a jury finding that MSG used excessive force." Defs.' Brf.

at 25.  It does not matter that MSG puffs up arguments about what "[d]iscovery yielded" into an argument in favor of sanctions.  Id. at 22.  Arguments about "record evidence" and "discovery" are necessarily summary judgment arguments.  On their own terms, they fail to suggest whether the standard of "objective unreasonableness" has been met sufficient to prove an "abuse of the judicial process."

MSG's cases cited in support only go to show how far short its proof falls from the sort of objectively dispositive evidence that would have rendered Oakley's counsel's conduct objectively unreasonable.  Bressler v. Liebman, No. 96 Civ. 9310 (LAP), 1997 WL 466553, at *4–8 (S.D.N.Y. Aug. 14, 1997) (prior judgments barred the claims at issue as a matter of law); Gambello v. Time Warner Commc'ns, Inc., 186 F. Supp. 2d 209, 224 (E.D.N.Y. 2002) (no breach of employment contract where, *inter alia*, the plaintiff admitted he was an at-will employee, admitted that he never asked for a contract, and signed a paper acknowledging he was an at-will employee); In re Sept. 11th Liab. Ins. Coverage Cases, 243 F.R.D. 114, 126–27 (S.D.N.Y. 2007) (insurer sanctioned for denying coverage, when policy endorsements clearly and objectively established coverage); Adams v. New York State Educ. Dep't, No. 08 Civ. 5996 (VM) (AJP), 2010 WL 4970011, at *9 (S.D.N.Y. Dec. 8, 2010) (attorneys sanctioned for realleging verbatim previously dismissed claim in amended complaint, without any new factual allegation); Margo v. Weiss, No. 96 Civ. 3842 (MBM), 1998 WL 765185, at *2 (S.D.N.Y. Nov. 3, 1998) (attorneys sanctioned where all four of their clients gave testimony that would put their claims outside of limitations period under controlling law, and then attempted to submit declarations contradicting the testimony); Chien v. Skystar Bio Pharm. Co., 256 F.R.D. 67, 72 (D. Conn. 2009) (attorney sanctioned where, *inter alia*, the complaint claimed security fraud based on omissions of material information from an SEC filing, but the SEC filing did in fact

contain the material information); <u>Dakus v. Koninklijke Luchtvaart Maatschappij, N.V.</u>, No. 22 Civ. 7962 (RA), 2024 WL 4265646, at *4 (S.D.N.Y. Sept. 23, 2024) (attorney sanctioned where the complaint alleged reliance on material misrepresentations by an airline in selling a ticket, but the plaintiff bought the ticket through a travel agent and never actually read any representations by the airline); <u>Patsy's Brand, Inc. v. I.O.B. Realty, Inc.</u>, No. 98 Civ. 10175 (JSM), 2002 WL 59434, at *2–4 (S.D.N.Y. Jan. 16, 2002) (defendants' attorneys sanctioned in trademark suit, where their client twice claimed in affidavits that they possessed the trademark before the plaintiffs, and both times saw their claims easily refuted by objective proof as to the timing of the trademarks); <u>Pfizer, Inc. v. Y2K Shipping & Trading, Inc.</u>, No. 00 Civ. 5304 (SJ), 2004 WL 896952, at *11 (E.D.N.Y. Mar. 26, 2004) (attorney sanctioned for using affidavit by doctor who lacked a medical license).

## IV.    <u>Inconsistent Statements Are Not Grounds for Dismissal, Let Alone Sanctions</u>

Much of MSG's brief depends upon a narrative—false and exaggerated, in any case—that Oakley has changed his story to such an extent that it can no longer be credited and his whole case must now be dismissed with sanctions. Even accepting *arguendo* that this is true at all (it is not), a changed story goes to credibility and cannot serve as a basis for summary judgment except under the rarest circumstances. <u>See Matheson v. Kitchen</u>, 515 F. App'x 21, 24 (2d Cir. 2013) (reversing and remanding a summary judgment dismissal predicated on rejecting the non-movant's sworn statement). But generally, district courts should not "engage in searching, skeptical analyses of parties' testimony in opposition to summary judgment." <u>Rivera v. Rochester Genesee Reg'l Transp. Auth.</u>, 743 F.3d 11, 20 (2d Cir.2014) (quoting <u>Rojas v. Roman Catholic Diocese of Rochester</u>, 660 F.3d 98, 106 (2d Cir.2011)).

Assessed coolly, with all inferences drawn in favor of the non-movant and under the additional strictures of Rule 11, MSG has not found anything resembling the smoking gun of misconduct and lying that they claim. This entire debate turns on whether Oakley admitted to slipping, and whether that means in turn that it was his own fault entirely that he fell, exonerating MSG and rendering Oakley's claims not only meritless but sanctionable. Oakley's position, instead, is that he was pushed, causing him to fall. True, he has occasionally used the word "slip" to describe what occurred, but in doing so he has always described a broader context where he was being jostled and manhandled. See Defs.' Ex. 28 at 1:06 (saying guards grabbed him against his will and that he then fell). The biographer who recorded that he "slipped" testified under oath that this was his exact understanding from his interviews with Oakley, that the aggressive grabbing led to the fall. And MSG's own witness statements acknowledge ambiguity around the chain of events leading to that fall. For instance, McEnroe and Oberweger—the only two eyewitnesses who were not paid MSG employees—submitted statements that are purposely vague and evasive about both the moment of the guards' initial approach and the supposed slip. Given this ambiguous testimony, the parties will have to dispute who is telling the truth. In this dispute, MSG will be free to argue that the manuscript change undercuts Oakley's credibility, but it is not the Court's province to assess credibility at this juncture.

