UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHARLES OAKLEY, <br><br>            Plaintiff, <br><br> -v- <br><br> MSG NETWORKS, INC., *et al.*, <br><br>            Defendants. | No. 17-cv-6903 (RJS) <br> <u>MEMORANDUM</u> <br> <u>& ORDER</u> |

<u>RICHARD J. SULLIVAN</u>, Circuit Judge:

  Before the Court is plaintiff Charles Oakley's motion for sanctions against defendants MSG Networks, Inc., Madison Square Garden Sports Corp., and Sphere Entertainment Group, LLC (collectively, "MSG") related to MSG's alleged spoliation of corporate emails, two corporate cellphones of MSG security personnel, and a binder containing material used to prepare MSG Chief Executive Officer James Dolan for a televised interview. (*See* Doc. No. 363.) For the reasons set forth below, Oakley's motion for spoliation sanctions is DENIED.

**I. Background**

  This case stems from an incident on February 8, 2017 at Madison Square Garden in which Oakley was forcibly removed from a New York Knicks ("Knicks") basketball game. The Court assumes the parties' familiarity with the factual background and procedural history of this case as summarized in the Court's July 23, 2025 opinion and order. (*See* Doc. No. 439 at 2.)

  In October 2024, MSG began pursuing spoliation sanctions against Oakley related to his loss of all text messages that he sent or received before February 2022 and his failure to take any steps to preserve or backup those text messages. (*See* Doc. No. 194.) After holding a pre-motion

conference and evidentiary hearing, the Court set a briefing schedule for MSG's spoliation motion. (*See* Dec. 19, 2024 Min. Entry.)

On January 8, 2025 – the day before MSG was scheduled to submit its spoliation motion – Oakley submitted a letter to the Court requesting a pre-motion conference regarding his intention to file his own motion for spoliation sanctions against MSG. (*See* Doc. No. 252.) According to Oakley, in 2020 or 2021, MSG lost the corporate emails of security personnel who participated in his removal. (*See id.* at 1–2.) Oakley also asserted that MSG failed to preserve the corporate cellphone of Frank Benedetto, who formerly served as Vice President of Security for MSG. (*See id.* at 1.) On January 13, 2025, MSG filed a response letter, arguing that Oakley's request for a pre-motion conference was "premature, unripe, and inaccurate," in large part because Oakley had not yet reviewed document discovery or completed the deposition of a witness whom MSG designated under Federal Rule of Civil Procedure 30(b)(6) to testify regarding this potential spoliation. (Doc. No. 260 at 1.) MSG further contended that it "implemented technical legal holds through Microsoft's compliance system, Microsoft Purview, to preserve potentially relevant evidence" but through no fault of its own, "a technological glitch occurred in Microsoft Purview resulting in certain email files not being retained." (*Id.*) Finally, MSG asserted that Benedetto's phone was returned to MSG before civil litigation was contemplated and thus MSG did not have an obligation to preserve that device. (*See id.* at 3 n.4.) The Court agreed with MSG that Oakley's request for a pre-motion conference was, "at best, premature" and thus denied his request without prejudice to renewal following completion of the Rule 30(b)(6) deposition and document discovery. (Doc. No. 263 at 2.)

On January 27, 2025, Oakley renewed his request to proceed with his contemplated spoliation motion even though MSG's Rule 30(b)(6) witness "ha[d] not completed his

investigation" and was still awaiting input from Microsoft technical support.[1] (Doc. No. 285 at 1.) The Court again concluded that Oakley's request for a pre-motion conference was premature because, as Oakley recognized, "he [would] not be in a position to determine whether to proceed with a motion for spoliation sanctions [concerning the lost emails] until he receive[d] and review[ed] information from Microsoft concerning MSG's emails." (Doc. No. 302 at 1.)

