**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CHARLES OAKLEY, | |
| Plaintiff, | |
| v. | Case No. 17-cv-6903 (RJS) |
| MSG NETWORKS, INC., *et al.*, | |
| Defendants. | |

**MSG'S MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION FOR ATTORNEYS' FEES AND COSTS**

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

LEGAL STANDARD.................................................................................................................3

ARGUMENT ............................................................................................................................4

    A.    MSG's Investigation into Oakley's Spoliation .......................................................4

    B.    The Attorneys' Fees Are Reasonable Relative to the Market and
Considering the Nature of the Work .......................................................................9

        a.    MSG's Attorney Hours Spent Are Reasonable in Light of Oakley's
Obfuscation and Vigorous Resistance to MSG's Motion...........................9

        b.    K&S's Rates Are Reasonable ...................................................................13

        c.    Segregating Relevant Hours from "Block Billed" Entries Is
Acceptable................................................................................................15

CONCLUSION........................................................................................................................16

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alicea v. City of New York*,
  272 F. Supp. 3d 603 (S.D.N.Y. 2017)......................................................................10

*An v. Despins*,
  2024 WL 1157281 (S.D.N.Y. Mar. 18, 2024), *appeal dismissed*, 2024 WL
  4524742 (2d Cir. Aug. 13, 2024)............................................................................14

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*,
  522 F.3d 182 (2d Cir. 2008).............................................................................4, 15

*CBF Industria de Gusa S/A v. AMCI Holdings, Inc.*,
  342 F.R.D. 84 (S.D.N.Y. 2022) ...............................................................................4

*Cerco Bridge Loans 6 LLC v. Schenker*,
  768 F. Supp. 3d 559 (S.D.N.Y. 2025)...................................................................14

*City of Riverside v. Rivera*,
  477 U.S. 561 (1986)................................................................................................12

*Cohen-McLaughlin v. McLaughlin*,
  132 A.D.3d. 716 (2d Dep't 2015) ..........................................................................10

*DR Distribs., LLC v. 21 Century Smoking, Inc.*,
  2022 WL 5245340 (N.D. Ill. Oct. 6, 2022)..............................................................5

*E.I. DuPont de Nemours & Co. v. Kolon Indus., Inc.*,
  2013 WL 458532 (E.D. Va. Feb. 6, 2013)...............................................................5

*Etna Prods. Co., Inc. v. Q Mktg. Grp., Ltd.*,
  2005 WL 2254465 (S.D.N.Y. June 6, 2005) .........................................................12

*Google LLC v. Starovikov*,
  2023 WL 2344935 (S.D.N.Y. Mar. 3, 2023) ............................................3, 12, 14

*Gucci Am., Inc. v. Rebecca Gold Enters., Inc.*,
  1993 WL 88270 (S.D.N.Y. Mar. 23, 1993) .............................................................4

*Indep. Project, Inc. v. Ventresca Bros. Constr. Co., Inc.*,
  397 F. Supp. 3d 482 (S.D.N.Y. 2019)....................................................................16

*Knox v. John Varvatos Enters. Inc.*,
　520 F. Supp. 3d 331 (S.D.N.Y. 2021) (Koetl, J.) *aff'd sub nom. Chaparro v.*
　*John Varvatos Enters., Inc.*, No. 21-446-CV, 2021 WL 5121140 (2d Cir. Nov.
　4, 2021) .................................................................................................................9

*Lilly v. City of New York*,
　934 F.3d 222 (2d Cir. 2019).................................................................................3

*Margel v. E.G.L. Gem Lab Ltd.*,
　2009 WL 302069 (S.D.N.Y. Feb. 6, 2009)....................................................12, 13

*Miroglio S.P.A. v. Conway Stores, Inc.*,
　629 F. Supp. 2d 307 (S.D.N.Y. 2009)...................................................................3

*Raja v. Burns*,
　43 F.4th 80 (2d Cir. 2022) .................................................................................16

*Safeco Ins. Co. of Am. v. M.E.S., Inc.*,
　790 F. App'x 289 (2d Cir. 2019) .........................................................................4

*Siddiky v. Union Square Hosp. Grp., LLC*,
　2017 WL 2198158 (S.D.N.Y. May 17, 2017) ......................................................15

*Simons v. Petrarch LLC*,
　2017 WL 914631 (Sup. Ct. N.Y. Cnty. Mar. 1, 2017) ...........................................5

*Tessemae's LLC v. Atlantis Cap. LLC*,
　2019 WL 2635956 (S.D.N.Y. June 27, 2019) ......................................................14

*U.S. v. Omnicare, Inc.*,
　2015 WL 1726474 (S.D.N.Y. Apr. 15, 2015).......................................................16

