UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CHARLES OAKLEY,

                    Plaintiff,

        -against-

MSG NETWORKS, INC.,

                    Defendant.

17-CV-6903 (RJS) (RFT)
**OPINION & ORDER**

---

**ROBYN F. TARNOFSKY, United States Magistrate Judge:**

Pending before the Court is Defendant's motion for attorneys' fees and costs (the "Fee Motion") (ECF 445) in connection with Defendant's motion for spoliation sanctions under Rule 37(e)(1) and 37(e)(2) (the "Spoliation Motion") (ECF 253), which was granted by the Honorable Richard J. Sullivan (ECF 439, Opinion & Order)). Judge Sullivan referred the Fee Motion to me. (*See* ECF 450, Am. Order.) Defendant seeks $1,541,238.00 in attorneys' fees and costs ($1,483,903 in attorneys' fees, $42,625 in expert fees paid to Innovative Driven for the work of Philip Favro, a computer forensics expert, and $14,710 in costs for graphics and technology services paid to Impact Trial Graphics). (*See* ECF 446, Def.'s Mem. at 16; ECF 447-1, Billing Spreadsheet at 45.) I have carefully reviewed the parties' submissions. (ECF 446, Def.'s Mem.; ECF 447, Declaration of Damien Marshall ("Marshall Decl."); ECF 448, Pl.'s Opp.; ECF 449, Declaration of Valdi Licul.) For the reasons set forth below, the Fee Motion is GRANTED IN PART, in that Plaintiff is ORDERED to pay $642,337.65 in attorneys' fees and costs to Defendant,

consisting of $604,315.15 in attorneys' fees and $38,022.50 in costs, within 21 days of the date of this order.[1]

## Background

The Court's prior opinions set out in detail the underlying facts and procedural history of this case, which arises out of Defendant's removal of Plaintiff from Madison Square Garden on February 8, 2017. I assume familiarity with that background information and highlight only the facts that are most relevant to the Fee Motion.

### I.     Defendant's Motion for Spoliation Sanctions

On or around July 10, 2024, Plaintiff's counsel discovered that all text messages sent to or from Plaintiff's phone prior to February 2022 had been deleted. (*See* ECF 286, Affirmation of John S. Crain at 1-2.) Over a month later, on August 22, 2024, Plaintiff's counsel disclosed to Defendant's counsel that the messages were unavailable; Plaintiff's counsel had "not ever attempt[ed] to preserve, collect, image, or copy Plaintiff's personal devices." (ECF 194, Def.'s Letter at 1-2.) The parties exchanged correspondence and met and conferred about the issue, including on September 16, 2024, but were unable to resolve their discovery dispute about the potential spoliation. (*See id.* at 2.)

Plaintiff provided Defendant with a list of individuals "he may have texted with about the events of February 8, 2017" and told Defendant to find the missing texts "via the subpoena process." (*Id.* at 2) At Plaintiff's October 23, 2024 deposition, Plaintiff identified his cell-service

---

[1]     Orders imposing discovery sanctions such as awards of attorneys' fees are ordinarily considered non-dispositive, and therefore fall within the grant of Rule 72(a). *See Charlestown Cap. Advisors, LLC v. Acero Junction, Inc.*, 337 F.R.D. 47, 59 (S.D.N.Y. 2020).

provider as AT&T and testified that he upgraded his cellphone twice in eight years and sent and received very few text messages; he stated that he had taken no steps to preserve the data on his phone. (*See* ECF 439, Op. & Order at 2; *see also* ECF 255-2, Oakley Dep. Tr.)

On November 20, 2024, the Court held a pre-motion conference about the spoliation motion (ECF 225, Tr.), and the parties filed joint letter to Judge Sullivan regarding their discovery disputes. (*See* ECF 217, Joint Letter.) The Court held a spoliation hearing on December 19, 2024, during which Plaintiff testified that he had not realized that he had needed to preserve his texts or e-mails and had not been instructed to do so by his counsel. (*See* ECF 245, Tr. at 37-40, 114-20.)

On January 9, 2025, Defendant filed the Spoliation Motion seeking, among other relief, case-terminating sanctions; the motion was supported by a 32-page brief, three declarations, and numerous exhibits. (*See* ECF 253, Def.'s Sanctions Mot.; ECF 254, Def.'s Sanctions Mem.; ECF 255, Declaration of Randy M. Mastro; ECF 256, Declaration of Jessica Benvenisty; ECF 257 Declaration of Philip Favro ("Favro Decl.").) Citing Rule 37(e)(2), Defendant argued that Plaintiff intentionally deprived it of his text messages, and citing Rule 37(e)(1), Defendant argued that it was prejudiced by Plaintiff's spoliation. (*See* ECF 254, Def.'s Sanctions Mem. at 12-19). Defendant requested that the Court dismiss the case under 37(e)(2), or in the alternative, preclude Plaintiff from making certain assertions about the events of February 2017. (*See id.* at 24-25.) Defendant also sought attorney's fees and costs under Rule 37(a)(5)(A). (*See id.* at 25.)

On January 16, 2025, Defendant filed a motion to supplement its support of its Spoliation Motion, seeking to include newly obtained records of Plaintiff's text messages that had been

produced by AT&T (*see* ECF 265, Def.'s Letter-Mot.), which motion was granted (*see* ECF 268, Order).

On January 27, 2025, Plaintiff filed his opposition to the Spoliation Motion. (*See* ECF 287, Pl.'s Sanctions Opp.) On February 3, 2025, Defendant filed its reply in further support of the Spoliation Motion. (*See* ECF 303, Def.'s Sanctions Reply; ECF 304, Second Declaration of Randy M. Mastro.) On February 10, 2025, Plaintiff filed his sur-reply in further opposition to Defendant's Spoliation Motion. (*See* ECF 314, Pl.'s Sanctions Sur-Reply). On February 13, 2025, Defendant filed an additional declaration and attachment in support of the Spoliation Motion. (*See* ECF 318, Third Declaration of Randy M. Mastro.)

On March 21, 2025, Judge Sullivan held an evidentiary hearing on the proper interpretation of the AT&T records, hearing testimony from three witnesses. (*See* ECF 324, Order; ECF 339, Tr.) On March 28, 2025, Defendant made post-hearing filings in support of the Spoliation Motion. (*See* ECF 342, Def.'s Post-Hearing Mem.; ECF 343, Def.'s Post-Hearing Decl.)

On April 18, 2025, Plaintiff filed a motion for spoliation sanctions against Defendant alleging that Defendant lost, among other evidence corporate cellphones for two key witness and years' worth of emails from numerous witnesses ("Plaintiff's Spoliation Motion"); Plaintiff sought adverse inferences, among other relief and supported the motion with a brief, two declarations, and numerous exhibits. (*See* ECF 363, Pl.'s Mot. for Spoliation Sanctions; ECF 364, Declaration of Valdi Licul; ECF 365, Declaration of Larry B. Perkins; ECF 366, Pl.'s Sanctions Mem.). On May 9, 2025, Defendant filed its opposition to Plaintiff's Spoliation Motion, including a declaration and exhibits. (*See* ECF 387, Def.'s Sanctions Opp.; ECF 388, Declaration of Damien Marshall.)

4

On July 23, 2025, Judge Sullivan granted Defendant's Spoliation Motion in part, declining to award case-ending sanctions but ruling that: (1) at trial, Defendant can present evidence related to Plaintiff's spoliation and the jury will receive an adverse-inference instruction (*see* ECF 439, Op. & Order at 14); and (2) Plaintiff shall pay Defendant's reasonable "attorneys' fees and costs expending in prosecuting this Spoliation Motion and pursuing discovery related to Oakley's loss of text messages." (*Id.* at 11.) The Court set a briefing schedule for Defendant's Fee Motion. (*See* ECF 439 Op. & Order at 15.) Judge Sullivan on the same day denied Plaintiff's Spoliation Motion. (*See* ECF 440, Mem. & Order at 17.)

## II.     The Fee Motion

Defendant filed its motion for attorneys' fees and costs on July 30, 2025, requesting $1,541,238.00 for all legal work related to their spoliation motion, including: three court appearances (the pre-motion conference on November 20, 2024, Plaintiff's spoliation hearing on December 19, 2024, and an evidentiary hearing on March 21, 2025); seven written submissions to the Court; multiple document requests, requests for admission, contention interrogatories, letters, and meetings with opposing counsel; preparing third-party subpoenas to Verizon and AT&T; and reviewing Plaintiff's voluminous cell phone records from AT&T. (*See* ECF 445, Def.'s Mot.; ECF 446, Def.'s Mem. at 5-6.) Defendant says it did not seek reimbursement for the work opposing Plaintiff's unrelated spoliation motion or deposing Plaintiff. (*See* ECF 446, Def.'s Mem. at 6-7.) Plaintiff filed its opposition to the Fee Motion on August 6, 2025. (*See* ECF 448, Pl.'s Opp.)

On October 10, 2025, I issued an order to supplement, requiring Defendant to provide biographical information about its timekeepers. (*See* ECF 453, Order.) On October 17, 2025,

Defendant provided the required information. (*See* ECF 454, Supplemental Decl. of Damien Marshall ("Supp. Decl."); ECF 454-1, Ex. 4 Biographical Information.) On October 29, 2025, Plaintiff filed a letter-motion requesting leave to respond to Defendant's supplemental filing. (*See* ECF 455, Pl.'s Letter-Mot.) I granted Plaintiff's letter-motion. (*See* ECF 456.) On October 30, 2025, Defendant filed a letter-motion requesting leave to respond to Plaintiff's additional submission. (*See* ECF 457, Def.'s Letter Mot.) I granted the request. (*See* ECF 459.) On October 30, 2025, Plaintiff filed a letter in response to the Defendant's supplemental filing. (*See* ECF 458.) On October 31, 2025, Defendant filed a letter in response to Plaintiff's letter. (*See* ECF 460.)

