

**Valdi Licul**
vlicul@wigdorlaw.com

December 18, 2025

**VIA ECF AND EMAIL**

The Honorable Richard J. Sullivan
U.S. Court of Appeals for the Second Circuit
500 Pearl St., Room 2530
New York, New York 10007

    Re:    Oakley v. MSG Networks, *et al.*; Civil Case No. 17-cv-06903 (RJS)

Dear Judge Sullivan,

As an initial matter and contrary to MSG's aspersions, Oakley's use of valid procedural devices, such as timely seeking stays from this Court and from the circuit, has no bearing on the instant dispute. If there were any doubt, Oakley and his counsel acknowledge here that both the sanctions order and the amount awarded by Judge Tarnofsky are currently binding and have been so since the time of the respective orders, and Oakley fully understands the effect of these orders.[1] MSG's aspersions to the contrary are meritless. For instance, MSG's argument that Oakley has questioned the "bad faith" spoliation holding of this Court misleadingly cites to its own opposition papers. See Pre-Motion Conference Ltr., Dkt. 473 ("PMC Ltr.") at 2 (citing Dkt. 468 at 11). Oakley had in fact argued that there has never been a finding by your Honor that his counsel engaged in bad-faith conduct when addressing the spoliation issue during this litigation, and that is true. See Objections, Dkt. 450 at 20-22 (ECF pagination). Nor has there been any scheme to resist compliance here. Oakley has followed the normal channel of appeals and has filed timely objections (without seeking any adjournments) pursuant to Fed. R. Civ. P. 72(a) which are now sub judice. Otherwise, MSG overstates the expense and difficulty of opposing Oakley's two three-page letter motions seeking stays, and the Second Circuit has not even ordered briefing on Oakley's mandamus petition. Nor were these motions for stays "collateral attacks." PMC Ltr. at 2. Whatever the posture of this case, such exaggerations only hinder and complicate the Court's fact-finding.

These distractions aside, Oakley and his counsel have been diligent in attempting to locate, quantify, and verify Oakley's finances. While counsel has access to Oakley's tax records, these do not fully document Oakley's "assets." Huber v. Marine Midland Bank, 51 F.3d 5, 11 (2d Cir. 1995). In sum, Oakley's illiquid assets, while apparently modest, are difficult to value, and his real estate assets are leveraged, making it uncertain how their value should be represented.

---

[1]    Oakley also reserves all of his rights to appeal and challenge these orders in due course.



Hon. Richard J. Sullivan
December 18, 2025
Page 2

Oakley is making a thorough effort and anticipates being able to proffer (through counsel) additional evidence in support of his "inability to pay," including a sworn statement. Huber, 51 F.3d at 11.

The records analyzed to date support the conclusion that Oakley cannot currently pay $642,337.65. ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ In support of the foregoing facts, Oakley will file an affidavit from his accountant. Oakley also has two savings accounts, which he uses to meet ongoing expenses. Finally, Oakley's counsel works on a contingency basis and is currently covering Oakley's costs, distinguishing this from cases where the alleged contemnor continued incurring litigation-related expenses. See Huber, 51 F.3d at 9 (ruling against contemnor based in part on evidence that he continued to pay litigation expenses in other cases). In short, Oakley anticipates being able to meet his "burden of production" to show that "compliance is now factually impossible" and, therefore, he cannot be held in contempt. United States v. Rylander, 460 U.S. 752, 757 (1983).

MSG's proposed motion is also invalid because it seeks an unavailable sanction, even if its motion for contempt were granted. MSG requests dismissal as though this is a matter of course where civil contempt is demonstrated. Far from it. "A civil contempt sanction may . . . serve either to coerce the contemnor into future compliance with the court's order or to compensate the complainant for losses resulting from the contemnor's past noncompliance." New York State Nat. Org. for Women v. Terry, 886 F.2d 1339, 1352-53 (2d Cir. 1989). To determine the scope of an appropriate sanction, the Court must consider "(1) the character and magnitude of the harm threatened by the continued contumacy, (2) the probable effectiveness of the sanction in bringing about compliance, and (3) the contemnor's financial resources and the consequent seriousness of the sanction's burden.". Moreover, "in selecting contempt sanctions, a court is obliged to use the least possible power adequate to the end proposed." Spallone v. United States, 493 U.S. 265, 276 (1990) (citations and quotations omitted).

Here, the harm, if any, has been the delay of payment period. $642,337.65 is a fraction of a fraction of the yearly revenue of both MSG and King & Spalding ("K&S"), the latter a law firm with over $2 billion in revenue and over $1 billion in net income. Nor has evidence ever been submitted that MSG has paid the attorneys' fees (or anything close to them) that K&S claims, and it remains possible that the amount represents a windfall for both. The sum, of course, remains the valid judgment of this Court and is binding on Oakley, but the fact remains that there is no conceivable loss or harm beyond the payment of an amount that represents a tiny marginal

---

[2] ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉



increment of revenue to MSG and its attorneys. This is, in sum, not a case where the "character" or "magnitude" of the harm threatens a concrete personal or business interest. Accordingly, the correct focus of the Court's inquiry is what is necessary to "compensate" the injury caused by delay or otherwise "coerce compliance." New York State Nat. Org. for Women, 886 F.2d at 1352, 1354.

Next, MSG offers no reason to suppose dismissal as opposed to some lesser sanction is "the least possible power adequate to the end proposed." Spallone, 493 U.S. at 266. MSG never explains what "end" it "propose[s]," but instead jumps to requesting dismissal. Id. But, here, entry of judgment and tolling of interest are both available and would be proportional to the Court's interest in securing compliance and compensating loss. Indeed, the Court could simply begin by issuing a warning. In eight years, Oakley has been sanctioned exactly once, and this is not a situation where drastic, instantaneous coercive action is warranted because of a demonstrated pattern of contumacy.[3]

Finally, dismissal is an overly drastic sanction given Oakley's situation and resources. Given his indebtedness and the extreme burden of the fee award in this case, the possibility of a jury verdict in his favor makes this case a crucial asset to Oakley. Likewise, further fines on top of the $642,337.65 already awarded would only deepen the problem of compliance, given Oakley's situation, and lesser sanctions would be more conducive to actual compliance.

Indeed, while it is no surprise MSG has sought to enforce the award of attorneys' fees, the only reason it had to seek dismissal is that this is the sanction it always seeks, including in its prior and pending motions pursuant to Fed. R. Civ. P. 11 and 37. Clearly, even if there were to be a contempt finding (though there should not be), dismissal is not called for.

Finally, pursuant to local rules, any contempt proceeding must be commenced by notice and must adequately document any alleged damages. See Local Rule 83.6.

Respectfully submitted,

Valdi Licul

cc: All Counsel of Record (*via* ECF)

---

[3] The cases cited by MSG for case-terminating sanctions are wholly inapposite. See Peker v. Fader, 965 F. Supp. 454, 460 (S.D.N.Y. 1997) (case terminated where party was sanctioned multiple times for violating court orders, "refused to pay" a court-imposed sanction, and "yell[ed]" at the court and "walk[ed] out" of a conference); Kelly v. EMI Blackwood Music Inc., No. 07 Civ. 2123 (JSR) (AJP), 2007 WL 2327059, at *2 (S.D.N.Y. Aug. 16, 2007) (case terminated where party failed to attend multiple court conferences, did not "participate in discovery," and "refused to pay the prior sanction").