

**Valdi Licul**
vlicul@wigdorlaw.com

December 22, 2025

**VIA ECF AND EMAIL**

The Honorable Richard J. Sullivan
U.S. Court of Appeals for the Second Circuit
500 Pearl Street, Room 2530
New York, New York 10007

Re: Oakley v. MSG Networks, *et al.*; Civil Case No. 17-cv-06903 (RJS)

Dear Judge Sullivan,

We represent the Plaintiff Charles Oakley in this matter and submit this pre-motion letter pursuant to Rule 2(A) of Your Honor's Individual Rules and Practices to disqualify Randy Mastro, First Deputy Mayor, from representing Defendants MSG Networks, Inc., Madison Square Garden Sports Corp., and Sphere Group, LLC (collectively "MSG"), because Mastro's representation violates the Conflicts of Interest provision of the Chapter 68 of the New York City Charter (the "Charter").

**BACKGROUND**

On March 14, 2025, this Court denied Oakley's motion to disqualify Mastro from representing MSG because Mastro had just been appointed First Deputy Mayor of the City of New York (the "City"). Dkt. 360. This Court found, *inter alia*, that Mastro was not required to obtain a waiver from the New York City Conflicts of Interest Board (the "COIB") "because the COIB determined that there was no conflict of interest to begin with." Id. at 3.

As it turns out, the COIB's non-public determination regarding Mastro drew the attention of the City of New York Department of Investigation (the "DOI"), which launched its own investigation.[1] On December 18, 2025, the DOI released a Report on the New York City Conflicts of Interest Board's Advisory Opinion and Moonlighting Waiver Practices (the "Report")[2], finding that the secret issuance by the COIB of its March 18, 2025 Advisory Opinion (the "Advisory Opinion"), which permitted Mastro to continue to represent MSG in this case, was facially prohibited by the City Charter. It found that the "[COIB]'s conclusion that City employees can act as outside attorneys to firms with City business without a waiver contravenes the literal text of the law, relevant legislative history, and past guidance issued by COIB itself." The DOI was "unaware of any legal authority" supporting the notion that Mastro could simultaneously work for the City and MSG without a waiver. See Press Release #50-2025,

---

[1] The DOI only learned about the COIB's conduct through a press report. See Report at 8 ("[T]he fact that the First Deputy Mayor obtained COIB's permission to serve as an attorney for a powerful local business interest was revealed for the first time only in the press.").

[2] New York City Department of Investigation, Report on the New York City Conflicts of Interest Board's Advisory Opinion and Moonlighting Waiver Practices (Dec. 18, 2025) https://www.nyc.gov/assets/doi/reports/pdf/2025/50COIBRelease.Rpt.12.18.2025.pdf.



DOI., DOI Issues Report Examining City Conflicts of Interest Board's Interpretation of the City's Moonlighting Restrictions and Transparency of COIB's Advisory Opinions (Dec. 18, 2025) https://www.nyc.gov/assets/doi/reports/pdf/2025/50COIBRelease.Rpt.12.18.2025.pdf (the "Press Release"), Report at 9 ("*Chapter 68 Facially Prohibits Mastro's Representation of MSG*") (italics in original). The DOI opined on Mastro's inability to represent MSG without a waiver, stating that the COIB had "no authority to issue an advisory opinion" permitting such moonlighting that would violate the law, and that by doing so, the COIB "effectively hid" its authorization from the public. Report at 3,6. Pursuant to Rule 3.3 of the Rules of Professional Conduct, Mastro is required to report his inability to represent MSG as determined by the Report and correct his prior representations to the Court that there is no conflict of interest in his representation of MSG.

**ARGUMENT**

First, the Report validates Oakley's position that Mastro was not permitted to simultaneously represent MSG while working for the City without violating the Charter. In response to Oakley's original motion, Mastro lashed out at Oakley and his counsel with accusations of "smear tactics," "lie[s]," and "bad faith." Dkt. 352 at 1-2. In fact, the Report makes plain that Mastro's position that he can perform both jobs simultaneously without a waiver "contravenes the literal text of the law" and is not supported by "any legal authority." Press Release at 1. Accordingly, Mastro should be disqualified.[3]

Second, Mastro should not be permitted to rejoin MSG's legal team once his service to the City concludes. The flagrant violation calls into question the integrity of the COIB's process. Its review began with a joint request by Mastro and Mayor Adams, who are known to be close confidants. See Dkt. 352 at 1 (explaining that COIB review began with a letter from Mayor Adams accompanied by a Declaration from Randy Mastro). The COIB that received and processed that request is led by Milton Williams, Board Chair, who previously appeared in this case on behalf of MSG. See Dkt. 13 (Williams' Notice of Appearance); New York City Conflicts Of Interest Board, "Board Members," https://www.nyc.gov/site/coib/about/board-members.page (last accessed Dec. 22, 2025). In other words, a member of MSG's legal team may have been involved in granting Mastro permission to represent MSG. Under these circumstances, it is little surprise that the COIB would make a decision so obviously wrong. It, itself, was conflicted.[4]

