**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| |
|---|
| CHARLES OAKLEY, |
| Plaintiff, |
| v. |
| MSG NETWORKS, INC., *et al.*, |
| Defendants. |

Case No. 17-cv-6903 (RJS)

**MSG'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF**
**<u>ITS MOTION FOR CONTEMPT</u>**

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

RELEVANT PROCEDURAL BACKGROUND ......................................................................... 3

ARGUMENT ............................................................................................................................... 5

I.    There is No Dispute That MSG Has Met Its Burden to Show Oakley Is in Contempt ...... 5

    1.    Oakley Hid from the Court Evidence Regarding His Real Estate and Vehicles ................................................................................................................6

    2.    Oakley Submitted Cherry-Picked and Incomplete Income and Expense Information ....................................................................................................7

    3.    Oakley Openly Leads a Luxury Lifestyle ................................................................8

II.   Case Termination is the Appropriate Sanction for Oakley's Contempt ............................. 8

    a.    Oakley's Late Payment and "Payment Plan" Confirm Termination is Appropriate ..............................................................................................8

    b.    Oakley Has Admitted Further Monetary Sanctions Will Not Be Coercive, and He Is a Serial Violator of Court Orders ............................10

III.  Oakley Should Be Ordered to Pay Additional Attorneys' Fees and Interest ................... 12

IV.   MSG's Motion is Procedurally Proper ............................................................................. 14

V.    The Court Should Enter Judgment in the Balance of the Fees Order ($602,337.65) ....... 15

CONCLUSION .......................................................................................................................... 15

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*A.V. By Versace, Inc. v. Gianni Versace, S.p.A.*,
   279 F. Supp. 2d 341 (S.D.N.Y. 2003) (Leisure, J.) .............................................................7, 10

*Adams v. N.Y. St. Educ. Dep't*,
   959 F. Supp. 2d 517 (S.D.N.Y. 2013) (Marrero, J.) ..........................................................5, 6, 9

*Barcia v. Sitkin*,
   1997 WL 66785 (S.D.N.Y. Feb. 14, 1997) (Carter. J.)............................................................13

*Broker Genius Inc. v. Seat Scouts LLC*,
   2019 WL 2462333 (S.D.N.Y. June 13, 2019) (Stein, J.) .........................................................14

*In re Doria/Memon Discount Stores Wage & Hour Litig.*,
   2016 WL 270080 (S.D.N.Y. Jan. 21, 2016) (Sweet, J.) ..........................................................10

*Enmon v. Prospect Cap. Corp.*,
   675 F.3d 138 (2d Cir. 2012)....................................................................................................14

*Ferrara v. Metro D Excavation & Found., Inc.*,
   2012 WL 6962214 (E.D.N.Y. Nov. 30, 2022)........................................................................15

*Freeman v. Giuliani*,
   2024 WL 4546883 (S.D.N.Y. Oct. 22, 2024) (Liman, J.) .........................................................7

*Friedman v. Bloomberg, L.P.*,
   2024 WL 1298601 (2d Cir. Mar. 27, 2024).............................................................................11

*Geraldo v. Richland Holdings, Inc.*,
   2019 WL 2161695 (D. Nev. May 17, 2019)............................................................................14

*Goldberg v. Prestige Automotor LLC*,
   2007 WL 9757905 (D. Conn. Oct. 18, 2007) ..........................................................................12

*Guantanamera Cigar Co. v. Corporacion Habanos, S.A.*,
   750 F. Supp. 2d 31 (D.D.C. 2010)...........................................................................................11

*Int'l Union, United Mine Workers of Am. v. Bagwell*,
   512 U.S. 821 (1994)..................................................................................................................12

*JLM Couture, Inc. v. Gutman*,
   2022 WL 17832303 (S.D.N.Y. Dec. 21, 2022) (Swain, C.J.) ..................................................13

*Kelly v. EMI Blackwood Music Inc.*,

2007 WL 2327059 (S.D.N.Y. Aug. 16, 2007), *report and rec. adopted*, 2007
WL 2766660 (S.D.N.Y. Sept. 21, 2007) (Rakoff, J.) ............................................................11

*Lewis v. Nissan N. Am., Corp.*,
2005 WL 8177285 (S.D.N.Y. June 29, 2005), *report and rec. adopted*, 2005
WL 1652924 (S.D.N.Y. July 14, 2005) (Kaplan, J.), *aff'd*, 186 F. App'x 98
(2d Cir. 2006)......................................................................................................................12

*New Falls Corp. v. Soni Holdings., LLC*,
2022 WL 4357410 (E.D.N.Y. Sept. 20, 2022) ......................................................................6

*Oliveri v. Thompson*,
803 F.2d 1265 (2d Cir. 1986)................................................................................................14

*Parris v. Pappas*,
2017 WL 9480196 (D. Conn. 2017) .......................................................................................9

*Payson v. Payson*,
274 Ga. 231 (2001) ................................................................................................................7

*Peker v. Fader*,
965 F. Supp. 454 (S.D.N.Y. 1997) (Koeltl, J.) ....................................................................11

*S.E.C. v. Bremont*,
2003 WL 21398932 (S.D.N.Y. June 18, 2003) (Kaplan, J.)...................................................8

