UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHARLES OAKLEY,

                            Plaintiff,

        -v-

MSG NETWORKS, INC., *et al.*,

                            Defendants.

No. 17-cv-6903 (RJS)
ORDER

RICHARD J. SULLIVAN, Circuit Judge:

Plaintiff Charles Oakley moves to file redacted or sealed versions of (i) his memorandum of law in support of his opposition to Defendants' contempt motion; (ii) related declarations filed by his accountant and financial advisor; and (iii) additional exhibits such as tax returns and banking records.  (Doc. No. 487 at 1.)  Oakley contends that "confidential treatment" of these documents will help protect his "compelling interest in the privacy of his personal finances."  (*Id.*)  Similarly, Defendants MSG Networks, Inc., Madison Square Garden Sports Corp., and Sphere Entertainment Group, LLC (collectively, "MSG") move to redact from their own briefing any "information that is subject to Oakley's pending motion to seal."  (Doc. No. 497.)  For the reasons set forth below, these motions are GRANTED in part and DENIED in part.

"The common law right of public access to judicial documents is firmly rooted in our nation's history."  *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006).  "To determine whether th[at] presumption attaches to a particular record," courts "engage[] in a three-step inquiry," assessing (1) "whether the record at issue is a judicial document," (2) the "weight of the presumption of access," and (3) how that presumption stacks up against "the factors that legitimately counsel against disclosure of the judicial document."  *Mirlis v. Greer*, 952 F.3d 51,

59 (2d Cir. 2020) (internal quotation marks omitted).  Since Oakley's filings clearly constitute "judicial documents" – *i.e.*, records "placed before the court by the parties" that are "relevant to the performance of the judicial function and useful in the judicial process" – the parties' sealing motions depend entirely on the balance between the presumption of public access and Oakley's "privacy interests."  *Id.* (internal quotation marks omitted).

Courts in this circuit have routinely weighed those competing values in the context of motions to seal financial records.  On the one hand, "[t]ax returns are generally afforded special protection from public disclosure."  *Solomon v. Siemens Indus., Inc.*, 8 F. Supp. 3d 261, 285 (E.D.N.Y. 2014); *see also Adams v. New York State Educ. Dep't*, 959 F. Supp. 2d 517, 519 (S.D.N.Y. 2013) (permitting litigant "to file documents under seal, including prior federal and state tax returns, for the Court to evaluate his ability to pay" sanction).  On the other hand, "not all banking information implicates a privacy interest, and courts frequently deny motions to seal financial information that does not reveal highly sensitive or personal details."  *Averbach v. Cairo Amman Bank*, No. 19-CV-0004-GHW-KHP, 2023 WL 4144758, at *3 (S.D.N.Y. June 23, 2023) (collecting cases).  Instead, courts seal such records only "where such information may reveal sensitive personal financial information that could be misused if publicly released or that may cause a personal safety issue or embarrassment."  *Id.*

Applying these principles here, the Court concludes that Oakley's financial records and related statements contain sufficiently private information to justify partial sealing.  This information includes (i) the contents of Oakley's tax records (Doc. Nos. 489-1–6, 14); (ii) detailed summaries of those tax records included in Oakley's memorandum of law and his accountant's declaration (*see, e.g.*, Doc. No. 488 at 2; Doc. No. 492); (iii) portions of Oakley's financial advisor's declaration describing a specific investment (Doc. Nos. 493), (iv) large swathes of

2

Oakley's bank and mortgage records (Doc. Nos. 491-7–11, 13), and (v) a copy of a check that Oakley sent to MSG (Doc. No. 491-12).

