UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHARLES OAKLEY,

Plaintiff,

-v-

MSG NETWORKS, INC., *et al.*,

Defendants.

No. 17-cv-6903 (RJS)
MEMORANDUM
& ORDER

RICHARD J. SULLIVAN, Circuit Judge:

Defendants MSG Networks, Inc., Madison Square Garden Sports Corp., and Sphere Entertainment Group, LLC (collectively, "MSG") move to preclude Plaintiff Charles Oakley's proffered expert witness. (*See* Doc. Nos. 356, 357.) For the reasons stated below, Defendants' motion is GRANTED.

I.    **Background**

This dispute stems from a February 8, 2017 incident in which MSG security guards and New York City Police Department officers forcibly removed Oakley from a New York Knicks basketball game at Madison Square Garden. The Court assumes the parties' familiarity with the factual background and procedural history of this case as summarized in the Court's July 23, 2025 opinion and order. (*See* Doc. No. 439 at 2.)

On November 25, 2024, Oakley submitted an expert disclosure indicating that Larry B. Perkins would be "preparing report(s) and/or providing testimony regarding the use of force during Plaintiff's removal from MSG." (Doc. No. 358-1 at 2.) Oakley served Perkins's initial report on February 14, 2025 (Doc. No. 357 at 5), and on February 25 he followed up with a revised version

of the report entitled "Report on Public Assembly, Sports, and Entertainment Management." (Doc. No. 358-3 ("Perkins Report").)

Perkins describes himself as a "professional event planning consultant" with expertise in "event planning, crowd management, crowd control, crowd flow, and venue security." (*Id.* at 1, 3.) Perkins primarily contends that MSG's security personnel should have given Oakley the chance to cure his behavior before ejecting him and that they should have encouraged Oakley to leave by using verbal de-escalation techniques instead of force. (*See id.* at 34, 38.) He also asserts that MSG failed to adequately train its employees and that with more robust training "security personnel would [have] know[n] how to handle situations like these." (*Id.* at 43.)[1]

MSG moves to preclude Perkins's report and testimony on various grounds, including that he is not qualified to offer expert testimony on the use of force, that his opinions on that topic are not reliable, and that his opinions on other topics are irrelevant and prejudicial. (*See* Doc. No. 357 ("Defs.' Mot.") at 9.) Oakley counters that Perkins's "expertise about arena operations is . . . relevant to the use of force in this case" because "MSG's employees' conduct must be assessed in the context of what is reasonable within a sports venue and the standard procedures used in that setting." (Doc. No. 377 ("Pl.'s Opp'n") at 18.)

## II.    Legal Standard

"Federal Rule of Evidence 702 imposes a special obligation upon a trial judge to ensure that any and all [expert] testimony . . . is not only relevant, but reliable." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999) (internal quotation marks omitted). To discharge that duty,

---

[1] Oakley also contends that Perkins will testify about "MSG's lax reporting procedures," which (in his view) prevented it from adequately documenting the incident. (Doc. No. 377 at 13). Oakley argues that such evidence "is relevant to the spoliation issue, and, if spoliation evidence is presented to a jury, will help to establish [Defendant's] intent to destroy evidence about Dolan's involvement in the removal." (*Id.*) However, after Oakley filed this motion, the Court denied his separate motion for spoliation sanctions. (*See* Doc. No. 440 at 1.) Accordingly, Oakley's argument is moot, and Perkins's testimony regarding lack of documentation is not relevant to any remaining issue.

courts must "rigorous[ly] examin[e]" proffered expert testimony. As a threshold matter, witnesses may testify as experts only if they are "qualified . . . by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. Furthermore, the Rule's "exacting standards of reliability," *Weisgram v. Marley Co.*, 528 U.S. 440, 455 (2000), require proffered testimony to be "(1) 'based upon sufficient facts or data'; [and] (2) 'the product of reliable principles and methods' [that are] (3) "applied . . . reliably to the facts of the case," *United States v. Tin Yat Chin*, 371 F.3d 31, 40 (2d Cir. 2004) (quoting Fed. R. Evid. 702). "[A]n expert's analysis [must] be reliable at every step" of this inquiry, and a failure at "any step" will "render[] the expert's testimony inadmissible." *Amorgianos*, 303 F.3d at 267 (internal quotation marks and emphasis omitted). Throughout this analysis, "[t]he proponent of the expert testimony bears the burden of establishing by a preponderance of the evidence that the admissibility requirements of Rule 702 are satisfied." *United States v. Pollok*, 139 F.4th 126, 140 (2d Cir. 2025) (internal quotation marks omitted).

