

King & Spalding LLP
1290 Avenue of the Americas
New York, New York 10104

Damien Marshall
Partner
Direct Dial: +1 212 790 5357
dmarshall@kslaw.com

April 27, 2026

**VIA ECF AND EMAIL**
Hon. Richard J. Sullivan
U.S. Circuit Court Judge Sitting by Designation
500 Pearl Street
New York, New York 10007

> Re:    *Oakley v. MSG Networks, et al.*, No. 17-cv-6903 (RJS) (S.D.N.Y.)

Dear Judge Sullivan:

We write on behalf of Defendants MSG Networks, Inc., Madison Square Garden Sports Corp., and Sphere Entertainment Group, LLC (collectively, "MSG") to respectfully request leave to supplement MSG's pending Motion for Rule 11 Sanctions (ECF 410, 411, 438) with the opinion and order issued on April 23, 2026, in *Doe v. Black*, No. 23-CV-6418 (JGLC) (S.D.N.Y. Apr. 23, 2026) (the "*Black* Opinion"), in which Judge Clarke found that Wigdor LLP ("Wigdor") and its attorney Jeanne Christensen engaged in "serious, sanctionable misconduct." A copy of the *Black* Opinion is attached hereto as Exhibit A.

The *Black* Opinion is directly relevant to MSG's pending sanctions motion because it demonstrates a pattern of misconduct by Wigdor that is strikingly similar to the conduct at issue in this case. In *Black*, the Court found that Wigdor, through Ms. Christensen, "lied repeatedly to the Court and to opposing counsel" about proceedings in a related action, directed the plaintiff to destroy a relevant social media account without taking any preservation measures, and proffered journals containing falsified sonogram images as evidence. *See* Ex. A at 1, 36, 43. As sanctions, the Court ordered, *inter alia*, that for one year Ms. Christensen file the opinion in every case in any federal court within the Second Circuit in which she is counsel of record, and that for five years she share it with any federal court within the Second Circuit in which she appears in a case where a sanctions motion has been filed against her, her employer, or her client. *Id.* at 63.[1] The parallels between the misconduct found sanctionable in *Black* and Wigdor's conduct in this case are significant.

*First*, just as Judge Clarke found that Wigdor's attorney "lied repeatedly" to the Court and opposing counsel, Wigdor's attorneys in this case have submitted knowingly false statements and representations to this Court—including by drafting a false declaration for Oakley, substantively rewriting the final draft of Oakley's autobiography to align with that false declaration, and then attempting to conceal their role in doing so. *Compare* Ex. A at 56 ("Nonetheless, it is the duty of counsel to ensure that a complaint is consistent with *their client's* allegations, and, at minimum, counsel must take that obligation seriously." (emphasis added)) *with* ECF 438 at 1, 3–6 (describing how Wigdor "peddl[ed] a knowingly false narrative" of Oakley's ejection in Court filings).

---

[1] Attorneys Douglas Wigdor and John Crain appeared in both the *Black* case and this case. *See Black*, ECF 128, 196.

*Second*, just as the *Black* Court found that Ms. Christensen directed the plaintiff to destroy her Twitter account without any effort to preserve its contents, Wigdor failed to ensure that Oakley preserved relevant evidence—resulting in the spoliation of essentially all of Oakley's contemporaneous communications, including text messages which were likely the best evidence of Oakley's true thoughts and impressions following the incident. *Compare* Ex. A at 58–62 *with* ECF 439 at 7–8.

*Third*, just as the plaintiff in *Black* falsified sonogram images in her personal journals to support her claims, Oakley's counsel here effectively falsified the factual record by rewriting key passages of Oakley's autobiography—changing his own candid admissions that he "slipped" to a fabricated account that he was "pushed"—in order to perpetuate the false narrative underlying this litigation. *Compare* Ex. A at 62 *with* ECF 411 at 11–13.

Notably, although the *Black* Court ultimately declined to impose case-terminating sanctions, it did so for reasons that are distinguishable from the circumstances here, demonstrating that MSG's request for case-terminating sanctions is the appropriate remedy in this case.

The *Black* Court reasoned that the Wigdor attorney's lies were "contained to relatively few filings" such that the lies "did not prejudice Defendant on the merits of this dispute." Ex. A at 65. In this case, by contrast, Wigdor's misconduct has been pervasive throughout the litigation and directly prejudiced MSG on the merits—Oakley's false declaration, drafted by his counsel, was the very basis upon which the Second Circuit reversed this Court's grant of summary judgment, thereby prolonging years of baseless litigation. *See* ECF 411 at 8–9, 13; ECF 438 at 3–4.

Additionally, the *Black* Court found that "[n]one of the lies and fabrications substantively bear on [the] central issue." Ex. A at 66. Here, the opposite is true: Wigdor's fabrications go directly to the heart of Oakley's assault and battery claims—the only claims remaining in this case—and specifically to the two factual predicates identified by the Second Circuit: whether Oakley was given a reasonable opportunity to leave and whether he was "pushed" to the ground. ECF 411 at 17; *see also* ECF 218 at 5 (this Court confirming that "the Second Circuit narrowed this case to only two issues": "(1) the amount of force used to remove Oakley from the Garden and (2) whether that force was objectively reasonable under the circumstances"). Furthermore, in *Black*, the Court noted that "relatively little discovery ha[d] taken place" in that case. Ex. A at 68. Here, the parties have engaged in extensive discovery, including the exchange of thousands of documents and depositions of 15 fact witnesses, all of which have conclusively disproven Oakley's false narrative. ECF 411 at 9.

For the foregoing reasons, MSG respectfully requests leave to supplement its pending Motion for Rule 11 Sanctions with the attached *Black* Opinion.

Respectfully submitted,

*/s/ Damien Marshall*

Damien Marshall

2