UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHARLES OAKLEY,

Plaintiff,

-v-

MSG NETWORKS, INC., *et al.*,

Defendants.

No. 17-cv-6903 (RJS)
ORDER

RICHARD J. SULLIVAN, Circuit Judge:

Plaintiff Charles Oakley objects to the October 31, 2025 Opinion & Order of Magistrate Judge Robyn F. Tarnofsky (the "October 31st Order," Doc. No. 461) awarding MSG Networks, Inc., Madison Square Garden Sports Corp., and Sphere Entertainment Group, LLC (collectively, "MSG") attorneys' fees and costs related to spoliation sanctions that the Court previously imposed (Doc. No. 439). For the reasons set forth below, Oakley's objections are OVERRULED.

## I. Background

This case stems from a 2017 incident at Madison Square Garden in which Oakley was removed from a New York Knicks basketball game. The Court assumes the parties' familiarity with the factual background and procedural history of the case as summarized in the Court's August 14, 2026 opinion and order granting summary judgment to MSG on Oakley's sole remaining claim. (*See* Doc. No. 521 at 1–3.)

As relevant here, MSG previously moved for spoliation sanctions after discovering that all of Oakley's text messages from before February 2022 had been deleted. (*See* Doc. Nos. 253–54.) The Court granted that motion in part and ordered Oakley to reimburse MSG for the attorneys' fees and costs expended in pursuing it. (*See* Doc. No. 439 at 1–2, 15.) The Court then referred

MSG's subsequent motion to recover these fees and costs (Doc. No. 445) to Judge Tarnofsky (Doc. No. 450). After hearing from both parties, Judge Tarnofsky issued a forty-one-page opinion that awarded the MSG Defendants $642,337.65 – roughly forty percent of the $1,541,238 that they had requested. (October 31st Order at 1–2.) Oakley now objects to that award and asks the Court to reduce the fee to five percent of the requested amount. (Doc. No. 465 at 1.)

## II. Legal Standards

Federal Rule of Civil Procedure 72(a) allows a party to object to a magistrate judge's resolution of "pretrial matter[s] not dispositive of [the] party's claim or defense." Fed. R. Civ. P. 72(a). After weighing those objections, the district court may "modify or set aside" the magistrate judge's order only if it "is clearly erroneous or contrary to law." *Id.*; *see Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir. 1990). That "highly deferential standard," *Thai Lao Lignite (Thailand) Co. v. Gov't of Lao People's Democratic Republic*, 924 F. Supp. 2d 508, 511 (S.D.N.Y. 2013), sets a lofty bar: "[a] decision is clearly erroneous [only] when the district court is 'left with the definite and firm conviction that a mistake has been committed,'" and it is "contrary to law [only] if it fails to apply or misapplies relevant statutes, case law, or rules of procedure," *Stone v. Annucci*, No. 20-cv-1326 (RA), 2025 WL 579679, at *1 (S.D.N.Y. Feb. 21, 2025) (first quoting *United States v. Snow*, 462 F.3d 55, 72 (2d Cir. 2006); and then quoting *Shim-Larkin v. City of New York*, No. 16-cv-6099 (AJN), 2022 WL 1250548, at *1 (S.D.N.Y. Apr. 27, 2022)).

## III. Discussion

Oakley has failed to show that Judge Tarnofsky's order was clearly erroneous or contrary to law. Instead, his briefing largely rehashes arguments that Judge Tarnofsky carefully weighed and soundly rejected. Those arguments fall into six buckets.