In any case, as set forth above, the new videos produced by MSG in discovery (which have always, in fact, been publicly available), do not contradict Oakley's account of being pushed. If anything, they strongly corroborate it. It would be wildly erroneous to treat a variation in the vague and consistent words "push" and "slip" as dispositive, let alone sanctionable, given these videos. Even if it were, the moment of Oakley's first fall does not

19

encompass the entirety of the long assault and battery Oakley suffered on February 8, 2017. To say otherwise is simply to mischaracterize the Second Circuit's holding.

Put another way, MSG asks the Court to draw a long chain of inferences and resolve a series of disputes, all in its favor. The length of this chain of inferences alone makes it implausible to think that Oakley's claims are objectively unreasonable. To dismiss even the battery claim on the basis of MSG's motion, the Court would need to draw all of the following inferences in MSG's favor: (1) In admitting to "slipping," Oakley effectively admitted that he was not pushed; (2) if MSG did not "push" Oakley, it must not have had anything at all to do with Oakley's fall in the fan videos—even though MSG's security guards were visibly manhandling Oakley at this exact moment in time—and MSG is therefore not liable for battery for the single moment that Oakley was talking about; (corollary: the important new video of this single moment, MSG's summary judgment Fan Video 1, is subject to one interpretation, and that interpretation is exactly the one MSG has proposed); (3) since not liable for a battery at this discrete moment in time, there was no other battery at any other time during the February 8, 2017 incident, in spite of the Second Circuit saying the opposite, and despite allegations that Oakley was also subsequently dragged to the ground and struck; and (4) despite winning two appeals on almost the same exact evidence as is now in the record, Oakley and his counsel always knew this chain of inferences to be true in its entirety. It simply makes no sense to dismiss (let alone sanction) based on these kinds of facts, which require a factfinder to resolve conflicting interpretations and decide whether to believe the inferences urged by MSG. In any case, the debate is easily nipped in the bud if the Court declines, as it must, to "engage in searching, skeptical analyses" of the testimony, Rojas, 660 F.3d at 106, and instead acknowledges that the statements of MSG's witnesses about the "slip" are "ambiguous, vague, or

capable of multiple explanations." <u>Jin Dong Wang v. LW Rest., Inc.</u>, 81 F. Supp. 3d 241, 260 (E.D.N.Y. 2015).

MSG claims that there is an additional inconsistency, in Oakley's statement on the Rich Eisen show, where Oakley recalled saying "I'm not leaving." Defs.' Brf. at 14 (quoting Ex. 28 at 0:48-1:06). But this statement does not contradict Oakley's sworn statement, nor the allegations in his SAC at ¶¶ 40-45, that he asked for an explanation before complying. Nor does it change the law, which does not license unlimited and violent force *instantly* upon any refusal to leave. <u>Noonan v. Luther</u>, 206 N.Y. 105, 108, 99 N.E. 178, 179 (1912) ("Defendant had the right to withdraw the license to the plaintiff to remain on his premises; and if, *after having afforded her a reasonable opportunity to leave* . . . she refused to go, he had the right to use reasonable force to eject her.") (emphasis added); <u>See</u> Ex. S, Second Cir. Oral Argument at 33:7-10 ("Hon. Guido Calabresi: Once he refuses to leave, it doesn't mean, if I say I'm not going to leave, it doesn't mean that somebody can immediately beat me up."). Even an individual initially who was refusing to comply, was slow to comply, or was questioning why they should comply, would remain entitled to "a reasonable opportunity to depart." Indeed, the window of a "reasonable opportunity" should be greater for a licensee being kicked out under confusing or unexplained circumstances, since a person in that position is naturally expected to question what is going on. A juror could certainly conclude that the 21 seconds afforded Oakley was unreasonably short.

## CONCLUSION

For the foregoing reasons, MSG's motion for sanctions under Fed. R. Civ. P. 11 should

be denied in its entirety.

Dated: July 7, 2025                                    **WIGDOR LLP**
      New York, New York

                                              By:                           
                                                  Valdi Licul
                                                  Douglas H. Wigdor
     John S. Crain
     Katherine Vask

     85 Fifth Avenue
     New York, NY 10003
     Telephone:  (212) 257-6800
     Facsimile:   (212) 257-6845
     vlicul@wigdorlaw.com
     dwigdor@wigdorlaw.com
     jcrain@wigdorlaw.com
     kvask@wigdorlaw.com


     **PETRILLO KLEIN & BOXER LLP**

     Nelson A. Boxer
     Marcelo Triana

     655 Third Avenue
     New York, NY 10017
     Telephone: (212) 370-0330
     Facsimile: (212) 370-0391
     nboxer@pkbllp.com
     mtriana@pkbllp.com


     *Counsel for Plaintiff*

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that this brief contains 7,147 words and complies with the page count and word count limitations set forth in Local Civil Rule 7.1(c) of the United States District Courts for the Southern and Eastern Districts of New York.

By: _____
Valdi Licul