On February 13, 2025, Oakley filed yet another letter, arguing that spoliation sanctions were warranted because MSG had not produced any preservation notices that were sent to MSG employees and had not produced any proof that it implemented litigation holds on corporate emails. (*See* Doc. No. 327 at 1.) Oakley also alleged – for the first time – that MSG had failed to preserve a binder that Dolan brought to a televised interview on February 10, 2017, at which he discussed Oakley's ejection. (*See id.*) The Court then set a briefing schedule (*see* Doc. No. 339 at 196–97), and on April 18, 2025, Oakley filed a motion for spoliation sanctions in which he argued that MSG either intentionally destroyed or failed to take reasonable steps to preserve (1) corporate emails; (2) the corporate cellphones of Benedetto and Kori Keaton, who was MSG's Director of Executive Protection; and (3) Dolan's binder (*see generally* Doc. No. 368). Oakley contended that MSG's explanation of a technical glitch was unconvincing and that MSG's nefarious intent could be inferred from MSG's selective preservation of emails. (*See id.* at 18–19.) As a remedy, Oakley requested that the Court instruct the jury at any future trial that it may or must presume that "Dolan ordered the use of unreasonable force on Oakley" and "that MSG [officials] fabricated their story about Oakley cursing or misbehaving." (*Id.* at 25.) In the alternative, Oakley requested permission to present evidence regarding MSG's spoliation at any

---

[1] Oakley also asserted, for the first time, that MSG had failed to preserve the corporate cellphone of Kori Keaton, who served as the Director of Executive Protection at MSG at the time of Oakley's removal. (*See* Doc. No. 285 at 1.)

future trial and sought an award of his attorneys' fees and costs in connection with this motion (*see id.*) – the very same remedies that MSG had requested in connection with its earlier-filed spoliation motion against Oakley (*see* Doc. No. 254 at 25).

In opposing Oakley's motion, MSG asserted that it took reasonable steps to preserve corporate emails by periodically sending legal hold notices to all relevant custodians and by implementing a technical hold through Microsoft's software, which was supposed to preserve all relevant emails. (*See* Doc. No. 387 at 13–14.) MSG explained that, through no fault of its own and as a result of a technical malfunction in Microsoft's software, certain corporate emails were lost. (*See id.* at 15–16.) MSG also argued that the Court should deny Oakley's spoliation motion with respect to Keaton's and Benedetto's cellphones because the Court had repeatedly ruled that MSG is not obligated to produce text messages from corporate cellphones. (*See id.* at 23.) MSG further contended that Oakley had not been prejudiced by the loss of these phones because Keaton and Benedetto both submitted sworn declarations in which they averred that they did not use their cellphones to text about Oakley's removal from MSG. (*See id.* at 23–24.) Finally, MSG argued that the contents of Dolan's binder were produced to Oakley. (*See id.* at 24–25.) Oakley's spoliation motion was fully briefed on May 16, 2025.[2]

## II.    Legal Standard

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *West v.*

---

[2] On May 20, 2025, MSG filed a motion for leave to file a sur-reply brief to respond to arguments raised for the first time in Oakley's reply brief. (*See* Doc. No. 394.) Because the Court "will not consider arguments raised for the first time in a reply brief," *Est. of Ungar v. Palestinian Auth.*, 451 F. Supp. 2d 607, 611 (S.D.N.Y. 2006), MSG's motion for leave to file a sur-reply is DENIED.

*Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999).  Under Federal Rule of Civil Procedure 37(e),

> If electronically stored information ["ESI"] that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
>> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>>
>> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>>
>>> (A) presume that the lost information was unfavorable to the party;
>>>
>>> (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
>>>
>>> (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e).

Under this rule, a court must engage in a three-part inquiry.  *First*, the court must "decide if the rule applies at all – that is, if a party failed to take reasonable steps to preserve [ESI] that should have been preserved in the anticipation or conduct of litigation."  *Charlestown Cap. Advisors, LLC v. Acero Junction, Inc.*, 337 F.R.D. 47, 59 (S.D.N.Y. 2020) (internal quotation marks omitted).  *Second*, the court must determine whether "there has been prejudice to another party from loss of the information, in which case the [c]ourt may order measures no greater than necessary to cure the prejudice."  *Id.* (internal quotation marks omitted).  *Third*, the court must consider – "regardless of prejudice to any other party" – "whether the destroying party acted with the intent to deprive another party of the information's use in the litigation, in which event a court may consider whether to impose the most severe" sanctions of an adverse-inference instruction or the entry of a default judgment.  *Id.* (internal quotation marks omitted).  The party seeking spoliation sanctions has the burden of establishing each of these elements by a preponderance of

5

the evidence. *See Ottoson v. SMBC Leasing & Fin., Inc.*, 268 F. Supp. 3d 570, 580 (S.D.N.Y. 2017).