*Victor Stanley, Inc. v. Creative Pipe, Inc.*,
　2011 WL 2552472 (D. Md. Jan. 24, 2011), *adopted*, 2011 WL 13308409 (D.
　Md. June 15, 2011) ..............................................................................................5

*Vista Outdoor Inc. v. Reeves Fam. Tr.*
　2018 WL 3104631, (S.D.N.Y. May 24, 2018) .....................................................14

*Wells Fargo Bank v. BrooksAmerica Mortg. Corp.*,
　2004 WL 2754855 (S.D.N.Y. Dec. 1, 2004) .........................................................4

Defendants MSG Networks, Inc., Madison Square Garden Sports Corp., and Sphere Entertainment Group, LLC ("MSG") respectfully submit this Memorandum of Law in Support of its Motion for Attorneys' Fees and Costs pursuant to the Court's ruling on July 23, 2025.

## PRELIMINARY STATEMENT

On July 23, 2025, the Court granted MSG's motion for spoliation sanctions against Plaintiff Charles Oakley, making detailed findings regarding Oakley's and his counsel's culpability regarding the "undisputed" loss of all of his text messages sent or received before February 2022. ECF 439 at 12. The Court found that Oakley acted in "bad faith," "intentionally misled the Court," and made "patent misrepresentations" regarding his texting habits and cell phone trade-ins—what it said reflected a "broader pattern of Oakley making sworn statements to the Court that are then contradicted by subsequently unearthed evidence." *Id*. at 13–14. The Court also found that Oakley's counsel's conduct was "troubling" and "negligen[t]," as they "did not take any steps to monitor or otherwise ensure Oakley's compliance with his preservation obligations," and did not "comply with *their* preservation obligations," either. *Id*. at 11, 7 (emphasis added). Making clear that it was awarding sanctions to MSG to both "ameliorat[e] the economic prejudice imposed" and "serve as a deterrent to future spoliation," the Court granted, in addition to an adverse inference, MSG's "request for attorneys' fees and costs expended in prosecuting this spoliation motion and pursuing discovery related to Oakley's loss of text messages, such as by subpoenaing AT&T, subpoenaing third-party witnesses, and deposing those witnesses." *Id*. at 11 (citing *CAT3, LLC v. Black Lineage, Inc.*, 164 F. Supp. 3d 488, 502 (S.D.N.Y. 2016) (Francis IV, M.J.)).

MSG's attorneys' fees and costs are commensurate with the extensive efforts required to investigate Oakley's spoliation and ultimately pursue its sanctions motion, especially because, at numerous junctures, the work was multiplied by Oakley and his counsel's efforts at misdirection

and distraction. Beginning in August 2024, when Oakley's counsel disclosed that they "were not able to obtain any text messages from Mr. Oakley from before February of 2022" because "he traded in his previous phone that would have contained text messages from before this date," ECF 255-30, MSG exchanged letters and communications with Oakley's counsel (whose unresponsiveness and inaccurate information betrayed their lack of diligence and intentional misdirection) regarding his lost cell phone evidence; prepared, served, and analyzed discovery by Oakley and third parties (including AT&T) regarding his lost messages and other ESI; prepared and filed a pre-motion conference letter and reply; prepared for and argued at a November 20, 2024 pre-motion conference on this issue; prepared for and argued at a December 19, 2024 hours-long hearing at which MSG examined Oakley; prepared and later supplemented its voluminous motion papers, which included a comprehensive submission by an expert, Philip Favro; analyzed thousands of pages of Oakley's cell phone records that were ultimately produced by AT&T; and prepared for and participated in a second hearing on March 21, 2025 at which MSG examined three witnesses, including Oakley' counsel and MSG's own witness, regarding the AT&T records. The total of MSG's work on this issue is not even fully captured in the fees it seeks, as, for example, it expended significant attorney time on this issue at Oakley's and other depositions, and it was forced to respond to Oakley's reactionary (and meritless) motion for spoliation sanctions against MSG, which was brought only to distract from this successful motion. MSG is also not seeking its fees (which are far from de minimis) for preparing this fee application.

MSG now seeks an award of $1,541,238 in attorneys' fees and costs (including expert costs) incurred in connection with its investigation and spoliation motion. MSG's attorneys' fees include 1,370.80 hours billed by its counsel King & Spalding LLP. King & Spalding's hourly rates are not only commensurate with those charged by peer firms in the Southern District of New York,

but also align with Oakley's counsel's representations in their 2019 (that is, their six year old) engagement letter with Oakley that if they were to bill on an hourly basis, their fees would range from $850–$1,100 for partners and $350–$650 for associates. *See* ECF 289-3 at PL00003059. Despite that the MSG Defendants are large, corporate entities and Oakley is an individual (whose counsel are working on contingency), at all relevant times, the size of MSG's core legal team (two partners, one counsel, and three associates) corresponded to the size of Oakley's (three partners and three associates) nearly one to one.[1]

As a result of the Court's July 23, 2025 order, Oakley, who to date likely has not spent a cent on this litigation pursuant to his contingency fee arrangement with his counsel, will finally have skin in the game.