## Legal Standards

"After concluding a party is entitled to attorneys' fees, a court determines the presumptively reasonable fee to which that party is entitled by multiplying a reasonable hourly rate for each attorney by the reasonable number of hours he or she expended on the case." *Capitol Records, LLC v. ReDigi Inc.*, No. 12-CV-0095 (RJS), 2022 WL 3348385, at *1 (S.D.N.Y. Aug. 12, 2022) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 189–90 (2d Cir. 2008)).[2] Where, as here, the fee award involves a sanctions motion for spoliation, the Court has discretion to award attorneys' fees "to the extent reasonable to address any prejudice caused by the spoliation." *Lokai Holdings LLC v. Twin Tiger USA LLC*, No. 15-CV-9363 (ALC) (DF), 2018 WL 1512055, at *9 (S.D.N.Y. Mar. 12, 2018); *see also CAT3*, *LLC v. Black Lineage, Inc.*, 164 F. Supp. 3d 488, 499 (S.D.N.Y. 2016). Courts have awarded substantial

---

[2]    Unless otherwise indicated, this opinion and order omits internal quotation marks, citations, and alterations from quoted text.

fees for spoliation when the work to discover and prove the spoliation required many attorney hours. *See, e.g., CBF Industria de Gusa S/A v. AMCI Holdings, Inc.*, 342 F.R.D 84, 94-95 (S.D.N.Y. 2022) (granting attorneys' and expert fees of $872,558 for nearly 900 hours of attorney work leading to an award to plaintiffs of sanctions under Rule 37(e)(1)).

"The presumptively reasonable fee, also known as the lodestar, is the product of a reasonable hourly rate and the reasonable number of hours required by the case." *Olaechea v. City of New York,* No. 17-CV-4797 (RA), 2022 WL 3211424, at *13 (S.D.N.Y. Aug. 9, 2022) (quoting *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011)). A reasonable hourly rate is determined based on "the rate prevailing in the relevant community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Olaechea,* 2022 WL 3211424, at *13 (quoting *Farbotko v. Clinton County of N.Y.*, 433 F.3d 204, 208 (2d Cir. 2005)).

"[T]he presumptively reasonable fee should be what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively." *Mason Tenders Dist. Council Welfare Fund v. Gibraltar Contracting, Inc.*, No. 18-CV-3668 (MKV) (JLC), 2020 WL 5904357, at *2 (S.D.N.Y. Oct. 6, 2020), *adopted by* 2020 WL 6363960 (Oct. 29, 2020). To assess reasonableness of the fee, courts consider, among other factors: the time required; the difficulty of the issues and skill required; counsel's customary hourly rate and counsel's experience and reputation; the amount in controversy and the results obtained; the nature of the professional relationship with the client; and awards in similar cases. *See Arbor Hill*, 522 F.3d at 186 n.3.

Where, as here, a party is awarded attorneys' fees pursuant to Rule 37(e)(1), the amount awarded is tied to the fees incurred as a direct result of the spoliation. *See Aquino by*

*Convergent Distribs. of Texas, LLC v. Alexander Cap., LP*, 708 F. Supp. 3d 495, 513-14 (S.D.N.Y. 2023) (granting an award of excess attorney's fees to cure the prejudice directly caused by the spoliation); *In re NTL, Inc. Sec. Litig.*, 244 F.R.D. 179, 201 (S.D.N.Y. 2007) (explaining that the dual purpose of awarding attorneys' fees as a sanction for spoliation is to deter the conduct and make "the opposing party whole for costs incurred as a result of the spoliator's wrongful conduct"); *Taylor v. City of New York*, 293 F.R.D. 601, 616 (S.D.N.Y. 2025) (awarding reasonable attorneys' fees and costs related to a spoliation motion).

"[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). Requested fees "must be supported with contemporaneous time records establishing for each attorney for whom fees are sought, the date on which work was performed, the hours expended, and the nature of the work done." *Olaechea*, 2022 WL 3211424, at *13 (quoting *Abdell v. City of New York*, No. 05-CV-8453 (RJS), 2015 WL 898974, at *2 (S.D.N.Y. Mar. 2, 2015)); *see also N.Y. State Ass'n for Retarded Children, Inc. v. Carey,* 711 F.2d 1136, 1147-48 (2d Cir. 1983) (holding that "[c]ontemporaneous time records are a prerequisite for attorney's fees in this Circuit" and that such records "should specify, for each attorney, the date, the hours expended, and the nature of the work done"). "Counsel are not required to record in great detail how each minute of their time was expended," but "should identify the general subject matter of their time expenditures." *Mason Tenders*, 2020 WL 5904357, at *2 (quoting *Hensley*, 461 U.S. at 437 n.12).

As a starting point for the analysis of the reasonableness of attorneys' fees, courts must consider the Supreme Court's guidance that:

> [t]rial courts need not, and indeed should not, become green-eyeshade
> accountants. The essential goal in shifting fees (to either party) is to do rough
> justice, not to achieve auditing perfection. So trial courts may take into account
> their overall sense of a suit, and may use estimates in calculating and allocating an
> attorney's time.

*Fox v. Vice*, 563 U.S. 826, 838 (2011). In considering the reasonableness of a fee application, a court may consider whether an adversary's litigation tactics affected the amount of work required. *See, e.g., Knox v. Varvatos Enters. Inc.*, 520 F. Supp. 3d 331, 347 (S.D.N.Y. 2021) (explaining that the defendant's conduct had "unnecessarily increased the number of hours [the plaintiff] had to expend"), *aff'd sub nom. Chaparro v. John Varvatos Enters., Inc.*, No. 21-446-CV, 2021 WL 5121140 (2d Cir. Nov. 4, 2021); *Alicea v. City of New York*, 272 F. Supp. 3d 603, 612 (S.D.N.Y. 2017) (considering, in determining the reasonableness of the plaintiff's attorneys' fees, the defendants' conduct, which "lengthened discovery and needlessly caused [opposing counsel] to expend more hours litigating this case").

"If a court finds that the fee applicant's claim is excessive, or that time spent was wasteful or duplicative, it may decrease or disallow certain hours or, where the application for fees is voluminous, order an across-the-board percentage reduction in compensable hours." *Bentley Labs. LLC v. TPR Holdings LLC*, No. 14-CV-6306 (HBP), 2017 WL 4326536, at *2 (S.D.N.Y. Sept. 28, 2017); *see also New York Youth Club v. Town of Harrison*, No. 12-CV-7534 (CS), 2016 WL 3676690, at *2 (S.D.N.Y. July 6, 2016) (explaining that courts may use their discretion "to trim the fat from a fee application"); *CBF Industria de Gusa*, 342 F.R.D. at 87 (explaining that requested fees must be reasonable, based on a reasonable hourly rate and reasonable number of hours); *Congregation Rabbinical College of Tartikov, Inc. v. Village of Pomona*, 188 F. Supp. 3d 333, 340-41, 344 (S.D.N.Y. May 25, 2016) (reducing the award of attorneys' fees for spoliation

sanctions where the Court found, among other things, that the hours spent were excessive given the scope and complexity of the issue).

Courts may order reductions for, among other infirmities in the billing records, "block billing," which is "the practice of aggregating multiple tasks into one billing entry." *LBBW Luxemburg S.A. v. Wells Fargo Sec. LLC*, No. 12-CV-7311 (JPO) (KNF), 2016 WL 5812105, at *8 (S.D.N.Y. Sept. 22, 2016). Courts generally "order[ ] such reductions . . . only where there was evidence that the hours billed were independently unreasonable or that the block-billing was mixing together tasks that were not all compensable, or not all compensable at the same rate." *Raja v. Burns*, 43 F.4th 80, 88-89 (2d Cir. 2022). Block billing is "most problematic where large amounts of time (*e.g.*, five hours or more) are block billed"; and where the lack of specificity "meaningfully clouds a reviewer's ability to determine the projects on which significant legal hours were spent," such as where "the billing records are so voluminous that it would be difficult for the court to parse the block-billed entries individually to determine to what extent the time was reasonably billed" and where the record contains indicia of "fat to trim within the block-billed entries." *Id.* at 89-90.