Third, Mastro's continued representation of MSG would taint the trial and prejudice Oakley. It is well settled that a court has the authority to disqualify "an attorney in order to forestall

---

[3] This Court is authorized to revisit its prior ruling pursuant to Fed. R. Civ. P. 54(b), which provides that a prior order "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." See Transaero, Inc. v. La Fuerza Aerea Boliviana, 99 F.3d 538, 541 (2d Cir. 1996) ("a district court is vested with the power to revisit its decisions before the entry of final judgment).

[4] It is not clear who at the COIB was involved in advising Mastro that he could proceed without a waiver because both Mastro and the COIB refuse to provide more specific information, claiming the information is confidential. This, too, appears to be wrong according to the Report. Report at 11.


violation of ethical principles." Cresswell v. Sullivan & Cromwell, 922 F.2d 60, 72 (2d Cir. 1990). While "disqualifications are generally disfavored," Galloway v. Nassau Cty., 569 F. Supp. 3d 143, 151 (E.D.N.Y. 2021), the Second Circuit has nevertheless instructed that "in the disqualification situation, any doubt is to be resolved in favor of disqualification." Hull v. Celanese Corp., 513 F.2d 568, 571 (2d Cir. 1975). In doing so, the Court should consider the "risk of trial taint." Glueck v. Jonathan Logan, Inc., 653 F.2d 746, 748 (2d Cir. 1981).[5]

Here, Mastro has wide-ranging responsibilities as First Deputy Mayor. One City Council Member recently observed that he "is running the show." Sahalie Donaldson, City & State New York, "At City Hall, Randy Mastro is in charge," (July 24, 2025) https://www.cityandstateny.com/personality/2025/07/city-hall-randy-mastro-charge/406967/; see Report at 8 ("Mastro, like any senior City Hall official, has broad authority with respect to City matters that in theory could be beneficial to the client he was authorized to represent"); id. (recognizing a "heightened public interest" for senior officials such as Mastro); id. at 12 (describing Mastro as "the City's second highest-ranking executive" and MSG as "one of the City's major landowners and business interests"). There are crucial issues in this case surrounding the NYPD's arrest of Oakley and the extent to which the police accompanying MSG security on the night of February 8, 2017, acted properly in their capacity as public officials, with MSG intending to mount the defense that the police made an independent decision to approach, arrest, and detain Oakley, all free of undue influence by Dolan or any other MSG staff. Such insider knowledge carries with it the significant potential for trial taint, as it may allow Mastro, for instance, to anticipate potential impeachment of the NYPD witnesses (which have so far shown themselves to be witnesses friendly to MSG). It is impossible to say the extent to which Mastro may have been able to access relevant information about these police actions, the related policies, investigations, or personnel files, but these factual "doubt[s] [are] to be resolved in favor of disqualification." Hull, 513 F.2d at 571. Moreover, there is a significant risk of trial taint arising from the chilling effect of a former high-ranking city-official representing a party on whose behalf City police will testify, with Mastro's former position creating strong pressures on police officers to bend their testimony towards MSG's interests. Finally, MSG's representation by the only recently former First Deputy Mayor may give the jury the misimpression that the City–a non-party–has reached a conclusion about the merits of Oakley's claims.

For these reasons, Oakley respectfully requests permission to move to disqualify Mastro from this matter.

---

[5] New York City's conflict rules are intended "to preserve the trust placed in the public servants of the city, to promote public confidence in government, to protect the integrity of the government decision-making." Charter §2600. And while the COIB has never directly disqualified an attorney from participating in a litigation (likely because it lacks authority to do so), it has, however, taken disciplinary action for moonlighting violations. COIB v. Ashanti, N.Y.C. COIB Case No. 2017-362. There is no reason that a violation of the City's conflict rules, like a violation of other professional ethics mandates, should not also result in attorney disqualification where appropriate. The interest in preserving the integrity of public servants is no less important than, for example, the interest in preserving attorney fidelity, where courts often order disqualification. Here, the public interest is particularly unique given Mastro's elevated status and the importance of his powerful private client. Dkt. 346 at 1-2.



WIGDOR.

Hon. Richard J. Sullivan
December 22, 2025
Page 4

Respectfully submitted,

Valdi Licul

cc: All Counsel of Record (*via* ECF)