*S.E.C. v. Bronson*,
2021 WL 3167853 (S.D.N.Y. Jan. 19, 2021) (Karas, J.)..................................................6, 7, 9

*S.E.C. v. Margolin*,
1996 WL 447996 (S.D.N.Y. Aug. 8, 1996) (Leisure, J.).........................................................7

*S.E.C. v. Musella*,
818 F. Supp. 600 (S.D.N.Y. Apr. 8, 1993) (Wood, J.) ...........................................................5

*S.E.C. v. Red Rock Secured, LLC*,
No. 2:23-CV-03682, Dkt. 180 (C.D. Cal. Feb. 7, 2025)........................................................10

*Safeco Ins. Co. of Am. v. M.E.S., Inc.*,
2014 WL 12834210 (E.D.N.Y. June 27, 2014) ......................................................................8

*SEC v. Aragon Cap. Advisors, LLC*,
2011 WL 3278907 (S.D.N.Y. July 26, 2011) ....................................................................6, 10

*SEC v. Universal Exp., Inc.*,
546 F. Supp. 2d 132 (S.D.N.Y. 2008) (Lynch, J.) ..................................................................6

*Selletti v. Carey*,

17 F. App'x 18 (2d Cir. 2001) ............................................................................12

*In re Simone*,
2023 WL 5338676 (Bankr. D. Conn. Aug. 18, 2023) ...........................................10

*Spotnana Inc. v. Am. Talent Agency, Inc.*,
2014 WL 7191400 (S.D.N.Y. Dec. 3, 2014) (Preska, J.) .......................................7

*Verone v. Taconic Tel. Corp.*,
826 F. Supp. 632 (N.D.N.Y. 1993) ...................................................................9, 10

*Weitzman v. Stein*,
98 F.3d 717 (2d Cir. 1996)..................................................................................13

*Zino Davidoff SA v. CVS Corp.*,
2008 WL 1775410 (S.D.N.Y. Apr. 17, 2008) (Sullivan, J.) ..................................13

**Statutes**

28 U.S.C. 1927 ..................................................................................................14

28 U.S.C. § 636(e)(6) .........................................................................................15

**Other Authorities**

Federal Rule of Civil Procedure 41(b)..................................................................12

Local Civil Rule 83.6 ..........................................................................................14

## PRELIMINARY STATEMENT

Oakley all but concedes that he is in contempt for failing to pay the sanctions award (the "Fees Order") by the November 21, 2025 deadline. The question now before the Court is what additional sanctions are warranted in light of Oakley's *multiple* violations of court orders. Oakley submits that he should face no consequences and, in fact, should be relieved of any obligation to pay the more than $600,000 balance of the Fees Order for at least 11 months, and *then*, to enjoy more than ten years to pay it off—all interest-free. *See* ECF 490 at 1 (the "Opposition" or "Opp."). Putting that in perspective, Oakley's "payment plan" would reward him with an extra decade-plus to satisfy his obligation, without costing him a dime of the more than $150,000 in interest that would otherwise accrue over this term assuming the federal judgment rate applies (and *much* more if New York's statutory interest rate applies). Oakley's facially absurd proposed "payment plan" is just the latest in his long line of attempts to avoid the repercussions of his misconduct.

Oakley and his counsel have repeatedly shifted their position to justify his failure to comply with the Fees Order from the time it was issued. First, Oakley sought multiple, frivolous requests to stay the Fees Order while telling this Court, Judge Tarnofsky, and the Second Circuit alike that MSG would "receive payment" if a stay was not granted. ECF 448; ECF 466; ECF 469 at 2; *In re Oakley*, Case No. 25-2973, Dkt. 1.1 at 9, 11.1. When it became clear that the Fees Order would not be stayed and MSG would seek contempt sanctions, Oakley (for the first time, and over six weeks after the order was issued) claimed he was not in contempt because he had a complete "inability to pay" and would support that defense with affidavits and documentary evidence. ECF 476 at 2. But the proof never came. Undeterred, at the pre-motion conference for this motion, Oakley's counsel continued to argue that contempt sanctions were unwarranted because Oakley had a complete inability to pay. Then, days after the conference, and only following admonishments from the Court, Oakley made a $40,000 payment to MSG, and ignored MSG's

follow up questions of whether he was "no longer asserting his inability to pay defense" or would instead assert that $40,000 was "all that he can pay." Ex. 1 at 1.[1] Finally, at 10:00 p.m. the night before his Opposition was due, Oakley proposed paying the $602,337.65 in remaining sanctions $5,000 per month with no payment until some point "in 2027." Ex. 2. Oakley's Opposition, accordingly, abandons his inability-to-pay argument, because his and his counsel's claim of insolvency was never remotely defensible. Without a purported "inability to pay," Oakley has no defense to contempt. As such, the Court should grant case terminating sanctions and convert the fee award to a judgment so that MSG can begin collection efforts.