But Oakley's proposed redactions – including the complete sealing of all of his declaration's exhibits – shroud these documents in too much secrecy. Oakley redacts not only sensitive granular information about the identity and characteristics of his assets, but also more general statements about their overall worth. (*See*, *e.g.* Doc. No. 488 at 1 (redacting net value of Oakley's liquid assets); *id.* at 3 (redacting estimate of total amount in Oakley's collective bank accounts); *id.* at 10 (redacting vague and generalized description of Oakley's liabilities); Doc. No. 489 at ¶ 9 (redacting similar description of tax-related liabilities); *id.* at ¶ 37 (redacting resale value of Oakley's watches); Doc. No. 489-7 at 1 (sealing entire bank statement, including total amount of money in account); Doc. No. 489-13 at 2 (sealing entire mortgage statement, including outstanding mortgage principal).) While Oakley may "protect from disclosure proprietary, sensitive, and confidential . . . information," *Great W. Ins. Co. v. Graham*, No. 18-CV-6249 (VSB), 2021 WL 5325924, at *1 (S.D.N.Y. Nov. 15, 2021) (alteration adopted and internal quotation marks omitted), he may not cover up the ultimate extent of his assets and his liabilities or the data that he has used to calculate those bottom-line numbers.

That is especially true because Oakley himself has put his inability to pay the previously imposed sanction of $642,337.65 at issue in this matter. (*See* Doc. No. 475 at 1–3 (arguing that "compliance is now factually impossible" because of Oakley's complete "inability to pay" due to his "indebtedness" (first quoting *United States v. Rylander*, 460 U.S. 752, 757 (1983); then quoting *Huber v. Marine Midland Bank*, 51 F.3d 5, 11 (2d Cir. 1995)))). It will not do for Oakley to openly assert that he is so impoverished that he cannot comply with a court order while simultaneously blanketing his financial records with sweeping redactions hiding even high-level statements

regarding his assets and liabilities.  Oakley offers no particularly compelling reason for such mass sealing here.  (*See* Doc. No. 487 at 1 (vaguely explaining that sealing is appropriate because documents are "sensitive"); *Great W. Ins. Co.*, 2021 WL at *1 (explaining that "the party seeking sealing must provide the court with enough clarity to determine" why sealing is necessary, and that simply asserting that financial records include "sensitive information" does not suffice (internal quotation marks omitted).)

In sum, the parties may seal (i) Oakley's tax records in their entirety, (ii) summaries of those records, (iii) particularized information about the nature of his various sources of income and debt, and (iv) any personal information connected to specific banking transactions, addresses, and account numbers.  He may not, however, redact the purely financial data that he has used to calculate his overall assets and liabilities – such as the portion of his bank statements showing the overall balance in each account (*see, e.g.* Doc. No. 489-7 at 1), the section of his mortgage documents setting forth his outstanding mortgage principal (*see* Doc. No. 489-13 at 2), or the basic fact that he holds a large interest in an LLC (*see* Doc. No. 493 at 1).  The public should be able to evaluate Oakley's general financial circumstances – and thus the strength of his arguments against sanctions – even if it may not learn any "highly sensitive or personal details."  *Averbach*, 2023 WL at *3.[1]

For the reasons stated above, IT IS HEREBY ORDERED that Oakley's and MSG's respective motions to seal are GRANTED in part and DENIED in part.  The parties shall file their memoranda of law and accompanying declarations and exhibits on the public docket, redacting

---

[1]  To the extent that MSG seeks to seal other sensitive information – including (i) verbatim quotations from the pre-motion letter that Oakley previously filed under seal (*see* Doc. No. 477), and (ii) Oakley's additional personal information, including license plates, vehicle registration numbers, and real estate addresses (*see, e.g.*, Doc. 499-5 at 1) – its motion is granted.  MSG may not, however, seal the portion of its excerpt from Oakley's deposition transcript that describes compensation, such as direct payment and possible future royalties, that Oakley received for writing and publishing his memoir.  (*See* Doc. No. 499-21 at 524.)

only the sensitive financial and personal information identified above. The Clerk of Court is respectfully directed to terminate the motions pending at Doc. Nos. 487 and 497.

SO ORDERED.

Dated:     February 25, 2026
           New York, New York

                                            _____
                                            RICHARD J. SULLIVAN
                                            UNITED STATES CIRCUIT JUDGE
                                            Sitting by Designation