## III.    Discussion

As noted previously, the only remaining issues in this case are "(1) the amount of force used to remove Oakley from the Garden and (2) whether that force was objectively reasonable under the circumstances." (Doc. No. 264 at 4 (quoting Doc. No. 218 at 5)). Rule 702 bars any testimony not related to those issues because it is not "relevant to the task at hand." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993). And even potentially relevant testimony will be inadmissible unless it "rests on a reliable foundation." *Amorgianos*, 303 F.3d at 259.

Perkins's proffered testimony falls into two main categories: (1) testimony regarding MSG employees' use of force against Oakley and their training in that field; and (2) testimony regarding

MSG's failure to give Oakley a chance to correct his behavior before ejecting him. Neither category of testimony can survive scrutiny under Rule 702.

###### A. Testimony Regarding the Use of Force and MSG Employees' Training

"Whether a witness is qualified as an expert can only be determined by comparing the area in which the witness has superior knowledge, skill, experience, or education with the subject matter of the witness's testimony." *United States v. Diallo*, 40 F.3d 32, 34 (2d Cir. 1994) (internal quotation marks omitted). And even if a witness qualifies as an expert, the proffered testimony must be "the product of reliable principles and methods," Fed. R. Evid. 702(c), such that the "opinion evidence . . . is connected to existing data" by more than "the *ipse dixit* of the expert," *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). Finally, even a qualified expert employing reliable methods must "appl[y] [those methods] reliably to the facts of the case." *Tin Yat Chin*, 371 F.3d at 40 (alterations accepted and internal quotation marks omitted). Here, Perkins has no expertise with respect to the use of force. And even if he did, his testimony would still be inadmissible both because he (1) bases it on a methodology that is "simply inadequate to support the conclusions reached," and (2) "fail[s] to apply his own methodology reliably." *Amorgianos*, 303 F.3d at 266, 268.

###### 1. Perkins's Lack of Expertise

Perkins is not an expert on the use of force. In his deposition, Perkins admitted that he has never received "any formal training from law enforcement in the use of force," "training on whether force can be used," or "training on how to assess the level of force that is reasonable." (Doc. No. 358-2 at 382:16–383:02.) He further explained that his purported area of expertise – the "public event management industry" (*id.* at 343:8–14) – is "not really focused, necessarily, on the use of force," but rather "on crowd management, subliminal messaging," and "techniques" that

help "creat[e] a positive fan experience," not "on crowd law enforcement." (*Id.* at 413:13–414:24). Indeed, according to Perkins, "the use of force" is the "wrong paradigm" for this case (*id.* at 413:14–414:24), even though the Court has made clear that the use of force – and the reasonableness of that force – are the only issues remaining in this case (*see* Doc. No. 264 at 4).[2]

Because, as discussed below, any analysis or opinions unrelated to the use of force are irrelevant, Perkins clearly is not "qualified as an expert [in the reasonable use of force] by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. "[W]here, as here, an expert purports to base his conclusions solely on his general professional 'experience' without explaining specifically why he can extrapolate from such experience, Rule 702 bars him from testifying." *Bah v. Nordson Corp.*, No. 00CIV9060DAB, 2005 WL 1813023, at *10 (S.D.N.Y. Aug. 1, 2005) (excluding testimony of engineer with experience designing safety warnings for lawnmowers in case involving safety warnings for glue applicators).