*First*, Oakley contends that Judge Tarnofsky erred in considering attorney biographies pulled from King & Spalding's website in determining the reasonable hourly rates for the attorneys who worked on the spoliation motion. (Doc. No. 465 at 5–7). But as Judge Tarnofsky explained, "courts routinely assess the reasonableness of fees based on biographies taken from firm websites." (*See* October 31st Order at 14; *see also, e.g.*, *HSBC Bank USA, N.A. v. PAKS Holdings, LLC*, No. 19-cv-10193 (PGG) (JLC), 2021 WL 667661, at *6 (S.D.N.Y. Feb. 22, 2021) (relying on "copies of the attorneys' biographies from the firm website").) And while Oakley argues that such biographies constitute hearsay (Doc. No. 465 at 5), he cites no caselaw where a court has ever stringently applied the Federal Rules of Evidence to a sanctions motion – or even required particularized affidavits from every timekeeper. To the contrary, district courts have routinely rejected that argument as "frivolous and unsupported by any authority." *Baring Indus., Inc. v. 3 BP Prop. Owner LLC*, No. 19-cv-2829 (JGK), 2022 WL 4560738, at *5 (S.D.N.Y. Sept. 29, 2022) (explaining that "it would be extraordinary to require individual affidavits from every timekeeper in a complicated case"); *see also Cabrera v. Schafer*, No. 12-cv-6323 (ADS) (AKT), 2017 WL 1162183, at *3 (E.D.N.Y. Mar. 27, 2017) ("The Defendants do not cite to a single case that . . . supports their argument that the time sheets must be disregarded as hearsay."). Judge Tarnofsky's decision to follow the usual practice thus neither amounted to clear error nor violated the law.[1]

*Second*, Oakley argues that this case centers on a straightforward tort, and that Judge Tarnofsky accordingly erred in assessing fees using the "inflated rates" of costly commercial litigators. (Doc. No. 465 at 7.) But as Judge Tarnofsky explained, "th[is] case began as a complex

[1] Indeed, it is not even clear that the hearsay rules apply at *all* with respect to sanctions motions like this one. As the Second Circuit has explained, "[c]ourts have differed over whether or to what extent the Federal Rules of Evidence govern disputes over attorneys' fees." *Rein v. Socialist People's Libyan Arab Jamahiriya*, 568 F.3d 345, 352 (2d Cir. 2009). For this reason, the Circuit has "assum[ed] without deciding that in determining questions of attorneys' fees, courts may employ hearsay within reasonable limits and have considerable discretion over adherence to Federal Rules." *Id.*

commercial litigation," in which Oakley "alleg[ed] ten causes of action against multiple corporate entities and representatives." (October 31st Order at 14.) Judge Tarnofsky thus reasonably found that "it would have been inefficient to switch lawyers" mid-litigation solely "because the surviving claims sound[ed] in tort." (*Id.*) Finally, the spoliation motion hardly involved simple, garden-variety tort litigation; it required MSG to analyze ten thousand pages of cellphone records, hire an electronic discovery expert, file multiple written submissions with the Court, and attend several hearings involving live testimony. (*Id.* at 22).

*Third*, Oakley asserts that Judge Tarnofsky erroneously "limit[ed] [her] analysis only to the[] specific" attorney bills that he "challenged" and that this partial review effectively "shifted [to him] the burden" of parsing MSG's billing records and isolating the spoliation work from unrelated tasks. (Doc. No. 465 at 10.) But Judge Tarnofsky extensively analyzed – and, on some occasions, reduced – MSG's bills. (*See* October 31st Order at 18–35.) Moreover, MSG properly submitted "contemporaneous time records indicating, for each attorney, the date, the hours expended, and the nature of the work done." *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1154 (2d Cir. 1983). Oakley does not cite a single case supporting the argument that courts must flyspeck every line of such records before awarding attorneys' fees; on the contrary, "[t]he essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." *Errant Gene Therapeutics, LLC v. Sloan-Kettering Inst. for Cancer Rsch.*, No. 15-cv-2044 (AJN) (SDA), 2018 WL 3094913, at *4 (S.D.N.Y. June 21, 2018) (quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011), *aff'd,* 768 F. App'x 141 (2d Cir. 2019)).

*Fourth*, Oakley argues that MSG failed to maintain contemporaneous records for time spent on spoliation-related tasks. (Doc. No. 465 at 12–13.) But MSG's counsel submitted a declaration indicating that MSG's lawyers contemporaneously created their billing records. (Doc.