While sanctions for the spoliation of ESI are governed by Rule 37(e), sanctions for the spoliation of physical evidence are governed by the inherent authority of the Court to control litigation. *See West*, 167 F.3d at 779. The Second Circuit has explained that:

> a party seeking an adverse inference instruction based on the destruction of [physical] evidence must establish (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.

*Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002) (internal quotation marks omitted). A party seeking spoliation sanctions based on the Court's inherent authority "must show the requisite elements by a preponderance of the evidence." *Hoffer v. Tellone*, 128 F.4th 433, 439 (2d Cir. 2025).

### III. Discussion

#### A. MSG Corporate Emails

Oakley first argues that MSG engaged in spoliation with respect to the loss of corporate emails from eleven current and former MSG employees (the "Custodians"). (*See* Doc. No. 368 at 5–6.) As a threshold matter, Rule 37(e) requires a party seeking spoliation sanctions to establish that the opposing "party failed to take reasonable steps to preserve" ESI. Fed. R. Civ. P. 37(e). Courts have explained that "[o]nce a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a litigation hold to ensure the preservation of relevant documents." *Lokai Holdings LLC v. Twin Tiger USA LLC*, No. 15-cv-9363 (ALC) (DF), 2018 WL 1512055, at *11 (S.D.N.Y. Mar. 12, 2018) (internal quotation marks omitted). But Rule 37(e) "does not call for perfection." Fed. R. Civ. P. 37 advisory committee's

6

note to 2015 amendment. In fact, the rule "is inapplicable when the loss of information occurs despite the party's reasonable steps to preserve," such as when the ESI is "destroyed by events outside the party's control." *Id.*

The Court concludes that MSG took reasonable steps to preserve its corporate emails. For starters, MSG sent legal hold notices to each of the Custodians, instructing them to preserve all ESI related to Oakley's removal, including emails. The first of these notices was sent on February 17, 2017 – just nine days after Oakley's removal – and MSG sent recurring messages to the Custodians to remind them of their preservation obligations. (*See* Doc. No. 388-1 at 49–51; Doc. No. 367-8 at 2–5.) Another legal notice was sent on October 10, 2017 after Oakley filed the instant lawsuit. (*See* Doc. No. 367-8 at 6–10.) In addition, MSG implemented a technical legal hold through Microsoft's Purview software, which was designed to "ensure that [emails are] retained no matter what the user does" and "bypass or override the retention settings of the organization" so that emails are not automatically deleted. (Doc. No. 388-1 at 35.) As courts in this District have recognized, automatically archiving emails using a third-party vendor constitutes a reasonable step to preserve ESI. *See In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 341 F.R.D. 474, 534 (S.D.N.Y. 2022).

Despite these efforts, MSG discovered in the summer of 2024 that the Custodians' emails were missing. (*See* Doc. No. 387 at 5–6.) In response, MSG undertook "enormous efforts" and "conducted an exhaustive investigation to try to locate" the lost emails. (Doc. No. 388-1 at 39.) MSG ran multiple searches to determine if the lost emails could be found elsewhere in its systems or in another user's mailbox. (*See id.* at 40.) MSG also "located physical servers" and "prior endpoints, computers, [and] phones[] that would have potentially been issued to" the Custodians to determine if the emails still existed on those devices. (*Id.*) When these efforts were

7

unsuccessful, MSG retained Joseph Pochron – Managing Director for Digital Investigations and Cyber Risk at the expert forensics firm Nardello & Co. – to determine whether any of the lost emails could be recovered and then to investigate how and why the emails were lost. (*See id.* at 5–6.) Pochron and his team ultimately could not locate the missing emails but concluded that "MSG experienced a systemic technical glitch or error that occurred in their Microsoft . . . environment that impacted a legal hold in this case, amongst others." (Doc. No. 364-6 at 3; *see also* Doc No. 388-1 at 30 ("[A] technical glitch occurred beyond a shadow of a doubt."); *id.* at 37 ("[I]t is very clearly an error within the Microsoft . . . environment."); *id.* at 38 ("MSG experienced a very serious issue in their Microsoft environment.").)