## LEGAL STANDARD

In determining the reasonableness of attorneys' fees, the Second Circuit uses the "lodestar method" as the starting point to calculate a "presumptively reasonable fee." *Google LLC v. Starovikov*, 2023 WL 2344935, at *2–3 (S.D.N.Y. Mar. 3, 2023) (Cote, J.) (finding $525,674 award of King & Spalding LLP's attorneys' fees "reasonable" "given the complexity of the case"). The lodestar method is calculated by "determining a reasonable hourly rate" and "then multiplying that rate by the number of hours reasonably expended." *Lilly v. City of New York*, 934 F.3d 222, 230 (2d Cir. 2019). "The critical inquiry is 'whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures.'" *Miroglio S.P.A. v. Conway Stores, Inc.*, 629 F. Supp. 2d 307, 312 (S.D.N.Y. 2009) (Gorenstein, M.J.) (quoting *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992)).

---

[1] While more than three associates have worked on this matter over the past year (as reflected in the accompanying Billing Records), there has never been more than three associates on the primary case team at any one time.

In support of a request for attorneys' fees, the party seeking fees "must document the application with contemporaneous time records . . . specify[ing], for each attorney [and legal assistant], the date, the hours expended, and the nature of the work done." *Safeco Ins. Co. of Am. v. M.E.S., Inc.*, 790 F. App'x 289, 292 (2d Cir. 2019) (quoting *N.Y. State Assoc. for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983)). "[W]here the record is substantial, it is permissible to file an application in the form of an affidavit, appending in computer printout form a copy of the relevant portions of the contemporaneous time records." *Gucci Am., Inc. v. Rebecca Gold Enters., Inc.*, 1993 WL 88270, at *3 (S.D.N.Y. Mar. 23, 1993) (Newman, J.).

To determine whether an attorney's requested hourly rate is reasonable, courts should consider "all relevant circumstances in concluding what a reasonable, paying client would be willing to pay," including "the nature of representation and type of work involved in the case." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 184, n.2 (2d Cir. 2008). Furthermore, "[a] determination of reasonable attorneys' fees in this district should look to the rates charged by comparable firms in the New York area in each of the years of the litigation." *Wells Fargo Bank v. BrooksAmerica Mortg. Corp.*, 2004 WL 2754855, at *1 (S.D.N.Y. Dec. 1, 2004) (Baer, J.) (cleaned up).

## ARGUMENT

### A. MSG's Investigation into Oakley's Spoliation

Courts routinely award substantial fees for spoliation when the work to discover, research, and brief spoliation involves significant attorney hours over an extended period of time. *See, e.g.*, *CBF Industria de Gusa S/A v. AMCI Holdings, Inc.*, 342 F.R.D. 84, 93 (S.D.N.Y. 2022) (Cott, M.J.) (granting attorneys' and expert fees of $872,558 for 888.4 hours of attorney work and finding such an award was "reasonable" given the "time period and complexity of the litigation" where

4

plaintiffs were awarded 37(e)(1), but not 37(e)(2), sanctions); *DR Distribs., LLC v. 21 Century Smoking, Inc.*, 2022 WL 5245340, at *9 (N.D. Ill. Oct. 6, 2022) *appeal filed*, 24-2145 (7th Cir. 2024) (awarding $2,526,744.76 in attorneys' fees for discovery sanctions, including the spoliation of ESI, for thousands of hours of attorney work); *E.I. DuPont de Nemours & Co. v. Kolon Indus., Inc.*, 2013 WL 458532, at *7 (E.D. Va. Feb. 6, 2013) (awarding $2,428,734 in attorneys' fees and $2,068,314 in costs for over a year of work bringing a successful motion for the spoliation of evidence); *Victor Stanley, Inc. v. Creative Pipe, Inc*., 2011 WL 2552472, at *10 (D. Md. Jan. 24, 2011), *adopted*, 2011 WL 13308409 (D. Md. June 15, 2011) (awarding plaintiff $1,049,850 in attorneys' fees and costs for discovery, hearings, and briefings relating to defendants' spoliation); *Simons v. Petrarch LLC*, 2017 WL 914631, at *14 (Sup. Ct. N.Y. Cnty. Mar. 1, 2017) (awarding attorneys' fees for two years where the spoliating party "wait[ed] almost a year," forcing the adverse party to bring a motion for spoliation sanctions, a supplemental motion, and motion to compel).