## Analysis

Defendant argues that it took substantial effort over seven months to obtain the relief ordered by this Court in its July 23, 2025 order granting spoliation sanctions. (*See* ECF 446, Def.'s Mem. at 5.) Defendant asserts that the work performed over those seven months included: (1) preparing for and attending three Court appearances (*see* ECF 198, 222, 324); (2) drafting seven substantive written submissions, including a pre-motion letter (ECF 194), a legal memorandum (ECF 254) and reply memorandum (ECF 303), and a post-hearing brief (ECF 342); (3) overseeing

the work of an expert witness, Philip Favro, who is an electronic discovery consultant (ECF 257, Favro Decl.); and (4) pursuing and analyzing discovery from Plaintiff and third parties concerning the spoliation (ECF 255, 304, 343). *See id.* at 5-6.[3]

Plaintiff counters that: (1) Defendant's counsel's hourly rates are unreasonable; (2) Defendant failed to achieve case-terminating sanctions; (3) Defendant relied on senior lawyers for work that could have been performed by junior lawyers or paralegals; (4) Defendant failed to maintain contemporaneous records and improperly based their fee request on block-billed, vague, and internally inconsistent time entries, including entries that seem unrelated to the sanctions motion; (5) Defendant may not have paid the fees incurred; and (6) the costs are excessive. (*See* ECF 448, Pl.'s Opp.) Plaintiff requests that Defendant's Fee Motion should be denied in its entirety as "implausible" and "unreasonable," arguing that it was excessive for Defendant's counsel to have billed over $100,000 for the pre-motion conference letter, about $75,000 for the first hearing, more than $550,000 for the second and third hearings, almost $300,000 on briefing the Spoliation Motion, and over $400,000 on miscellaneous tasks. (*Id.* at 2-5.)[4]

---

[3]    Defendant has provided a detailed chronology of its work, including work relating to the Spoliation Motion but for which it is not seeking fees. (*See* ECF 447-1, Billing Spreadsheet.)

[4]    Plaintiff describes its methodology for these calculations. (*See* ECF 448, Pl.'s Opp. at nn.2-11.) I was able to replicate in substantial part the calculation of fees for work on the first hearing and for briefing on the Spoliation Motion, but my calculation of the fees on the work related to the pre-hearing conference was approximately $36,000 (compared to the more than $100,000 calculated by Plaintiff); my calculation of the fees for the work on the second and third hearings was approximately $600,000 (compared to the $550,000 calculated by Plaintiff); and I was unable to replicate Plaintiff's calculation of over $400,000 on miscellaneous tasks.

In the alternative, Plaintiff argues that any fee award should be stayed as an exercise of the Court's inherent power and in the interest of justice, or that the billing rates for Defendant's counsel should be reduced to the minimum end of the applicable range and the hours spent be reduced by 95%, which Plaintiff says would lead to an award of $17,660 in fees and $27,878 in costs (*see id.* at 25). I have not replicated those calculations.

I.      **Reasonableness of Defendant's Counsel's Hourly Rates**

An attorney's reasonable hourly rate is determined according to "the prevailing rates in the community for similar services by lawyers with similar skill, experience, and reputation." *Sullivan as Tr. of Stone Setters Local 84 Pension Fund, Annuity Fund, Vacation Fund, Apprentice Fund, & Indus. Promotion Fund v. Prestige Stone & Pavers Corp.*, No. 16-CV-3348 (AT) (DF), 2020 WL 2859006, at *11 (S.D.N.Y. Feb. 4, 2020), *adopted by* 2020 WL 1528117 (Mar. 30, 2020); *see also CBF Industria de Gusa*, 342 F.R.D. at 88. In determining whether the hourly rates requested by a party are reasonable, courts conduct a case-specific inquiry. *See Danaher Corp v. Travelers Indem. Co.*, No. 10-CV-0121 (JPO) (JCF), 2014 WL 4898754, at *2 (S.D.N.Y. Sept. 30, 2014). The requesting party must provide evidence that the requested rates are in line with those prevailing in the community, including but not limited to the firm's customary rates, the amount actually paid by clients, the years and types of experience of particular attorneys, and the nature and difficulty of the case or question presented. *See id.* at *2-3; *see also Wells Fargo Trust Co., N.A. v. Fast Colombia S.A.S.,* No. 23-CV-603 (PGG) (RWL), 2023 WL 8591953 at *6 (S.D.N.Y. Oct. 16, 2023) (discussing the various types of evidence courts consider when assessing the reasonableness of hourly rates).

Although courts may take "judicial notice of the rates awarded in prior cases and the court's own familiarity with the rates in the prevailing district," the requesting party must furnish the court with evidence to support their specific hourly rates and their attorneys' fees requests. *See Danaher Corp.*, 2014 WL 4898754 at *2 (quoting *Farbotko v. Clinton County*, 433 F.3d 204, 209 (2d Cir. 2005)). Where the requesting party fails to provide satisfactory evidence to support their hourly rates, courts have reduced fee awards, and in some instances, refused to award fees altogether. *See, e.g., Wells Fargo Trust*, 2023 WL 8591953, at *7-8, 10 (reducing requested hourly rates by 20% where the requesting party failed to provide "the most basic information necessary to assess the reasonableness of rates: the years of experience of the particular attorneys and the type of experience they have had"); *Zero Carbon Holdings, LLC v. Aspiration Partners, Inc.,* 23-CV-5262 (LJL), 2024 WL 3409278, at *7 (S.D.N.Y. July 15, 2024) (refusing to award attorneys' fees for the three partners and two counsel about whom the requesting party provided no background information or any justification for their involvement when there were other lawyers who had previously been staffed on the matter); *Charlestown Cap. Advisors, LLC v. Acera Junction, Inc.*, No. 18-CV-4437 (JGK) (BCM), 2021 WL 1549916, at *3 (reducing hourly rates where the party failed to provide evidence of the experience and skills (beyond years of practice and title) of the attorneys for whom it sought fees).

Plaintiff is correct that Defendant initially failed to supply the requisite biographical information. (*See* ECF 448, Pl.'s Opp. at 20.) However, in response to an order to supplement (ECF 453), Defendant provided the required information (ECF 454). Plaintiff argues that the biographical information provided is inadmissible, reflects that Defendant's lawyers were complex commercial litigators who are overqualified for this case, and omits data on the

lawyers' comparable rates in similar cases; Plaintiff therefore urges the Court to deny or significantly reduce the fees requested. (*See* ECF 458, Pl.'s Letter at 1.) Defendant responds that Courts in this District routinely rely on attorney biographies such as those provided in the Supplemental Declaration and that this matter began as a complex commercial case alleging ten causes of action against multiple corporate entities and representatives. (*See*  ECF 460, Def.'s Letter.) Defendant has the better of the argument that the courts routinely assess the reasonableness of fees based on biographies taken from firm websites. I therefore decline to reduce the fees sought on the ground that Defendant failed to provide the background information on the timekeepers necessary to support the hourly rates. *See Danaher Corp. v. Travelers Indem. Co.*, No. 10-CV-0121 (JPO) (JCF), 2015 WL 409525, at *4-5 (S.D.N.Y. Jan. 16, 2015) (declining to reduce attorneys' fee award after information about timekeepers' experience and qualifications provided to the Court in supplemental declarations supported the rates requested), *as amended,* 2015 WL 417820 (S.D.N.Y. Jan. 29, 2015), *report and recommendation adopted,* 2015 WL 1647435 (S.D.N.Y. Apr. 14, 2015).

I also decline to reduce the requested hourly rate on the ground that Defendant's lawyers were overqualified for the work they did. As Defendant points out, the case began as a complex commercial litigation; it would have been inefficient to switch lawyers because the surviving claims sound in tort. It is true that, where attorneys' fees are awarded in response to spoliation sanctions or discovery disputes, rather than novel or complex dispositive motion practice or trials, Courts in this District have reduced the hourly rates. *See, e.g., Karsch v. Blink Health Ltd.*, No. 17-CV-3880 (VM) (BCM), 2019 WL 6998563, at *3-4 (S.D.N.Y. Dec. 20, 2019) (reducing the hourly rates sought where the fee award arose "out of a discovery dispute that in

the Court's view, did not present particularly novel or complex issues of fact or law"); *S.E.C. v. Yorkville Advisors, LLC*, No. 12-CV-7728 (GBD) (HBP), 2015 WL 855796, at *18-19 (S.D.N.Y. Feb. 27, 2015) (same); *Charlestown Cap. Advisors*, 2021 WL 1549916, at *4 (S.D.N.Y. April 20, 2021) (same); *cf. In re Terrorist Attacks on Sept. 11, 2001*, No. 03-MDL-1570 (GBD) (FM), 2015 WL 6666703, at *7 (S.D.N.Y. Oct. 28, 2015) (declining to reduce the attorneys' hourly rates for discovery motion practice raising civil procedure issues with which every litigator is expected to be familiar where the proceedings were extremely complex). Here, however, while the legal issues raised by the Spoliation Motion were not extremely complex, the factual issues – particularly the analysis of thousands of pages of AT&T records – were sufficiently complex that a reduction in hourly rates is not warranted on that basis. *See In re Terrorist Attacks on Sept. 11, 2001*, 2015 WL 6666703, at *7.

Defendant seeks reimbursement for the work of the timekeepers set forth below:[5]

| Attorneys | | | |
|---|---|---|---|
| **Name** | **Position** | **Hourly Rate** | |
| | | **2024** | **2025** |
| Ronni Solomon | Partner | $978 | N/A |
| Randy Mastro | Partner | $1,709 | $1,709 |
| Jessica Benvenisty | Partner | $1,250 | $1,250 |
| Damien Marshall | Partner | N/A | $1,641 |
| John Goodwin | Counsel | $1,237 | $1,441 |
| Lauren Myers | Senior Associate | $1,016 | N/A |
| Lilian Klatskin | Associate | $706 | $888 |
| Sarah Moseley | Associate | $918 | $1,135 |
| Maria Henain | Associate | $765 | N/A |
| Scott Lucas | Associate | $451 | $650 |
| Martha Strautman | Law Clerk | $672 | $782 |
| Aldo Paredes | Managing Attorney | $621 | $718 |
| Thomas McCall, Jr. | Staff Attorney | $298 | $374 |

---

[5]     These hourly rates are taken from Defendant's Billing Spreadsheet (ECF 447-1).