Oakley's Opposition tries to renegotiate the terms upon which he will satisfy this debt to MSG by offering a "payment plan"—under which he would not make any payment until 11 to 23 months from now—as a purported "remedy" for his contempt. But a "payment plan" is neither a defense nor a remedy for contempt. And even if it were, Oakley, who along with his wife publicly flaunts his luxurious lifestyle, advances a demonstrably fictitious and incomplete picture of his finances by cherry-picking financial records to create the false impression that he is of limited means. For example, Oakley's papers: (i) do not explain why he cannot pay any amount for the rest of 2026 or why $5,000 per month is all he can pay starting at some point in 2027; (ii) do not include any records of any of his expenses in the months prior to October 2025, when the Fees Order was issued; (iii) do not include any credit card bills or other clearly relevant records of Oakley's expenditures; (iv) do not explain how he has funded this litigation for nearly nine years; and (v) disregard entire categories of Oakley's income and assets that are public record, including, for instance, the income he earns from his foundation, his luxury vehicles, and the $2+ million Atlanta mansion that apparently serves as his primary residence. Oakley and his counsel continue,

---

[1] References to "Ex." refer to the February 13, 2026 Benvenisty Declaration filed herewith.

to make misleading representations to the Court to justify his non-compliance.

Nothing in Oakley's Opposition explains why he should not be held in contempt and face additional sanctions for that contempt. As set forth below, case termination is warranted given Oakley's pattern of openly violating his obligations as a litigant; false representations; and repeated acknowledgement that no amount of monetary sanctions would coerce him to comply with court orders. Opp. at 9, 11, 13 (stating further monetary sanctions would "frustrate" his ability to comply with the Fees Order); *see also* ECF 476 at 3. MSG is also entitled to its attorneys' fees and interest for litigating Oakley's willful noncompliance with the Fees Order and this motion. Finally, MSG requests that the Court enter judgment in the remaining amount of the Fees Order so that it may use post-judgment discovery to ascertain the full scope of his assets to pursue enforcement, especially given Oakley's false and incomplete financial submissions.

## RELEVANT PROCEDURAL BACKGROUND

On December 15, 2025, after Oakley failed to pay MSG $642,337.65 in attorneys' fees by November 21 pursuant to the Fees Order, and after his *five* attempts to stay the order were denied (in which he consistently and falsely stated MSG would "receive payment"), MSG filed a pre-motion letter on its motion for contempt. ECF 448; ECF 466; ECF 469; *In re Oakley*, Case No. 25-2973, Dkt. 1.1, 11.1; ECF 473. MSG sought case terminating sanctions; its fees in connection with opposing Oakley's requests to stay; and fees for the contempt motion, plus interest on its fees. *Id*. at 3. On December 18, Oakley responded, claiming his financial records "support the conclusion that Oakley cannot currently pay $642,337.65." ECF 476 at 2. Oakley included marginal information on his financials in his response—that he ███████████████ and ████ ████████████████████ and ██████████████████████—and claimed he "anticipates being able to proffer … additional evidence in support of his 'inability to pay,'

including a sworn statement" and "an affidavit from his accountant." *Id.*

On Tuesday, January 13, 2026, the parties appeared for a pre-motion conference, at which Oakley's counsel reasserted his inability to pay defense but still failed to provide the "anticipate[d]" affidavits or any other evidence. *See id*. The Court recognized that Oakley's inability to pay defense was asserted only after the payment deadline and that Oakley failed to raise it in any of his requests for a stay, despite that such a defense, if true, would have been relevant to his stay applications. At the end of the conference, the Court agreed to accept MSG's pre-motion letter as its opening brief and directed Oakley to file an opposition setting forth his inability to pay defense and opposing MSG's request for case terminating sanctions. *See* ECF 483.

Notwithstanding Oakley and his counsel's repeated representations that Oakley had a complete inability to pay, on the Friday after the hearing, Oakley obtained a $40,000 cashier's check addressed to MSG. On Monday, January 20, Oakley's counsel provided the check to MSG with no explanation of how Oakley obtained $40,000 in three days and no mention of how this payment impacted his inability to pay defense. Ex. 1. On January 21, MSG followed up with Oakley's counsel and asked whether he was "no longer asserting his inability to pay defense" or whether $40,000 was "all he can pay." *Id*. Oakley's counsel responded with a non-answer: "Mr. Oakley intends to respond to Defendants' Motion for Contempt, pursuant to the schedule set by the Court. Mr. Oakley will assert his available defenses as to liability and remedies." *Id*.

On the night of February 2 (the night before his Opposition was due), Oakley's counsel emailed MSG claiming that they had "thoroughly review[ed] Oakley's income and assets"; his "finances are not in a condition to be able to pay $602,000 presently"; and they are "authorized []to offer $5,000 per month beginning in 2027." Ex. 2. Oakley's counsel gave no explanation of how this facially unreasonable amount or schedule was determined, or why they did not review

his finances *before* representing he had an inability to pay. Their "offer" did not even claim that $5,000/month starting in 2027 is all he can pay. The next day, Oakley filed his Opposition stating he "is not hereby raising a defense of impossibility" and claiming he "complied in good faith" with the Fees Order by paying $40,000 and offering a "payment plan," neither of which he did until *three months* after the Fees Order and until MSG began contempt proceedings. Opp. at 1.