### 2. *Perkins's Lack of a Reliable Methodology*

But even if it could be said that Perkins is an expert in crowd management, and that methods of crowd management are somehow tangentially relevant to the reasonableness of the force used against Oakley, his testimony on the subject would still be inadmissible because he does not employ a sound methodology – or even a clearly identifiable one. "An expert opinion requires some explanation as to how the expert came to his conclusion and what methodologies or evidence substantiate that conclusion." *Riegel v. Medtronic, Inc.*, 451 F.3d 104, 127 (2d Cir. 2006). But Perkins "offers only conclusions . . . without detailing how and why [he] came to [his]

---

[2] In his opposition brief, Oakley attempts to establish Perkins's use-of-force credentials by claiming – for the first time and without citing any source – that Perkins "has given countless trainings on the legal parameters for the use of force in venues." (*See* Pl.'s Opp'n at 8.)  But Perkins's report and CV do not mention any such trainings. (*See generally* Perkins Report; *see also* Doc. No. 358-1 at 5–11 (ECF pagination).)  Nor do they show that Pekins himself has received any training related to the appropriate use of force, as discussed above.

determination[s]." *Nnebe v. Daus*, No. 06-CV-4991 (RJS), 2023 WL 6881992, at *3 (S.D.N.Y. Oct. 18, 2023).

Throughout his deposition, Perkins refused to commit to any particular methodology for assessing the use of force, emphasizing instead that everything "depends on what [MSG security guards] were doing with Mr. Oakley." (Doc. No. 358-2 at 299:5–20.) But that truism – that analyzing the reasonableness of the use of force depends on looking at the force used – is hardly the kind of precise expert methodology that would enable the Court "to determine whether [Perkins] ha[d] good grounds for his conclusions." *In re Lyman Good Dietary Supplements Litig.*, No. 17-CV-8047 (VEC), 2019 WL 5682880, at *6 (S.D.N.Y. Oct. 31, 2019) (internal quotation marks omitted and alteration accepted).

Oakley attempts to sidestep this problem by arguing that Perkins is merely "apply[ing] [his] experience of crowd-management practice in a simple way to the evidence in this case." (Pl.'s Opp'n at 20–21.) But while a methodology may be simple, it must also be clear. Perkins's it-all-depends methodology has only vaguely discernible contours, and it boils down to exactly the kind of "intuitive and subjective" approach based on "logic" and "commonsense" that fails Rule 702's requirement of "objective and testable principle[s] [and] methods." *Fed. Trade Comm'n v. Quincy Bioscience Holding Co., Inc.*, 646 F. Supp. 3d 518, 529 (S.D.N.Y. 2022) (internal quotation marks omitted).[3]

---

[3] Oakley also argues that Perkins is applying industry standards based on his own professional experience, and that he "identified the source" for those standards in his report. (Pl.'s Opp'n at 22 (citing Perkins Report at 52).) But Perkins testified in his deposition that, to his knowledge, none of the listed resources discusses the use of force. (Doc. No. 358-2 at 108:17–21.)

### 3. *Perkins's Unreliable Application of His Methodology*

Finally, even if Perkins could clear the first two prongs for expert testimony – *i.e.*, the reliability of his expertise and methodology – Rule 702 would still bar his testimony because he "fail[s] to apply his own methodology reliably." *Amorgianos*, 303 F.3d at 268. When an expert "inexplicably" fails to analyze facts that his or her methodology would ordinarily "take . . . into consideration," that expert's opinion "rest[s] on a faulty assumption" and is "not based on good grounds." *Id.* at 268–69 (internal quotation marks omitted). Here, Oakley characterizes Perkins's purported methodology as an analysis of "all surrounding facts and circumstances." (Pl.'s Opp'n at 21 n.15.) But Perkins fails to acknowledge facts that would undercut Oakley's arguments, such as the physical contact that Oakley made with MSG security personnel Thomas Redmond and Jayson Jacknow. (*See* Doc. No. 358-7 at 0:39–1:00; Doc. No. 258-8 at 0:20-0:40.) And Perkins seems to invent another fact that appears nowhere in the record: that Kori Keaton "thr[ew] a right-hand closed[-]fist punch" at Oakley. (Perkins Report at 26.) Indeed, Perkins himself admitted that the screenshot on which he principally relies "does not show the closed fist itself." (Doc. No. 358-2 at 286:13–287:3.) Perkins's testimony is thus additionally barred under Rule 702 because he "fail[s] to apply his stated methodology reliably to the facts of the case." *Amorgianos*, 303 F.3d at 269 (internal quotation marks omitted).