No. 447 at ¶¶ 5–6.) And Judge Tarnofsky meticulously compared a forty-five page spreadsheet of MSG's bills to the records at issue in other cases to ensure that the "[r]equested fees [were] 'supported with contemporaneous time records establishing for each attorney for whom fees [were] sought, the date on which work was performed, the hours expended, and the nature of the work done.'" (October 31st Order at 8, 32–35 (quoting *Olaechea v. City of New York*, No. 17-cv-4797 (RA), 2022 WL 3211424, at *13 (S.D.N.Y. Aug. 9, 2022).)

*Fifth*, Oakley contends that Judge Tarnofsky erroneously failed to address his argument that the fees award threatened to eclipse any final verdict. (Doc. No. 465 at 17.) Judge Tarnofsky, however, did consider that argument: as she correctly explained, "[w]hen a court awards attorneys' fees . . . the amount is not based on the amount of the judgment in the underlying case, but rather on the fees incurred as a direct result of the spoliation." (October 31st Order at 40.) To be sure, "the amount involved in the case" *can* generally be one of the many "case-specific variables" that a district court could "bear in mind . . . as relevant to the reasonableness of attorneys' fees." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections*, 522 F.3d 182, 183 n.3, 190 (2d Cir. 2008). But that obvious – and highly caveated – acknowledgment does not mean that courts must mechanically reduce large awards, and Judge Tarnofsky did not err in focusing on the actual amount of money that Oakley's spoliation forced MSG to spend.[2]

*Finally*, Oakley contends that Judge Tarnofsky erred in calculating the award amount. Oakley rattles off a litany of complaints related to this issue, including that Judge Tarnofsky

[2] Oakley's argument also reveals inconsistencies in his own briefing to this Court. After all, Oakley has boasted previously that he could receive "significant . . . damages" (Doc. No. 448 at 19 (Oakley's memorandum of law opposing MSG's motion for attorneys' fees)), and that the "possibility" of a large verdict in this case makes it a "crucial asset" (Doc. No. 475 at 1 (Oakley's letter opposing MSG's motion for contempt and case-terminating sanctions based on Oakley's failure to pay the attorneys' fees award)). Those statements further undercut his claim that the fees award could potentially eclipse any final damages award.

(i) insufficiently considered rates in comparable cases (Doc. No. 465 at 8–9); (ii) failed to weigh the fact that MSG may not have paid some of the fees that King & Spalding billed (*id.* at 9–10); (iii) improperly awarded compensation at attorney rates for allegedly clerical tasks and failed to reduce rates in instances when senior lawyers completed tasks that their junior counterparts could have done (*id.* at 10–11, 15); (iv) inadequately addressed the reasonableness of the amount of time that MSG devoted to certain tasks (*id.* at 11–12); (v) erroneously awarded unreasonable costs for expert and trial graphics (*id.* at 16–17); (vi) incorrectly concluded that Oakley's counsel's behavior contributed to the amount of time spent uncovering the spoliation (*id.* at 13–14); and (vii) mistakenly awarded full compensation even though the spoliation motion succeeded only in part (*id.* at 16).

None of these arguments is persuasive. Indeed, Judge Tarnofsky carefully and thoroughly assessed the fees here. For starters, she *did* consider rates in comparable cases. (*See* October 31st Order at 16 ("The rates for Defendant's lawyers are on the high side but are roughly comparable to the rates at similarly sized firms in New York City that have recently been found reasonable by this Court.").)[3] Then, Judge Tarnofsky correctly concluded that a "spoliating party *may be* required to" cover accrued (but unpaid) attorneys' fees, but that she would not treat the rates for such fees as controlling. (*Id.* at 35 (emphasis added and internal quotation marks omitted).) Turning to the issue of clerical work and MSG's staffing practices, Judge Tarnofsky next emphasized that (i) "[m]uch of the work categorized by Plaintiff as clerical is actually legal or factual work"; (ii) "some clerical work is compensable"; and (iii) "[t]o the extent that Plaintiff is