Oakley challenges MSG's explanation of a technical glitch, but none of his arguments is persuasive. *First*, Oakley contends that MSG engaged in selective preservation of emails, noting skeptically that the malfunction just "happened to [affect] everyone involved in [his] physical removal." (Doc. No. 368 at 18.) But this argument ignores the fact that the software malfunction affected seventy-nine matters other than the Oakley case, thus undermining any inference that MSG selectively lost emails relevant to this dispute. (*See* Doc. No. 364-6 at 3.) What's more, throughout this litigation, Oakley has maintained that Dolan was a "key participant in Oakley's removal" and "a crucial witness" (Doc. No. 178-1 at 2), yet Dolan's emails were not lost as part of the technical glitch, again undermining Oakley's claim that MSG engaged in selective preservation.

*Second*, Oakley makes much of the fact that the email inboxes for four former MSG employees are completely missing. (*See* Doc. No. 368 at 8.) In contrast, for the other Custodians, "there were still calendar and meeting invites, which was consistent with MSG's deletion rules being mistakenly applied." (*Id.*) From this distinction, Oakley suggests that those four inboxes

"were deliberately deleted." (*Id.*)  But certain inboxes were also missing for other matters, which supports MSG's explanation that this issue was part of a broader Microsoft technical problem. (*See* Doc. No. 364-6 at 7, 12.)  Moreover, Pochron testified that there was "no evidence that . . . an individual went in and actively deleted those" four email inboxes.  (*Id.* at 12 ("I haven't seen any facts that would support [Oakley's] theory.").)  Ultimately, it is Oakley who must prove that MSG failed to take reasonable steps to preserve the relevant emails, yet he has presented no evidence that establishes by a preponderance that MSG deleted these four email inboxes.  *See Ottoson*, 268 F. Supp. 3d at 580.

*Third*, Oakley posits that an MSG employee may have made a "mass, simultaneous change" to the email files using a computer program called PowerShell.  (Doc. No. 368 at 8.) Oakley repeatedly questioned Pochron regarding this theory, yet Pochron remained steadfast that it is not "possible to do what we saw in [MSG's] system via PowerShell."  (Doc. No. 364-6 at 5.) Pochron elaborated that there is not "a PowerShell command that exists that would simultaneously do what [he] saw across" MSG's system.  (*Id.* at 3; *see also* Doc. No. 388-1 at 15 ("I don't believe that's feasible even via PowerShell.").)  Though Oakley casts aspersions on Pochron's assessment, he has not presented any expert testimony or evidence that suggests the emails could have been deleted in mass using PowerShell.  Instead, he relies solely on speculation and argumentation by counsel.  Once again, that is not enough for Oakley to carry his burden of proof.

Accordingly, because the Court credits MSG's explanation of a technical malfunction in its Microsoft Purview system, spoliation sanctions are clearly not warranted here.  *See* Fed. R. Civ. P. 37 advisory committee's note to 2015 amendment (explaining that spoliation sanctions are unavailable when ESI is destroyed "despite the party's reasonable steps to preserve . . . by events outside the party's control," such as when a "'cloud service' . . . fail[s]").

But even if Oakley could establish that MSG did not take reasonable steps to preserve all relevant corporate emails, his motion would still fail for the independent reason that he has not established that he was prejudiced by the loss of these emails. To establish prejudice, the moving party must "provide[] evidence that plausibly suggests that the spoliated ESI could support [his] case." *Charlestown*, 337 F.R.D. at 66 (internal quotation marks omitted). Here, each of the Custodians submitted sworn declarations that they "d[id] not recall sending or receiving any emails . . . from [their] MSG email account[s] about what was said to Mr. Oakley at the Knicks game on February 8, 2017 or any physical force used to remove Mr. Oakley from the Arena at Madison Square Garden that night."[3] (Doc. No. 388-2 at 2.) In stark contrast to Oakley's testimony during the hearing on MSG's motion for spoliation sanctions (*see* Doc. No. 255-1 at 48–49, 54–58, 62–68), Oakley has identified no evidence that contradicts the declarations of the Custodians.

For all these reasons, Oakley's motion for spoliation sanctions related to the loss of the MSG corporate emails is DENIED.

### B. MSG Corporate Cellphones

Oakley next seeks sanctions related to MSG's failure to preserve the corporate cellphones of security executives Keaton and Benedetto. But a party may only seek spoliation sanctions under Rule 37(e) for ESI that "should have been preserved in the anticipation or conduct of litigation." Fed. R. Civ. P. 37(e). As the Court has repeatedly ruled, "MSG's document-production obligations extend *only* to its corporate emails and do *not* include corporate text messages." (Doc. No. 302 at 2.) That is because Oakley had only requested that MSG produce corporate *emails* in his original motion to compel document production from MSG. (*See* Doc. No. 228 at 6.) As the Court noted,

---

[3] While two Custodians recalled sending emails related to Oakley's removal, those specific emails were preserved and produced to Oakley and thus are not at issue in this spoliation motion. (*See* Doc. No. 388-2 at 4, 6; Doc. No. 364-14; Doc. No. 364-15.)