In this case, it took extraordinary efforts spanning seven months for MSG to obtain the relief ordered by this Court in its July 23, 2025 order granting spoliation sanctions. Those seven months of efforts included:

(i)     preparation for and attendance at three separate court appearances (*see* ECF Nos. 198, 222, and 324), two of which were nearly day-long evidentiary hearings involving significant witness testimony and legal argument;

(ii)    the drafting of seven substantive written submissions, including a pre-motion letter (ECF 194), a request to supplement that letter in light of Oakley's deposition testimony (ECF 197), a fulsome legal memorandum in support of sanctions (ECF 254), a request to supplement that memorandum in light of newly-discovered

evidence from AT&T (ECF 265), a reply memorandum in further support of sanctions (ECF 303), a motion for leave to file additional exhibits in light of Oakley's requested sur-reply (ECF 315), the preparation of more than 30 exhibits in support of its spoliation motion (*see* ECF 255, ECF 304, and ECF 318), and a comprehensive post-hearing brief (ECF 342);

(iii)    the retention of and coordination with expert witness Philip Favro, whose expertise and report the Court credited in its opinion (ECF 257);

(iv)    the retention of and coordination with Impact Trial, a graphics firm, for the preparation and presentation of exhibits and demonstratives at the two hearings held on this motion;

(v)    the pursuit of discovery from Oakley concerning his spoliation, including through multiple document requests, requests for admission, contention interrogatories, written correspondence, and meet-and-confers with counsel; and

(vi)    the preparation of a third-party subpoena to Verizon based on Oakley's counsel's misrepresentation about his service provider, and ultimately the service of a subpoena to AT&T once that misrepresentation was uncovered, as well as the evaluation and analysis of thousands of pages of Oakley's cell phone records that resulted from that subpoena.

The above list is by no means comprehensive, and MSG has been conservative in preparing this fee submission. For example, MSG has not submitted any fees related to its preparation for the deposition of Charles Oakley—which was the central deposition of this case—despite the fact that MSG spent time at Oakley's deposition asking him questions about his spoliation of text messages (as Oakley's counsel had expressly told us to do when denying our initial requests for more

information about the spoliation, *see* ECF 255-3 at 2). Nor did MSG submit fees related to its preparation for every one of the depositions of third parties with whom Oakley texted, because those depositions spanned multiple topics related to the underlying merits of the case and would have happened regardless of Oakley's spoliation (although MSG did submit fees related to a portion of the time spent preparing for and deposing Akhtar Farzaie, given that he provided substantial testimony about Oakley's text messages, and for the evaluation of the text message screenshots he later produced, which were directly related to the issue of Oakley's spoliation). And MSG has not included in this submission any fees for the preparation of this fee submission itself— which was a significant undertaking involving the review and isolation of spoliation-related entries from multiple months of bills along with the drafting of a full legal memorandum and declaration—nor has it included fees incurred in connection with its work opposing Oakley's now-denied spoliation sanctions motion, even though there can be no doubt that Oakley only filed that meritless motion as a reaction to MSG's motion.

Indeed, MSG was actively engaged in investigating and uncovering Oakley's spoliation from the moment it first learned of his missing text messages on August 22, 2024 through the submission of its final post-hearing brief on March 28, 2025—all while it continued to defend against Oakley's substantive claims for assault and battery—as detailed in the below high-level chronology:

- **August 22, 2024**: Oakley first disclosed the loss of five years' worth of text messages. ECF 255-30.

- **September 10, 2024:** MSG sent a letter requesting follow-up information regarding the loss of Oakley's text messages. ECF 255-7.

- **September 16, 2024:** During a meet-and-confer, Oakley's counsel misrepresented, *inter alia*, Oakley's cell phone provider (claiming it to be Verizon instead of AT&T), and the model of Oakley's cell phone (claiming it to be an Apple iPhone instead of a Samsung Android device), and failed to answer MSG's other questions about Oakley's spoliation.

- **October 4, 2024:** MSG sent a second letter to Oakley detailing its concerns about his spoliation of evidence, along with a set of discovery requests concerning the spoliation. ECF 255-8.

- **October 14, 2024:** Oakley's counsel provided MSG a list of individuals whom "Oakley believes, to the best of his recollection, he may have texted with about the events of February 8, 2017," and directed MSG to locate copies of the missing text messages "via the subpoena process." ECF 255-3. Oakley later testified he did not prepare that list and was never asked about it by his attorneys. ECF 255-2 at 474:12-475:6.

- **October 21, 2024:** MSG filed a pre-motion conference letter concerning its intent to move for spoliation sanctions. ECF 194.