15

| Other Professionals | | | |
|---|---|---|---|
| **Name** | **Position** | **Hourly Rate** | |
| | | **2024** | **2025** |
| Dan Handley | Paralegal | $336 | N/A |
| Kathleen Noebel | Paralegal | $591 | $650 |
| Yancy Fleetwood | Paralegal | N/A | $599 |
| Jeremy Taylor | Librarian | $391 | N/A |
| Bill Dukes | Litigation Support | N/A | $472 |
| Jeanine Schroer | Litigation Support | N/A | $472 |
| Christie Acciarri | Technology/Trial Support | $213 | N/A |

In 2024, the hourly rates for partners and counsel ranged from $978 to $1709; the hourly rates for associates (including law clerks, staff attorneys, and managing attorneys) ranged from $298 to $1016; and the hourly rates for paralegals and other professionals ranged from $213 to $591. In 2025, the hourly rates for partners and counsel ranged from $1250 to $1709; the hourly rates for associates ranged from $374 to $1135; and the hourly rates for paralegals and other professionals ranged from $472 to $650. I am unpersuaded by Plaintiff's suggestion that Defendant's failure to disclose the hourly rates charged by its timekeepers in comparable cases warrants reducing the rates. I am familiar with hourly rates for lawyers in similar cases in this District. The rates for Defendant's lawyers are on the high side but are roughly comparable to the rates at similarly sized firms in New York City that have recently been found reasonable by this Court. *See, e.g., An v. Despins*, No. 22-CV-10062 (VEC) (JW), 2024 WL 1157281, at *2-4 (S.D.N.Y. Mar. 18, 2024) (approving hourly rates of up to $895 for associates and up to $1,990 for partners), *appeal dismissed*, No. 24-914, 2024 WL 4524742 (2d Cir. Aug. 13, 2024).

By contrast, the hourly rates sought by Defendant for paralegals and other support staff are well above the range. *See, e.g., Carrington v. Garden*, No. 18-CV-4609 (KPF), 2020 WL 5758916, at *14 (S.D.N.Y. Sept. 28, 2020) (finding that courts typically cap paralegal rates at $200 per hour even for experienced paralegals); *Vista Outdoor Inc. v. Reeves Fam. Tr.*, No. 16-CV- 5766 (JSR), 2018 WL 3104631, at *7 (S.D.N.Y. May 24, 2018) (reducing hourly rates of paralegals with less than ten years' of relevant professional experience to $150 per hour and paralegals with more than ten years of relevant experience to $200 per hour); *Zero Carbon Holdings, LLC*, 2024 WL 3409278, at *8 (collecting cases in this District where paralegal rates were reduced to $125 or $150 per hour where there was no particular skill, training or experience to justify those rates).

Based on the analysis above, I conclude that the hourly rates for Defendant's lawyers are reasonable, but I cap the hourly rate for paralegals and other professionals at $200. The fees attributable to those timekeepers are adjusted as follows:

| Name | Reasonable Hourly Rate | Hours Worked[6] | Reasonable Fee (Hours Worked x Reasonable Hourly Rate) |
|---|---|---|---|
| Dan Handley | $200 | 0.7 | $140 |
| Kathleen Noebel | $200 | 27.8 | $5,560 |
| Yancy Fleetwood | $200 | 1.2 | $240 |
| Jeremy Taylor | $200 | 0.2 | $40 |
| Bill Dukes | $200 | 2 | $400 |
| Jeanine Schroer | $200 | 1.2 | $240 |
| Christie Acciarri | $200 | 6 | $1,200 |
| **TOTAL** | | **39.1** | **$7,820.00** |

---

[6]     For the reasons set forth in Part II below, I do not reduce the hours worked by any paralegals or other non-lawyer professionals.

The fees requested by Defendant for these timekeepers was $21,170.80. (*See* ECF 447-1, Billing Spreadsheet). Based on my reduction, Defendant's total fee request for attorneys and other professionals of $1,478,154.85[7] is reduced to $1,464,804.05.

## II.    Reasonableness of the Hours Spent by Defendant's Counsel on the Sanctions Motion

### A.    Defendant Largely Succeeded on the Sanctions Motion

Plaintiff argues that Defendant's fee request is excessive because the spoliation motion sought case-ending sanctions, which the Court declined to impose, ruling instead that it would permit Defendant to present evidence at trial on Plaintiff's spoliation, issue an adverse-inference instruction, and require Plaintiff to pay Defendant's reasonable attorneys' fees for the spoliation motion (*See* ECF 448, Pl.'s Opp. at 14); Plaintiff contends that this outcome is not "worth" Defendant's requested fee of approximately $1.5 million. (ECF 448, Pl.'s Opp. at 13.) I disagree.

Defendant was largely successful on the sanctions motion. The Court concluded that Plaintiff had spoliated evidence and therefore issued significant sanctions against Plaintiff: permitting Defendant to present evidence at trial relating to the spoliation; expressing an intention to provide an adverse-inference instruction at trial; and awarding reasonable attorneys' fees and costs to Defendant. (*See* ECF 439, Op. & Order at *10-11, 14.) The Court declined to dismiss the case because "dismissal is a drastic remedy that should be imposed only in extreme circumstances, usually after consideration of alternative, less drastic sanctions,"

---

[7]    My calculation of $1,478,154.85 for these fees differs from Defendant's calculation $1,483,903.00 due to Defendant's practice of rounding the amount of time spent on spoliation-related issues up to the nearest tenth of an hour.

concluding that "an adverse-inference instruction is a less drastic sanction that appropriately addresses the evidentiary gap caused by [Plaintiff's] loss of his text messages." (*Id*. at *14.) That the Court opted to impose a less extreme sanction closely tailored to the harm caused by the spoliation does not mean that Defendant's sanctions motion was unsuccessful. *See, e.g., Knox*, 520 F. Supp. 3d at 345 (pointing to "Second Circuit case law holding that the reasonableness of hours claimed is not judged on whether hindsight vindicates an attorney's time expenditures, but whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures" and ruling that an attorney's time spent on an unsuccessful motion, where reasonably pursued for defendant, does not by itself justify a reduction in fees for that motion).

Moreover, Defendant made the same arguments in favor of case-terminating sanctions that it would necessarily have made in favor of an adverse inference-instruction and a grant of attorneys' fees: that Plaintiff failed to take reasonable steps to preserve the text messages; that the messages were impossible to restore or replace through additional discovery; that Defendant was prejudiced by this loss of information; and that Plaintiff acted with intent to deprive Defendant of his text messages. (*See* ECF 439, Op. & Order at 5-14.) Defendant therefore needed to perform the same work to support a request for case-terminating sanctions as to obtain an adverse-inference instruction and a grant of attorneys' fees. Accordingly, this is not a situation where the fees for work on the request for case-terminating sanctions can be segregated and deducted from the fees for work on the request for an adverse-inference instruction and attorneys' fees. *See Dominic v. Consolidated Edison Co. of New York, Inc.*, 822 F. 2d 1249, 1259-1260 (2d Cir. 1987) (declining to reduce an attorneys' fee

award for partial success where successful and unsuccessful claims were "substantially intertwined"); *Auscape Int'l v. Nat'l Geographic Soc'y,* No. 02-CV-6441 (LAK) (HBP), 2003 WL 21976400, at *7 (S.D.N.Y. Aug. 19, 2003) (declining to reduce an award of attorneys' fees following a successful sanctions motion where the moving party sought sanctions on different theories, "some of which were successful, some of which were not," where "the theories underlying [the moving party's] application for sanctions were inextricably intertwined and involved a common core of facts and were based on related legal theories")*, report and recommendation adopted,* 2003 WL 22244953 (S.D.N.Y. Sept. 29, 2003). For all these reasons, I decline to find that Defendant's Fee Motion should be denied or the fees reduced on the ground that the Fee Motion was unsuccessful.

      B.    <u>Plaintiff's Litigation Approach Contributed to the Work Required of Defendant</u>

Defendant argues that it had to spend additional time and resources investigating Plaintiff's spoliation because the efforts by Plaintiff's counsel to investigate the spoliation were inadequate, meaning that Defendant's counsel had to undertake tasks that should have been performed by Plaintiff's counsel and because Plaintiff and his counsel provided Defendant with incorrect information relevant to the spoliation. (*See* ECF 446, Def.'s Mem. at 9-12.) As Defendant puts it, Plaintiff "cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the [defendant] in response." (*Id.* at 12 (*quoting City of Riverside v. Rivera*, 477 U.S. 561, 580 n.11 (1986)).)

Defendant is correct that the conduct of a spoliating party can be a key factor in an assessment of the reasonableness of the hours spent in pursuing spoliation sanctions. *See Google, LLC v. Starovikov*, No. 21-CV-10260 (DLC), 2023 WL 2344935, at *3 (rejecting the

defendants' argument that the plaintiff's fee request was excessive when the defendants' actions contributed to the amount of work required of plaintiff's counsel); *Abraham v. Leigh*, No. 17-CV-5429 (KPF), 2020 WL 5512718, at *12 (S.D.N.Y. Sept. 14, 2024) (finding that the plaintiff's sanctionable conduct "lengthened the case for all parties involved; it necessitated expert investigation and substantial motion practice; and it elevated the costs to [the] [d]efendant").