## ARGUMENT

### I.    There is No Dispute That MSG Has Met Its Burden to Show Oakley Is in Contempt

Oakley's Opposition does not meaningfully contest that he is in contempt, nor does he argue his previously-raised defense of inability to pay. Rather, Oakley "argue[s] solely" what he calls the "appropriate remedy" and requests the Court deny "certain contempt sanctions." Opp. at 1, 14. Thus, as an initial matter, this Court should make clear that Oakley is, and has been, in contempt since November 21, 2025, the deadline by which he was ordered to pay the Fees Order in full. *See S.E.C. v. Musella*, 818 F. Supp. 600, 602 (S.D.N.Y. Apr. 8, 1993) (Wood, J.) ("When an order requires a party to pay a sum certain, a mere showing that the party was unable to pay the entire amount by the date specified is insufficient to avoid a finding of contempt."). Almost three months later, Oakley has failed to pay and still owes $602,337.65—more than 90% of the award.

Oakley's claim that he has "complied in good faith" with the Fees Order, Opp. at 1, is a farce. Oakley and his counsel failed to take any steps to pay (or, apparently, to diligence Oakley's finances) before the deadline and for weeks thereafter. Even now, Oakley has paid only a fraction of the award and offered a disingenuous "payment plan" with cherry-picked financial records, all *after*: (a) the deadline, (b) five frivolous stay requests, (c) MSG initiated this motion, and (d) the Court expressed skepticism at his inability to pay defense. Oakley cannot show "good faith" after "several opportunities" to pay; rather, his fractional payment and proposed "payment plan" are "too little too late" and "further evidence of [his] willful affront to the Court's Order." *Adams v.*

*N.Y. St. Educ. Dep't*, 959 F. Supp. 2d 517, 520 (S.D.N.Y. 2013) (Marrero, J.) (attorney held in contempt for failing to pay sanction by court deadline); *see also New Falls Corp. v. Soni Holdings., LLC*, 2022 WL 4357410, at *4 (E.D.N.Y. Sept. 20, 2022) (contemnor "cannot show reasonable diligence through belated efforts to 'cure a finding of contempt based on [] prior inaction'—especially because [his] efforts commenced only after [the movant] initiated this motion.").

Moreover, Oakley's submission—which contains an intentionally incomplete and misleading picture of his finances—is not a showing of "good faith" or indication that he "take[s] the [s]anction and his noncompliance seriously." *Adams*, 959 F. Supp. 2d at 520. Oakley is instead picking and choosing what to reveal about his finances in an attempt to reduce court-ordered sanctions—which were themselves ordered in part based on his *prior* misrepresentations to the Court—into a "payment plan" of his own design. His and his counsel's proposed "payment plan," in other words, cannot "seriously be characterized as reasonably diligent." *SEC v. Aragon Cap. Advisors, LLC*, 2011 WL 3278907, at *5 (S.D.N.Y. July 26, 2011) (Maas, M.J.). For example:

## 1.    Oakley Hid from the Court Evidence Regarding His Real Estate and Vehicles

o   Oakley claims he owns two properties: an apartment he says is his "primary residence," valued at ██████, and a house where his mother resides. ECF 491 ¶¶ 25, 26. Oakley *entirely fails* to mention the 11,000 sq. ft., six-bedroom house where he actually lives with his family, as seen on the reality TV show *The Real Housewives of Atlanta* (on which his wife stars and he often appears). *See* Ex. 3 ("Tour Angela and Charles Oakley's Amazing Home," https://www.youtube.com/watch?v=qIi_Ax_MlcE). The sprawling home is valued at $2,084,100.00. *See* Ex. 4 (https://www.zillow.com/homedetails/████████████████ ██████████████). As Oakley does not appear to live at the apartment he calls his "primary residence," he could rent or sell it to pay the Fees Order. *See, e.g.*, *SEC v. Universal Exp., Inc.*, 546 F. Supp. 2d 132, 137 (S.D.N.Y. 2008) (holding party in contempt where he did not "document[] any efforts to reduce his expenses or generate income" "such as by renting [his] propert[ies] and moving to less extravagant quarters").

o   Oakley also does not acknowledge that he owns two luxury vehicles: a 2025 Land Rover (Ex. 5) and a 2022 Ford F-150 (Ex. 7), which retail for up to $180,700 and $82,880, respectively. *See* Exs. 6, 8. His continued use of these luxury vehicles counsels in favor of contempt. *See, e.g.*, *S.E.C. v. Bronson*, 2021 WL 3167853, at *11 (S.D.N.Y. Jan. 19, 2021).

o Oakley acknowledges owning "two watches worth around ███ in total," but makes no mention of any attempt to sell them. ECF 491 ¶ 37; *Freeman v. Giuliani*, 2024 WL 4546883, at *6 (S.D.N.Y. Oct. 22, 2024) (Liman, J.) (ordering luxury watches sold to satisfy judgment). He is likely underestimating their value as well: he was recently photographed wearing what appears to be a Rolex Yacht-Master (currently reselling for $63,162) and a Bucherer Patravi TravelTec (currently selling for $44,500). *See* Exs. 9–13.