### B.     Testimony Regarding MSG's Failure to Give Oakley a Chance to Correct His Behavior Before Ejecting Him

In his report, Perkins also criticizes MSG's decision to eject Oakley, explaining that an ejection for a "minor offense" is "highly unusual" and "certainly fall[s] outside the norms of industry[] best practices." (*See* Perkins Report at 24.) According to Perkins (and Oakley), MSG (1) should have objected to Oakley's behavior when he first entered the seating area, (2) "passed

along encouraging words to bring about a peaceful solution," and (3) given him a chance to "correct any misbehavior" before removing him from the area. (*Id.* at 19; Pl.'s Opp'n at 1.)

But the question of whether Oakley had the "chance to correct any misbehavior" so that he could stay in the Garden is not at issue in this case. MSG indisputably had the right to eject Oakley for any reason. *See Oakley v. Dolan*, No. 21-2939, 2023 WL 3263618, at *2 (2d Cir. May 5, 2023) ("Under New York law, a property owner has the right to withdraw a license to their premises.") Instead, the only remaining material disputes relate to "'(1) the amount of force used to remove Oakley from the Garden and (2) whether that force was objectively reasonable under the circumstances.'" (Doc. No. 264 at 4 (quoting Doc. No. 218 at 5)). Perkins's opinion on whether MSG complied with industry standards when it *decided* to eject Oakley has no bearing on those questions. *See In re Lyman*, 2019 WL 5682880, at *5 (excluding portions of expert report because they were "irrelevant, unhelpful, and ha[d] the potential to mislead or confuse a jury").

Oakley also argues that "Perkins's testimony will . . . help establish that [he] did not have a 'reasonable opportunity to depart,' because venue guests should be verbally engaged or given a warning card and then given a chance to comply before force is applied." (*See* Pl.'s Opp'n at 9 (quoting *Oakley*, 2023 WL 3263618 at *3).) But that argument confuses an opportunity to *correct behavior* after being given a warning with an opportunity to *depart* after being told to leave. Perkins's testimony and purported expertise relate to the former, but only the latter is relevant in this case.

### C.   Rule 403

Even if Perkins' testimony regarding the events before Oakley's ejection were relevant, the Court would still exclude that testimony under Federal Rule of Evidence 403. "In addition to the requirements of Rule 702, expert testimony is subject to Rule 403," which allows courts to bar

evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." *Nimely v. City of New York*, 414 F.3d 381, 397 (2d Cir. 2005) (quoting Fed. R. Evid. 403)). Because Rule 403 plays a "uniquely important role . . . in a district court's scrutiny of expert testimony, given the unique weight such evidence may have in a jury's deliberations," courts "weighing possible prejudice against probative force under Rule 403 . . . exercise[] more control over experts than over lay witnesses." *Id.* (quoting *Daubert*, 509 U.S. at 595). Perkins's testimony here – even if it were relevant and based on a solid foundation – would risk unfairly prejudicing MSG, confusing the issues to be resolved at trial, and misleading the jury. In a case where the only remaining issues relate to the amount of force actually used to remove Oakley, and where that removal was recorded on several different cameras from several different angles, a third party's vague evaluation of training policies and tangential events does not pass muster under Rule 403.

## IV.    Conclusion

For the foregoing reasons, Defendants' motion to preclude Perkins's expert report and testimony is GRANTED. The Clerk of Court is respectfully directed to terminate the motion pending at Doc. No. 356.

SO ORDERED.

Dated:  February 25, 2026
        New York, New York

RICHARD J. SULLIVAN
UNITED STATES CIRCUIT JUDGE
Sitting by Designation