[3] Oakley insists that Judge Tarnofsky should have looked only to cases involving "spoliation of [electronically stored information] by one natural person in a tort action." (Doc. No. 465 at 9.) But Oakley cites no authority for the proposition that courts must compare fees based on such granular similarities. Put simply, parties may not manufacture clear error simply by claiming that a magistrate judge did not consider a gerrymandered, artificially narrow class of supposedly analogous cases.

arguing that the timekeepers who performed clerical tasks were too expensive or that the cost of the work was otherwise too high," she would be dealing with "that issue in connection with an across-the-board reduction for block billing" – which also helped mitigate any concerns with the amount of time that MSG spent on certain tasks. (*Id.* at 28.)

After addressing these large-dollar issues, Judge Tarnofsky parsed Oakley's more-focused arguments about expert and trial-graphics expenses, conscientiously assessing "the reasonableness of [MSG's] expert fees," and indeed *reducing* them by fifty percent, while awarding the full amount (roughly $15,000) that MSG requested for "work done to prepare graphics and deposition video and to provide onsite technology." (*Id.* at 36, 38–40.) Judge Tarnofsky also reasonably awarded MSG fees for time that it had wasted because Oakley "provide[d] [it] with incorrect information relevant to spoliation." (*Id.* at 20–21 (citing *Google LLC v. Starovikov*, No. 21-cv-10260 (DLC), 2023 WL 2344935, at *3 (S.D.N.Y. Mar. 3, 2023) (refusing to reduce hours because "it was largely the actions of Defendants that dictated the kinds of work and the amount of work undertaken by plaintiff's counsel")); *see also City of Riverside v. Rivera*, 477 U.S. 561, 581 n.11 (1986) ("[A party] cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the [opponent] in response." (internal quotation marks omitted).) Finally, Judge Tarnofsky reasonably concluded that (i) MSG was "largely successful" in its sanctions motion – which, after all, convinced the Court that Oakley *had* in fact spoliated evidence – and (ii) she would not reduce MSG's fees simply because it did not obtain the most drastic remedy of all, *i.e.*, "case-ending sanctions." (October 31st Order at 18.) Nonetheless, Judge Tarnofsky *still* lopped off roughly $900,000 (over 50%) from MSG's requested sum. (*Id.* at 1.)

* * *

Oakley's motion largely repackages the slew of failed arguments that he made before Judge Tarnofsky, who carefully considered and rejected all of them. Oakley now asks the Court to comb through Judge Tarnofsky's work, "becom[ing] a green-eyeshade accountant[]" bent on "auditing perfection." *Fox*, 563 U.S. at 838. But "[t]he essential goal in shifting fees" is simply to "do rough justice," *id.*, and the Court is certain that Judge Tarnofsky achieved that goal. Furthermore, the Court is reviewing only for clear error, so that even *if* the Court might "have weighed the evidence differently" and assessed different fees, *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 574 (1985), it would still be unmoved by Oakley's objections. Fed. R. Civ. P. 72(a) (mandating that district courts modify only orders that are "clearly erroneous or contrary to law"); *see, e.g.*, *Centro De La Comunidad Hispana De Locust Valley v. Town of Oyster Bay*, 954 F. Supp. 2d 127, 139 (E.D.N.Y. 2013) ("This standard is highly deferential, imposes a heavy burden on the objecting party, and only permits reversal where the magistrate judge abused h[er] discretion." (internal quotation marks omitted)), *aff'd,* 705 F. App'x 10 (2d Cir. 2017).

## IV. Conclusion

Accordingly, IT IS HEREBY ORDERED THAT Oakley's objections to Magistrate Judge Tarnofsky's October 31st Order are OVERRULED. The Clerk of Court is respectfully directed to terminate the objection pending at Doc. No. 465.

SO ORDERED.

Dated: August 14, 2026
New York, New York

RICHARD J. SULLIVAN
UNITED STATES CIRCUIT JUDGE
Sitting by Designation