10

"[a]llowing Oakley to engage in piecemeal discovery requests would run contrary to" the purposes of the Federal Rules of Civil Procedure. (*Id.*) Accordingly, "[t]he law of the case doctrine forecloses relitigation of issues expressly or impliedly decided by the [C]ourt." *Vista Food Exch., Inc. v. Lawson Foods, LLC*, No. 17-cv-7454 (ALC) (SN), 2020 WL 7390224, at *2 (S.D.N.Y. Oct. 26, 2020) (alterations accepted and internal quotation marks omitted). In other words, Oakley "may not surreptitiously repackage his previously unsuccessful arguments [related to corporate text messages] under the guise of a motion for spoliation sanctions." (Doc. No. 302 at 3.)

But even if MSG had an obligation to preserve Keaton's and Benedetto's corporate cellphones, Oakley's motion for spoliation sanctions would still fail because he cannot establish that he was prejudiced by the loss of this ESI. Keaton submitted a sworn declaration in which he averred that he "do[es] not recall sending or receiving any text messages with any MSG personnel about what happened with Mr. Oakley at the Knicks games on February 8, 2017, or Mr. Oakley's ejection from the Garden generally." (Doc. No. 388-2 at 15.) Keaton also swore that he "do[es] not recall sending or receiving any text messages with anyone about what was said to Mr. Oakley at the Knicks game on February 8, 2017, or any physical force used to remove Mr. Oakley from the game." (*Id.*) And while Oakley claims that the video footage of his removal "shows Keaton communicating on his work phone after Oakley took his seat" (Doc. No. 368 at 2), there is nothing in the record to establish that Keaton was communicating on this phone rather than, for example, searching the internet or that any such communication pertained to this case (*see* Doc. No. 104-2b).

Similarly, Benedetto submitted a sworn declaration in which he stated that he "do[es] not recall sending or receiving any text messages at any point from February 8, 2017 through February 9, 2017" – when his phone was returned to MSG – "about what was said to Mr. Oakley at the

11

Knicks game on February 8, 2017 or any physical force used to remove Mr. Oakley from MSG that night." (Doc. No. 388-2 at 4–5; *see also* Doc. No. 367-7 at 3–4.) Accordingly, Oakley has not offered any evidence "that plausibly suggests that the spoliated ESI could support [his] case" and thus has not established that he was prejudiced by the loss of Keaton's and Benedetto's corporate cellphones. *Charlestown*, 337 F.R.D. at 66 (internal quotation marks omitted).

To the extent Oakley argues that MSG destroyed these phones with the intent to deprive him of their use in this litigation, his motion still fails because he has not established that "evidence once existed that could fairly be supposed to have been material to the proof . . . of a claim at issue in the case." *Id.* at 67 (internal quotation marks omitted).

As a result, Oakley's motion for spoliation sanctions related to the loss of Keaton's and Benedetto's corporate cellphones is DENIED.

### C. Dolan's Binder

Oakley finally argues that MSG should be sanctioned for the spoliation of a binder that Dolan used during a televised interview on February 10, 2017. As noted above, a party seeking sanctions related to the spoliation of physical evidence must establish, among other things, that evidence was destroyed and that such evidence "was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Residential Funding Corp.*, 306 F.3d at 107 (internal quotation marks omitted). This Oakley has failed to do. Indeed, MSG has repeatedly made clear that "all documents that were in the binder relating to [Oakley's removal] were produced individually, just not in binder format," and has identified those documents by their Bates numbers. (Doc. No. 388-15 at 5; *see also* Doc. No. 388-14 at 2.) In response, Oakley contends that Dolan had a notepad with handwritten notes, which was not produced. (*See* Doc. No. 368 at 5.) While it is true that Dolan can be seen with a notepad on top

12

of his binder during the televised interview, it is impossible to determine from the video recording what – *if any* – handwritten notes were on the notepad. *See* YESNetwork, *James Dolan on Charles Oakley, Phil Jackson, Carmelo Anthony Rumors* (YouTube, Feb. 10, 2017), https://www.youtube.com/watch?v=BayYj760ZI8. During the interview, Dolan does not flip any pages in the notepad, nor does he write any notes on the pad. Additionally, the thirty-minute interview covered a range of topics other than Oakley's removal, with approximately half of the interview devoted to questions regarding the management and performance of the Knicks. Thus, even if the pad contained handwritten notes, there is nothing in the record to suggest that those notes pertained to this case as opposed to any other topic covered during the interview.