- **October 29, 2024:** MSG filed a request to supplement its pre-motion conference letter in light of Oakley's incriminating testimony concerning his spoliation at his October 23, 2024 deposition. ECF 197.

- **November 11, 2024:** Oakley's counsel responded to MSG's document requests concerning Oakley's spoliation, ECF 255-18, raising additional inconsistencies in Oakley's story, and produced only three redacted documents in response to MSG's request: his engagement letters with counsel and an AT&T store receipt purporting to depict Oakley's in-store phone purchases from 2021 to 2024, but not any purchases he may have made from other retailers. ECF 255-10; 255-13.

- **November 20, 2024:** MSG attended a pre-motion conference on its motion for spoliation sanctions and argued that Oakley should be subject to examination at an evidentiary hearing. ECF 225 at 36:12-24.

- **November 25, 2024:** MSG subpoenaed AT&T Inc. for Oakley's text message records. ECF 255-20.

- **December 13, 2024:** After previously telling the Court that expert testimony was not required to resolve this motion, Oakley submitted a letter attaching an expert report (ECF 230), to which MSG responded requesting the opportunity to provide testimony of its own expert (ECF 234).

- **December 19, 2024:** The Court held an evidentiary hearing on MSG's motion in which Oakley testified as a witness. Afterwards, the Court heard argument from both parties and set a briefing schedule for MSG's motion.

- **December 27, 2024:** After conferring with counsel to AT&T regarding MSG's initial subpoena, MSG served a revised subpoena for Oakley's text message records on AT&T Inc. ECF 255-21.

- **January 9, 2025:** MSG submitted its opening brief in support of spoliation sanctions against Oakley. ECF 254.

8

- **January 16, 2025:** MSG submitted a request to supplement its opening brief with evidence obtained from AT&T via subpoena on January 10, 2025, which showed that Oakley sent and received thousands of text messages in the immediate aftermath of the incident. ECF 265. The Court granted MSG's request on January 17, 2025. ECF 268.

- **January 22, 2025:** MSG submitted a declaration in further support of its motion explaining how to interpret the contents of the AT&T records and attaching excerpts of the records themselves. ECF 272.

- **February 3, 2025:** After receiving Oakley's opposition brief on January 27, 2025, MSG submitted its reply brief in further support of sanctions. ECF 303.

- **February 5, 2025:** Oakley requested permission to file a sur-reply (ECF 306), which the Court granted. ECF 307.

- **February 10, 2025:** Oakley filed his sur-reply (ECF 314), and MSG filed a request to submit full versions of exhibits that Oakley's sur-reply presented out of context (ECF 315). The Court granted MSG's request, and MSG filed a declaration attaching those exhibits on February 13, 2025. ECF 318.

- **February 21, 2025:** Upon reviewing the AT&T records submitted by MSG, as well as declarations concerning those records submitted by counsel for MSG and counsel for Oakley, the Court set an evidentiary hearing to discuss the AT&T records for March 21, 2025. ECF 324.

- **March 21, 2025:** The Court held an evidentiary hearing in which testimony was heard from MSG counsel John Goodwin, Oakley counsel Katherine Vask, and paralegal for Oakley's counsel Joseph Goldstein regarding the calculation of Oakley's text messages in the AT&T records. ECF 343-1.

- **March 28, 2025:** MSG and Oakley submitted simultaneous post-hearing briefs following the March 21, 2025 hearing. ECF Nos. 341, 342.

As the Court can see, this period covered intensive work by MSG's legal team to investigate

Oakley's destruction of evidence and develop and argue its spoliation motion.

### B. The Attorneys' Fees Are Reasonable Relative to the Market and Considering the Nature of the Work

#### a. MSG's Attorney Hours Spent Are Reasonable in Light of Oakley's Obfuscation and Vigorous Resistance to MSG's Motion

The number of attorney hours expended by MSG counsel were reasonable. In considering

reasonableness, a court may consider an adversary's litigation tactics. *See, e.g.*, *Knox v. John*

*Varvatos Enters. Inc.*, 520 F. Supp. 3d 331, 347 (S.D.N.Y. 2021) (Koetl, J.) (defendant's conduct "unnecessarily increased the number of hours they had to expend") *aff'd sub nom. Chaparro v. John Varvatos Enters., Inc.*, No. 21-446-CV, 2021 WL 5121140 (2d Cir. Nov. 4, 2021); *Cohen-McLaughlin v. McLaughlin*, 132 A.D.3d. 716, 717–18 (2d Dep't 2015); *see also Alicea v. City of New York*, 272 F. Supp. 3d 603, 612 (S.D.N.Y. 2017) (Koeltl, J.) (considering defendants' conduct which "lengthened discovery and needlessly caused [opposing counsel] to expend more hours litigating this case" in determining reasonable attorney's fee).