Having reviewed the docket entries related to the Spoliation Motion, I agree that Plaintiff's behavior – including his lack of cooperation in obtaining the deleted messages and incorrect statements about his texting patterns and timing of and reasons for his phone upgrades – and Plaintiff's counsel's behavior – including a failure to perform an appropriate investigation, which led to counsel's providing incorrect information to Defendant about Plaintiff's cell carrier and type of phone and an incomplete list of individuals with whom Plaintiff texted – contributed to the amount of work required of Defendant's counsel to uncover the spoliation, which undercuts Plaintiff's argument that Defendant spent excessive time on the spoliation motion. (*See* ECF 439, Op. & Order; ECF 446, Def.'s Mem. at 1-2; *see generally* ECF 447, Marshall Decl.)

C.    Defendant's Staffing Was Reasonable

Plaintiff argues that Defendant used senior lawyers to perform tasks that could have been handled by junior lawyers or paralegals, providing statistics on the percentage of hours and percentage of dollars billed by partners and counsel as opposed to associates, law clerks,

and paralegals or support staff. (*See* ECF 448, Pl.'s Opp. at 10-12.)[8] Defendant counters that the complexity of the work required experienced lawyers. (*See* ECF 446, Def.'s Mem. at 12-13.) Defendant also argues that, because it did not add lawyers to the team for the spoliation sanctions motion and litigated that motion simultaneously with the rest of the case, it necessarily had to rely on more senior lawyers for certain tasks. (*See id.*)[9]

Although the Spoliation Motion did not present novel or complex issues of law, the Spoliation Motion required extensive factual development, including third-party subpoenas and analysis of over ten thousand pages of cellphone records, retention of an electronic discovery expert, and seven written submissions to the Court (*see* ECF 194, Def.'s Letter; ECF 197, Def.'s Letter; ECF 254, Def.'s Mem.; ECF 265, Def.'s Letter-Mot.; ECF 303, Def.'s Reply Mem.; ECF 315, Def.'s Letter-Mot.; ECF 342, Def.'s Mem.); and three Court appearances. Judge Sullivan's decision on the Spoliation Motion was fairly lengthy – 15 single-spaced pages. (ECF 439, Op. & Order.) These circumstances, taken together, lead me to conclude that Defendant's staffing on the

---

[8]    Plaintiff calculates that paralegals and support staff billed about 3% of the total hours included in the Fee Motion; that partners and counsel billed about 49% of total hours included in the Fee Motion; and that associates and law clerks billed about 45% of the total hours included in the Fee Motion. (*See* ECF 448, Pl.'s Opp. at 10.) (These percentages sum to only 97%. My replication of these calculations led to similar percentages that sum to 100%.) Plaintiff further breaks down the allocation of work by task, calculating that partners and counsel billed about: 78% of the hours spent on the initial pre-motion conference letter; 58% of the hours spent on the first hearing; 58% of the hours spent on the second hearing; 46% of the hours spent on the third hearing; and 45% of the time spent on the final briefing. (*See id.* at 11.) I believe these calculations are flawed at a minimum because Plaintiff did not include any post-hearing work in the time spent on the hearings. (*See id.* at 4 nn.3-7.)

[9]    Defendant states that "at the relevant times," its "core litigation team" consisted of two partners, one counsel, and three associates, but Defendant does not define what times were relevant. (ECF 446, Def.'s Mem. at 13.) Defendant "actively engaged in investigating and uncovering Oakley's spoliation" from August 22, 2024 to March 28, 2025 (*id.* at 11), and so I assume that to be the relevant period.

spoliation motion was generally reasonable. *See Karsch*, 2019 WL 6998563, at *7 (finding that the defendant's staffing of two partners, one sixth-year associate, and one third-year associate on fact discovery was reasonable where the sanctions motion "require[d] close analysis of a large number of related issues, arising over a period of more than three years, and ultimately resulted in a 56 page Memorandum and Order").

However, when the Defendant's team was at its largest, from November 20, 2024 to December 18, 2024, Defendant's counsel had one additional partner, two additional associates, a law clerk, and a staff attorney (beyond the core litigation team) working on the matter. (*See* ECF 447-1, Billing Spreadsheet at 13-24.) These additions undercut Defendant's argument that because it did not supplement its core litigation team to work on the Spoliation Motion, it was necessary for fairly senior lawyers to perform all types of work. In light of the number of entries on the Billing Spreadsheet and counsel's practice of block billing, rather than reducing rates for more senior lawyers when they did work that could have been performed by someone less experienced, I address this issue by making an across-the-board reduction in fees in connection with my assessment of block-billed time entries. *See infra* Part II.D.2.

> D.     Defendant's Billing Records Have Deficiencies

I turn next to whether the billing records for Defendant's counsel permit me to meaningfully assess the reasonableness of the tasks performed and time spent. Plaintiff complains that the billing entries are impermissibly vague and contain improper block billing, which he says makes it impossible to appropriately evaluate the fees sought. (*See* ECF 448 Pl.'s Opp. at 8-10.)

1.     Vague Billing Entries

Plaintiff complains of two distinct types of vague time entries – entries where the descriptions do not adequately describe the nature of the work and entries that are not clearly related to the spoliation sanctions motion. (*See id.* at 8-9.)

a.   *Inadequate Descriptions*

As to the first category, Plaintiff says that Mr. Mastro "billed $178,729 for entries that include the impossible-to-assess phrase work on" and that "[o]ther courts have recently noted that Mastro's entries for work on matters are impermissibly vague." (*Id.* at 8 (citing *Chrysafis v. Marks*, No. 21-CV-2516 (GRB) (AYS), 2023 WL 6158537, at *8 (E.D.N.Y. Sept. 21, 2023), which explained a 40% cut in the fee award as due to Mastro's billing for "work on" the case).) Plaintiff notes that Ms. Myers similarly billed $18,079 for "attending to" tasks, such as "attend to research," and that Henain, Klatskin, and Moseley billed $40,664 for "undefined coordination tasks." (*Id.* at 8-9.)

Having reviewed the 45-page Billing Spreadsheet, I agree that Mr. Mastro's entries for "work on discovery regarding spoliation" (or variations of that formulation) – which make up about 40% of his entries – are too vague to allow me to assess whether these entries provide sufficient information on the work performed to assess whether the tasks described are compensable and whether the time spent on them was reasonable. Accordingly, I reduce the fee requested for his work by 40%. Because Mr. Mastro clearly performed a significant quantum of work for Defendant, I will only reduce his fee by an additional ten percentage points for other vague entries and will award Defendant half the $243,763.00 fee sought for work done by Mr. Mastro, which is $121,881.50.

Plaintiff criticizes Ms. Myers' billing for "attending to" various tasks. (ECF 448, Pl.'s Opp. at 8.) However, it is clear that "attending to" emails reflects reading and responding to emails that, as the entries reflect, concerned the Spoliation Motion. (*E.g.*, ECF 447-1, Billing Spreadsheet at 1, 3, 5, 7, 8, 11.) Similarly, Plaintiff questions Ms. Benvenisty's use of the term "correspondence" (*see* ECF 448, Pl.'s Opp. at 9), but it appears evident from the context that Ms. Benvenisty used the term as a shorthand for written discussions, and the entries indicate those discussions involved the Spoliation Motion.  (*See, e.g.,* ECF 447-1, Billing Spreadsheet at 1-2.)

I conclude that other than Mr. Mastro's billing records for work on spoliation, Defendant's time entries contain sufficient information for me to meaningfully assess the entries. *See, e.g., Barclays Cap. Inc. v. Theflyonthewall.com,* No. 06-CV-4908 (DLC), 2010 WL 2640095, at *5 (S.D.N.Y. June 30, 2010) (explaining that the relevant question in assessing time records is whether the entries enable the Court to evaluate the reasonableness of the work performed and that entries for a lengthy file review need not detail the precise files reviewed); *Reynolds v. Goord*, No. 98-CV-6722 (DLC), 2001 WL 118564, at *3 (S.D.N.Y. Feb. 13, 2001) (explaining that there is no requirement to itemize the time within block-billed entries as long as all the work is compensable, but if any of the work within a block-billed entry is not compensable or if the total the amount claimed is unreasonable, the failure to itemize may leave the applicant with no way to allocate and salvage some of the time charges); *Bd. of Trs. of 1199/SEIU Greater N.Y. Benefit Fund v. Amboy Care Ctr., Inc.,* No. 20-CV-6932 (DLC), 2022 WL 3974414, at *2 (S.D.N.Y. Sept. 1, 2022) (concluding that challenged time records were "sufficiently detailed to permit assessment" of whether the work was compensable).

*b. Work Unrelated to the Spoliation Motion*

As to the second category, Plaintiff points to billings of approximately $73,000 for work he says was unrelated to the spoliation sanctions motion, consisting of around: (1) $25,000 for work on "unrelated" letter briefs; (2) $7,000 for compiling media reports; (3) $3,000 for "unrelated" correspondence; (4) 14,000 for filing an "unrelated" joint letter; and (5) $24,000 for work on "unrelated" requests for admission. (*See* ECF 448, Pl.'s Opp. at 8-10.) While I was able to replicate these calculations, the methodology is flawed, in that many of the entries on which Plaintiff bases his figures were block-billed and included descriptions of tasks clearly related to the Spoliation Motion as well as tasks that Plaintiff argues were unrelated.[10] Plaintiff may not ignore that the challenged entries include compensable time when estimating time spent on unrelated tasks.