## 2.    Oakley Submitted Cherry-Picked and Incomplete Income and Expense Information

o Oakley submitted copies of his wage and income transcripts from only 2024 and 2025; checking account statements for only three months; and tax returns from only 2021–23. Notably, his checking account statements cover only October–December 2025, raising the possibility that he recently limited his spending from these accounts to support his proposed "payment plan." Oakley also did not submit *any* credit card statements documenting his expenses (despite stating that he has ████████████) or any accounts that may be held jointly by him and Angela, making clear that he has obscured the full scope of his spending.[2] *S.E.C. v. Margolin*, 1996 WL 447996, at *4 (S.D.N.Y. Aug. 8, 1996) (Leisure, J.) (finding defendant failed to prove an inability to pay where there were "wide gaps in the area of supporting documentation" including "no credit card statements").

o Oakley failed to submit financial records of "all entities that he previously or currently controls." *A.V. By Versace, Inc. v. Gianni Versace, S.p.A.*, 279 F. Supp. 2d 341, 348 (S.D.N.Y. 2003) (Leisure, J.); *see also Spotnana Inc. v. Am. Talent Agency, Inc.*, 2014 WL 7191400, at *8 (S.D.N.Y. Dec. 3, 2014) (Preska, J.) (contemnor did not "meet [] heavy burden" where he failed to provide information on businesses he was involved with). Oakley is the founder of the Charles Oakley Foundation (which, testimony confirmed, he uses to pay himself to appear at events (Ex. 15 at 73:8–74:3) and co-owns multiple businesses, including a steakhouse chain and a new gambling app. *See* Exs. 16–18.

o Oakley has not identified all of the income he obtains from appearances such as his cooking events (he makes $20,000 per event) and a three-day tour to L.A. he is *currently promoting* (for which individual tickets cost $2,100-$3,600). *See* Exs. 19–20. He also does not mention income from his book "The Last Enforcer," from which he testified he has made over ████. Ex. 21 at 524:2–6.

---

[2] In fact, Oakley makes no mention of *any* assets, accounts, or credit cards held jointly or in his wife's name, even though under Georgia law, property acquired during the marriage is marital property to which Oakley has an equal interest. *See, e.g.*, *Payson v. Payson*, 274 Ga. 231, 231–32 (2001). Indeed, Angela describes herself as a "real estate MOGUL" and "self-made MILLIONAIRE." *See* Ex. 14 (https://angelaoakley34.com/about/) (emphases in original); *cf. Bronson*, 2021 WL 3167853, at *4 (finding contempt where party "tried to conceal his income by working for [] a company nominally controlled by his wife").

o   Oakley has not identified or addressed any other "illiquid" accounts he may have, such as retirement accounts. *See Safeco Ins. Co. of Am. v. M.E.S., Inc.,* 2014 WL 12834210, at *21 (E.D.N.Y. June 27, 2014) (Scanlon, M.J.) (holding parties in contempt where they "did not liquidate" assets including "life insurance policies, 401k accounts, etc.").[3]

### 3.    Oakley Openly Leads a Luxury Lifestyle

o   As discussed *supra*, Oakley submitted statements from only two checking accounts, for only October-December 2025. But even that limited information shows he is spending lavishly notwithstanding the Fees Order. The statements reflect, for example, that he recently stayed at luxury hotels (███████████████████████████████████████); shopped at ████████; and bought ███████████████████████. *See* ECF 491-7–491-11.

o   Oakley frequently takes luxury vacations and attends high-profile events. For example, although not reflected in his papers, in August 2025, Oakley vacationed in Europe, stopping in at least London and Ibiza. *See* Exs. 22–23. On January 13, 2026—the day of the Court's recent pre-motion conference—Oakley and Angela attended a movie premiere in New York City wearing designer clothing and diamond jewelry. *See* Ex. 24.[4]

Accordingly, MSG has made its requisite showing of contempt, and, because Oakley has abandoned his inability to pay defense, there is no question that he should be held in contempt. Oakley's purported "payment plan," premised on false and incomplete information, does not excuse his contempt, nor is it a "remedy" for his contempt.

## II.    Case Termination is the Appropriate Sanction for Oakley's Contempt

### a.    Oakley's Late Payment and "Payment Plan" Confirm Termination is Appropriate

Oakley's belated, nominal payment and unsupported "payment plan"—offered without any

---

[3] Oakley's declaration from a "financial advisor" (ECF 487) regarding a stake he holds in ████ ██████████████████████████████ raises more questions than answers, including the value of this investment (which could be quite significant) and/or why it could not be assigned to MSG. *See* ECF 493. Moreover, ██████████████████████████████████, *id.* ¶ 4, Oakley will realize its value well before 2027, when he proposes beginning to make payments.

[4] Oakley "has not documented any efforts to reduce his expenses," including his "luxury items." *Safeco,* 2014 WL 12834210, at *13, *25 (recommending contempt finding and stating "[e]very single penny spent on [] luxury items should have gone to" pay the order); *S.E.C. v. Bremont,* 2003 WL 21398932, at *6 (S.D.N.Y. June 18, 2003) (Kaplan, J.) (holding debtor in contempt where he "flouted the [j]udgment by using his available funds to purchase luxury goods").

attempt to confer with MSG, and based on misleading financials—demonstrate not only that he is in contempt, but also that case termination is warranted.

*First*, Oakley's payment of $40,000, made days after the pre-motion conference, shows that his noncompliance with the Fees Order was willful. Oakley and his counsel never provided any explanation of where these funds came from or why they waited two months after the deadline and after MSG had initiated contempt proceedings to provide them to MSG. Absent an intervening event during this time—of which Oakley has made no mention—Oakley could have, *at the very least*, made the $40,000 payment by the November 21 deadline. Again, either Oakley and his counsel did *no diligence* into his finances prior to the payment deadline or for many weeks thereafter, or they intentionally misrepresented his inability to pay to MSG and this Court. Apparently, only the threat of contempt following the pre-motion conference was enough to motivate Oakley and his counsel to reveal that, of course, Oakley was not insolvent.