Curiously, Oakley made no attempt to ascertain the potential contents of the notepad. For example, he did not ask Dolan a single question regarding the binder or notepad at Dolan's deposition even though the interview video has been publicly accessible on the internet since February 10, 2017. *See id.* In fact, Oakley cited a portion of the interview in a January 6, 2025 filing to the Court (*see* Doc. No. 249 at 1 & n.1) – over three weeks before he deposed Dolan on January 28, 2025 (*see* Doc. No. 298 at 1) – yet Oakley still failed to question Dolan on this theory of spoliation.

For the reasons noted above, Oakley has failed to establish "that the destroyed evidence would have been relevant to [a] contested issue" in the case. *Kronisch v. United States*, 150 F.3d 112, 127 (2d Cir. 1998). To the contrary, his "argument that there has been an[] actual loss of evidence relevant to [his] claims . . . in this case amounts to pure speculation" and "is insufficient to sustain a motion for spoliation sanctions." *Khaldei v. Kaspiev*, 961 F. Supp. 2d 564, 570 (S.D.N.Y. 2013); *see also Tri-County Motors, Inc. v. Am. Suzuki Motor Corp.*, 494 F. Supp. 2d 161, 177 (E.D.N.Y. 2007) ("[S]peculative assertions as to the existence of documents do not

suffice to sustain a motion for spoliation of evidence."). Accordingly, Oakley's motion for spoliation sanctions related to the purported destruction of Dolan's binder and notepad is DENIED.

### D. Sealing

MSG and non-party Benedetto have both filed motions to maintain certain exhibits submitted in connection with Oakley's spoliation motion under seal.[4] (*See* Doc. Nos. 372, 381.) Oakley has not opposed either of these motions. While "[t]he common law right of public access to judicial documents is firmly rooted in our nation's history," that presumption of public access may be overcome by "countervailing factors," such as "the privacy interests of those resisting disclosure." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119–20 (2d Cir. 2006) (internal quotation marks omitted). "[D]ocuments may be sealed if specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Id.* at 120 (internal quotation marks omitted).

MSG moves to maintain three categories of information under seal: (1) personal phone numbers contained in Exhibit 4 to Oakley's spoliation motion (*see* Doc. No. 367-4), (2) excerpts from Keaton's deposition transcript in which he discusses MSG's executive-protection protocols (*see* Doc. No. 367-1 at 5–6), and (3) exemplar copies of litigation hold notices that MSG issued in this case (*see* Doc. No. 367-8). The Court agrees that sealing is appropriate as to the first two categories but not the third.

The redacted version of Exhibit 4 simply obscures the personally identifiable information of non-party witnesses in this case. The public's interest in such information is negligible and easily outweighed by the non-parties' privacy interests. The presumption in favor of open records

---

[4] The Court previously granted Oakley permission to preliminarily file under seal the unredacted copies of certain exhibits submitted in connection with his motion for spoliation sanctions and directed any party who wished to maintain these exhibits under seal to "file a motion explaining why continued sealing is justified in light of the presumption in favor of open records." (Doc. No. 362 at 2.)

has thus been overcome by the privacy interests of those non-parties. *See Lugosch*, 435 F.3d at 120.

Similarly, the redactions to Keaton's deposition merely conceal MSG's security protocols related to executive protection. Once again, the presumption of public access has been overcome by the potential safety concerns of disclosing this sensitive information. *See Under Seal v. Under Seal*, 273 F. Supp. 3d 460, 467 (S.D.N.Y. 2017).