As detailed above and in MSG's submissions in support of its motion, Oakley and his counsel actively impeded MSG's efforts to investigate Oakley's spoliation at every turn. Not only did Oakley's counsel repeatedly refuse to answer MSG's straightforward questions about MSG's spoliation in the initial months after their August 22, 2024 disclosure—*see, e.g.,* ECF 255-7 at 3; ECF 255-3 at 3—but the few questions they did answer contained blatantly wrong information designed to send MSG on a wild goose chase. For example, Oakley's counsel told MSG to subpoena Verizon for Oakley's cell phone records, which MSG was on the precipice of doing before learning that his provider was actually AT&T at his deposition.[2] And when Oakley was deposed about this matter, he lied and claimed to receive only six or seven text messages a day, which prompted the Court to require a credibility assessment at a December 19, 2024 evidentiary hearing that might have been avoided had Oakley simply told the truth. And, despite previously telling the Court that expert testimony would not be required to resolve this motion, Oakley's

---

[2] In addition, Oakley's counsel were unable to answer basic questions about the make and model of Oakley's phones and whether Oakley's text messages were preserved or collected in connection with any other litigation matters, despite MSG's counsel asking multiple times in writing and in meet and confers. *See* ECF 255-7 at 4; ECF 255-8 at 3–4. Oakley's counsel also did not provide MSG's counsel with the names of individuals with whom Oakley was likely to have texted during the relevant period until counsel asked multiple times. *See* ECF 255-3 at 3-4; ECF 255-8 at 5.

counsel submitted an unprompted submission days before the December 19, 2024 hearing attaching an expert report, which necessitated MSG's engagement of its own expert in response.

In addition, Oakley's counsel never took the most basic step of contacting AT&T to get Oakley's phone records until *after* the Court's December 19, 2024 evidentiary hearing where Oakley took the stand. Even when they did subpoena AT&T, they only obtained Oakley's voice records, and it was left to MSG to subpoena and obtain the text records that conclusively proved Oakley was lying when he said he rarely texted. *See* ECF 343-1 at 81:22-82:4 (MSG's Counsel: Did you or anyone on your team ever ask AT&T why it didn't supply text records in response to this consumer authorization? Oakley's Counsel: We had reached out to AT&T to confirm whether these were voice records, and they said that was all they had sent over. MSG's Counsel: But you never asked them why you didn't get the text records? Oakley's Counsel: I personally did not.")

Once MSG had obtained those text records, Oakley's counsel went to great lengths to discredit these patently credible business records by submitting a declaration designed only to highlight purported issues and inconsistencies in the records, while never actually offering a calculation of how many texts they believed the records showed. MSG was forced to rebut this declaration, which led to *yet another* nearly day-long evidentiary hearing at which MSG's and Oakley's counsel testified regarding the volume of Oakley's texts—a dispute that Oakley's counsel had manufactured (as even the Court observed: "Contrary to Oakley's assertion that he received only six or seven messages per day, the AT&T records revealed that in the three weeks following his removal from MSG, Oakley received at least 202 messages per day – or 4,233 messages in total – and sent at least thirty-nine messages per day – or 826 messages in total." ECF 439 at 13 (internal citations omitted)). As the Court further noted in its opinion, following that hearing, Oakley's counsel finally offered (buried in a footnote in their post-hearing submission) a

calculation of Oakley's sent texts that was nearly the same as the one originally offered by MSG's counsel, while continuing to refuse to offer a calculation of Oakley's received texts. *See* ECF 439 at 3 ("MSG's counsel estimated that Oakley sent at least 866 text messages and received at least 4,233 text messages during the relevant period. Oakley's counsel reached a similar conclusion, estimating that Oakley sent 826 text messages from February 8 to March 1, 2017. Oakley's counsel did not attempt to calculate the number of unique messages that he received during this time period.")

In short, MSG spent considerable time and resources investigating Oakley's spoliation in the face of Oakley and his counsel's continued obfuscation, misdirection, and outright lies when Oakley knew that he had, in fact, intentionally destroyed key text messages constituting his only written, contemporaneous communications about this case. Oakley "cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response." *City of Riverside v. Rivera*, 477 U.S. 561, 580 n.11 (1986); *see also Google LLC* 2023 WL 2344935, at *3 (rejecting defendant's argument that the fees request "includes an excessive number of billable hours" when it was "the *actions of Defendants* that dictated the kinds of work and the amount of work undertaken by plaintiff's counsel.") (emphasis added).