Moreover, I am not persuaded that all or even most of the tasks Plaintiff singles out are in fact unnecessary for litigating the Spoliation Motion:

- Plaintiff challenges billing for Mr. Mastro's work on letter briefs that Plaintiff says were related to Oakley's PPP loans and the deposition of James Dolan and not to the Spoliation Motion. (*See* ECF 448, Pl.'s Opp. at 8.) But 14 of the 18 entries by Mr. Mastro involving letter briefs link the letter briefs to the Spoliation Motion. (*See, e.g.,* ECF 447-1, Billing Spreadsheet at 11, 31-32, 36.)[11]

---

[10]     For example, Plaintiff argues that Defendant should not receive a fee award for entries mentioning review of media reporting, but several of those entries include descriptions of work that was clearly related to the Spoliation Motion, such as the December 12, 2024 entry by Ms. Henain: "[a]ssist with preparation for and strategize with team on spoliation hearing; review and canvas media reporting for same; review transcript of spoliation hearing." (ECF 447-1, Billing Spreadsheet at 24.)

[11]     For example, on November 16, 2024, Mr. Mastro billed for "work on discovery issues regarding spoliation, letter brief, spoliation hearing prep"; on January 14, 2025, he billed for "[w]ork on letter brief regarding AT&T issue"; and on February 27, 2025, he billed for "[w]ork on

- Plaintiff challenges Defendant's application for fees for work on requests for admission, arguing that these "requests played no part in their spoliation motion." (ECF 448, Pl.'s Opp. at 10.) Plaintiff asks the Court to deny a fee award for entries containing the terms "RFA" or "admission." (*See id*. at 10 n.16.) Yet at least four of the entries in question describe the RFAs as "requests for admission related to spoliation" and at least four entries in question are mentioned in connection with spoliation related tasks. (*E.g.,* ECF 447-1, Billing Spreadsheet at 2.)

- Plaintiff challenges four entries reflecting work on correspondence among Ms. Benvenisty, Mr. Mastro, and Plaintiff's counsel, which Plaintiff asserts are "related to . . . Oakley's deposition and a Rulle 11 Safe Harbor notice by Oakley." (ECF 448, Pl.'s Opp. at 9 n.14.) But my review of the entries in context leads me to conclude that these entries describe work "regarding text message issue,"  "discovery issues," and "letter re sanction." (ECF 447-1, Billing Spreadsheet at 8-9.)

- Plaintiff challenges the entries related to the filing of a "joint letter" on November 22, 2024. (*See* ECF 448, Pl.'s Opp. at 9.) While Plaintiff asserts that this "joint letter had nothing to do with the spoliation issue," a review of the entries Plaintiff cites shows that this letter was to be sent to the Court "in advance of spoliation hearing" regarding "discovery disputes" and "outstanding discovery." (ECF 447-1, Billing Spreadsheet at 11-14.)

Plaintiff similarly complains that Defendant's counsel charged approximately $207,000 for what Plaintiff characterizes as "plainly non-compensable clerical tasks": $24,000 to prepare timelines, $60,000 to prepare exhibits for filings, $60,000 to draft and serve simple uncontested subpoenas, over $40,000 to review transcripts, and $23,000 to oversee filings. (ECF 448, Pl.'s Opp. at 14 (citing *Lilly v. City of New York,* 934 F.3d 222, 234 (2d Cir. 2019)).) As with the prior examples of challenged entries, Plaintiff's calculations are replicable, but they include block-billed entries with clearly relevant tasks in addition to the tasks Plaintiff argues are non-compensable clerical work.

---

letter briefs, experts, sanctions motion, declarations, team meetings regarding same." (ECF 447-1, Billing Spreadsheet at 11, 31, 32, 36.)

Plaintiff's position on clerical work has other problems as well. Much of the work categorized by Plaintiff as clerical is actually legal or factual work. For example, Plaintiff argues that preparing timelines is non-compensable clerical work (*see* ECF 448, Pl.'s Opp. at 14), but creating a timeline of Plaintiff's spoliation was at the heart of the Spoliation Motion and is not properly categorized as clerical work. Similarly, reviewing transcripts, which Plaintiff says is a clerical task (*see id.*), was necessary for the lawyers who formulated, drafted, and presented Defendant's arguments in support of the Spoliation Motion. And contrary to Plaintiff's position, drafting subpoenas should properly be viewed as a legal and clerical task. Only four of the entries challenged by Plaintiff as reflecting clerical work – four instances of overseeing filings by a lawyer (*see id.*; *see also* ECF 447-1, Billing Spreadsheet at 8, 30, 32, 34) – are in fact clerical work.

Additionally, some clerical work is compensable. *See G.B. ex rel. N.B. v. Tuxedo Union Free Sch. Distr.*, 894 F. Supp. 2d 415, 439 (S.D.N.Y. 2012) (discussing tasks such as preparing trial exhibits that are clerical in nature but nonetheless compensable on a fee application); *Lilly,* 934 F.3d at 234 (2d Cir. 2019) (noting that a court may award attorneys' fees for clerical tasks or block-billed entries that include both legal work and clerical tasks); *Raja*, 43 F.4th at 87 (same). When an attorney performs clerical tasks, "[s]uch non-legal work may command a lesser rate [as] [i]ts dollar value is not enhanced just because a lawyer or paralegal does it." *E.g., Lily*, 934 F. 3d at 234 (quoting *Missouri v. Jenkins by Agyei*, 491 U.S. 274 (1989)). To the extent that Plaintiff is arguing that the timekeepers who performed clerical tasks were too expensive or that the cost of the work was otherwise too high, I address that issue in connection with an across-the-board reduction for block billing below. *See infra* Part II.D.2.

The fee requested by Defendant for Mr. Mastro was $243,763.00 (*see* ECF 447-1, Billing Spreadsheet),[12] and I have reduced that fee by half to $121,881.50. Based on this reduction, Defendant's total fee request as reduced for excessive hourly rates for paralegals – $1,464,804.05 – is further reduced to $1,342,922.55.

      2.      Block Billing

Defendant acknowledges that some of its attorney time records were derived from entries that were "block billed" and that to prepare the Fee Motion, attorneys "segregated and identified into individual time entries" the work relevant to spoliation from unrelated work and estimated the amount of time spent on spoliation. (ECF 446, Def.'s Mot. at 15-16.) Plaintiff says that Defendant claims its total request of $1,541,238 reflects 65% of its fee of $2,478,981 for the total hours billed during the relevant period (or a 35% reduction),[13] to exclude time for work that was unrelated to the spoliation sanctions motion. (*See* ECF 448, Pl.'s Opp. at 1-2.) Plaintiff contends that the estimates by Defendant's counsel on which the fee request is based are unreliable, identifying several instances where the billing records for different lawyers are internally inconsistent. (*See* ECF 448, Pl.'s Opp. at 2, 15-16.) Defendant posits that it has accounted for the imprecision by seeking only a portion of the fees billed between August 22, 2024 and March 31, 2025. (*See* ECF 446, Def.'s Mem. at 2, 6-7.) Plaintiff contends that the reduction does not go far enough and that a 95% reduction of the fees sought would be appropriate, although Plaintiff's proposed final amount of $17,660 is a 98.8% reduction of the

---

[12]     This number is the sum of the billed amounts for spoliation-related work from all entries for Mr. Mastro.

[13]     I was unable to replicate these calculations.

requested attorneys' fees. (*See* ECF 448, Pl.'s Opp. at 25.) Defendant counters that many Courts in this District have recognized that block-billed time entries are acceptable if the Court is able to "conduct a meaningful review of the hours" (ECF 446, Def.'s Mem. at 16), arguing that the Court can understand and review the block-billed time entries because Defendant has provided a spreadsheet that breaks out the specific time entries relating to spoliation. (*See id.*)

As to the internal inconsistencies in the Billing Spreadsheet entries, while it is not surprising that different lawyers would spend different proportions of their time on the same projects, depending on the lawyers' levels of involvement, Plaintiff is correct that there are some instances where different lawyers billed different amounts of time for the same meeting.[14] These inconsistencies could be a consequence of Defendant's after-the-fact reconstruction of their billing records to estimate how much time they spent on tasks related to the sanctions motion. But the inconsistencies also could reflect human error in recording time, or that some lawyers did not stay for the entirety of some meetings. I therefore do not see the inconsistencies as inherently problematic. Nonetheless, they do support Plaintiff's core argument in opposition to the Fee Motion – that post hoc estimates of billed time are imprecise (*see* ECF 448, Pl.'s Opp. at 15-17).

In the cases that Defendant cites for the proposition that courts may rely on block-billed time entries, the records contained enough information to allow the Court to conduct a

---

[14]    For example, there appear to be 50 meetings reflected in the Billing Spreadsheet, but on 16 occasions, timekeepers billed different amounts of time for the same team meeting. (*Compare, e.g.,* ECF 447-1, Billing Spreadsheet at 1 (9/23 entry for Myers) *with id.* at 3 (9/23 entries for Benvenisty and Moseley).) And on 26 occasions, only one person billed for an internal meeting that other billing attorneys were said to have attended. (*See id.*)

meaningful review. For example, in *United Stats ex rel. Fox Rx, Inc. v. Omnicare, Inc.*, No 12-CV-0275 (DLC), 2015 WL 1726474 (S.D.N.Y. Apr. 15, 2015), the Court concluded that the block-billed entries were sufficient for the purpose of reviewing the reasonableness of the tasks, not to assess the amount of time attributable to different segments of the block-billed entries. *See Id.* at *3. Here, my review of the Billing Spreadsheet requires me to determine whether the time devoted to particular tasks was reasonable, and approximately 51% of the entries from the Billing Spreadsheet comingle compensable and non-compensable time. (*See, e.g.,* ECF 447-1, Billing Spreadsheet.)