*Second*, the Court should reject Oakley's "payment plan" as "too little too late." *Adams*, 959 F. Supp. 2d at 520.[5] Courts routinely reject payment plans that are offered after the deadline and contempt proceedings are commenced. *See Aragon*, 2011 WL 3278907, at *5 (holding that contemnor "cannot seriously be characterized as 'reasonably diligent'" where he "did not write to the [SEC] about a payment plan" until months after the deadline); *In re Simone*, 2023 WL 5338676,

---

[5] The cases Oakley cites for his claim that a "supervised plan for fixed payments" is appropriate are not applicable. Opp. at 9. In *Bronson*, 2021 WL 3167853, at *13, the parties were directed to confer on a payment plan, and the contemnor was required to submit "a detailed and comprehensive accounting" of his finances. Oakley did not "confer" with MSG prior to making his proposal, and he provides no meaningful support for his it. In *Parris*, the monthly payment was required to be submitted with "a sworn and notarized monthly statement of income and expenses" and "a copy of [] monthly bank statement." *Parris v. Pappas*, 2017 WL 9480196, at *6 (D. Conn. 2017). Oakley neither offered to do that nor submitted reliable and complete evidence of his expenses. And in *Verone*, the contemnor was already found in contempt *of the payment plan*, and if payment was not made within 30 days, he was going to be placed under arrest. *Verone v. Taconic Tel. Corp.*, 826 F. Supp. 632, 634–36 (N.D.N.Y. 1993).

at *5 (Bankr. D. Conn. Aug. 18, 2023) (contemnor's payment plan offers were "belated" when made in his opposition brief and at a hearing on contempt). Furthermore, Oakley's "payment plan" rewards his contempt by *reducing* the net present value of the sanction by deferring payment over more than a decade. And, if court-ordered, his "plan" would hamper MSG's ability to enforce a judgment for the remainder of the award.

*Third*, the Court should reject the proposed "payment plan" because Oakley fails to even claim that $5,000 per month is all he can pay or offer any explanation of how he arrived at that amount or timing. Oakley merely swears: "Given my current finances, I am able and prepared to make payments of $5,000 per month beginning in 2027." ECF 491 ¶ 38. This "self-serving, conclusory statement[] with incomplete financial records do[es] not show [he has] an inability to pay the outstanding balances." *A.V. By Versace,* 279 F. Supp. 2d at 348; *In re Doria/Memon Discount Stores Wage & Hour Litig.*, 2016 WL 270080, at *6 (S.D.N.Y. Jan. 21, 2016) (Sweet, J.) (finding contempt where contemnor's affidavit was "insufficient" and "not credible"). Oakley does not testify that $5,000/month is the most he can pay or offer evidence based on his income and expenses to support that claim. Oakley also does not explain why cannot he pay *anything* until 2027 or why he will suddenly be able to pay in 2027. His "plan" is "plainly unreasonable." *S.E.C. v. Red Rock Secured, LLC,* No. 2:23-CV-03682, Dkt. 180 (C.D. Cal. Feb. 7, 2025).

*Finally*, the Court should reject Oakley's proposed "payment plan" because Oakley (and his counsel) cannot be trusted to comply. Oakley's proposal would allow him an entire year of non-payment, even though his multiple requests to stay the Fees Order were rejected. Courts routinely reject proposed payment plans because of previous failures to pay. *See, e.g.*, *Guantanamera Cigar Co. v. Corporacion Habanos, S.A.,* 750 F. Supp. 2d 31, 35 (D.D.C. 2010).

### b. Oakley Has Admitted Further Monetary Sanctions Will Not Be Coercive, and He Is a Serial Violator of Court Orders

Even setting aside Oakley's belated payment and disingenuous "payment plan," case-terminating sanctions are warranted for two other independent reasons.

*First*, Oakley himself claims that additional monetary sanctions would not lead to compliance. *See* Opp. at 11 ("further monetary awards [. . .] will only frustrate [] Oakley's ability to pay in the long-run[.]"); *see also* ECF 476 at 3 (Oakley claiming "further fines . . . would only deepen the problem of compliance"). Dismissal is appropriate where, as here, a plaintiff has refused to pay a prior monetary sanction because another "would likely be meaningless." *Peker v. Fader*, 965 F. Supp. 454, 458 (S.D.N.Y. 1997) (Koeltl, J.) (dismissing case as sanction); *see also Friedman v. Bloomberg, L.P.*, 2024 WL 1298601, at *1 (2d Cir. Mar. 27, 2024) (affirming dismissal where monetary sanctions had "been ineffective at securing full compliance and were unlikely to become effective in the future"); *Kelly v. EMI Blackwood Music Inc.*, 2007 WL 2327059 (S.D.N.Y. Aug. 16, 2007), *report and rec. adopted*, 2007 WL 2766660 (S.D.N.Y. Sept. 21, 2007) (Rakoff, J.) (terminating case for contempt where plaintiffs refused to pay prior sanction).