Finally, with respect to the litigation hold notices, MSG argues that such notices are generally considered to be "privileged communications," *Roytlender v. D. Malek Realty, LLC*, No. 21-cv-52 (MKB) (JMW), 2022 WL 5245584, at *4 (E.D.N.Y. Oct. 6, 2022), and thus should be sealed to "further . . . [the] preservation of attorney-client privilege," *Under Seal*, 273 F. Supp. 3d at 467. But MSG selectively disclosed two exemplar hold notices to Oakley to defend against this spoliation motion, and the law in the Second Circuit is clear that "the attorney-client privilege cannot at once be used as a shield and a sword." *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991). Because the selective invocation of the attorney-client privilege typically waives the privilege with respect to such documents, and because MSG has not articulated any other reason as to why these documents should remain under seal, the Court concludes that MSG has not overcome the presumption of public access.

For these reasons, MSG's motion to maintain the unredacted versions of the aforementioned exhibits under seal is GRANTED in part and DENIED in part. IT IS HEREBY ORDERED THAT Oakley shall file on the public docket a copy of Exhibit 8 submitted in support of his spoliation motion.

For his part, Benedetto argues that an exhibit containing an email that he sent to several friends following his termination from MSG as well as the response email from one of his friends

should remain under seal.  (*See* Doc. No. 367-5.)  The Second Circuit has explained that "the privacy interests of innocent third parties should weigh heavily in a court's balancing equation." *United States v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995) (alterations accepted and internal quotation marks omitted); *see also Desarrolladora La Ribera, S. de R.L. de C.V. v. Anderson*, No. 24-cv-67 (LAK) (BCM), 2024 WL 2049413, at *3 (S.D.N.Y. May 6, 2024) (accepting a proposed redaction "to protect the legitimate privacy interests" of an individual who "[was] not affiliated with any party, [was] not accused of any wrongdoing, and did not ask to be involved in this lawsuit").  The Court agrees with Benedetto that his reaction to his termination as well as his friend's response are not relevant to any disputed material issue here, and thus the privacy interests of these non-parties outweigh the presumption of public access.

Nevertheless, the Court is not persuaded that two of Benedetto's email statements, in which he asserted that "I was just fired over the Charles Oakley incident," and "I gave them back their phone so I will get one tomorrow," warrant redaction and sealing.  (Doc. No. 367-5 at 2.)  Multiple public filings in this case have already indicated that Benedetto's termination was connected to Oakley's removal (*see, e.g.*, Doc. Nos. 249, 270), so Benedetto's privacy will not be protected by redacting this aspect of his email.  Additionally, the fact that Benedetto had only one phone and that he returned the phone to MSG upon his termination is directly relevant to Oakley's spoliation motion.  Therefore, any privacy interests that Benedetto may have in this information cannot overcome the presumption of public access.  This is especially true because the same fact is reflected in his deposition testimony, yet Benedetto is not seeking to seal that testimony.  (*See* Doc. No. 367-7 at 3.)  As a result, no privacy interests will be advanced by sealing the same statement when made in his email but not when made in his deposition testimony.  Therefore, Benedetto's motion to seal Exhibit 5 is GRANTED in part and DENIED in part.  IT IS HEREBY ORDERED

THAT Oakley shall file on the public docket a redacted copy of Exhibit 5 that discloses the two statements referenced above.[5]

### IV. Conclusion

For the reasons stated above, Oakley's motion for spoliation sanctions is DENIED, MSG's motion to file a sur-reply is DENIED, MSG's motion to seal is GRANTED in part and DENIED in part, and Benedetto's motion to seal is GRANTED in part and DENIED in part. IT IS HEREBY ORDERED THAT no later than July 30, 2025, Oakley shall file on the public docket a redacted version of Exhibit 5 with only the following sentences unredacted: (1) "So I was just fired over the Charles Oakley incident," and (2) "I gave them back their phone so I will get one tomorrow." IT IS FURTHER ORDERED THAT no later than July 30, 2025, Oakley shall file on the public docket the unredacted versions of his memorandum of law and Exhibits 7 and 8 submitted in support of his motion for spoliation sanctions. The Clerk of Court is respectfully directed to terminate the motions pending at Doc. Nos. 363, 372, 381, 394.

SO ORDERED.

Dated:   July 23, 2025
         New York, New York

                                                    _____
                                                    RICHARD J. SULLIVAN
                                                    UNITED STATES CIRCUIT JUDGE
                                                    Sitting by Designation

---

[5] Oakley also preliminarily filed under seal the unredacted version of his memorandum of law in support of his motion for spoliation sanctions, as well as excerpts from Benedetto's deposition. Because no party has moved to maintain these documents under seal, Oakley shall file the unredacted versions on the public docket.