Moreover, given the complexity of the dispute and the duration of MSG's efforts, which lasted the better part of a year, MSG's staffing of the matter was reasonable. "The handling of cases by more than one lawyer . . . is commonplace today." *Etna Prods. Co., Inc. v. Q Mktg. Grp., Ltd.*, 2005 WL 2254465, at *4 (S.D.N.Y. June 6, 2005) (Maas, M.J.) (citation omitted). This principle also applies for attendance by multiple attorneys at hearings: "[T]he use of multiple attorneys . . . is not unreasonable per se . . . and parties are not barred from receiving compensation for work performed by an extra lawyer [sent] into court to observe and assist." *Margel v. E.G.L.*

*Gem Lab Ltd.*, 2009 WL 302069, at *5 (S.D.N.Y. Feb. 6, 2009) (Pitman, M.J.) (alterations in original). And MSG's attorneys were not simply in court to "assist": At the March 31, 2025 hearing one of MSG's attorneys (Mr. Goodwin) was called upon to testify as a fact witness. Here, it was not unreasonable for the seven months of discovery, investigation, correspondence, motion preparation and argument on Oakley's spoliation to be handled by multiple attorneys. Given the magnitude of the spoliation at issue—the destruction of the most critical contemporaneous communications from Oakley in the weeks and months after his ejection, and all of his text messages for the following five years—as well as the complexity of the issues, MSG's counsel utilized the skill sets of multiple attorneys. Furthermore, MSG's counsel pursued this spoliation investigation and motion while simultaneously developing the factual record and defending MSG on the merits of Oakley's assault and battery claims, which was a substantial undertaking that necessitated a team of this size. In fact, at the relevant times, MSG's core litigation team comprised two partners, one counsel, and three associates—which, as noted above, corresponds nearly exactly with Oakley's legal team of three partners (two at Wigdor LLP and one at Petrillo Klein & Boxer LLP), three associates (two at Wigdor LLP and one at Petrillo Klein & Boxer LLP), and at least one paralegal.

### b. K&S's Rates Are Reasonable

As detailed in the attached Exhibit 1, the average hourly rate for associates included in this application ranged from $451 to $1,135, and the rate for partners included in this application was $978 to $1,709. The hourly rates claimed by MSG's counsel King & Spalding LLP are commensurate with the experience of the attorneys involved in this matter and are comparable to prevailing market rates for similarly sized firms in New York. In fact, the partner rate is below that of several of King & Spalding's peer firms. *See* Ex. 2 (2024 article in *The American Lawyer*

discussing that hourly rates for partners in New York City at peer firms had increased up to $2,000 to $2,465 an hour).

For example, two years ago, Judge Cote approved King & Spalding LLP's hourly rates ranging from $565.25 to $1,173 as "within the accepted range of rates within this district, and they represent the amount actually paid by a sophisticated client." *Google LLC*, 2023 WL 2344935, at *2; *see also Cerco Bridge Loans 6 LLC v. Schenker*, 768 F. Supp. 3d 559, 590 (S.D.N.Y. 2025) (Ho, J.) (awarding attorneys' fees with hourly billing rates of up to $2,035); *An v. Despins,* 2024 WL 1157281, at *4 (S.D.N.Y. Mar. 18, 2024) (Willis, M.J.), *appeal dismissed*, 2024 WL 4524742 (2d Cir. Aug. 13, 2024) (finding rates of $1,760 and $1,990 reasonable given partner's experience and "the prevailing rates charged by similar law firms in this District"); *Tessemae's LLC v. Atlantis Cap. LLC,* 2019 WL 2635956, at *4 (S.D.N.Y. June 27, 2019) (Parker, M.J.) (collecting cases and explaining courts in this district routinely "determined that hourly rates ranging from $250 to $1,260 per hour, for attorneys' work on a commercial litigation matter, were reasonable."); *Vista Outdoor Inc. v. Reeves Fam. Tr.,* 2018 WL 3104631, at *6 (S.D.N.Y. May 24, 2018) (partner rates of $1,165 to $1,260 per hour were reasonable and "not excessive in the New York City 'big firm' market").