Another case on which Defendant relies, *Independent Project Inc. v. Ventresca Brothers Construction Co.*, 397 F. Supp. 3d 482 (S.D.N.Y. 2019), is similarly distinguishable. The Court there explained that the fee applicant's block billing did not require reducing the fee award because "the block-billed entries [were] broken down into notations of the amount of time spent on each item." *Id.* at 497-98. The billing spreadsheets submitted by Defendant's counsel contain no such embedded time increments. (*See* ECF 447-1, Billing Spreadsheet.)

Defendant also cites *Raja v. Burns*, in which the Second Circuit found that the fee applicant's block billing, without more, did not provide a basis for awarding only 60% of the requested fee where the time entries were not so voluminous as to preclude review by the district court and where there was one attorney-timekeeper only, which reduced the risk that the block billing "obscure[d] redundant or unreasonable billing practices." *Raja,* 43 F.4th at 88-89. By contrast, Defendant's litigation team was composed of multiple lawyers, paralegals, and support staff, all of whom used block billing. (*See* ECF 447-1, Billing Spreadsheet.) As such, the

Billing Spreadsheet submitted by Defendant suggest that there is "fat to trim within the block-billed entries." *Raja,* 43 F.4th at 88-89.

Courts in this District have reduced fee applications based on a failure to submit contemporaneous billing records, awarding within a range spanning nothing to 90% of the requested fee. *See, e.g., Handschu v. Special Services Div.*, 727 F. Supp. 2d 239, 250-51 (S.D.N.Y. 2010) (awarding 90% of the fees requested where the applicant submitted a "compilation of times" using "annual diaries, desk calendars, appointment books, and contemporaneous time records or time slip records"); *Johnson v. Kay*, 742 F. Supp. 822, 836-37 (S.D.N.Y. 1990) (awarding 80% of the requested fee where the movant submitted reconstructed timesheets to clarify deficient contemporaneous records); *Monaghan v. SZS 33 Assocs., L.P.*, 154 F.R.D. 78, 84 (collecting cases in this District where the Court awarded by 80%, 70%, or 65% of the requested fee due to the movant's failure to keep contemporaneous time records); *Charlestown Cap. Advisors*, 2021 WL 1549916, at *5-6 (awarding 50% of the requested fees where two of four attorney timekeepers submitted approximations of their time based on contemporaneous records of their work that did not "necessarily show the exact amount of time specifically spent on certain compensable tasks" but where the fee applicant did not submit the contemporaneous records themselves); *LBBW Luxemburg*, 2016 WL 5812105, at *8-10 (awarding 25% of the requested fees where, among other deficiencies in the fee application, the moving party provided estimates of the time spent on the block-billed sanctions motion without explaining their reasonableness); *In re World Trade Ctr. Disaster Site Litig.*, 105 F. Supp. 3d 413, 416-17 (S.D.N.Y. 2015) (awarding 16% of the requested fees where the applicant submitted a "fee schedule" that was "reconstructed from various documents generated at or around the

time the work was completed"), *aff'd sub nom. Marion S. Mishkin L. Off. v. Lopalo*, 646 F. App'x
49 (2d Cir. 2016); *Scott v. City of New York*, 626 F.3d 130, 132-34 (2d Cir. 2010) (reversing an
award of attorneys' fees where the moving party had maintained "no contemporaneous
records" and the District Court had provided no explanation for excusing the fee applicant from
supporting the fee application with contemporaneous records); *Kottwitz v. Colvin*, 114 F. Supp.
3d 145, 147-48 (S.D.N.Y. 2015) (declining to award any attorneys' fees where the applicant had
conceded that counsel had failed to "maintain contemporaneous time records" and where the
efforts to reconstruct the time entries based on work records were "inadequate").

    The billing by Defendant's counsel is not as flawed as the billing in some cases involving
a failure to submit contemporaneous billing records, where the lawyers appeared to have had
no contemporaneous records at all and reconstructed their time based on their memories and
their work product. *See, e.g., In re World Trade Ctr.*, 105 F. Supp. 3d at 416-17; *Scott*, 626 F.3d at
132-34; *Kottwitz*, 114 F. Supp. 3d at 147-48.

    Defendant's counsel maintained billing records that used block-billed entries. These
records include the total time spent on work, only some of which was relevant to the spoliation
sanctions motion. The Billing Spreadsheet provided by Defendant's counsel includes "the
relevant excerpt of the timekeeper's narrative of work related to Oakley's spoliation for a given
time entry" but excludes the "narrative for work not related to Oakley's spoliation" (ECF 447,
Marshall Decl. at 4.) The Billing Spreadsheet provided by Defendant's counsel therefore has a
slightly stronger foundation than the billing in *Charlestown Capital Advisors.,* where counsel
provided the Court with "a table showing their best approximation of their compensable time
on various days, divorced from their underlying contemporaneous records," which left the Court

without insight into considerations such as what the proportion of the claimed compensable time was relative to the actual record, "what other tasks were originally part of those entries," or whether the submitted descriptions of the work performed had been edited for "purpose[s] of the pending fee application." *Charlestown Cap. Advisors,* 2021 WL 1549916, at *6. Here, the Court sees the full narrative from the contemporaneous time records for those entries that Defendant's counsel says includes only work relating to the spoliation motion.

The Billing Spreadsheet supplied by Defendant's counsel is similar to the records submitted in *LBBW Luxemburg* in that Defendant's counsel has provided estimates of the time spent on the sanctions motion within larger block-billed entries but no explanation why the estimated hours are reasonable. *See* 2016 WL 5812105, at *8-10.

In *Charlestown Capital Advisors,* the Court awarded 50% of the requested fees, because the estimated hours did not, "for the most part, . . . appear facially unreasonable." 2021 WL 1549916, at *6. In *LBBW Luxemburg*, the Court awarded 25% of the requested fees, having concluded that the fee applicant's time records contained numerous time entries reflecting "duplicative and unnecessary work," administrative work," and work by senior attorneys that could have been performed by junior attorneys. 2016 WL 5812105, at *8-10.

Defendant's fee application has similarities to both *LBBW Luxemburg* and *Charlestown Capital Advisors*. As was the case in *Charlestown Capital Advisors,* the estimated times, as a general matter, do not appear to be unreasonable on their face. I have not identified significant instances of duplicative billing or billing for clerical work. However, like the fee applicant in *LBBW Luxemburg,* Defendant seeks some fees for routine tasks performed by fairly senior lawyers, such as when Ms. Benvenisty oversaw filings. (*See* ECF 447-1, Billing Spreadsheet.) But

because such entries constitute a small portion of the Billing Spreadsheet, I will award Defendant 45% of the attorneys' fee requested. Thus, the $1,342,922.55 fee request, as previously reduced to reflect a reasonable hourly rate for work by paralegals and other support staff and to reflect the impermissibly vague billing entries by Mr. Mastro, is further reduced to $604,315.15.

### III.    Defendant Need Not Show that It Paid the Fees Incurred on the Sanctions Motion

Plaintiff also opposes the application for fees because Defendant never states that it actually paid the fees for which it seeks reimbursement. (*See* ECF 448, Pl.'s Opp. at 12.) Plaintiff suggests that Defendant's counsel may have offered a discount or may have waived payment for certain line items because of Defendant's longstanding professional relationship with its counsel. (*See id*.) However, even if attorneys' fees are accrued but not paid, a spoliating party may be required to pay those fees. *See, e.g., Charlestown Capital Advisors*, 2021 WL 1549916 at *5-6 (awarding attorneys' fees, albeit reduced on multiple grounds, even though counsel had not been paid the fees they sought).

The cases on which Plaintiff relies to support his position that Defendant's fee award should be denied because the attorneys' fees were incurred but may not have been paid (*See* ECF 448, Pl.'s Opp at 17) – *Charlestown Capital Advisors* and *Triumph Construction Corp. v. New York City Council of Carpenters Pension Fund,* No. 12-CIV-8297 (KPF), 2014 WL 6879851 (S.D.N.Y. Dec. 8, 2014) – are inapposite. Both *Charlestown* and *Triumph Construction* stand for the proposition that, where fees were billed but not paid, the Court "cannot accept the quoted rates as compelling evidence, or even a strong indicator, that they are reasonable." *Charlestown Capital Advisors*, 2021 WL 1549916, at *5-6; *see also Triumph Constr.*, 2014 WL 6879851, at *3

(noting that "the actual billing arrangement is a significant, though not necessary controlling, factor in determining a reasonable fee"). Accordingly, I decline to deny the Fee Motion on the ground that Defendant may not have paid the incurred fees.

## IV. Defendant's Costs

Defendant requests $57,335 in expert fees and costs in connection with this motion. Specifically, Defendant requests $42,625 (at a rate of $1,100 per hour for 39.1 hours of work) [15] in expert fees for work done by Favro, its expert on electronic discovery, and $14,710 in costs paid to Impact Trial for technology services, graphics, and onsite support ($7,630 for "onsite support," "presentation support," and "transportation" and $7,080 for the preparation, development, and production of the graphics and deposition video). (ECF 447-1, Billing Spreadsheet at 42-43.) Plaintiff argues that these costs are excessive and should be reduced by at least 50% because Defendant has not provided the Court with information about the prevailing rates for experts in similar matters. (*See* ECF 448, Pl.'s Opp. at 24.) And Plaintiff argues that the costs for onsite support and graphics should be disallowed as they "were not additive or helpful, and no onsite technology support was necessary" for Defendant's "simple presentations." (ECF 448, Pl.'s Opp. at 24-25.)