*Second*, Oakley's claim that "dismissal is necessarily inappropriate" because "there have not been prior warnings or any prior refusals to comply with court orders," Opp. at 7, is false. Oakley has failed to comply with at least *three* orders: (1) Judge Tarnofsky's Fees Order (ECF 461); (2) Judge Tarnofsky's denial of his stay request (ECF 467); and (3) this Court's denial of Oakley's objections to Judge Tarnofsky's denial of his stay request (ECF 471). More than that: The Court has *already* found Oakley made "patent misrepresentations" in these proceedings about his text messaging habits and phone trade-ins (not to mention his recent statements about locating "devices" in storage). *See, e.g.*, ECF 439 (Spoliation Order) at 14 (finding Oakley's "patent misrepresentations are part of a broader pattern of Oakley making sworn statements to the Court that are then contradicted by subsequently unearthed evidence.").

11

Furthermore, Oakley and his counsel's pattern of lies has not resulted in merely "hypothetical or dignitary" harm, *see* Opp. at 10, rather, it has forced MSG to expend significant resources exposing his falsehoods.[6] Oakley's recent statement that he was entirely unable to pay is just another example of making false representations that are later contradicted by "unearthed evidence," this time in the form of his partial payment and financial information (which is *still* incomplete and misleading). The Second Circuit has confirmed that dismissal is proper where a plaintiff refuses to pay monetary sanction and has a "longstanding and egregious pattern of delay, obstruction, and simple inaction." *Selletti v. Carey*, 17 F. App'x 18, 21 (2d Cir. 2001); *see also Lewis v. Nissan N. Am., Corp.*, 2005 WL 8177285, at *16 (S.D.N.Y. June 29, 2005), *report and rec. adopted*, 2005 WL 1652924 (S.D.N.Y. July 14, 2005) (Kaplan, J.), *aff'd*, 186 F. App'x 98 (2d Cir. 2006).[7] Only termination will deter Oakley from litigating frivolous cases and positions, making false representations, and flouting court orders.[8]

## III. Oakley Should Be Ordered to Pay Additional Attorneys' Fees and Interest

As Oakley acknowledges, a contemnor may be ordered to compensate the movant for costs "resulting from" the contemnor's noncompliance, so long as the fine is "correlated with" the losses

---

[6] Oakley's underlying case is founded on false testimony and allegations. *See* ECF 398, 411. As the Court has already noted, there are blatant contradictions between his sworn declaration—in which he claimed that he was "pushed" to the ground—and statements he made during a sports radio show and in early drafts of his autobiography, in which he admitted that he instead "slipped" and "fell," (which Douglas Wigdor personally revised prior to publication to reflect Oakley and his counsel's false narrative). ECF 439 (Spoliation Order) at 9; *see also* ECF 411 at 6.

[7] The Court may also order dismissal under Federal Rule of Civil Procedure 41(b). *See, e.g.*, *Goldberg v. Prestige Automotor LLC,* 2007 WL 9757905, at *2 (D. Conn. Oct. 18, 2007) (dismissal for failure to respond to court orders including order to pay attorneys' fees).

[8] Oakley's argument that dismissal does not give him an "opportunity to purge" relies on an inapplicable standard for sanctions of coercive fines. *See Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 829 (1994). (Oakley's complaint that he has not had the opportunity to purge also suggests he is able to, but is choosing not to, pay the award.)

incurred. Opp. at 5 (citations omitted). Oakley should thus compensate MSG for opposing his stay requests and its fees incurred in bringing this motion, as well as interest on the Fees Order.

MSG has incurred (and continues to incur) substantial fees in prosecuting this contempt motion, costs that courts routinely award as part of compensatory sanctions for contempt, particularly where the contempt was willful, as here. *See Weitzman v. Stein*, 98 F.3d 717, 719 (2d Cir. 1996); *Zino Davidoff SA v. CVS Corp.*, 2008 WL 1775410, at *7 (S.D.N.Y. Apr. 17, 2008) (Sullivan, J.). MSG also incurred significant fees opposing Oakley's *five* stay requests, all of which were brought as part of his effort to delay payment, as evidenced by his (false) assurances that absent a stay, MSG would be paid. *See* ECF 466 at 2; ECF 469 at 2. The fact that litigants "routinely" seek to stay orders from magistrate judges, Opp. at 6–7, is of no moment, given that *Oakley's* stay requests were meant to "circumvent[] the relief" ordered in the Fees Order. and "directly result[ed] from [his] willful noncompliance." *JLM Couture, Inc. v. Gutman*, 2022 WL 17832303, at *3 (S.D.N.Y. Dec. 21, 2022) (Swain, C.J.) (awarding fees for opposing motion for emergency stay and preparing fee application); *see also Weitzman*, 98 F.3d at 720 (awarding fees for appeal that "would [not] have been necessary if [contemnor] had respected the [court's] order"). Finally, Oakley should be ordered to pay interest on the unpaid amount of the Fees Order. *See, e.g.*, *Barcia v. Sitkin*, 1997 WL 66785, at *3 (S.D.N.Y. Feb. 14, 1997) (Carter. J.).[9]

Finally, Oakley's counsel should be held jointly and severally liable for any additional fees