The reasonableness of the requested rates is further confirmed by Oakley's own counsel, who informed Oakley in their 2019 engagement letter that their standard billing rates were between $850 and $1,100 per hour for partners' time and between $350 and $650 an hour for associates' time. [3] ECF 289-3 at PL00003059. In fact, in signing his engagement letter, Oakley agreed that if

---

[3] Whether or not Wigdor LLP and Petrillo, Klein & Boxer LLP have raised their rates since 2019 (as seems likely), in 2025 dollars, Wigdor's 2019 rates are the equivalent of $1,072.44–$1,387.86 for partners and $441.59–$820.10 for associates, according to a calculation using the US Inflation Calculator, which is based on the Consumer Price Index data released by the Bureau of Labor

he or his counsel "decide[d] to terminate this engagement," his counsel would "charge [him] for the legal fees incurred up to that date at our standard billing rates and all expenses already incurred as well as for any further reasonable fees and expenses incurred in transferring the representation to another counsel of your choice." *Id.* In other words, the quoted rates were what Oakley, by definition, was "willing to pay" in 2019, and therefore reasonable. *Arbor Hill*, 522 F.3d at 184. *See also Siddiky v. Union Square Hosp. Grp., LLC*, 2017 WL 2198158, at *10 (S.D.N.Y. May 17, 2017) (Francis, M.J.) (Wigdor LLP requesting fees in the range of $180–750 per hour in 2017, which were, in its words, a "discount from the rates that they regularly charge hourly paying clients"); Ex. 3, Declaration of Jeanne M. Christensen, *Ye v. Sephora USA, Inc.*, No. 14-CV-5237 (N.D. Cal. Mar. 15, 2017), Dkt. No. 168, ¶ 48 (Declaration from 2017 explaining that Douglas Wigdor's hourly rate ranged as high as $900 per hour).[4]

Finally, the requested rates are reasonable in light of the experience and special expertise that MSG's counsel at King & Spalding brought to this litigation. King & Spalding is a leading international law firm with more than 1,300 lawyers across twenty-three offices worldwide. *See* Decl. ¶ 14. King & Spalding was named "Best Law Firm of the Year" in 2023 by *The American Lawyer* and the firm boasts multiple Band 1 Chambers rankings each year. *See* Decl. ¶ 14.

### c. Segregating Relevant Hours from "Block Billed" Entries Is Acceptable

As described in the accompanying Declaration of Damien Marshall, some of MSG's attorney time records were derived from entries that were "block billed," with the work relevant

---

Statistics. *See* https://www.usinflationcalculator.com/. The Court can take judicial notice of the fact that year-over-year inflation since 2019 has been significantly higher than the historical average; the cumulative rate of inflation between 2019 and 2025 has been 26.2%. *See id.*; https://www.usinflationcalculator.com/inflation/historical-inflation-rates/.

[4] King & Spalding's 2019 historical rates were similar to those in Oakley's engagement letter. That year, hourly rates of New York litigation partners ranged from $830–$1,295, and rates for associates ranged from $510–$865. July 30, 2025 Declaration of Damien Marshall ("Decl.") ¶ 15.

to spoliation segregated and identified into individual time entries. To prepare this submission, attorney time related to Oakley's spoliation was separated out from time that was not related to spoliation and King & Spalding attorneys estimated the amount of time spent on Oakley's spoliation that day. *See* Decl. ¶¶ 4, 5. Numerous courts in this District have recognized that block billed time entries are acceptable where, as here, the Court is able to "conduct a meaningful review of the hours." *See, e.g.*, *Raja v. Burns*, 43 F.4th 80, 87 (2d Cir. 2022) (block billing is permissible as long as the district court is able "to conduct a meaningful review of the hours") (quoting *Restivo v. Hessemann*, 846 F.3d 547, 591 (2d Cir. 2017)); *see also U.S. v. Omnicare, Inc.*, 2015 WL 1726474, at *3 (S.D.N.Y. Apr. 15, 2015) ("The use of 'block billing' here is perfectly reasonable[.]") (Cote, J.). This is especially true where, as here, the billing spreadsheet breaks out the specific time entries relating to Oakley's spoliation. *See, e.g.*, *Indep. Project, Inc. v. Ventresca Bros. Constr. Co.*, 397 F. Supp. 3d 482, 497–98 (S.D.N.Y. 2019) (Karas, J.) (finding that block billing did not provide a basis for reducing the fee award because "the block-billed entries [were] broken down into notations of the amount of time spent on each item.").

## **CONCLUSION**

For the foregoing reasons, MSG respectfully requests that the Court order Oakley to pay MSG's attorneys' fees and costs in the total amount of $1,541,238 within 30 days of the issuance of the Court's order.

Dated: July 30, 2025
    New York, New York

                Respectfully submitted,

                */s/ Damien Marshall*

                Damien Marshall
                Jessica Benvenisty
                John Goodwin
                Lauren Myers
                KING & SPALDING LLP
                1185 Avenue of the Americas,
                34th Floor
                New York, NY 10036
                Tel. (212) 556-2100
                Fax (212) 556-2222
                DMarshall@kslaw.com
                JBenvenisty@kslaw.com
                JGoodwin@kslaw.com
                LMyers@kslaw.com

17

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with this Court's Individual Practice Rule 2.B regarding page limits and formatting.

*/s/ Damien Marshall*

Damien Marshall