### A.     Expert Fees

Courts in this District assess the reasonableness of expert fees using the lodestar method. *See Matteo v. Kohl's Dept. Stores, Inc.*, No. 09-CV-7830 (RJS), 2012 WL 5177491, at *5 (S.D.N.Y. Oct. 19, 2012), *aff'd*, 533 F. App'x 1 (2d Cir. 2013). Just as with attorneys' fees

---

[15]     This amount differs slightly from my calculation, which is likely attributable to different rounding practices.

applications, the party moving for expert fees bears the burden of proving such fees are reasonable. *See id*. To determine whether an expert's rate is reasonable courts look to the following factors:

> (1) the expert's area of expertise, (2) the education and training that is required to provide the expert insight that is sought, (3) the prevailing rates for other comparably respected available experts, (4) the nature, quality and complexity of the discovery responses provided, (5) the cost of living in the particular geographic area, (6) the fee being charged by the expert to the party who retained him, (7) fees traditionally charged by the expert on related matters, and (8) any other factor likely to be of assistance to the court in balancing the interests implicated by Rule 26.

*Id*. at *5-6.

Where parties do not provide sufficient evidence to support the reasonableness of the rate requested, courts may use their discretion to determine a reasonable fee or "simply apply an across-the-board reduction of expert's fees." *Id*. at *6 (reducing an expert's hourly rate by about 65% where the moving party "provided the Court with no information regarding the prevailing rates for other comparable experts, fees traditional charged by [the expert] on related matters, or any other factor likely to be of assistance in evaluating the reasonableness of the fees in th[at] case"); *see also Vista Outdoor*, 2018 WL 3104631, at *11-12 (reducing an expert's hourly rates by 50% where the moving party failed to provide the Court with, among other information, "the prevailing rates for other comparable respected available experts[ ] or fees traditionally charged by experts on related matters"); *Delshah 60 Ninth, LLC v. Free People of PA LLC*, No. 20-CV-5905 (JMF) (SLC), 2025 WL 2412029, at *11 (S.D.N.Y. July 31, 2025) (reducing the plaintiff's expert's hourly rate to match the hourly rate of the defendant's expert where the plaintiff provided no compelling evidence as to why its expert's rate should be higher), *report and recommendation adopted*, 2025 WL 2410466 (S.D.N.Y. Aug. 19, 2025); *Penberg v.*

*HealthBridge Mgmt.*, No. 08-CV-1534 (CLP), 2011 WL 1100103, at *15 (E.D.N.Y. March 22, 2011)

(reducing the expert hourly rate by 15% where the moving party failed to provide information

relating to rates charged by similar digital forensic experts). Courts may also reduce fees where

the applicant does not justify the reasonableness of the tasks undertaken and time spent on

those tasks. *See, e.g., St. Paul Mercury Ins. Co. v. M & T Bank Corp.*, No. 12-CV-6322 (JFK), 2014

WL 1468452, at *3-4 (S.D.N.Y. Apr. 11, 2014) (awarding 70% of the requested expert fees where

the moving party did not demonstrate the reasonableness of the time billed or of the expert's

hourly rate).

Defendant has provided no evidence to support the reasonableness of Favro's $1,100

hourly rate beyond conclusory statements that Defendant's "costs are commensurate" with the

efforts required to investigate and pursue spoliation sanctions (ECF 446, Def.'s Mem. at 1-2).

Defendant offered no information about fees found reasonable in this District for similar work

or fees charged by Favro on similar matters, or any other indicia of reasonableness. (*See* ECF

448, Pl.'s Opp. at 24; *see also* ECF 447, Marshall Decl. at 1-6; ECF 447-1, Billing Spreadsheet at

43.) Defendant cites to a handful of cases, mostly from outside this District, involving attorneys'

fees and costs following successful spoliation sanctions (*see* ECF 446, Def.'s Mem. at 4-5), but

those cases do not discuss the reasonableness of the expert's hourly rate or of the work

performed. *See CBF Industria de Gusa*, 342 F.R.D. at 93-95; *DR Distribs., LLC v. 21 Century

Smoking, Inc.*, No. 12-CV-50324, 2022 WL 5245340, at *9 (N.D. Ill. Oct. 6, 2022)*; E.I. DuPont de

Nemours & Co. v. Kolon Indus., Inc.,* No. 09-CV-058, 2013 WL 458532, at *7 (E.D. Va. Feb. 6,

2013); *Victor Stanley, Inc. v. Creative Pipe, Inc.*, No. MJG-06-2662, 2011 WL 2552472, at *10 (D.

Md. Jan. 24, 2011), *adopted by* 2011 WL 13308409 (D. Md. June 15, 2011); *Simons v. Petrarch LLC,* No. 158843/2013, 2017 WL 914631, at *14 (Sup. Ct. N.Y. Cnty. Mar. 1, 2017).

The time spent on the work appears reasonable, but because Defendant has not shown that Favro's rates were reasonable, I award Defendant half the fees requested in connection with Favro's work, or $23,312.50.

      B.    <u>Impact Trial Graphics and Onsite Support Costs</u>

Courts in this District regularly award reasonable costs for devices and graphics used at hearings or trials that were necessary to the presentation of evidence by the prevailing party. *See Farberware Licensing Co. LLC v. Meyer Mktg. Co.,* No. 09-CV-2570 (HB), 2009 WL 5173787, at *8 (S.D.N.Y. Dec. 30, 2009) (awarding $25,000 for equipment and technological graphics), *aff'd*, 428 F. App'x 97 (2d Cir. 2011); S*ettlement Funding, LLC v. AXA Equitable Life Ins. Co.*, No. 09-CV-8685 (HB), 2011 WL 2848644, at *1 (S.D.N.Y. July 18, 2011) (awarding $15,000 for "graphics that were actually a necessary tool in the presentation of evidence"); *DiBella v. Hopkins*, 407 F. Supp. 2d 537, 540 (S.D.N.Y. 2005) (awarding $10,000 for cost of preparing and producing demonstrative aids and presentations at trial).

To recover such costs, the moving party "bears the burden of demonstrating the reasonableness of each charge and failure to provide adequate documentation of costs incurred, will limit, or even defeat, recovery." *Sai Qin Chen v. E. Mkt. Rest., Inc.*, No. 13-CV-3902 (HBP), 2018 WL 3970894, at *4-5 (S.D.N.Y. Aug. 20, 2018) (awarding out-of-pocket costs for filing fees, deposition transcripts, court reporter fees, and interpreter fees where the moving party provided documentation and support for the reasonableness of each cost). Although Defendant provided the time entries for work completed by Impact Trial employees, Defendant did not

provide an explanation of why the work was needed or submit the original invoices. (*See* ECF 447, Marshall Decl., at 5; ECF447-1, Biling Spreadsheet at 42.) Nevertheless, the $14,710 cost for the work done to prepare graphics and deposition video and to provide onsite technology support is reasonable. Accordingly, I award to Defendant the full $14,710 cost of Impact Trial Graphics' work.

V.    **Plaintiff's Request for a Stay of the Fee Award**

Plaintiff insists that it is too early to assess whether a fee award is reasonable because the value of the case has not yet been determined and it is unclear whether an adverse-inference instruction would be significant to the factfinder. (*See* ECF 448, Pl.'s Opp. at 25.) Plaintiff concludes that any assessment of fees should be stayed pursuant to the Court's "inherent power" and in "the interests of justice." (*Id.*) I disagree.

In support of his position, Plaintiff relies on *Volmar Distributors, Inc. v. New York Post Co., Inc.*, 152 F.R.D. 36 (S.D.N.Y. 1993), in which the Court stayed discovery while some defendants faced criminal prosecution. *See Id.* at 39. This case is not relevant to the situation here.

Plaintiff's argument that it would be premature to require payment of attorneys' fees for the Spoliation Motion because the value of the case has not yet been determined is unpersuasive. When a court awards attorneys' fees are pursuant to Rule 37(e), the amount is not based on the amount of the judgment in the underlying case, but rather on the fees incurred as a direct result of the spoliation, because the purposes of a fee award as a spoliation sanction are to cure the prejudice caused by the spoliation and to deter spoliation. *See, e.g., Convergent Distribs.*, 708 F. Supp. 3d at 513-14; *In re NTL, Inc. Sec. Litig.*, 244 F.R.D. at 201. "[D]iscovery sanctions play an important role in protecting courts and opposing parties from

delaying or harassing tactics during the discovery process." *Advanced Training Grp. Worldwide, Inc. v. Proactive Techs. Inc.*, No. 19-CV-0505, 2021 WL 9860368, at *6 (E.D. Va. Jan. 8, 2021) (addressing whether to stay discovery sanctions pending appeal and quoting *Cunningham v. Hamilton Cty, Ohio*, 527 U.S. 198, 208 (1999)).

### Conclusion

For the reasons set forth above, Defendant's Fee Motion is GRANTED IN PART, in that Plaintiff is ORDERED to pay $642,337.65 in attorneys' fees and costs to Defendant, consisting of $604,315.15 in attorneys' fees and $38,022.50 in costs, within 21 days of the date of this order.

DATED:  October 31, 2025
        New York, New York

SO ORDERED.

_____
**ROBYN F. TARNOFSKY**
United States Magistrate Judge