---

[9] That MSG has not yet sought a specific amount of fees and interest is no basis to deny the relief. *See* Opp. at 12–13. MSG's pre-motion letter—which this Court deemed as its opening brief "in the interest of efficiency" and "with the consent of the parties," ECF 483—disclosed the relief it seeks for Oakley's contempt. ECF 473. In so doing, it complied with Local Civil Rule 83.6, in that it provides notice of "evidence as to the amount of damages as may be available to the moving party" to the best of MSG's ability. The fees for litigating Oakley's contempt and the interest on the Fees Order continue to accrue and can be ascertained when the Court orders. *See, e.g.*, *Broker Genius Inc. v. Seat Scouts LLC*, 2019 WL 2462333, at *4 (S.D.N.Y. June 13, 2019) (Stein, J.).

awarded to MSG because they spent months on a campaign of misdirection and obfuscation intended to facilitate Oakley's non-compliance with the Fees Order. *See* 28 U.S.C. 1927 (authorizing imposition of attorneys' fees against counsel "who so multiplies the proceedings in any case unreasonably and vexatiously"); *Enmon v. Prospect Cap. Corp.*, 675 F.3d 138, 143–44 (2d Cir. 2012). Oakley's counsel's baseless motion practice and other stall tactics meant to avoid Oakley's compliance—while peddling an ever-changing story about Oakley's ability to pay—rises to the level of bad faith. *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986) (bad faith may be inferred "when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose"); *Geraldo v. Richland Holdings, Inc.*, 2019 WL 2161695, at *4 (D. Nev. May 17, 2019) (sanctioning counsel who "filed frivolous motions to stay execution in an attempt to delay defendants' collection efforts").

## IV.    MSG's Motion is Procedurally Proper

Oakley's claim that MSG's contempt motion should be before Judge Tarnofsky should be rejected outright. This motion arises from Oakley's failure to pay attorneys' fees awarded by *this Court*, in an amount set by Judge Tarnofsky pursuant to a referral to determine only the quantum of fees. ECF 439; ECF 461; ECF 450. After Oakley failed to pay, MSG initiated this motion by filing a pre-motion conference letter, consistent with this Court's Rule 2(A), as the parties have done throughout this case. ECF 473. At the conference, the Court asked the parties to state their positions on whether Judge Tarnofsky should decide this motion; considered Oakley's position; and then, "with the consent of the parties[,] . . . deem[ed] MSG's motion to have been made[.]" ECF 483. MSG's motion is thus properly before the Court.

Finally, 28 U.S.C. § 636(e)(6)—which governs the scope of a magistrate judge's contempt powers—merely provides a mechanism for a magistrate to certify facts related to contempt in

certain situations. This statute does not, as Oakley suggests, require the movant to seek such certification or make its motion to the magistrate. 28 U.S.C. § 636(e)(6); *see also* Opp. at 4–5. If anything, 28 U.S.C. § 636(e)(6) makes clear that only this Court can issue a contempt order to "enforce" the Fees Order. *See Ferrara v. Metro D Excavation & Found., Inc.*, 2012 WL 6962214, at *1 (E.D.N.Y. Nov. 30, 2022) ("Where, as here, the parties have not consented to the jurisdiction of a magistrate judge, a magistrate judge is not empowered to issue a final contempt order.").

## V.    The Court Should Enter Judgment in the Balance of the Fees Order ($602,337.65)

Oakley's violation of the Fees Order, belated nominal payment, fig-leaf "payment plan," and misleading submissions in his Opposition make clear that MSG will never know the full picture of Oakley's finances without use of the full suite of discovery available to aid judgment enforcement. As explained above, public records show that Oakley obscured and understated his assets, and there are likely elements of his finances he is hiding in ways that public sources cannot expose. Notably, MSG previously served discovery on the funding of his litigation expenses, and he objected on relevance grounds. That Oakley's (at least) hundreds of thousands in litigation costs, and likely millions in fees, may have been fronted by a third party is now directly relevant to understanding his finances and ability to pay. The Court should issue judgment forthwith.

## <u>CONCLUSION</u>

The Court should grant MSG's motion for contempt and order case-terminating sanctions and award MSG's costs and fees for pursuing this motion. The Court should also enter judgment on the balance of the Fees Order so that MSG may identify, and enforce against, Oakley's assets. Regardless of whether this case is terminated based on Oakley's contemptuous conduct (as it should be), the Court should still also decide MSG's summary judgment and Rule 11 motions, both of which provide other, independent grounds for dismissal. *See* ECF 397; ECF 410.

Dated: February 13, 2026
New York, New York

Respectfully submitted,

*/s/ Damien Marshall*

Damien Marshall
Jessica Benvenisty
John Goodwin
Lauren Myers
KING & SPALDING LLP
1290 Avenue of the Americas,
14th Floor
New York, NY 10106
Tel. (212) 556-2100
Fax (212) 556-2222
DMarshall@kslaw.com
JBenvenisty@kslaw.com
JGoodwin@kslaw.com
LMyers@kslaw.com

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that this brief complies with this Court's Individual Practice Rule 2.B regarding formatting and the Court's February 5, 2026 Order granting MSG's request for additional pages. *See* ECF 496.

*/s/ Damien Marshall*
Damien Marshall
